UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERA INSTITUTE OF JUSTICE, et al.,<br><br>*Plaintiffs*, *on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>PAMELA J. BONDI, in her official capacity as United States Attorney General,<br><br>OFFICE OF JUSTICE PROGRAMS,<br><br>MAUREEN A. HENNEBERG, in her official capacity as Acting Head of the Office of Justice Programs,<br><br>*Defendants.* | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281 (U.S. May 16, 2025) ............................................ 6

*Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002) ...................................................................................... 14

*Bame v. Dillard*, No. 05-cv-1833, 2008 WL 2168393 (D.D.C. May 22, 2008) ........................................ 6

*Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68 (D.D.C. 2015) ...................................... 10

*D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) .................................................................. 8

*DL v. District of Columbia*, 302 F.R.D. 1 (D.D.C. 2013) ........................................................................ 7

*DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) .................................................................... 8

*General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) .................................................................... 5, 10

*Guadamuz v. Ash*, 368 F. Supp. 1233 (D.D.C. 1973) ............................................................................ 13

*Healthy Futures of Tex. v. HHS*, 326 F.R.D. 1 (D.D.C. 2018) .......................................................*passim*

*In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194 (D.D.C. 2019) .................................................................................................................................. 10

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) .......................................................................................... 6

*Lewis v. U.S. Parole* , 743 F. Supp. 3d 181 (D.D.C. 2024) ...................................................................... 5

*Little v. Wash. Metro. Area Transit Auth.,* 249 F. Supp. 3d 394 (D.D.C. 2017) ...................................... 9

*N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) .............................. 9

*N.S. v. Hughes*, 335 F.R.D. 337 (D.D.C. 2020) ...................................................................................... 9

*Nat'l ATM Council v. Visa, Inc.*, No. 21-7109, 2023 WL 4743013 (D.C. Cir. July 25, 2023) ................. 5

*Nio v.HHS*, 323 F.R.D. 28 (D.D.C. 2017) .............................................................................................. 10

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020) .................................... 6

*R.I.L–R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) .......................................................................... 6

*Ramirez v. U.S. Immgr. & Customs Enf't*, 338 F. Supp. 3d 1 (D.D.C. 2018) ........................................ 12

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014) ............................................................ 11

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ..................................................................... 5, 8, 13

## STATUTES

5 U.S.C. §§ 701, *et seq.* ..................................................................................................................2

## RULES AND REGULATIONS

2 C.F.R. § 200.340(a)(4) ..............................................................................................1, 9, 11, 13

Fed. R. Civ. P. 23 ................................................................................................................*passim*

Rules Advisory Committee Notes, 39 F.R.D. 69 (1966) ...........................................................13

## OTHER AUTHORITIES

1 *Newberg and Rubenstein on Class Actions* § 3:54 (6th ed. 2024) ..................................................11

*Manual for Complex Litigation (Fourth)* § 21.222 (2005) .................................................................6

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule of Civil Procedure 23.1, Plaintiffs Vera Institute of Justice (Vera), Chinese for Affirmative Action d/b/a Stop AAPI Hate (CAA), Children and Youth Justice Center d/b/a Center for Children & Youth Justice (CCYJ), Health Resources in Action (HRiA), and FORCE Detroit, on behalf of themselves and all others similarly situated, respectfully move this Court for an order certifying the following Class:

> All entities in the United States issued awards by the U.S. Department of Justice (DOJ) Office of Justice Programs, whose grants or cooperative agreements DOJ terminated in April 2025 pursuant to 2 C.F.R. § 200.340(a)(4).

Plaintiffs further request that the Court appoint all named Plaintiffs as class representatives and Democracy Forward Foundation and Perry Law as class counsel.

