# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERA INSTITUTE OF JUSTICE, et al., *Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>PAMELA J. BONDI, in her official capacity as United States Attorney General,<br><br>OFFICE OF JUSTICE PROGRAMS, MAUREEN A. HENNEBERG, in her official capacity as Acting Head of the Office of Justice Programs,<br><br>*Defendants.* | Case No. 1:25-cv-1643-APM<br><br>**AMICUS CURIAE BRIEF OF WASHINGTON, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, AND RHODE ISLAND IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*

MAUREEN JOHNSTON, WSBA #50037
*First Assistant Attorney General*
KELSEY E. ENDRES, WSBA #39409
*Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744
maureen.johnston@atg.wa.gov
kelsey.endres@atg.wa.gov

(Additional Counsel Listed on Signature Page)

## TABLE OF CONTENTS

I.   INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ........................................... 1

II.  ARGUMENT ........................................................................................................... 3

    A.   OJP's Arbitrary Cuts to Community Organizations Obstruct the States' Ability to Supervise Public Safety Efforts and Prevent Crime State-Wide .......................... 3

    B.   OJP's Arbitrary Cuts Limit the States' Ability to Address the Root Causes of Crime ............................................................................................................. 8

    C.   OJP's Arbitrary Cuts Affect the States' Ability to Care for Victims of Violent Crime and Hold Offenders Accountable ................................................ 11

III. CONCLUSION .....................................................................................................14

# TABLE OF AUTHORITIES

## Regulations

2 C.F.R. § 200.340(a)(4) ................................................................................................. 13

## Other Authorities

Addiction Policy Forum, *Attorney General Pam Bondi's Comments on Addiction and Reentry Services during Senate Confirmation Hearing* (Feb. 6, 2025), https://www.addictionpolicy.org/post/attorney-general-pam-bondi-s-comments-on-addiction-and-reentry-services-during-senate-confirmation-h ................................. 10

Brookings, *The opioid crisis and community level spillovers onto children's education* (Apr. 13, 2020), https://www.brookings.edu/articles/the-opioid-crisis-and-community-level-spillovers-onto-childrens-education/ ............................................... 8

Bureau of Justice Assistance, *Community Based Violence Intervention and Prevention Initiative Implementation Checklist* (Apr. 2022), https://www.ojp.gov/sites/g/files/xyckuh241/files/media/document/cvi-implementation-checklist_0.pdf .................................................................................. 4

Council on Criminal Justice, *DOJ Funding Update: A Deeper Look at the Cuts* May 2025), https://counciloncj.org/doj-funding-update-a-deeper-look-at-the-cuts/ .. 5, 9, 10

Joel Wallman, et al., *The Opioid Epidemic and Homicide* (May 2023), https://www.hfg.org/wp-content/uploads/2023/05/Opioids_HFG-Brief.pdf .............. 8

John Gramlich, Pew Research Center, *What the data says about gun deaths in the U.S.* (Mar. 5, 2025), What the data says about gun deaths in the US | Pew Research Center ..................... 3

Johns Hopkins Center for Gun Violence Solutions, *A Year in Review: 2020 Gun Deaths in the U.S.* (Apr. 28, 2022), https://publichealth.jhu.edu/sites/default/files/2022-05/2020-gun-deaths-in-the-us-4-28-2022-b.pdf ........................................................... 4

M.C. Ross, E.M. Ochoa, & A.V. Papachristos, *Evaluating the impact of a street outreach intervention on participant involvement in gun violence* (Nov. 6, 2023), https://www.pnas.org/doi/epub/10.1073/pnas.2300327120 ......................................... 4

Marissa Edmund, CAP, *Gun Violence Disproportionately and Overwhelmingly Hurts Communities of Color* (June 30, 2022), Gun Violence Disproportionately and Overwhelmingly Hurts Communities of Color - Center for American Progress ........ 4

National CASA Organization, *National CASA/GAL federal funding terminated* (April 23, 2025), https://nationalcasagal.org/national-casa-gal-federal-funding-terminated/ .................................................................................................................. 9

Newark Community Street Team, https://www.newarkcommunitystreetteam.org/about-us/ (last visited June 6, 2025) ..................................................................... 6

Newark Community Street Team, https://www.newarkcommunitystreetteam.org/ what-we-do/ (last visited June 6, 2025)....................................................................6

Office for Victims of Crimes, *Victims of Crime Act (VOCA) Administrators* (last visited June 6, 2025), https://ovc.ojp.gov/program/victims-crime-act-voca-administrators/welcome...............................................................................................12

Office of Justice Programs Funding Resource Center. https://www.ojp.gov/funding .....2

Office of the Illinois Attorney General, *Supporting Victims of Crime* (last visited June 6, 2025), https://www.illinoisattorneygeneral.gov/Safer-Communities/Supporting-Victims-of-Crime/Crime-Victim-Compensation/........................................................12

