UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERA INSTITUTE OF JUSTICE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-CV-01643-APM |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

i

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.   The Court Lacks Jurisdiction to Consider Class Certification ............................................ 5

II.  The Court Should Resolve Defendants' Motion to Dismiss Before Addressing Class Certification .................................................................................................................... 5

III. Plaintiffs Fail to Satisfy the Requirements for Class Certification ..................................... 7

    A.   Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements ................................................................................................................ 7

    B.   Plaintiffs Also Fail to Satisfy Rule 23(b) ............................................................... 10

CONCLUSION ....................................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
   -- F. Supp. 3d --, 2025 WL 752378 (D.D.C. Mar. 10, 2025).................................................. 11

*Berriochoa Lopez v. United States*,
   309 F. Supp. 2d 22 (D.D.C. 2004) ............................................................................................ 6

*Black Lives Matter D.C. v. United States*,
   -- F. Supp. 3d --, 2025 WL 823903 (D.D.C. Mar. 14, 2025) ................................................... 6

*Bynum v. District of Columbia*,
   214 F.R.D. 27 (D.D.C. 2003) ................................................................................................. 10

*C.G.B. v. Wolf*,
   464 F. Supp. 3d 174 (D.D.C. 2020) ....................................................................................... 11

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022). .............................................................................................. 5

*Curtin v. United Airlines, Inc.*,
   275 F.3d 88 (D.C. Cir. 2001) ................................................................................................... 6

*Daskalea v. Wash. Humane Soc'y*,
   275 F.R.D. 346 (D.D.C. 2011) .......................................................................................... 3, 12

*Dep't of Educ. v. California*,
   145 S. Ct. 966 (2025) ............................................................................................................ 11

*DL v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ............................................................................................... 10

*Garcia v. Johanns*,
   444 F.3d 625 (D.C. Cir. 2006) ............................................................................................ 4, 7

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................................ 4, 7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) .............................................................................................................. 11

*Harris v. Med. Transp. Mgmt., Inc.*,
   77 F.4th 746 (D.C. Cir. 2023) ............................................................................................. 3, 4

*Hyman v. First Union Corp.*,
   982 F. Supp. 8 (D.D.C. 1997) ................................................................................................ 5

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) ............................................................................................ 4

*Lewis v. U.S. Parole Comm'n*,
   743 F. Supp. 3d 181 (D.D.C. 2024) ................................................................................. 4, 5

*Lightfoot v. District of Columbia*,
   273 F.R.D. 314 (D.D.C. 2011) ......................................................................................... 8, 10

*Love v. Johanns*,
   439 F.3d 723 (D.C. Cir. 2006) ............................................................................................. 8

*Menominee Indian Tribe of Wisc. v. United States*,
   614 F.3d 519, 526 (D.C. Cir. 2010) .................................................................................... 9

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) .............................................................................. 5, 6, 7

*Ross v. Lockheed Martin Corp.*,
   No. 16-cv-2508, 2020 WL 4192566 (D.D.C. July 21, 2020) ............................................. 11

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................... 5

*Steele v. United States*,
   200 F. Supp. 3d 217 (D.D.C. 2016) ..................................................................................... 5

*Taylor v. Fed. Aviation Admin.*,
   No. 18-cv-35, 2018 WL 1967127 (D.D.C. Feb. 8, 2018) .................................................... 6

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
   -- F. Supp. 3d --, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ............................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... *passim*

**STATUTES**

5 U.S.C. § 706(2) ...................................................................................................................... 11

**REGULATIONS**

2 C.F.R. § 200.340(a)(4) ..................................................................................................... *passim*

**RULES**

D.D.C. Local Rule 23.1(b) ............................................................................................................ 6

Fed. R. Civ. P. 23 ............................................................................................................... 3, 4, 5, 7

**INTRODUCTION**

The Office of Justice Programs ("OJP"), a component of the Department of Justice ("DOJ"), administers thousands of competitive grant agreements with state and local law enforcement agencies and various non-government entities. The appropriations statutes that fund OJP's grants broadly prescribe the purposes and initiatives that the grants must support, but OJP otherwise has broad discretion to decide, based on Department priorities, what programs to fund, to whom grants should be awarded, and what form those grants should take. In April 2025, OJP elected to terminate 376 active grant awards—a tiny fraction of the agency's outstanding grants—based on DOJ's determination that those particular awards "no longer effectuate[d]" the Department's "priorities." 2 C.F.R. § 200.340(a)(4). And those termination decisions were the end product of a multi-month, individualized review process, during which DOJ assessed whether OJP's grant awards continued to effectuate the Department's various priorities with respect to discretionary funding.

