## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VERA INSTITUTE OF JUSTICE, et al.** | **CASE NO.: 1:25-cv-1643** |
| *Plaintiffs, on behalf of themselves and all others similarly situated,* | |
| **v.** | **HONORABLE AMIT P. MEHTA** |
| **U.S. DEPARTMENT OF JUSTICE, et al.** | |
| *Defendants.* | |

---

## BRIEF OF *AMICI CURIAE* COMMUNITY-BASED PUBLIC SAFETY SUBGRANTEES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

JOSHUA A. ROSENTHAL
(D.C. BAR NO. 198162)
ASIAN LAW CAUCUS
55 Columbus Ave.
San Francisco, CA 94111
628-345-5628
joshr@asianlawcaucus.org

JACOB H. SUSSMAN*
DOMINIQUE J. ERNEY*
SOUTHERN COALITION FOR
SOCIAL JUSTICE
P.O. Box 51280
Durham, NC 27717
704-277-3962
jsussman@scsj.org

DARYL V. ATKINSON*
FORWARD JUSTICE
1 Copley Pkwy, Ste. 302
Morrisville, NC 27560
763-913-6817
daryl@forwardjustice.org

*Counsel for Amici Curiae*

*\*Pro hac vice* motion pending

# TABLE OF CONTENTS

**I.    OJP'S DECISION TO CUT FUNDING *EN MASSE*, WITHOUT NOTICE OR SOUND RATIONALE, IS UNLAWFUL.** .................................................................................. 3

**II.    OJP'S TERMINATION OF CRITICAL GRANT AWARDS CAUSED IMMEDIATE AND IRREPARABLE HARM TO *AMICI*'S PROVISION OF VITAL PUBLIC SAFETY SERVICES FOR VULNERABLE COMMUNITIES.** ................................................ 4

    A.   Silence is Violence ...................................................................................... 5

        *1.    Harms Caused By Defendants' Actions* ........................................ 6

    B.   Justice Information Resource Network ........................................................ 7

        *1.    Harms Caused By Defendants' Actions* ........................................ 7

    C.   Forever Takes a Village ............................................................................... 8

        *1.    Harms Caused By Defendants' Actions* ........................................ 9

    D.   The BRidge Agency ..................................................................................... 9

        *1.    Harms Caused By Defendants' Actions* ...................................... 10

    E.   Beyond Harm .............................................................................................. 11

        *1.    Harms Caused By Defendants' Actions* ...................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Nat'l Env't Dev. Ass'n's Clean Air Project v. E.P.A,*
   752 F.3d 999, 1009 (D.C. Cir. 2014) ......................................................................3

*MediNatura, Inc. v. Food & Drug Admin.,*
   998 F.3d 931, 940–41 (D.C. Cir. 2021) ...................................................................4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
   501 U.S. 1, 30–31 (2020) .........................................................................................4

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 701, et seq ....................................................3

5 U.S.C. § 706(1)(A) .......................................................................................................4

Deaths in Custody Reporting Act, Pub. Law. No. 113-242, 128 Stat. 2860 (2013)........8

**Other Authorities**

2 C.F.R. § 200.340(a)(4) .................................................................................................3

Amy L. Solomon & Betsy Pearl, DOJ funding update: *A deeper look at the cuts*, Council on
   Crim. Justice (May 2025) [https://perma.cc/RKR9-RMV5...................................................1

Amy L. Solomon & Betsy Pearl, *DOJ funding cuts: More than 550 organizations impacted,*
   Council on Crim. Justice (May 2025), [https://perma.cc/YD8U-UNR6] ................................1

## STATEMENT OF INTEREST[1]

*Amici curiae* ("*Amici*") are small, community-based non-profit organizations from across the nation that are subrecipients of terminated Office of Justice Programs (OJP) grant awards at issue in the above-captioned matter.[2] *Amici* write in support of Plaintiffs' motion for preliminary injunction to enjoin the termination of Plaintiffs' grants, which provide the funding for *Amici*'s subgrants and operational livelihood.