## I.     INTRODUCTION

Plaintiffs' Class Action Complaint alleges that in April 2025, the Department of Justice's Office of Justice Programs (OJP) suddenly canceled hundreds of grants and cooperative agreements (hereinafter "grants" or "awards") to community organizations. The terminated awards provided federal support for evidence-based programs proven to reduce violence, protect crime victims, and keep communities across the United States safe.

To terminate the awards, OJP sent identical notices that instructed recipients to cease all previously funded activities. The notice said the awards were purportedly terminated "[b]ased on a careful review" pursuant to 2 C.F.R. § 200.340(a)(4) because the awards "no longer effectuate[] the program goals or agency priorities." The notice provided no other explanation of the nature of OJP's "careful review" or the basis for the terminations. And none of the OJP awards gave the recipients any notice that those awards could be terminated for a change in "program goals or agency priorities." In fact, because OJP award recipients assumed that their awards could be terminated only for cause, they spent years building the infrastructure necessary to earn the trust of the communities in which they operated and spent millions of dollars supporting local organizations

1

who hired staff and built programs designed to achieve lasting change. For these reasons, Plaintiffs allege that Defendants' conduct violates the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*, the Due Process Clause of the Fifth Amendment, the Spending and Appropriations Clauses, and the Take Care Clause.

A lawsuit must be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) if the requirements of numerosity, commonality, typicality, and adequacy are satisfied, and because Defendants have acted on grounds that apply generally to the Class such that final injunctive relief is appropriate for the Class as a whole. Here, Defendants terminated hundreds of awards using identical form letters. As a result of those terminations, all class members have suffered, and will continue to suffer, the same type of harm from Defendants' unlawful and wrongful conduct.

Similarly, a class action can be certified under Federal Rule of Civil Procedure 23(b)(1) if the requirements of Rule 23(a) are satisfied, and prosecuting separate actions would create a risk of inconsistent adjudications. Because the manner in which the OJP terminations were effected and the authority invoked for those terminations were identical, the question of whether those terminations violated the APA or the Constitution should be decided in a single action.

For the reasons set forth below, Plaintiffs submit that this case is appropriate for class certification under Federal Rule of Civil Procedure 23(b)(2) and Federal Rule of Civil Procedure 23(b)(1).

## II. BACKGROUND

### A. The Awards

Plaintiffs received awards designed to reduce violence in communities across the United States. *See* Ex. A, Decl. of Rachel Sottile ¶¶ 19-31 (CCYJ); Ex. B, Decl. of Cynthia Choi ¶¶ 11-13 (CAA); Ex. C, Decl. of Dujuan Kennedy ¶¶ 6-7 (FORCE Detroit); Ex. D, Decl. of Steven Ridini ¶ 6 (HRiA); Ex. E, Decl. of Nicholas Turner (Vera) ¶¶ 19, 24, 31, 37, 45. None of the awards stated that they could be terminated because the awards "no longer effectuate[d] the program goals or agency priorities." Sottile Decl. ¶ 14; Choi Decl. ¶ 21; Kennedy Decl. ¶ 11; Ridini Decl. ¶ 16; Turner Decl. ¶ 14.

### B. The Mass Terminations

On April 4, 2025, OJP abruptly canceled five awards to Plaintiff Vera. Turner Decl. ¶ 8; Turner Decl. Ex. 6. Then, on April 22, OJP sent identical termination notices for 365 additional awards. *See, e.g.,* Sottile Decl. Exs. 1 & 4; Choi Decl. Ex. 2; Kennedy Decl. Ex. 2; Ridini Decl. Exs. 2, 4 and 6. The notices stated that the awards at issue were purportedly terminated "[b]ased on a careful review" and provided:

> These awards are being terminated because they "no longer effectuate[] the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). The Department has changed its priorities with respect to discretionary grant funding to focus on, among other things, more directly supporting certain law enforcement operations, combatting violent crime, protecting American children, and supporting American victims of trafficking and sexual assault, and better coordinating law enforcement efforts at all levels of government. These awards demonstrate that they no longer effectuate Department priorities.