Overdose data dashboards - King County, Washington, https://kingcounty. gov/en/dept/dph/health-safety/safety-injury-prevention/overdose-prevention-response/data-dashboards/. ........................................................................................... 8

Prison Policy Initiative, Lucius Couloute, *Nowhere to Go: Homelessness among formerly incarcerated people.* (Aug. 2018), https://www.prisonpolicy.org/reports/housing.html ......................................................................................................................................10

Providence, *Providence Intervention Center for Assault and Abuse* (last visited June 6, 2025), https://www.providence.org/locations/wa/intervention-center-for-assault-and-abuse-everett ...............................................................................................................13

Rebecca Campbell, et al.. *The Effectiveness of Sexual Assault Nurse Examiner (SANE) Programs: A Review of Psychological, Medical, Legal, and Community Outcomes* (Oct. 6, 2005), https://pubmed.ncbi.nlm.nih.gov/16217119/ .....................................13

Sacha Kendall, et al., *Systematic review of qualitative evaluations of reentry programs addressing problematic drug use and mental health disorders amongst people transitioning from prison to communities* (Mar. 2, 2018), https://pubmed.ncbi.nlm.nih.gov/29500640/...............................................................10

Sage Journals, *Childhood Exposure to Family Violence, Residential Instability, and Parental Incarceration: Compounding Household Adversities and Adolescent Delinquency* (Oct. 7, 2024), https://journals.sagepub.com/doi/abs/10.1177/00224278241280903 .........................9

Sheyla A. Delgado, Laila Alsabahi, Kevin Wolff, Nicole Alexander, Patricia Cobar, and Jeffrey A. Butts, *Denormalizing Violence: A Series of Reports From the John Jay College Evaluation of Cure Violence Programs in New York City* (Oct. 2017), https://johnjayrec.nyc/wp-content/uploads/2017/10/CVinSoBronxEastNY.pdf.........4

Susan Elizabeth Littlefield, *A closer look at Brian O'Hara, Minneapolis' top candidate for police chief*, CBS News (Oct. 11, 2022), https://www.cbsnews.com/minnesota/ news/a-closer-look-at-brian-ohara-minneapolis-top-candidate-for-police-chief/. .......7

The PEW Charitable Trust, *More Imprisonment Does Not Reduce State Drug Problems* (Mar. 2018), https://www.pew.org/-/media/assets/2018/03/pspp_more_imprisonment _does_not_reduce_state_drug_problems.pdf ....................................................................8

The White House, *National Crime Victims' Rights Week,* 2025 (Apr. 9, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/national-crime-victims-rights-week-2025/. ..................................................................................................................3

Thomas S. Dee, Jaymes Pyne. *A community response approach to mental health and substance abuse crises reduced crime*. Sci. Adv. 8, eabm 2106 (June 8, 2022), https://www.science.org/doi/10.1126/sciadv.abm2106 ................................................7

Tracey Tully and Kevin Armstrong, *How a City Once Consumed by Civil Unrest Has Kept Protests Peaceful,* N.Y. Times (June 1, 2020), https://www.nytimes.com/2020/06/01/ nyregion/newark-peaceful-protests-george-floyd.html .................................................6

U.S. Department of Justice, Office of Justice Programs (last visited June 5, 2025), https://www.justice.gov/doj/office-justice-programs ....................................................2

U.S. Department of Justice, Office of Justice Programs, *Community Violence Intervention* (last visited June 6, 2025), https://www.ojp.gov/archive/topics/community-violence-intervention#ojp-support...........................................................................................................4

U.S. DOJ and U.S. HHS, *U.S. Department of Justice and U.S. Department of Health & Human Services, Guidance for Emergency Responses to People with Behavioral Health or Other Disabilities*, (May 2023), https://www.justice.gov/d9/2023-05/Sec.%2014%28a%29%20-%20DOJ%20and%20HHS%20Guidance%20on%20Emergency%20Responses%20to%20Individuals%20with%20Behavioral%20Health%20or%20Other%20Disabilities_FINAL.pdf?trk=public_post_main-feed-card-text....................................................7

U.S. DOJ Bureau of Justice Statistics, *Reentry Trends in the United States* (Apr. 2004), https://bjs.ojp.gov/content/pub/pdf/reentry.pdf .........................................................10

U.S. DOJ, *FY 23 Grant Awards – Expanding Victim Services* (Sept. 27, 2023), https://www.ojp.gov/funding/fy23awards/victim-services.........................................11

U.S. DOJ, *Investigation of Oklahoma and Oklahoma City, and Oklahoma City Police Department* (Jan 3, 2025), https://www.justice.gov/crt/media/1382351/dl .................7

U.S. DOJ, *Justice Department Awards More Than $340 Million to Address Substance Use Disorders and Fight the Overdose Epidemic* (Oct. 14, 2022), https://www.justice.gov/archives/opa/pr/justice-department-awards-more-340-million-address-substance-use-disorders-and-fight-overdose ......................................8