On May 21, 2025, the plaintiffs in this case—a group of five non-profit organizations who collectively had twelve OJP grant awards terminated among them—filed this lawsuit, in which they challenge the termination of their respective grant agreements under the Administrative Procedure Act and on constitutional grounds. Not content to limit their claims to the terminations of their grant awards alone, however, Plaintiffs also seek to represent a class of hundreds of other entities whose OJP grants awards were terminated in April 2025 on the basis that those grants no longer effectuated DOJ priorities. *See* Dkt. 2-2 at 1.

Plaintiffs' motion to certify such a class should be denied for several reasons. As a threshold matter, because the Court lacks jurisdiction to grant the contract-based relief Plaintiffs demand, it likewise lacks jurisdiction to address class certification. Even if the Court were to conclude otherwise, it should resolve Defendants' motion to dismiss before addressing class certification, as doing the former will likely narrow the inquiry into the latter, and may even moot the class certification issue entirely. And the individualized, fact-dependent nature of the multiple

termination decisions Plaintiffs challenge means that Plaintiffs fail, in any event, to satisfy all of the requirements for class certification.

## BACKGROUND

The background for this case is set forth in Defendants' Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants' Brief"), which Defendants incorporate by reference here.

As relevant to the class certification issue, in February 2025, DOJ leadership, in conjunction with OJP, began a careful review of its discretionary grant programs to determine, consistent with OJP's regulatory authority, whether the programs advance current DOJ priorities. *See* Decl. of Maureen A. Henneberg ¶ 18.[1] Those priorities, as articulated by DOJ leadership over the course of the review, included directly supporting certain law enforcement operations, combatting violent crime, protecting American children, supporting American victims of trafficking and sexual assault, and enhancing coordination among law enforcement at all levels of government. *Id.* At the time this review commenced, there were more than 11,000 open OJP grant awards. *Id.*

The grant review process consisted of individualized consideration of whether a particular open grant award, based on the grant's project description, effectuated DOJ's current priorities. *Id.* Within a few weeks of the start of this individualized review process, the number of awards under active focus by DOJ leadership had dropped to approximately 2,200. *Id.* In April 2025, OJP was directed to terminate 376 active discretionary grants awards (which had been awarded to 219 recipients) based on DOJ's determination that those specific grants "no longer effectuate[d] Department priorities." *Id.* ¶ 19; *see* 2 C.F.R. § 200.340(a)(4). OJP subsequently terminated those grant awards and sent a notice of termination to each affected recipient between April 4 and 22. Henneberg Decl. ¶ 19. Each notice explained that the award in question was being terminated pursuant to 2 C.F.R. § 200.340(a)(4) because the award "no longer effectuate[d] the program goals

---

[1] The Henneberg Declaration is attached as an exhibit to Defendants' Brief.

2

or agency priorities." *Id.* ¶ 20. Each notice further explained that DOJ "ha[d] changed its priorities with respect to discretionary grant funding to focus on, among other things, more directly supporting certain law enforcement operations, combatting violent crime, protecting American children, . . . supporting American victims of trafficking and sexual assault, and better coordinating law enforcement efforts at all levels of government." *Id.*

Each recipient of a termination notice was given 30 calendar days to file an administrative appeal of their respective terminations stating, among other things, the argument that formed the basis of the appeal and "any disputed factual, legal or other issues." *Id.* ¶ 22. An opportunity to request a waiver of the appeal deadline was also afforded. *Id.* None of the named Plaintiffs filed an administrative appeal, nor did any of them seek a waiver of the appeal deadline. *Id.* ¶ 23. In contrast, 139 other award recipients filed timely administrative appeals relating to the terminations of 225 individual awards. *Id.* ¶ 24. Those appeals are under consideration within DOJ on a rolling basis. *See id.* ¶ 25.

On May 21, 2025, Plaintiffs file a complaint challenging the termination of their respective grant agreements and moved for a preliminary injunction the next day. Dkt. 1. Plaintiffs also filed a motion for class certification, in which they ask the Court to certify a class consisting of "[a]ll entities in the United States issued awards by [OJP], whose grants or cooperative agreements DOJ terminated in April 2025 pursuant to 2 C.F.R. § 200.340(a)(4)."