In April 2025, the Department of Justice's OJP terminated more than 370 multi-year grants and cooperative agreements to 221 organizations, totaling more than $820 million. *See* Amy L. Solomon & Betsy Pearl, *DOJ funding update: A deeper look at the cuts*, Council on Crim. Justice (May 2025), https://counciloncj.org/doj-funding-update-a-deeper-look-at-the-cuts/ [https://perma.cc/RKR9-RMV5].

These numbers are striking, yet they obscure the full scope of the damage. The terminated awards include 473 subgrants to an additional 333 organizations, stripping away nearly $73 million in vital funding to these subgrantees. *See* Amy L. Solomon & Betsy Pearl, *DOJ funding cuts: More than 550 organizations impacted, new analysis finds,* Council on Crim. Justice (May 2025), https://counciloncj.org/doj-funding-cuts-more-than-550-organizations-impacted-new-analysis-finds/ [https://perma.cc/YD8U-UNR6]. Non-profit subgrantees, like *Amici*, took the biggest hit at $49.6 million (68.2%) in lost subgrantee funding. *See id. Amici* have already uniquely suffered from OJP's capricious terminations. Without intervention by the Court, Defendants' unlawful

---

[1] No counsel for a party authored this brief in whole or in part; no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief; and no person other than Amici, their members, or their counsel made such a monetary contribution. *See* Local Civil Rule 7(o)(5); Federal Rule of Appellate Procedure 29(a)(4)(E).

[2] A full list of *Amici* is provided in this brief's Appendix.

action will continue to cause serious and irreparable harm to *Amici*, and most importantly, the communities they serve.

*Amici* provide essential public safety services, including community violence intervention and prevention in vulnerable communities; wrap-around reentry services to break the cycle of recidivism; and victim services to better support the needs of survivors of crime, all of which are consistent with the asserted priorities of the Administration. In no uncertain or exaggerated terms, if these terminations are allowed to stand, those served by Plaintiffs and *Amici* across the country —including, but not limited to, children, domestic violence survivors, and gun violence survivors—will be less safe, more vulnerable to violence, and less equipped to recover when it does occur.

For many *Amici*, the April 2025 terminations are an existential threat. Due to their small size and accompanying resource constraints, *Amici* face significant barriers to receiving direct federal funding. *Amici* rely heavily on Plaintiffs, as primary grant recipients and intermediaries, to regrant federal dollars awarded by OJP to sustain their critical on-the-ground work. OJP's grant and cooperative agreements with many of the primary grant recipients included regranting as an express purpose of the awards. In some instances, the regranted federal dollars comprised over 50% of *Amici*'s annual budget, thereby making the funding terminations a fatal economic blow to *Amici*'s lifesaving work.

According to funding termination notices sent to Plaintiffs, the "change[d]" priorities of the current Administration include "combatting violent crime, protecting American children, and supporting American victims of trafficking and sexual assault, and better coordinating law enforcement efforts at all levels of government." Yet, OJP is attempting to kneecap the very organizations leading this work on the frontlines across the country. The harm to *Amici*'s

operations has been swift and extreme, and the results to the communities they serve will be devastating for years to come.

## ARGUMENT

### I.    OJP'S DECISION TO CUT FUNDING *EN MASSE*, WITHOUT NOTICE OR SOUND RATIONALE, IS UNLAWFUL.

The sudden withdrawal of funding from projects across the country was a stark departure from the agency's own regulations and the reasoned decision-making required by the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* As such, the funding withdrawals should immediately be halted, and ultimately set aside, for all class members—and *Amici* as their subgrantees.

As a preliminary matter, the OJP's grant terminations were inconsistent with the agency's regulations, particularly the regulation cited in the termination notice, 2 C.F.R. § 200.340(a)(4). "Although it is within the power of an agency to amend or repeal its own regulations, an agency is not free to ignore or violate its regulations while they remain in effect." *Nat'l Env't Dev. Ass'n's Clean Air Project v. E.P.A*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (cleaned up). While this provision allows for termination on the basis of changed "agency priorities," it provides for such termination *only* as an example of a ground for termination that may be laid out in a grant award. OJP had not included "change of priorities" as a potential ground for termination in the grant awards at issue here. The class member grantees and *Amici* subgrantees had no reason to believe that their grants could be ended for this basis.