The notice further provided that "[a]ll unobligated balances remaining" were terminated and that the use of award funds would not be allowed "for obligations incurred, or expenditures made, after the receipt of this notice, other than pursuant to closeout responsibilities." In certain cases, access to funds was cut off. *See, e.g.,* Turner Decl. ¶ 13; Sottile Decl. ¶ 13.

3

C.      **The Effect of the Terminations on Plaintiffs and the Communities They Serve**

As a direct result of Defendants' illegal terminations, Plaintiffs and members of the Class–as well as the communities they serve–have been and will continue to be irreparably harmed. Plaintiffs have already terminated staff or will be required to do so. *See* Sottile Decl. ¶ 15 (five members of staff terminated on April 25, 2025); Choi Decl. ¶ 10 (20% of Stop AAPI Hate staff can expect to be laid off within a year); Kennedy Decl. ¶ 18 (three frontline FORCE Detroit employees, with significant expertise, meaningful ties to the community, and trusted relationships with high-risk program participants, were laid off); Ridini Decl. ¶ 18 (31 members of HRiA staff, who are funded through awards could lose their jobs and CVI outreach workers, violence interrupters, case managers, hospital-based violence intervention program professionals, and frontline workers at CBOs and programs who were awarded subgrants face layoffs, diminished hours, reassignment and termination, without meaningful alternatives for employment); Turner Decl. ¶ 15 (Vera staff members working full or part time on programs funded by Vera's awards are now severely limited in their ability to carry out violence intervention work and face the real possibility of unemployment in the near future).

Defendants' actions have forced Plaintiffs to end programs designed to interrupt community violence.  Sottile Decl. ¶¶ 32-33 (ended program intended to build capacity of community organizations in King County, Washington); Choi Decl. ¶ 10 (plans to establish partnerships with organizations focused on care, healing and mental health support for the AAPI community have been cancelled and Stop AAPI Hate cannot expand existing programs designed to reduce AAPI hate); Kennedy Decl. ¶ 18 (Community events and trauma support activities have been cancelled); Ridini Decl. ¶ 18 (HRiA subaward recipients have halted their programs); Turner Decl. ¶ 15 (state departments of correction facilities have withdrawn from project to support data collection, policy development, training and monitoring for correctional facilities to increase safety in prisons).

Ending programs has eroded the trust community organizations and the people they serve placed in Plaintiffs, damaging their reputations. Choi Decl. ¶ 10 (community groups can no longer rely on Stop AAPI Hate's partnership or support in response to large scale incidents of hate and violence); Kennedy Decl. ¶ 18 (contractors, partners and young people can no longer rely on FORCE

4

Detroit's for funding, support or services, hurting the organization's reputation and hard-fought for community trust and relationships); Ridini ¶ 18 (HRiA subaward recipients terminated employees and lost the trust of their community and partners)

Perhaps most importantly, ending these programs has left vulnerable populations across the country without services. Sottile Decl. ¶ 15 (approximately 65 young people will be deprived of services from LINC, a program that serves youth who are involved with or at risk of involvement with gangs or violence); Choi Decl. ¶ 10 (at least 40 victims of hate will lose the opportunity to participate in Stop AAPI Hate's healing support programs); Kennedy Decl. ¶ 18 (program participants cannot access wraparound services from FORCE Detroit's care management and mentorship teams); Ridini Decl. ¶ 18 (assistance no longer available from 23 hospital-based violence intervention programs and numerous hospitals are without technical assistance for their violence prevention professionals); Turner Decl. ¶ 15 (Deaf and hard-of-hearing victims of crimes cannot use interpretive services to communicate with law enforcement and victim services; cities have lost subaward funding that would have supported modernizing 911 call systems and train civilian specialist to respond to mental and behavioral health crises; and prosecutors in several states cannot benefit from diversion programs; and human trafficking survivors with disabilities will not benefit from training of law enforcement officers and agencies).