Washington Attorney General's Office, *Final Report, Sexual Assault Coordinated Community Response Task Force* at 12 (Dec. 2022) ("Task Force Report"), https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/SACCR%20Report%202022.pdf .........13

Washington Center for Nursing, *Become a Sexual Assault Nurse Examiner (SANE)*(last visited June 6, 2025), https://www.wcnursing.org/become-a-sexual-assault-nurse-examiner-sane/........................................................................................................13

Washington State Department of Commerce, *Crime Victims Advocacy* (last visited June 6, 2025), https://www.commerce.wa.gov/ocva/ .........................................................12

## **OJP Grants**

15PBJA-21-GG-03207-HATE ........................................................................ 11

15PBJA-21-GG-04549-COAP ........................................................................ 9

15PBJA-21-GK-02977-HATE ........................................................................ 6

15PBJA-21-GK-03941-RURA ........................................................................ 5

15PBJA-22-GG-04659-MUMU ........................................................................ 6

15PBJA-22-GG-04723-CVIP ........................................................................ 6

15PBJA-23-GK-05460-SCAX ........................................................................ 10

15PBJA-23-GK-05504-MUMU ........................................................................ 10

15PBJA-23-GK-06156-COAP ........................................................................ 9

15PBJA-24-GG-02837-ADVA ........................................................................ 11

15PBJA-24-GG-03084-MUMU ........................................................................ 6

15PBJA-24-GG-04488-COAP ........................................................................ 9

15PNIJ-23-GG-05494-RESS ........................................................................ 7

15POVC-22-GK-03590-SAFE ........................................................................ 12

15POVC-23-GK-02220-NONF ........................................................................ 12

## I.    INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

Building effective public safety systems requires engaging the people who experience crime and violence firsthand. Yet, two months ago, without warning and effective immediately, the Justice Department's Office of Justice Programs (OJP) cancelled hundreds of millions of dollars in funding to community advocates, researchers, local governments, and law enforcement for programs that fill crucial gaps in the public social safety net.

The magnitude of the cuts cannot be overstated. OJP has gutted programs that complement traditional law enforcement efforts, provide services that state and local governments are ill equipped or unable to provide, and support victims as they recover from the worst days of their lives.

For that reason, the States of Washington, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, and Rhode Island (Amici States) respectfully submit this brief as *amici curiae* in support of Plaintiffs' Motion for Preliminary Injunction (Dkt. 3) to emphasize the need for the critical and life-saving services that Plaintiffs provide. *See* LCvR 7(o)(1) (permitting a state to file an amicus curiae brief without the consent of the parties or leave of Court).

Our judgment comes from our experience coordinating public safety efforts across our states. We enforce gun control laws and support local law enforcement to address drug use and trafficking. We manage programs to care for victims and survivors of violence. We supervise efforts to identify and eliminate hate crime. We collect and track public safety data to help law enforcement develop strategies for crime prevention. And we partner with Tribes to raise

awareness about missing and murdered Indigenous women and people, including investigating cold cases to locate offenders and hold them accountable.

For decades, OJP's grant program has reflected the understanding that local communities must be empowered to set public safety priorities and build solutions. President Reagan signed the Justice Assistance Act of 1984, establishing OJP, to provide "federal leadership, funding, training and technical assistance, research and statistics, and other critical resources to advance public safety, strengthen criminal and juvenile justice systems, and support crime victims."[1] Since that time, OJP has made innovative public safety programs possible and sustainable and has aided local communities in developing effective strategies to prevent and combat violence head on.[2]

As Plaintiffs explain, federal law does not permit OJP to unilaterally cancel millions of dollars in funding that Congress has already appropriated. *See* Dkt. 3-1, generally. The Justice Department's only explanation is that the cancelled grants somehow impeded its efforts to "more directly support[] certain law enforcement operations, combat[] violent crime, protect[] American children, and support[] American victims of trafficking and sexual assault, and better coordinat[e] law enforcement efforts at all levels of government." Dkt. 1, ¶ 44. That is plainly wrong and directly contradicted by the nature of the essential services previously supported by

---

[1] U.S. Department of Justice, Office of Justice Programs (last visited June 5, 2025), https://www.justice.gov/doj/office-justice-programs.

[2] Office of Justice Programs Funding Resource Center (last visited June 6, 2025), https://www.ojp.gov/funding.

the grants. The Department's justification also stands in contrast to statements of this Administration purporting to prioritize public safety and care for victims.[3]

Defunding programs that police, prosecutors, mental health providers, researchers, victims, and community advocates rely upon does not make Americans safer. And as described below, OJP's abrupt cancellation of these programs has interfered with the states' own public safety efforts. We respectfully urge the Court to grant Plaintiffs' Motion for Preliminary Injunction and find that the Administration's *en masse* grant terminations are unlawful.