## LEGAL STANDARD

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. "Rule 23(a) sets out the threshold criteria for eligibility as a class action," which are that (1) "the proposed class be 'so numerous that joinder of all members is impracticable'"; (2) "class members' claims share common questions of law or fact"; (3) "the claims or defenses of the named representative parties be typical of all class members"; and (4) "the representative parties be capable of providing adequate representation to the whole class." *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 752 (D.C. Cir. 2023) (quoting Fed. R. Civ. P. 23(a)). "These four requirements are commonly referred to in shorthand as numerosity, commonality, typicality, and adequacy of

3

representation, respectively." *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 355 (D.D.C. 2011). In addition to meeting Rule 23(a)'s prerequisites, a proposed class must also qualify as one of the three "types of class actions" that are "specified" in Rule 23(b). *Harris*, 77 F.4th at 752. Here, Plaintiffs have moved to certify their proposed class under Rule 23(b)(2), which requires them to demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs alternatively seek certification under Rule 23(b)(1)(A), which applies "when there are multiple claims arising out of the same subject matter and the prosecution of separation actions by or against individual class members 'would create a risk of' either 'inconsistent or varying' judgments establishing 'incompatible standards of conduct' for the party opposing the class." *Harris*, 77 F.4th at 752 (quoting Fed. R. Civ. P. 23(b)(1)).

"[T]he party seeking certification bears the burden of showing compliance with Rule 23." *J.D. v. Azar*, 925 F.3d 1291, 1316 (D.C. Cir. 2019). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather "[a] party seeking class certification must affirmatively demonstrate [its] compliance with" the Rule's multiple requirements. *Id.* A court must in turn "conduct a 'rigorous analysis'" to ensure that those requirements have been met, which "will entail some overlap with the merits of the plaintiff's underlying claim[s]." *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 (D.D.C. 2024) (quoting *Wal-Mart*, 564 U.S. at 351); *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"). And a plaintiff's "[f]ailure to adequately demonstrate" any one of Rule 23's requirements "is fatal to class certification." *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).

**ARGUMENT**

The Court should deny Plaintiffs' motion for class certification. For the reasons explained in Defendants' Brief, the Court lacks subject matter jurisdiction over Plaintiffs' claims, which

4

necessarily precludes its consideration of the propriety of class certification. Even if the Court were to conclude that is does have jurisdiction, it should nevertheless resolve Defendants' motion to dismiss before addressing the issue of class certification (if doing so remains necessary). And Plaintiffs fail in any event to satisfy all of the prerequisites for class certification.

## I. The Court Lacks Jurisdiction to Consider Class Certification

As a threshold matter, the Court can only reach the issue of class certification if it has jurisdiction over Plaintiffs' underlying claims. *See Steele v. United States*, 200 F. Supp. 3d 217, 222 (D.D.C. 2016) (noting that a court "cannot certify a class before making a finding that it has subject matter jurisdiction"); *Lewis*, 743 F. Supp. 3d at 201 (addressing a motion for class certification only after deciding that the Court "ha[d] jurisdiction to hear the case"). Yet as explained in Defendants' Brief, Plaintiffs' challenge to the termination of their respective grant agreements is premised on a contractual relationship with the government, implicates the government's exercise of express contractual rights, and seeks to compel the government to continue paying money under those now-terminated contracts. Plaintiffs' claims thus amount, "at [their] essence," to the very sort of contract-based claims for monetary relief against the federal government over which this court lacks jurisdiction. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (citation omitted). The Court should accordingly dismiss those claims without even considering Plaintiffs' motion for class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

## II. The Court Should Resolve Defendants' Motion to Dismiss Before Addressing Class Certification

Even if the Court were to determine that it has jurisdiction over Plaintiffs' claims, it should resolve Defendants' motion to dismiss before addressing the issue of class certification.

Although Rule 23 directs district courts to resolve motions for class certification "[a]t an early practicable time after a person sues . . . as a class representative," Fed. R. Civ. P. 23(c)(1)(A), the Rule nonetheless "grants district courts 'great discretion in determining the appropriate timing