Because grantees and subgrantees lacked notice that change in priorities could be a basis for termination, they relied on the promises in the terms and conditions of their grants: if they continued to act in compliance with the grants, OJP would continue to provide resources to support their work. Yet OJP's grant terminations took no account for this reliance. "[A]n agency must

'assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns.' If an agency changes its policy despite reliance interests, it must provide a 'reasoned explanation' therefore." *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 940–41 (D.C. Cir. 2021) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 501 U.S. 1, 30–31 (2020)). OJP provided no such reasoned explanation.

Finally, even beyond OJP's failure to follow its own regulations, to consider grantees' and subgrantees' reliance interests, and to provide a reasoned explanation for its change in policy, OJP chose to slash these grants across the board, providing no facts or reasoning to explain how any of the grants, let alone all of them, were inconsistent with agency priorities. As detailed below, many of the subgrantees were engaged in vital work that served the agency's desired goals. Neither the grantees nor subgrantees were offered notice or an opportunity to respond to the agency's sudden change of heart, nor did the agency address the individual circumstances of each grantee. This approach rendered OJP's terminations "arbitrary, capricious, [and] an abuse of discretion," 5 U.S.C. § 706(1)(A), and deprived the grantees and *Amici* subgrantees of procedural due process rights.

## II. OJP'S TERMINATION OF CRITICAL GRANT AWARDS CAUSED IMMEDIATE AND IRREPARABLE HARM TO *AMICI*'S PROVISION OF VITAL PUBLIC SAFETY SERVICES FOR VULNERABLE COMMUNITIES.

A core historical function of OJP is the administration of financial assistance through grant awards to organizations working on crime prevention and control strategies, services for crime victims, and other critical public safety services. Of this broad swath of grants, *Amici* represent the frontline workers who deliver these vital services to communities and individuals on the ground.

As detailed herein, OJP's abrupt termination of subgrant awards caused immediate and irreparable harm to subgrantees and their programmatic operations. With funding that *Amici* relied upon stripped away without notice, dedicated staff have been terminated, downsized, and furloughed. Years-long relationship-building and trust that each subgrantee has cultivated within their respective communities have been interrupted. Planned training, support, and programming have been cancelled. Because each subgrantee's work addresses core public safety needs, such as violence intervention and prevention, their inability to provide those services due to the loss of grant funding has grave immediate and long-term implications for the safety and well-being of vulnerable communities across the country.

What follows are only a few examples of the devastating harm suffered by *Amici* and the accompanying loss to their communities.

### A.  <u>Silence is Violence</u>

For nearly two decades, Silence is Violence has delivered critical care and support to individuals impacted by violent crime in Louisiana. Originally founded in 2007 to advocate on behalf of musicians who were killed in the wake of Hurricane Katrina, as well as highlight racial disparities in responses to white and Black victim families, the organization's focus shifted in 2009 to providing mental health services and counseling to families of homicide victims. Its staff engage directly with survivors in the immediate aftermath of violence, offering support and practical, tangible assistance. Through community engagement, staff members identified key components needed for survivors of violence and families of victims to survive and thrive after the trauma of violence: (1) a sense of agency, (2) access to care, and (3) guidance through the grief and healing process. In operation, Silence is Violence provides holistic violence intervention services including, directly responding to homicide crime scenes; trauma-informed counseling and case

management for victims' families; culturally-competent homicide-specific trauma therapy; crisis intervention, including witness relocation and temporary housing assistance; court accompaniment for families; advocacy for policy changes; and financial assistance to victims' families and witnesses.