While they may vary in degree, injuries of this nature are common to all members of the Class.

### III. ARGUMENT

**A. Standard of Review**

The Supreme Court has emphasized that class certification demands a "rigorous analysis" under Rule 23. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011) (quoting *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160-61 (1982)). The issue at this stage is not, however, whether Plaintiffs can or have proven the elements of their claims on the merits. *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 n.3 (D.D.C. 2024) ("If some objective legal standard applies in common to the entire class and will be dispositive of each plaintiff's success on the merits, plaintiffs need not prove

5

that standard is met at the class certification stage."); *see also Nat'l ATM Council v. Visa, Inc.*, No. 21-7109, 2023 WL 4743013, at *5 (D.C. Cir. July 25, 2023) (probing merits of plaintiffs' claims permissible "insofar as necessary to ensure that the Rule 23 requirements are met").  Instead, class certification focuses on the nature of the issues in dispute and whether common proof can resolve them.

As the Supreme Court observed on Friday in issuing temporary injunctive relief for a putative class, "[p]reliminary relief is 'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281, at *3 (U.S. May 16, 2025) (citations omitted).  For these reasons, when a motion for class certification is decided in conjunction with a motion for preliminary injunction, a class may be provisionally certified under Federal Rule of Civil Procedure 23 with the understanding that the certification may be "altered or amended" before a decision on the merits of the claims. *R.I.L–R. v. Johnson*, 80 F. Supp. 3d 164, 179-80 (D.D.C. 2015) (quoting *Bame v. Dillard*, No. 05-cv-1833, 2008 WL 2168393, at *5 (D.D.C. May 22, 2008)).  *See also P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 530-31 (D.D.C. 2020) (citing cases).

**B.     The Class Is Ascertainable**

The D.C. Circuit has not yet decided whether Rule 23(b)(2) requires that a class be ascertainable.[1]  If such a requirement exists, the proposed class definition easily satisfies this requirement.  *See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class[.]"); *Manual for Complex Litigation (Fourth)* § 21.222 (2005) ("The definition must be precise, objective, and presently ascertainable.") (but noting that Rule(b)(2) class definition need not be

---

[1] *See J.D. v. Azar*, 925 F.3d 1291, 1319-20 (D.C. Cir. 2019) (noting conflict in decisions of sister circuits).

6

capable of identifying individual class members). Plaintiff seeks to certify and represent the following Class:

> All entities in the United States issued awards by the U.S. Department of Justice (DOJ) Office of Justice Programs, whose grants or cooperative agreements DOJ terminated in April 2025 pursuant to 2 C.F.R. § 200.340(a)(4).

The proposed Class is defined with reference to objective criteria and is limited to specific entities. Indeed, class members can be precisely determined from Defendants' records. Prior to the terminations at issue here, Defendants administered the awards and sent the termination notices. As such, class members are easily identifiable.

### C.    The Class May Be Provisionally Certified Because This Action Satisfies the Requirements of Rule 23(a)

Before a district court may certify a class under Rule 23, the party seeking certification must establish that the proposed class satisfies all the prerequisites in Rule 23(a). That Rule provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As discussed below, each of these criteria is met.

#### 1.    Numerosity

The first requirement under Rule 23(a) is that the class must be so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). Demonstrating impracticability "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement, but as a general matter "the

numerosity requirement is satisfied and [ ] joinder is impracticable where a proposed class has at least forty members." *Healthy Futures of Tex. v. HHS*, 326 F.R.D. 1, 6 (D.D.C. 2018) (certifying class of more than 60 geographically dispersed grantees) (citations omitted) (Jackson, J.).

Here, the proposed Class, composed of hundreds of award recipients scattered throughout the United States, easily satisfies Rule 23(a)'s numerosity requirement. It would be practically impossible to join each putative class member to this action individually, and it would be judicially inefficient to do so. Moreover, because of Defendants' actions–which have led Plaintiffs and subrecipients to lay off employees and terminate or significantly scale back programs– many of the members of the putative class lack the financial resources to bring separate lawsuits.