## II.    ARGUMENT

### A.    OJP's Arbitrary Cuts to Community Organizations Obstruct the States' Ability to Supervise Public Safety Efforts and Prevent Crime State-Wide

Amici States occupy a unique position in the public safety landscape, as we are responsible for overseeing our states' overall approach to crime and violence prevention. We ensure that state law is enforced consistently across the state, and we engage with local law enforcement agencies, advocates and organizations, and Tribes and local governments to understand community needs. But there are vital parts to a comprehensive public safety strategy that the states are just not equipped to address. For that reason, we rely on collaboration with an array of community and agency partners.

OJP's funding cuts impair public safety in our states by threatening programs aimed at violence reduction and prevention. Gun violence affects all our states, and in many incidents, warning signs are present that specific individuals are at risk of harming themselves or others.[4]

---

[3] The White House, *National Crime Victims' Rights Week,* 2025 (Apr. 9, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/national-crime-victims-rights-week-2025/.

[4] John Gramlich, Pew Research Center, *What the data says about gun deaths in the U.S.* (Mar. 5, 2025), What the data says about gun deaths in the US | Pew Research Center.

In certain communities, residents are disproportionately impacted by gun violence due to systemic disinvestment and discrimination.[5] Community-based violence intervention (CVI) focuses on strategies to "to prevent and disrupt cycles of violence and retaliation and establish relationships between individuals and community assets to deliver services that save lives, address trauma, provide opportunity and improve the physical, social and economic conditions that drive violence."[6] CVI work has been linked to reductions in gun injuries and shooting victimization.[7] In our experience, CVI programs work alongside traditional law enforcement, and law enforcement agencies rely on these programs. Officers recognize they may not be credible messengers to reach those at the highest risk for engaging in violence.

---

[5] *See* Johns Hopkins Center for Gun Violence Solutions, *A Year in Review: 2020 Gun Deaths in the U.S.* (Apr. 28, 2022), https://publichealth.jhu.edu/sites/default/files/2022-05/2020-gun-deaths-in-the-us-4-28-2022-b.pdf; Marissa Edmund, CAP, *Gun Violence Disproportionately and Overwhelmingly Hurts Communities of Color* (June 30, 2022), https://www.americanprogress.org/article/gun-violence-disproportionately-and-overwhelmingly-hurts-communities-of-color/.

[6] U.S. Department of Justice, Office of Justice Programs, *Community Violence Intervention* (last visited June 6, 2025), https://www.ojp.gov/archive/topics/community-violence-intervention#ojp-support; Bureau of Justice Assistance, *Community Based Violence Intervention and Prevention Initiative Implementation Checklist* (Apr. 2022), https://www.ojp.gov/sites/g/files/xyckuh241/files/media/document/cvi-implementation-checklist_0.pdf.

[7] Sheyla A. Delgado, Laila Alsabahi, Kevin Wolff, Nicole Alexander, Patricia Cobar, and Jeffrey A. Butts, *Denormalizing Violence: A Series of Reports From the John Jay College Evaluation of Cure Violence Programs in New York City* (Oct. 2017), https://johnjayrec.nyc/wp-content/uploads/2017/10/CVinSoBronxEastNY.pdf (finding that a CVI program in New York City serving primarily Black and Latino communities was linked to reductions in gun injuries and shooting victimizations as compared to the control areas); M.C. Ross, E.M. Ochoa, & A.V. Papachristos, *Evaluating the impact of a street outreach intervention on participant involvement in gun violence* (Nov. 6, 2023), https://www.pnas.org/doi/epub/10.1073/pnas.2300327120 (finding that participants in Chicago's Create Real Economic Destiny program were nearly 74% less likely to be arrested for a violent crime than untreated individuals in the comparison group).

Many of the terminated grants supported CVI efforts across the country. According to public reporting, OJP's overall cuts to funding for community safety and violence prevention programs amount to roughly $169 million.[8] In Washington State, the cuts have imperiled the work of the Center for Children and Youth Justice (CCYJ), which for nearly two decades has been central to Washington's efforts to protect youth who experience the child welfare and juvenile justice systems. For example, CCYJ works to address gun and gang violence in impacted communities by providing training and technical assistance to local organizations on implementing CVI strategies, including long-standing programs to prevent and reduce violence among youth in King County, Washington's most diverse and populous county. As a result of OJP's cuts, CCYJ has been forced to lay off staff and end important programming that could have supported dozens of young people. Dkt. 3-3, ¶¶ 15-18.