5

for such a ruling.'" *O.A. v. Trump*, 404 F. Supp. 3d 109, 154 n.16 (D.D.C. 2019) (quoting *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997)). The Advisory Committee notes accompanying the Rule acknowledge that there are "many valid reasons that may justify deferring the initial certification decision." Fed. R. Civ. P. 23(c) advisory committee's note to 2003 amendment. And one such reason is the prospect of resolving a case through a dispositive motion, such that the issue of class certification need not be addressed at all. *See Taylor v. Fed. Aviation Admin.*, No. 18-cv-35, 2018 WL 1967127, at *1 (D.D.C. Feb. 8, 2018) (Mehta, J.) (concluding that "the wiser course" was to address the defendants' "forthcoming challenge to" the court's subject matter jurisdiction "rather than pushing forward with briefing on an issue" of class certification "that the court may never have to resolve"). Indeed, the D.C. Circuit has recognized that resolving a plaintiff's claims on the merits can "spare both the parties and the court a needless, time-consuming inquiry into certification." *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001) (concluding that a district court "does not abuse its discretion by resolving the merits before considering the question of class certification"); *see O.A.*, 404 F. Supp. 3d at 154 n.16 ("[D]istrict courts are not required to decide class certification issues before ruling on the merits"); *see also* D.D.C. Local Rule 23.1(b) (providing that a court "may order that a ruling" on a motion for class certification "be postponed pending discovery or other appropriate preliminary proceedings").

Here, Defendants have filed a motion to dismiss in conjunction with their opposition to Plaintiffs' motion for preliminary injunction. In their Brief, Defendants argue, among other things, that (1) the Court lacks jurisdiction over Plaintiffs' contract-based claims for monetary relief against the federal government, (2) Plaintiffs' APA claims fail for various threshold and substantive reasons, and (3) Plaintiffs' other claims likewise lack merit and should be dismissed. A ruling in Defendants' favor on these potentially dispositive issues would likely moot the class certification issue entirely. *See Curtin*, 275 F.3d at 92-93; *Berriochoa Lopez v. United States*, 309 F. Supp. 2d 22, 23 n.1 (D.D.C. 2004) ("The Court shall decide defendants' Motion to Dismiss without reaching the issue of class certification."). And even a partial grant of Defendants' motion to dismiss would narrow the claims that remain before the Court and, by extension, any subsequent inquiry into

6

whether those remaining claims satisfy the requirements for class certification. *See, e.g.*, *Black Lives Matter D.C. v. United States*, -- F. Supp. 3d --, 2025 WL 823903, at *13-*17 (D.D.C. Mar. 14, 2025) (certifying a class with respect to the plaintiffs' "speech restriction claims" but denying certification with respect to the plaintiffs' First Amendment retaliation claims for lack of commonality); *see also* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and *the class claims*, issues, or defenses . . . ." (emphasis added)). The interests of efficiency and judicial economy thus weigh in favor of the Court resolving Defendants' motion to dismiss before turning to class certification (assuming doing so remains necessary).

### III. Plaintiffs Fail to Satisfy the Requirements for Class Certification

Plaintiffs fail in any event to satisfy all of the prerequisites for class certification under Rule 23. *See Garcia*, 444 F.3d at 631 (noting that "[f]ailure to adequately demonstrate any" of Rule 23's requirements "is fatal to class certification"). They attempt to collectively challenge multiple discrete determinations by Defendants that certain grants "no longer effectuate[] . . . agency priorities," 2 C.F.R. § 200.340(a)(4), but assessing the lawfulness of those determinations would require an individualized, grant-by-grant analysis that defeats Rule 23(a)'s commonality and typicality requirements. Plaintiffs also fail to demonstrate that their proposed class qualifies as one of the types of class actions specified in Rule 23(b).[2]

### A. Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Rule 23(a)'s commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5. The two requirements thus "tend to merge" in many cases. *Falcon*,

---

[2] For purposes of Plaintiffs' present motion for class certification, Defendants do not challenge whether the proposed class satisfies the numerosity or adequacy of representation requirements. Nor do Defendants object to the designation of Plaintiffs' counsel as class counsel, in the event the Court were to certify the class.

7

457 U.S. at 157 n.13; *see O.A.*, 404 F. Supp. 3d at 155 ("The second and third requirements, commonality and typicality, often overlap."). To meet these requirements, it is not enough to show that the complaint "raises common 'questions'" or that the putative class members "have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50. Rather, a party seeking class certification must "affirmatively demonstrate" that its claims "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (cleaned up). A class may accordingly be certified only if the plaintiffs and putative class members share claims that hinge on a "central" issue, the "truth or falsity" of which can be resolved "in one stroke." *Id.*

Plaintiffs fail to meet this standard here. They allege that a common course of conduct on Defendants' part—namely, the termination of certain grant awards on the basis that those grants "no longer effectuate[] . . . agency priorities," 2 C.F.R. § 200.340(a)(4)—affected "every [putative] class member" and that several "questions of law and fact" are "common" to the proposed class. Dkt. 2 at 8-9. But the common legal questions Plaintiffs purport to identify—*e.g.*, "[w]hether Defendants engaged in conduct that violated the APA," *id.* at 9—are too "overly generalized" to satisfy the commonality requirement. *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 325-26 (D.D.C. 2011) (rejecting the idea that certification is appropriate "wherever class members allege a harm with some connection to the Due Process Clause"); *see Love v. Johanns*, 439 F.3d 723, 729-30 (D.C. Cir. 2006) ("[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." (citation omitted)); *Wal-Mart*, 564, U.S. at 350 (explaining that the commonality requirement "does not mean merely that" the putative class members "have all suffered a violation of the same provision of law").