As a subgrantee of the terminated OJP CVIPI Grant, Silence is Violence received $250,000 in grant funding, along with one-and-a-half years of its Executive Director's salary, to support a 26-month program running from November 2024 through September 30, 2026. This funding was critical to advancing Silence is Violence's mission to provide wrap-around services to families and survivors in the aftermath of violence. CVIPI's funding enabled Silence is Violence to serve thousands of clients across New Orleans. Since receiving the subaward, Silence is Violence hired staff dedicated to expand services for survivors of violence in New Orleans and committed significant time and resources to develop comprehensive victim advocacy tools.

### 1. Harms Caused By Defendants' Actions

As a direct and immediate result of OJP's decision to strip away funds with no notice, Silence is Violence is no longer able to subsidize the Executive Director's salary and hire additional staff members to expand services for survivors of violence beyond New Orleans. With the loss of this critical funding, the organization is now forced to revise its operating budget, significantly reducing the resources available for victim assistance and related services. These cuts directly affect the organization's ability to provide essential support and services that are often vital and foundational to survivor safety and recovery, such as temporary housing for individuals facing violence in their homes.

OJP's unlawful termination immediately caused irreparable harm to both community access and the delivery of critical, trauma-informed services. The organization's ability to maintain

long-standing, trusted partnerships with law enforcement, coroners, social service agencies, churches, and community-based organizations has been severely disrupted. These relationships are essential to a coordinated response to violence and the support of impacted families. The funding loss also forced the elimination of one of the few culturally competent, homicide-specific trauma service providers in New Orleans, a resource uniquely positioned to meet the needs of grieving families in a city disproportionately impacted by violence. As a result, the organization's capacity has been dramatically reduced, leaving families already on the waiting list without access to urgently needed support. These harms are irreparable and ongoing.

### B.  Justice Information Resource Network

Justice Information Resource Network (JIRN), formerly Justice Research and Statistics Association, Inc., is a Washington D.C.-based resource center that convenes researchers, analysts, and justice practitioners.  In addition to producing justice research, the organization provides learning programs and networking opportunities for others in the field. JIRN's nonpartisan, comprehensive analyses on pressing public safety issues are relied upon by government stakeholders across all levels, as well as community-based direct service providers.

As a subgrantee of the terminated OJP Measuring the Impact of Victim Services: Implementation, Management, and Sustainment of the Measures for Providers Responding to Victimization Experiences (iMPRoVE) Project grant, JIRN received $304,995 to support its work.

#### 1.  *Harms Caused By Defendants' Actions*

As a direct and immediate result of OJP's decision to strip away funds without notice, including the iMPRoVE Project grant and other direct grants, JIRN's very existence is jeopardized. JIRN was forced to immediately lay off one quarter of its research staff and half of its administrative support positions; left it unable to pay its rent; and caused its Executive Director to

retire early. JIRN's laid-off staff are struggling to find new employment. Moreover, the terminations curtailed highly successful work assisting states in complying with requirements under the Deaths in Custody Reporting Act, Pub. Law. No. 113-242, 128 Stat. 2860 (2013), as well as halted JIRN's wide-ranging efforts to build an evidence base for crime victim services by promoting an understanding of research and data, and supporting partnerships of victim services with researchers.

### C. **Forever Takes a Village**

Forever Takes a Village, based in Bogalusa, Louisiana, serves youth vulnerable to violence in underserved rural communities. Founded in 2023, the organization was established in response to the founder's firsthand observation of critical gaps in existing services within under-resourced areas experiencing rising levels of youth violence. Forever Takes a Village is one of the few organizations that provide a rural perspective on youth gun violence prevention.

Forever Takes a Village provides extensive support services and resources, including the training and implementation of violence interventionists and street outreach workers; youth education initiatives centered on violence prevention; community engagement events; and active partnerships with the Bogalusa Police Department, local schools, and community health centers. These efforts are further supported by a systems collaboration and community engagement initiative aimed at strengthening cross-sector coordination. Additionally, the organization utilizes evidence-informed strategies within the field of violence intervention.

As a subgrantee of the terminated OJP CVIPI Grant, Forever Takes a Village was awarded $250,000 and one-and-a-half years of its Executive Director's salary.