### 2. Commonality

Rule 23(a)'s second requirement is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, Plaintiffs must identify an issue of fact or law whose resolution "is central to the validity of each" class member's claim. *Dukes*, 564 U.S. at 350. The commonality requirement does not demand that all questions of law or fact at issue be common; "'even a single common question' will do." *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (quoting *Dukes*, 564 U.S. at 359). Commonality is thus generally satisfied where, as in this case, the lawsuit challenges a "uniform policy or practice that affects all class members." *DL v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017). The key to the commonality requirement is whether the members of the proposed class have "suffered the same injury" such that their claims depend upon the resolution of "common contention." *Dukes*, 564 U.S. at 350.

Here, Defendants' unlawful conduct has targeted and affected all members of the Class in a similar manner, *i.e.*, each member of the Class has suffered the same injury: Defendants' termination of their awards without complying with the APA, their own regulations, or the Constitution. The

Court can therefore decide in one stroke whether or not Defendants' actions were legally permissible.

      Among the questions of law and fact common to the Classes are:

    a.      Whether Defendants engaged in a course of conduct that improperly terminated the awards given to members of the Class;

    b.      Whether Defendants violated their own regulations in terminating their awards,

    c.      Whether Defendants engaged in conduct that violated the APA;

    d.      Whether Defendants failed to give Class members due process when they terminated their awards without notice;

    e.      Whether Defendants' termination notices were void for vagueness;

    f.      Whether Defendants' actions violate the Spending and Appropriations Clauses,

    g.      Whether Defendants' actions violate the Take Care Clause.

    h.      Whether Plaintiffs and the other members of the Class were or will be injured by Defendants' conduct; and, if so,

    i.      Whether Plaintiffs and the other members of the Class are entitled to injunctive and/or declaratory relief.

      The commonality requirement is easily satisfied here because the legal and factual questions arising from Defendants' actions do not vary from one class member to the next. *N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020) ("Although the exact facts of each seizure may differ, the general legal question is the same, meaning that plaintiff has satisfied the commonality requirement[.]"), *modified on clarification sub nom. N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). Defendants sent out identical notices of termination to every class member purporting to invoke 2 C.F.R. § 200.340(a)(4) stating that class members' awards "no longer effectuate[] the program goals or agency priorities." Although members of the proposed Class may have suffered different degrees of harm, that does not diminish the commonality of Defendants' conduct towards them. *Cf. Little v. Wash. Metro. Area Transit Auth.,* 249 F. Supp. 3d 394, 419 (D.D.C. 2017) ("[A]

9

proposed class may have sufficient commonality if they posit a systematic act or overarching process or procedure that is the cause of their harm, even if the specific harm to each class member might be different.").

### 3. Typicality

The claims of the class representatives must also be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is liberally construed, and "is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 237 (D.D.C. 2019) (citation omitted). It requires neither complete coextension nor even substantial identity of claims. *See Nio v.HHS*, 323 F.R.D. 28, 33 (D.D.C. 2017) ("The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, '[t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff.' The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'") (citations omitted) (certifying class where "Defendants are applying standardized, across-the-board policies to the class"). This inquiry "tend[s] to merge" with both commonality and adequacy. *Falcon*, 457 U.S. at 157, 158 n.13.

Factual differences among class members do not defeat typicality provided the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory. *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015) (citation omitted). "Put another way, a representative's claims are typical of those of the class when '[t]he plaintiffs allege that their injuries derive from a unitary course of conduct by a single system.'" *Id.* (citations omitted). "[T]o the

10

extent that 'each class member's claim arises from the same course of events that led to the claims for the representative parties and each class member makes similar legal arguments to prove the defendant's liability,' typicality is obviously established." *Healthy Futures*, 326 F.R.D. at 7 (citations omitted).