Some of the impacted programs directly benefit law enforcement. Law enforcement struggles to address violence and victimization in rural and Tribal communities, where communities struggle with lack of resources and specialized expertise. One of the cancelled grants supported training and technical assistance to at least ten local law enforcement agencies to help rural communities identify and respond to violence.[9] Another cancelled grant funded

---

[8] Council on Criminal Justice, *DOJ Funding Update: A Deeper Look at the Cuts* (May 2025), DOJ Funding Update: A Deeper Look at the Cuts - Council on Criminal Justice.
    [9] 15PBJA-21-GK-03941-RURA (OJP grants can be accessed at https://charts.ojp.usdoj.gov/t/public/views/OJPAwards DashboardallFiscalYears/AwardsBySolicitations?%3Aembed=y&%3Aiid=2&%3AisGuestRe directFromVizportal=y); *see also* DOJ Funding Update: A Deeper Look at the Cuts - Council on Criminal Justice at Appendix B, https://counciloncj.org/doj-funding-cuts-more-than-550-organizations-impacted-new-analysis-finds (identifying subgrantees).

training for law enforcement, prosecutors, and victim advocates on how to investigate and prosecute hate crimes in Arizona.[10]

      Other cuts have threatened programs intended to reduce reliance on law enforcement. For example, OJP cut $3 million in funding to the Newark Community Street Team despite its long track record of positive outcomes.[11] The Street Team was formed in 2014 to send outreach workers and high-risk interventionists to support crime survivors and mediate on-going disputes to help prevent violence and retaliation.[12] Notably, the Street Team was deployed to de-escalate violence during protests in 2020 over the murder of George Floyd. As widely reported, at protests where more than 12,000 people took to Newark's streets, police made no arrests and the city experienced minimal property damage, in large part due to the involvement of the Street Team.[13] The Street Team also provides victim services, and responds to overdoses, or to community-based violence incidents based on a referral from a community member or law enforcement. The goal is to restore peace and avoid arrest and incarceration.[14] As Newark's former Public Safety Director explained, "[t]hey come to the scene, often while

---

    [10] 15PBJA-24-GG-03084-MUMU.

    [11] 15PBJA-22-GG-04723-CVIP; 15PBJA-22-GG-04659-MUMU.

    [12] Newark Community Street Team, https://www.newarkcommunitystreetteam. org/about-us/ (last visited June 6, 2025).

    [13] Tracey Tully and Kevin Armstrong, *How a City Once Consumed by Civil Unrest Has Kept Protests Peaceful,* N.Y. Times (June 1, 2020), https://www.nytimes.com/2020/06/01/ nyregion/newark-peaceful-protests-george-floyd.html.

    [14] Newark Community Street Team, https://www.newarkcommunitystreetteam.org/ what-we-do/ (last visited June 6, 2025).

we're still there, to try and cool things down. They have folks that have credibility in the community."[15]

OJP also cut funding for much needed research to assess the effectiveness of alternative response programs for people experiencing behavioral health crises.[16] When a person calls 911 for help with a behavioral health issue, most jurisdictions default to sending police as the sole responders. These calls for assistance often consume officer time and would be more effectively resolved with a response by behavioral health professionals who can provide appropriate treatment.[17] Researchers have found that sending alternative responders to handle behavioral health issues can reduce reports of crime.[18] By evaluating implementation barriers and measuring outcomes, more research could inform the development and improvement of alternative response programs nationwide. Instead, OJP eliminated it.

---

[15] Susan Elizabeth Littlefield, *A closer look at Brian O'Hara, Minneapolis' top candidate for police chief*, CBS News (Oct. 11, 2022), https://www.cbsnews.com/minnesota/news/a-closer-look-at-brian-ohara-minneapolis-top-candidate-for-police-chief/.

[16] 15PNIJ-23-GG-05494-RESS.

[17] *See, e.g.*, U.S. DOJ and U.S. HHS, *U.S. Department of Justice and U.S. Department of Health & Human Services, Guidance for Emergency Responses to People with Behavioral Health or Other Disabilities*, (May 2023), https://www.justice.gov/d9/2023-05/Sec.%2014%28a%29%20-%20DOJ%20and%20HHS%20Guidance%20on%20Emergency%20Responses%20to%20Individuals%20with%20Behavioral%20Health%20or%20Other%20Disabilities_FINAL.pdf?trk=public_post_main-feed-card-text; *see also* U.S. DOJ, *Investigation of Oklahoma and Oklahoma City, and Oklahoma City Police Department* (Jan 3, 2025), https://www.justice.gov/crt/media/1382351/dl.

[18] Thomas S. Dee, Jaymes Pyne. *A community response approach to mental health and substance abuse crises reduced crime*. Sci. Adv. 8, eabm 2106 (June 8, 2022), https://www.science.org/doi/10.1126/sciadv.abm2106 (sending targeted emergency calls to health care responders instead of police in Denver resulted in 34% reduction in reports of targeted crimes, including trespassing and public disorder).