Plaintiffs likewise oversimplify the specific conduct that is legally relevant to their claims. In arguing that Defendants' termination of the putative class members' respective grants was unlawful, Plaintiffs focus on the fact that the putative class members all received "identical notices

8

of termination," Dkt. 2 at 9, containing what Plaintiffs call a "boilerplate explanation" of the basis for each respective termination, Dkt. 3-1 at 20. But those notices were merely the end product of a thorough and careful grant-by-grant review process, which resulted in Defendants terminating a tiny fraction of outstanding OJP grants that, as made clear in the termination notices, "no longer effectuate[d] . . . agency priorities," 2 C.F.R. § 200.340(a)(4); *see* Henneberg Decl. ¶¶ 18-20. And the individualized, fact-dependent nature of those multiple termination decisions render Plaintiffs' broad challenge to them unsuitable for resolution "in one stroke." *Wal-Mart*, 564 U.S. at 350.

For instance, deciding whether each of the individual grant termination decisions was arbitrary and capricious, as Plaintiffs claim, *see* Dkt. 3-1 at 18-22, may require assessing each putative class member's unique grant award (and the unique project that the grant was awarded to fund), how federal funds were spent to effectuate the particular purposes set out in the myriad statutes governing the appropriations from which grant funds are derived, how Defendants went about reviewing each particular grant award, and the various factors that were considered and weighed in deciding whether or not the specific award in question continued to effectuate agency priorities. And even assuming for the sake of argument that such a grant-by-grant assessment were to result in a few termination decisions being deemed inadequate, it is entirely possible (or even likely) that those decisions would be inadequate for different reasons unique to each particular grant under review. Moreover, some putative class members have decided to appeal their terminations though DOJ's administrative process, while others—including all of the named Plaintiffs—have not. (In fact, roughly 60 percent of the grant recipients that received termination notices filed administrative appeals.) The outcome of those appeal proceedings could materially impact claims by individual grant recipients in ways that may render it impossible to resolve every putative class member's claim in "one stroke." *Wal-Mart*, 564 U.S. at 350; *see Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 526 (D.C. Cir. 2010) (stating that the requirement that "[a] party generally must exhaust administrative remedies before seeking relief in federal court" applies to class actions).

9

Plaintiffs' "common contention" that *all* of the termination decisions involving the putative class members' grants were arbitrary and capricious or otherwise unlawful is thus unlikely to have a "common answer," which defeats in turn Plaintiffs' ability to meet Rule 23's commonality and typicality requirements. *Wal-Mart*, 564 U.S. at 350; *see Love*, 439 F.3d at 730 (finding no commonality where "the outcome of th[e] case would . . . turn on a series of individualized inquiries" into multiple decisions involving the denial of applications for farm loans).

### B. Plaintiffs Also Fail to Satisfy Rule 23(b)

Class certification is not warranted here for the separate reason that Plaintiffs fail to demonstrate that "their proposed class falls into one of the categories of class actions listed in Rule 23(b)." *DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017).

Plaintiffs principally assert that their proposed class can be certified under Rule 23(b)(2), which applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "impos[es] two requirements: (1) that [the] defendant's actions or refusal to act are 'generally applicable to the class,' and (2) that [the] plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum v. District of Columbia*, 214 F.R.D. 27, 37 (D.D.C. 2003). "The key to the (b)(2) class," moreover, "is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted). As explained above, however, assessing the lawfulness of the "conduct" that Plaintiffs challenge here—namely, Defendants' termination of the putative class members' respective grant awards—would require an individualized inquiry into the factual circumstances of each termination decision. And the possibility that the results of such a fact-bound, grant-by-grant review would warrant a "single injunction or declaratory judgment" applicable to "*all* of the [putative] class members" is slim to none. *Id.* (emphasis added); *cf. Lightfoot*, 273 F.R.D. at 329 ("[C]ertification is generally inappropriate [under Rule 23(b)(2)] in actions raising significant

10

individual liability or defense issues."). In *Wal-Mart Stores, Inc. v. Dukes,* for example, the Supreme Court held that the plaintiffs' Title VII claims were not suitable for certification under Rule 23(b)(2) because the success of each plaintiff's individual Title VII claim depended on the specific circumstances surrounding each respective employment action. 564 U.S. at 366. *Wal-Mart*'s reasoning with respect to the individualized nature of Title VII claims applies with equal force to Plaintiffs' individualized grant termination claims here.