### 1.  Harms Caused By Defendants' Actions

As a direct and immediate result of OJP's decision to strip away funds with no notice, Forever Takes a Village's Executive Director has been forced to personally cover programming expenses, which has resulted in the organization's financial and operational vulnerability. Without this critical funding, Forever Takes a Village has been forced to pause and/or significantly scale back its services. Plans to hire additional staff to meet growing community needs have been indefinitely suspended, further limiting the organization's capacity to respond to violence and support survivors.

The termination of grant funding has had devastating effects on community access and direct services in Bogalusa, where Forever Takes a Village stands as the sole organization addressing critical gaps in violence intervention services for rural Louisiana communities. The funding loss has led to the elimination of youth-centered programming that provided safe, healthy, and engaging violence prevention activities. Without the organization's presence, the community loses a central pillar of its public safety ecosystem, weakening local efforts to address violence through prevention, outreach, and support. Furthermore, the absence of Forever Takes a Village from active programming has and will continue to reduce the visibility and representation of rural communities in broader, statewide violence prevention initiatives, further marginalizing populations already underserved by existing public safety structures. These harms are irreparable and ongoing.

### D.  **The BRidge Agency**

The BRidge Agency serves low- to moderate-income youth and adults in the neighborhoods of Baton Rouge that experience the highest rates of crime and are the most underserved. Founded in 2016, in the wake of the police killing of Alton Sterling and massive

flooding that devastated areas of the city, The BRidge Agency is a hyperlocal, multi-purpose community organization that addresses core social and economic drivers of crime. It partners with local government entities, schools, and other community organizations to identify those residents most vulnerable to violence.

The BRidge Agency provides a wide range of direct services and resources, including trauma healing circles and support groups for crime victims; preventive education around physical, mental, and verbal abuse in the home; conflict resolution skill development; leadership workshops, mentorship programs, and civic engagement projects; town hall forums and panels on issues of importance to the community; educational materials and workshops on violence prevention; and free youth summer programs. Through its work, The BRidge Agency helps Baton Rouge residents meet their daily needs, as well as empowers them to develop and achieve healthy goals, with the express purpose of preventing violence.

As a subgrantee of the terminated OJP CVIPI Grant, The BRidge Agency was awarded $250,000 and one-and-a-half years of its Executive Director's salary. This subgrant comprised the vast majority of The BRidge Agency's overall budget.

### 1. *Harms Caused By Defendants' Actions*

As a direct and immediate result of OJP's decision to strip away funds without notice, The BRidge Agency staff was furloughed, and its Executive Director was forced to seek other employment. The organization faces a daunting financial crisis due to having already spent $78,956 in anticipation of reimbursement by its promised subgrant. It has been unable to secure funding to replace the lost subgrant.

On the ground in Baton Rouge, OJP's unlawful termination immediately caused a reduction in services that support young people and their families through moments of crisis. The

termination of funding has further resulted in a loss of a key community conduit that previously provided access to resources to meet daily needs; a disruption of trauma-informed counseling and support groups in schools; and reduced dialogue between youth and community leaders on violence prevention. These harms are irreparable and ongoing.

### E.  **Beyond Harm**

Beyond Harm is a New Orleans violence intervention, prevention, and healing organization that focuses on providing group and individual intervention to those who have committed acts of domestic violence. Beyond Harm was founded in 2022 by a three-person team working at the New Orleans Family Justice Center to fill this critical gap in public safety services.

Beyond Harm offers an eight-month abuse intervention program for 50 men annually in New Orleans. The organization utilizes evidence-informed best practices within the field of domestic violence intervention. It is unique for its low-to-no-cost fee model and its partnership with the Orleans Parish District Attorney's Office, wherein those who have committed acts of domestic violence are often diverted to participate in Beyond Harm's program. While servicing perpetrators of domestic violence primarily, the organization is survivor-centered, led in part by a Survivor Advisory Board.

As a subgrantee of the terminated OJP Community Violence Intervention and Prevention (CVIPI) Grant, Beyond Harm was awarded $250,000 and one-and-a-half years of its Executive Director's salary. This subgrant represented a third of the organization's overall budget.