Here, Rule 23(a)'s typicality requirement is satisfied. Plaintiffs are members of the Class, bring the same claims, and seek the same remedy as other class members. Their injuries derive from a "unitary course of conduct by a single system," namely Defendants' uniform invocation of 2 C.F.R. § 200.340(a)(4) to terminate OJP awards due to a purported change in agency priorities. Plaintiffs allege that Defendants' actions harmed Plaintiffs and members of the Class in the same way. If Plaintiffs succeed in their claims that Defendants' conduct violated the APA, or the Constitution, that ruling will benefit every member of the Class.

    **4.    Adequacy**

The final requirement of Rule 23(a) is that the representative party must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is a two-pronged inquiry: (i) the named plaintiff must not have claims in conflict with other class members, and (ii) the named plaintiff and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 150 (D.D.C. 2014) (quoting 1 *Newberg and Rubenstein on Class Actions* § 3:54 (6th ed. 2024)). Here, Plaintiffs' interests are aligned with the interests of the Class they seek to represent, such that no conflict of interest preventing certification is present. Plaintiffs share the interests of all class members in establishing the illegality of Defendants' conduct with regard to those issued OJP awards. Their injuries arise from the same conduct, and their legal claims challenging that conduct are the same. There are no known material conflicts of interest among members of the proposed

Class, all of whom share an interest in vindicating their claims in the face of Defendants' unlawful conduct.

The Proposed Class Representatives will fairly and adequately protect the interests of the Proposed Class.  Plaintiffs have been active participants in the development of this lawsuit, have remained in regular communication with Plaintiffs' counsel, and have otherwise acted in the best interests of the Class. Sottile Decl. ¶ 7; Choi Decl. ¶ 5; Kennedy Decl. ¶ 5; Ridini Decl. ¶ 7; Turner Decl. ¶ 6.  They are not pursuing any individual relief different from what any other class member will obtain.  Rather, they seek relief that will protect all members of the Proposed Class equally by having their award terminations declared illegal and reinstating those awards. Moreover, each Proposed Class Representative is "willing[] and [able] to take an active role in this litigation and to protect the interests of absent plaintiffs."  *Ramirez v. U.S. Immgr. & Customs Enf't*, 338 F. Supp. 3d 1, 47 (D.D.C. 2018).

Additionally, the Proposed Class Representatives are represented by qualified counsel.  The undersigned counsel are experienced administrative law, civil rights, and class action attorneys.  *See* Decl. of Jennifer Fountain Connolly (Connolly Decl.) ¶¶ 4-12.  Both Democracy Forward and Perry Law have successfully litigated dozens of challenges to unlawful government action, including, in Democracy Forward's case, the termination of federal grants of all types. Connolly Decl. ¶¶ 2., 10-12. Both organizations have attorneys on staff with experience in litigating complex class actions and both have the resources to adequately represent the plaintiff class. Connolly Decl. ¶¶ 4-12, 13.

### 5.    The Court should appoint Democracy Forward Foundation and Perry Law as Class Counsel.

Rule 23(g) requires the court to appoint class counsel when certifying a class, considering "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," along with "any other matter pertinent to counsel's ability to

fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g).  Plaintiffs have retained counsel who are experienced in litigating complex administrative and constitutional matters in federal court and have decades of experience litigating class actions of all types.  *See* Connolly Decl. ¶¶ 4-12; *Healthy Futures*, 326 F.R.D. at 8 (class counsel should be competent "to manage a class action and the underlying legal claims the lawsuit seeks to advance") (citations omitted).  Counsel has and will continue to prosecute this action vigorously.

### D.   The Class May Be Provisionally Certified Because Rule 23(b) is Satisfied

In addition to meeting the requirements of Rule 23(a), a proposed class must fall within at least one of the three subsections of Rule 23(b).