**B.    OJP's Arbitrary Cuts Limit the States' Ability to Address the Root Causes of Crime**

OJP's cuts do more than inhibit Amici States from mounting a comprehensive response to crime. The cuts impede the states' overall efforts to address and eliminate root causes of violence. Doing so requires addressing issues outside of the criminal justice system, such as workforce development, healthcare and social services, and education and housing. The crisis of opioid abuse is a top public safety concern across our states. Opioid overdose deaths have destroyed families and communities, and distribution and use are increasingly a catalyst for other crimes.[19] In Washington state, fentanyl overdoses have killed more people than any other drug in the last 30 years.[20] Yet, a law enforcement-only response has proven insufficient to address this public health crisis.[21] In the past, OJP funding has supported specialized training and technical assistance and helped communities develop health-focused opioid programs to help break cycles of addiction.[22] Now, OJP has made broad cuts to grants supporting harm reduction and diversion. For example, OJP cancelled funding to New Jersey to implement "Law Enforcement Assisted Diversion" programs to connect people struggling with substance

---

[19] *See* Brookings, *The opioid crisis and community level spillovers onto children's education* (Apr. 13, 2020), https://www.brookings.edu/articles/the-opioid-crisis-and-community-level-spillovers-onto-childrens-education/ (communities with opioid crises often see worse educational outcomes for children); Joel Wallman, et al., *The Opioid Epidemic and Homicide* (May 2023), https://www.hfg.org/wp-content/uploads/2023/05/Opioids_HFG-Brief.pdf (opioid epidemic is often associated with increased homicides).

[20] Overdose data dashboards - King County, Washington, https://kingcounty.gov/en/dept/dph/health-safety/safety-injury-prevention/overdose-prevention-response/data-dashboards/.

[21] The PEW Charitable Trust, *More Imprisonment Does Not Reduce State Drug Problems* (Mar. 2018), https://www.pew.org/-/media/assets/2018/03/pspp_more_imprisonment_does_not_reduce_state_drug_problems.pdf.

[22] U.S. DOJ, *Justice Department Awards More Than $340 Million to Address Substance Use Disorders and Fight the Overdose Epidemic* (Oct. 14, 2022), https://www.justice.gov/archives/opa/pr/justice-department-awards-more-340-million-address-substance-use-disorders-and-fight-overdose.

use issues to non-coercive, public health-focused treatment.[23] OJP also cut funding to establish an Overdose Fatality Review program in San Francisco to better understand service gaps and identify opportunities for overdose intervention.[24] Another cancelled grant would have enhanced a program in the Bronx to assist people with drug dependency. Importantly, the program was structured to partner with all New York City Police Department precincts in the Bronx to connect people to harm reduction services.[25]

Protecting kids from violence during their childhood is a key interest of the states. Instability during childhood has been linked to later juvenile delinquency, and programs that stabilize and support vulnerable kids can make a difference in setting the trajectory of their lives.[26] OJP revoked approximately $137 million in funding to programs designed to protect and support children, including kids in foster care and those at risk of abuse and neglect.[27] In Washington, for example, $48 million in funding cuts meant that the National CASA/GAL, an organization that supports court-appointed special advocates (CASAs) and Guardians ad Litems (GALs), had to suspend all services and support.[28]

Ninety-five percent of people incarcerated in state and federal prisons will return to society one day, and research published by the Justice Department shows that re-entry efforts

---

[23] 15PBJA-21-GG-04549-COAP.
[24] 15PBJA-24-GG-04488-COAP.
[25] 15PBJA-23-GK-06156-COAP.
[26] Sage Journals, *Childhood Exposure to Family Violence, Residential Instability, and Parental Incarceration: Compounding Household Adversities and Adolescent Delinquency* (Oct. 7, 2024), https://journals.sagepub.com/doi/abs/10.1177/00224278241280903.
[27] Council on Criminal Justice, *DOJ Funding Update: A Deeper Look at the Cuts* May 2025), https://counciloncj.org/doj-funding-update-a-deeper-look-at-the-cuts/.
[28] National CASA Organization, *National CASA/GAL federal funding terminated* (Apr. 23, 2025), https://nationalcasagal.org/national-casa-gal-federal-funding-terminated/.

reduce recidivism.[29] During her confirmation hearing, Attorney General Bondi agreed that reentry efforts are vital – "[W]e must do everything we can when people are in prison to rehabilitate them for when they get out."[30] Still, OJP cancelled grants awarded under the Second Chance Act, to support reentry programs in Washington, California, New Jersey, New York, Wisconsin, Maine, Maryland, and more.[31] Formerly incarcerated people are much more likely to experience homelessness than the general public, and addressing barriers to housing for reentry is essential for their stability.[32] One of the cancelled grants would have funded training and technical assistance to community-based organizations and faith-based organizations across the country. The program was designed to prioritize access to safe housing without pre-conditions and support returning citizens in improving their health, reducing harmful behaviors, and gaining employment.[33]

---

[29] U.S. DOJ Bureau of Justice Statistics, *Reentry Trends in the United States* (Apr. 2004), https://bjs.ojp.gov/content/pub/pdf/reentry.pdf.