Additionally, the relief Plaintiffs seek in this case would require the Court to reinstate the putative class members' terminated grants. *See* Dkt. 3-1 at 14 ("Defendants' grant terminations must be set aside under 5 U.S.C. § 706(2)."); Dkt. at 29-30 (asking the Court to "vacate" and "set aside Defendants' terminations of the putative class members' grants" and to enjoin Defendants "from enforcing, implementing, maintaining, or giving effect to the terminations of . . . [the] grants"). That is, Plaintiffs effectively ask the Court "to enforce" Defendants' "contractual obligation[s] to pay money" pursuant to the terms of the terminated grant agreements. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). But as Defendants make clear in their Brief, the Court lacks jurisdiction to grant that sort of contract-based relief. *Id.; see U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, -- F. Supp. 3d --, 2025 WL 763738, at *6 (D.D.C. Mar. 11, 2025) ("[T]he [plaintiff] asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts. That is something this Court lacks the power to do."); *cf. AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, -- F. Supp. 3d --, 2025 WL 752378, at *23 (D.D.C. Mar. 10, 2025) ("Plaintiffs' proposed relief is overbroad insofar as it would specifically order Defendants to continue to contract with them."). And Plaintiffs nowhere explain how declaratory relief alone, or any other relief short of a reinstatement of each putative class member's specific grant agreement, would meaningfully remedy the various irreparable harms that, according to Plaintiffs, flow directly from the "abrupt termination of" their "grant funding." Dkt. 3-1 at 7. The Court thus lacks the authority to award the very type of class-wide relief that is essential to maintaining a class action under Rule 23(b)(2). *Cf. C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206

11

(D.D.C. 2020) (noting that "[t]he Court's uncertainty" about its jurisdiction to issue the class-wide injunctive relief sought by the plaintiffs was "another reason to decline class certification"); *Ross v. Lockheed Martin Corp.*, No. 16-cv-2508, 2020 WL 4192566, at *8 (D.D.C. July 21, 2020) (declining to certify a Rule 23(b)(2) class in part because the district court lacked jurisdiction to grant prospective relief to class members who lacked standing, thus rendering "Rule 23(b)(2) indivisibility plainly implausible").

Finally, Plaintiffs argue that their proposed class can also be certified under Rule 23(b)(1)(A). Certification is appropriate under that provision if "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). But certification under Rule 23(b)(1)(A) "requires something more" than a "risk that the party opposing the class 'may be exposed to individual suits and conflicting judgments on liability.'" *Daskalea*, 275 F.R.D. at 3654 (citation omitted); *see id.* (noting that "there will always be" such a "risk" in the absence of class certification). Rule 23(b)(1)(A) certification is instead justified when "individual adjudications would be impossible or unworkable." *Wal-Mart*, 564 U.S. at 361.

That is not the case here. The factual circumstances surrounding each discrete decision to terminate a putative class member's grant award vary decision by decision and grant by grant. "[I]ndividual adjudications" of the lawfulness of each such decision would therefore not only be "[]workable," but also more sensible than the indiscriminate, class-wide relief Plaintiffs demand in this case. *Id.* And Plaintiffs otherwise fail to show the "something more" that is required for certification under Rule 23(b)(1)(A) beyond the usual risk of conflicting judgments that is present in any circumstance involving more than one allegedly injured party. *Daskalea*, 275 F.R.D. at 365.

## CONCLUSION

For the foregoing, the Court should deny Plaintiffs' motion for class certification.

DATED: June 9, 2025                    Respectfully submitted,

                                                          YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Director
Federal Programs Branch

*/s/ John Bailey*
JOHN BAILEY (Ohio Bar No. 10460)
Counsel
ZACHARY W. SHERWOOD
Trial Attorney
United States Department of Justice
Civil Division
950 Constitution Ave. NW
Washington, DC 20005
Phone: (202) 514-6993
Email: john.bailey@usdoj.gov

*Counsel for Defendant*

13