### 1.  *Harms Caused By Defendants' Actions*

As a direct and immediate result of OJP's decision to strip away funds representing a significant portion of the organization's budget without notice, Beyond Harm canceled plans to hire an additional staff member and expand its programming, which would have significantly

increased this relatively new organization's capacity to deliver critically important services. Because Beyond Harm is uniquely accessible to people who are otherwise unable to afford other domestic violence intervention programs, the lost funding will leave this population with no viable alternatives, undermining public safety. These harms are irreparable and ongoing.

## CONCLUSION

For all of the foregoing reasons, *Amici* submit that Plaintiffs' Motion for Preliminary Injunction should be granted.

Dated: June 6, 2025                          Respectfully submitted,

<div style="margin-left: 40%;">

/s/ Joshua A. Rosenthal
JOSHUA A. ROSENTHAL (D.C. BAR NO. 198162)
ASIAN LAW CAUCUS
55 Columbus Ave.
San Francisco, CA 94111
628-345-5628
joshr@asianlawcaucus.org

JACOB H. SUSSMAN*
DOMINIQUE J. ERNEY*
SOUTHERN COALITION FOR SOCIAL JUSTICE
P.O. Box 51280
Durham, NC 27717
704-277-3962
jsussman@scsj.org

DARYL V. ATKINSON*
FORWARD JUSTICE
1 Copley Parkway, Ste. 302
Morrisville, NC 27560
763-913-6817
daryl@forwardjustice.org

*Counsel for Amici Curiae*

*\*Pro hac vice* motion pending

</div>

**APPENDIX**

  The following community-based public safety subgrantees, harmed by the abrupt loss of funding, as *Amici*, urge the Court to enjoin OJP's unlawful grant terminations that have hindered their ability to fully carry out their missions and serve their communities.

**The BRidge Agency**
Baton Rouge, LA

**Brightside Child & Family Advocacy**
Savannah, GA

**Carter's Crew**
North Little Rock, AR

**Moms on A Mission**
Shreveport, LA

**In The Streets**
Washington, D.C.

**Just Us Family Group Home – Forever Takes A Village**
Bogalusa, LA

**Justice Information Resource Network**
Washington, D.C.

**Latino Coalition – Struggle of Love Foundation**
Denver, CO

**Mute the Violence D.C.**
Washington, D.C.

**Silence Is Violence**
New Orleans, LA

**Social and Environmental Entrepreneurs (SEE), Inc. – Beyond Harm**
New Orleans, LA

**Youth MOVE National**
Saugatuck, MI

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Local Rules of the United States District Court for the District of Columbia LCvR(o)(5) and Federal Rule of Appellate Procedure 26.1, *Amici Curiae* submit the following corporate disclosure statements with respect to those *Amici* that are corporations:

**The BRidge Agency** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Brightside Child & Family Advocacy** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Carter's Crew** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Beyond Harm** is fiscally sponsored by **Social and Environmental Entrepreneurs (SEE), Inc.**, a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Moms on a Mission** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**In The Streets** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Forever Takes A Village** is fiscally sponsored by **Just Us Family Group Home**, a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Justice Information Resource Network** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Struggle of Love Foundation** is fiscally sponsored by **Latino Coalition**, a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Mute the Violence D.C.** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Silence is Violence** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**Youth MOVE National** is a private, non-profit organization. It has no parent company, and no publicly held company holds more than 10% of its stock.

**CERTIFICATE OF COMPLIANCE AND SERVICE**

Pursuant to LCvR 7(o), I hereby certify that this brief conforms to the requirements of LCvR 5.4, complies with the requirements set forth in Fed. R. App. P. 29(a)(4), and does not exceed 25 pages in length.

I further certify that on this date, the foregoing was filed electronically with the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

This, the 6th day of June, 2025.

<div style="margin-left:40%">

/s/ Joshua A. Rosenthal
JOSHUA A. ROSENTHAL (D.C. BAR No. 198162)
ASIAN LAW CAUCUS
55 Columbus Ave.
San Francisco, CA 94111
628-345-5628
joshr@asianlawcaucus.org

</div>