#### 1.   The proposed class may be certified under Rule 23(b)(2).

"Rule 23(b)(2) exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *Healthy Futures*, 326 F.R.D. at 8 (citations omitted).  A court may therefore certify a class under that Rule if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[2]

"The key to the b(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted–the notion that the conduct is such that it can be enjoined or declared unlawful only as to

---

[2] Declaratory relief "corresponds" to injunctive relief when "as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief."  Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966).  Therefore, the Court may issue a declaration incident to injunctive relief under Rule 23(b)(2) or certify a Class for declaratory relief under Rule 23(b)(1).  *See, e.g.*, *Guadamuz v. Ash*, 368 F. Supp. 1233, 1235 (D.D.C. 1973) ("The two classes are certifiable under either Rule 23(b)(1) or 23(b)(2), Federal Rules of Civil Procedure, since the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications which would impose incompatible standards of conduct upon the defendants or would effectively be dispositive of the interests of other members of their class. In addition, the defendants have acted on grounds that are generally applicable to each class, thereby making final injunctive or declaratory relief appropriate with respect to each class.").

all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). Here, Defendants acted based on grounds generally applicable to all class members by terminating all OJP contracts with a single form letter purporting to invoke 2 C.F.R. § 200.340(a)(4). As the Court held in *Healthy Futures*, 326 F.R.D. at 8, where the plaintiffs challenged the premature shortening of their grants to fund teen pregnancy programs under the APA:

> Moreover, and importantly, the requested relief that Healthy Futures seeks—an order that declares the agency action unlawful and that "[e]njoin[s] defendants to reinstate the TPPP grants from the five-year project period . . . and to continue to administer the grants to the same extent and in the same manner as prior to the unlawful termination"—would provide the same relief to all class members. Indeed, the agency has repeatedly confirmed that it took the same action with respect to every one of the TPPP grantees and without regard to the individual circumstances of any one of the recipient organizations. (Internal citations omitted).

The Court found that because the challenged conduct reflected "a programmatic decision to step back and reassess the future of the program on a program-wide basis," the class should be certified under Rule 23(b)(2).

Class certification is likewise appropriate here where, because Defendants' actions reflected "a programmatic decision" to reassess the OJP award program "on a program-side basis," those actions were identical with regard to all class members and uniformly impacted them in the same way. Absent a class action, there would be no mechanism for imposing uniform equitable and injunctive relief to the Class as a whole.

### 2. The proposed class may also be certified under Rule 23(b)(1)(A).

A class action may be maintained under Rule 23(b)(1)(A) when "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). "Rule 23(b)(1)(A) certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct

14

that is either legal or illegal as to all members of the class." *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) (citing 5 *Moore's Federal Practice* § 23.41[4] (3d ed. 2000)).  "Rule 23(b)(1)(A) certification is most common in cases in which the class seeks declaratory or injunctive relief against the government to provide unitary treatment to all members of a defined group." *Id.* (citation omitted).

Rule 23(b)(1)(A) is satisfied here.  Plaintiffs seek a single injunction against the government's illegal actions directed at every member of the proposed class.  Such an injunction would protect all class members from the harms resulting from Defendants' actions.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order granting its Motion for Class Certification.

Dated: May 21, 2025                                Respectfully submitted,

LISA NEWMAN*
JENNIFER FOUNTAIN CONNOLLY (D.C. BAR NO. 1019148)
CORTNEY ROBINSON (D.C. BAR NO. 1656074)
SOMIL TRIVEDI (D.C. BAR NO. 1617967)
BRIAN D. NETTER (D.C. BAR NO. 979362)
SKYE L. PERRYMAN (D.C. BAR NO. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org
*Pro hac vice* motion pending

JOSHUA PERRY*
JOSHUA STANTON (D.C. BAR NO. 90010653)
E. DANYA PERRY*
PERRY LAW
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 251-2619
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*

*Request for admission pending

15