[30] Addiction Policy Forum, *Attorney General Pam Bondi's Comments on Addiction and Reentry Services during Senate Confirmation Hearing* (Feb. 6, 2025), https://www.addictionpolicy.org/post/attorney-general-pam-bondi-s-comments-on-addiction-and-reentry-services-during-senate-confirmation-h.

[31] *See* 15PBJA-23-GK-05460-SCAX and 15PBJA-23-GK-05504-MUMU; *see also* DOJ Funding Update: A Deeper Look at the Cuts - Council on Criminal Justice, at Appendix B, https://counciloncj.org/doj-funding-cuts-more-than-550-organizations-impacted-new-analysis-finds (identifying subgrantees).

[32] Prison Policy Initiative, Lucius Couloute, *Nowhere to Go: Homelessness among formerly incarcerated people.* (Aug. 2018), https://www.prisonpolicy.org/reports/housing.html; Sacha Kendall, et al., *Systematic review of qualitative evaluations of reentry programs addressing problematic drug use and mental health disorders amongst people transitioning from prison to communities* 1-11 (Mar. 2, 2018), https://pubmed.ncbi.nlm.nih.gov/29500640/ (access to services, particularly housing and employment, are the most crucial ways to avoid reincarceration and avoid future substance abuse issues).

[33] 15PBJA-23-GK-05460-SCAX.

**C.     OJP's Arbitrary Cuts Affect the States' Ability to Care for Victims of Violent Crime and Hold Offenders Accountable**

Community well-being and safety improves when crime victims are supported and their needs are met. Our states encourage the use of every tool and resource available to care for crime victims and reduce the long-term impact of crime. For example, we have taken steps to make it easier to report hate crimes. We advise local and state agencies of practices, policies, and priorities that impact crime victims. We advocate for victims, administer grants to community programs that support victims, and pay out victim compensation.

But victims require a continuum of support and services to heal. The need is much greater than the states can provide. In the past, OJP has provided a wealth of resources, information, and technical assistance to better assist and restore crime victims.[34] This, in turn, has meaningfully supplemented the work that the states can do.

By defunding programs that support victims of crime, OJP has threatened to cut off access to essential support services. Another cancelled grant funded training to police officers in Montclair, New Jersey, on hate crimes reporting and investigation, and how to collaborate with community groups to raise awareness about bias crimes.[35] OJP also cut funding to a senior center in Los Angeles to address the increasing concern of hate crimes targeting older adults, exacerbated by the Covid-19 pandemic.[36] And even though a fraction of Asian Americans and Pacific Islanders (AAPI) crime victims actually report crime to law

---

[34] *See, e.g.*, U.S. DOJ, *FY 23 Grant Awards – Expanding Victim Services* (Sept. 27, 2023), https://www.ojp.gov/funding/fy23awards/victim-services.

[35] 15PBJA-21-GG-03207-HATE.

[36] 15PBJA-24-GG-02837-ADVA.

enforcement, OJP cancelled millions in funding to the country's largest reporting center tracking anti-AAPI hate acts. *See generally* Dkt. 3-4.

The grants terminated by OJP also funded vital services to survivors of sexual assault. For example, our states' victim assistance programs benefit from federal funding under the Victims of Crime Act (VOCA).[37] But OJP cancelled funding to sustain the work of the Center for Victims of Crime Act Administrators (VOCA Center) to provide expert training and technical assistance to state agencies responsible for administering VOCA grants.[38] Illinois directly benefited from VOCA Center technical assistance to address escalating violence in the City of Chicago in 2024. The technical assistance helped the state to serve victims, providing resources only available through the state.[39] The state was just beginning to work with the VOCA Center on initiatives to foster community connection and violence prevention when the VOCA Center funding was abruptly shut off.

In Washington State, OJP eliminated funding to support the Providence Intervention Center for Assault and Abuse in Everett, Washington.[40] Providence was designated by the International Association of Forensic Nurses as a Center for Excellence to provide hands-on

---

[37] Office for Victims of Crimes, *Victims of Crime Act (VOCA) Administrators* (last visited June 6, 2025), https://ovc.ojp.gov/program/victims-crime-act-voca-administrators/welcome; *see also* Washington State Department of Commerce, *Crime Victims Advocacy* (last visited June 6, 2025), https://www.commerce.wa.gov/ocva/.

[38] 15POVC-23-GK-02220-NONF.

[39] *See* Office of the Illinois Attorney General, *Supporting Victims of Crime* (last visited June 6, 2025), https://www.illinoisattorneygeneral.gov/Safer-Communities/Supporting-Victims-of-Crime/Crime-Victim-Compensation/.

[40] Providence Health was a subgrantee of a grant awarded to the International Association of Forensic Nurses, 15POVC-22-GK-03590-SAFE.

training to Sexual Assault Nurse Examiners, or SANEs.[41] This critical training equips nurses across the country to provide medical care to victims of sexual and physical violence and collect evidence for law enforcement. Research shows that connection with SANEs can improve the outcomes for sexual assault survivors and result in higher prosecution rates.[42] Hospitals are facing a shortage of trained nurses nationwide, particularly in rural communities.[43] Washington State is no exception. The first two nurses to participate in the program were set to start in early May when funding was ended. Terminating funding for Providence's training program promises a continued shortage of forensic nurses in Washington and beyond. This limits our states' ability to care for victims of sexual violence and decreases the ability of the legal system to investigate and prosecute sex offenders and human traffickers. Apparently, in the Justice Department's current view, such work "no longer effectuates" Department priorities.[44]

---

[41] *See* Providence, *Providence Intervention Center for Assault and Abuse* (last visited June 6, 2025), https://www.providence.org/locations/wa/intervention-center-for-assault-and-abuse-everett.

[42] Rebecca Campbell, et al. *The Effectiveness of Sexual Assault Nurse Examiner (SANE) Programs: A Review of Psychological, Medical, Legal, and Community Outcomes* (Oct. 6, 2005), https://pubmed.ncbi.nlm.nih.gov/16217119/ (finding that survivors treated by the SANE program were much more likely to experience less assault related anxiety, to feel respected, believed, and supported, and to feel listened to by their nurses).

[43] *See* Washington Attorney General's Office, *Final Report, Sexual Assault Coordinated Community Response Task Force* at 12 (Dec. 2022) ("Task Force Report"), https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/SACCR%20Report%202022.pdf; *see also* Washington Center for Nursing, *Become a Sexual Assault Nurse Examiner (SANE)*(last visited June 6, 2025), https://www.wcnursing.org/become-a-sexual-assault-nurse-examiner-sane/.

[44] 2 C.F.R. § 200.340(a)(4).

### III.    CONCLUSION

Amici states urge the Court to grant Plaintiffs' motion for a preliminary injunction. We write separately to explain how the sudden and unexpected termination of millions in OJP grant funding has already had an irreparable impact, both on Plaintiff organizations and Amici States. Starving public safety organizations of funding does not make people safer. Programs that people rely upon have been suspended or cancelled, essential staff have lost their jobs, training has been shut down, and vulnerable communities have been left without access to vital services. Amici States benefit significantly from Plaintiffs' programs and services. We view them as essential partners who provide services that we just cannot provide. For these reasons, together with the substantial reasons set forth in Plaintiffs' Motion for Preliminary Injunction, we urge the Court to immediately restore the terminated grants.

DATED this 6th day of June 2025.

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*


*s/ Maureen Johnston*
MAUREEN JOHNSTON, WSBA #50037
*First Assistant Attorney General*
KELSEY E. ENDRES, WSBA #39409
*Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744
maureen.johnston@atg.wa.gov
kelsey.endres@atg.wa.gov


**List of Additional Amici States Below**

**ARIZONA**

KRIS MAYES
Attorney General
State of Arizona
2005 N. Central Ave Phoenix, AZ 85004

**CALIFORNIA**

ROB BONTA
Attorney General
State of California
1300 I Street
Sacramento, CA 95814

**COLORADO**

PHILIP J. WEISER
Attorney General
State of Colorado
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

**CONNECTICUT**

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

**DELAWARE**

KATHLEEN JENNINGS
Attorney General
State of Delaware
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

**DISTRICT OF COLUMBIA**

BRIAN L. SCHWALB
Attorney General
District of Columbia
400 6th Street, NW
Washington, D.C. 20001

**ILLINOIS**

KWAME RAOUL

Attorney General
State of Illinois
115 South LaSalle Street
Chicago, IL 60603

**MAINE**

AARON M. FREY
Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006

**MARYLAND**

ANTHONY G. BROWN
Attorney General
State of Maryland
200 Saint Paul Place
Baltimore, MD 21202

**MICHIGAN**

DANA NESSEL
Attorney General
State of Michigan
P.O. Box 30212
Lansing, Michigan 48909

**MINNESOTA**

KEITH ELLISON
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

**NEVADA**

AARON D. FORD
Attorney General
State of Nevada
100 North Carson Street
Carson City, NV 89701

**NEW JERSEY**

MATTHEW J. PLATKIN
Attorney General
State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

**NEW YORK**

LETITIA JAMES
Attorney General
State of New York
The Capitol
Albany, NY 12224

**NORTH CAROLINA**

Jeff Jackson
Attorney General
North Carolina
114 W. Edenton St.
Raleigh, NC 27603

**OREGON**

Dan Rayfield
Attorney General
State of Oregon
1162 Court Street NE
Salem, OR 97301

**RHODE ISLAND**

PETER F. NERONHA
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903