UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VERA INSTITUTE OF JUSTICE, et al.,

*Plaintiffs*, *on behalf of themselves and all others similarly situated,*

v.

UNITED STATES DEPARTMENT
OF JUSTICE, et al.,

*Defendants.*

Case No. 1:25-cv-01643-APM

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................... 1

II.   ARGUMENT ......................................................................................................................... 2

    A.   The Class May Be Provisionally Certified Because Plaintiffs Easily Satisfy
    Commonality and Typicality ................................................................................................. 2

        1. The issues common to the proposed class are not "overbroad;" the common questions of
        fact and law can resolve this litigation in one stroke ................................................................ 3

        2. Defendants' claim that OJP conducted an "individualized" review of the terminated
        awards does not defeat commonality ....................................................................................... 4

        3. Whether absent class members submitted appeals of their termination decisions to OJP is
        irrelevant to commonality or typicality ................................................................................... 6

    B.   The Class May Be Provisionally Certified Because Rule 23(b) is Satisfied ............... 7

        1. The proposed class may be certified under Rule 23(b)(2). ........................................................ 7

    C.   This Court Has the Discretion to Resolve the Parties' Motions In An Order That
    Best Promotes Efficiency and Judicial Economy ................................................................. 8

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

## CASES

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C Cir. 2019) .........................................................4

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................................7

*Crowe v. Fed. Bureau of Prisons*, No. 1:24-cv-03582, 2025 WL 1635392 (D.D.C. June 9, 2025) ................5

*Darby v. Cisneros*, 509 U.S. 137 (1993)......................................................................................6

*Daskalea v. Washington Human Soc'y*, 275 F.R.D. 346 (D.D.C. 2011) ...........................................8

*DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017)...........................................................6

*Healthy Futures of Texas v. HHS*, 326 F.R.D. 1 (D.D.C. 2018) ...........................................4, 5, 8

*Lightfoot v. District of Columbia*, 273 F.R.D. 314 (D.D.C. 2011) ...............................................4

*Love v. Johanns,* 439 F.3d 723 (D.C. Cir. 2006) ......................................................................4

*Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519 (D.C. Cir. 2010)...........................7

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..........................................................4, 7, 8

## RULES AND REGULATIONS

2 C.F.R. § 200.340.........................................................................................................1

Fed. R. Civ. Pro. 23 ..........................................................................................2, 3, 5, 7, 8

## OTHER AUTHORITIES

5  Federal Practice (3d ed. 2000) ......................................................................................8

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1763 (4th ed. 2009) ..........1

*Manual for Complex Litigation (Fourth)* § 21.133 (2004) .........................................................9

U.S. Dep't of Just., OJP, Bureau of Just. Assistance, *The Role of Local Government in Community Safety* (Apr. 2001), https://perma.cc/2287-LRGY ..............................................................1

## I.   INTRODUCTION

For nearly a quarter of a century, the Department of Justice (DOJ) recognized that "communities can no longer leave safety to only the criminal justice system" and promoted the value of "local partnerships with key actors—the police, government agencies, community organizations, and residents--to develop safe, secure, and vibrant communities."[1]  Consistent with this recognition, Plaintiffs and other members of the proposed class were for many years the backbone of these types of local partnerships, which were supported by administrations of both parties.

Yet even though both the APA and the Constitution guarantee Plaintiffs the right to reasoned and justified decisionmaking, in April 2025, DOJ's Office of Justice Programs (OJP) suddenly terminated 376 awards designed to reduce violence, support crime victims, train law enforcement and personnel within the justice system, and facilitate mental and substance abuse treatment.  The only "explanation" OJP sent of this drastic change in position was a set of copy-and-paste emails stating only that the awards were being terminated pursuant to 2 C.F.R. § 200.340(a)(4) because they "no longer effectuate[] the program goals or agency priorities."  For these reasons, Plaintiffs' Motion established (a) that the Court will be required to resolve only common questions of fact and law to determine the legality of OJP's boilerplate terminations, and (b) that because every proposed class member received the same termination notice with the same so-called "reasoning," Plaintiffs' claims against Defendants were typical of the Class as a whole.

In response, even though "class suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2)" (7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1763 (4th ed. 2009)), Defendants offer underdeveloped challenges to the commonality and typicality elements of Rule 23(a) of the Federal Rules of Civil Procedure.  First, they

---

[1] U.S. Dep't of Just., OJP, Bureau of Just. Assistance, *The Role of Local Government in Community Safety* (Apr. 2001), https://perma.cc/2287-LRGY.

assert that Plaintiffs' proposed common questions are overbroad and oversimplified. As explained in Plaintiffs' complaint and pending motions, Defendants' zeal to cancel the awards at issue caused them to violate basic precepts of constitutional and administrative law. That those errors are both pervasive and simple to describe are not defects in Plaintiffs' claims; they are defects in Defendants' process for terminating the underlying grants. Indeed, the common questions here bear no resemblance to those previously criticized by courts in this Circuit and are consistent with classes that have been certified involving similar facts. Second, Defendants contend that, although OJP's termination notices bore no evidence of it, it terminated hundreds of awards based on an individualized review of those awards. But the allegedly individual review of the terminated awards has no bearing on the legality of the terminations, which remains a common issue shared by Plaintiffs and members of the Class alike. Third, Defendants claim that the fact that some class members are pursuing administrative appeals while others are not defeats commonality and typicality. But because those appeals are not required for judicial review, Defendants' arguments are irrelevant.

Finally, the proposed class fits squarely into both Rule 23(b)(2) and (b)(1). In fact, multiple courts and commentators have recognized that the ideal use of those Rules is, as here, to seek injunctive or declaratory relief against the government. Defendants' citations to cases where monetary relief was the primary goal have no relevance to the proposed class Plaintiffs seek to certify.

## II.    ARGUMENT

### A.    The Class May Be Provisionally Certified Because Plaintiffs Easily Satisfy Commonality and Typicality

Defendants do not challenge whether the proposed class satisfies the numerosity or adequacy requirements of Rule 23(a) and do not object to the appointment of Democracy Forward and Perry Law as class counsel. *See* Class Cert. Opp'n at 7 n.2. Instead, Defendants contend that Plaintiffs

cannot satisfy the commonality and typicality requirements of Rule 23(a).  Because Defendants attempt to manufacture individualized issues where none exist, their arguments fail.

Defendants' arguments that Plaintiffs have not satisfied the commonality or typicality prongs of Rule 23(a) are identical.  First, they claim that the common questions Plaintiffs have identified (Class Cert. Mem. at 9) are overly general.  Second, they contend that OJP's purportedly "individualized" review of the awards it terminated defeats commonality.  Third, Defendants contend that the fact that certain absent class members pursued optional appeals to OJP—while others did not—defeats commonality and makes Plaintiffs' claims atypical of the proposed class.  None of these arguments changes that, by determining the legality of Defendants' identical terminations, the Court can resolve the issues raised in this litigation in one stroke.  None of them change that Plaintiffs' claims are typical of all class members who had their awards terminated in the same way and with the same justification.

1.      **The issues common to the proposed class are not "overbroad;" the common questions of fact and law can resolve this litigation in one stroke**

Defendants first argue that the common legal questions Plaintiffs identify are too "overly generalized" to satisfy the commonality requirement.  Class Cert. Opp'n at 8.  Not so.  Plaintiffs identified nine questions that each ask whether Defendants engaged in a course of conduct that improperly terminated the grants awarded to members of the proposed class.  *See* Class Cert. Mem. at 9.  Defendants do not challenge those common questions in any individual detail; they just assert without explanation that the questions are too nonspecific.

But the common questions in this case are not of the type the Supreme Court observed that "any competently crafted class complaint" could raise: "Do all of us plaintiffs indeed work for Wal-Mart?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  Here, resolving the

common questions will allow the Court to resolve Plaintiffs' claims in one stroke. *See Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C Cir. 2019) ("Rule 23(a)(2) is satisfied if resolution of reach plaintiff's claim turns on a common question (or questions) and if common proof leads to a common answer (or answers) to that question for each plaintiff."). In fact, in *Healthy Futures of Texas v. HHS*, 326 F.R.D. 1, 7 (D.D.C. 2018), a case Defendants fail to distinguish where the plaintiffs challenged the defendants' unexplained "shortening" of HHS grants, then-Judge Jackson had "no doubt" that commonality was satisfied.

To contend otherwise, Defendants rely on two cases where the plaintiffs attempted to challenge many individualized decisions on the basis that, collectively, those decisions reflected a unitary policy. Notably, in both, the courts found that the termination notices at issue contained different reasons for the challenged terminations. *See Love v. Johanns,* 439 F.3d 723, 728 (D.C. Cir. 2006) ("Appellants concede that the Department offered varying reasons for denying their requests."); *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 337 (D.D.C. 2011) ("Plaintiffs do not contend that pre-deprivation notices were identical in describing the reasons for termination."). Here, in contrast, OJP's termination letter cited the same regulation and told all terminated grant recipients that their awards were terminated because OJP had "changed its priorities with respect to discretionary grant funding." Defendants' own declaration concedes that the denials resulted in identical notices. Henneberg Decl. ¶ 20 (Dkt. 26-1).

### 2.   Defendants' claim that OJP conducted an "individualized" review of the terminated awards does not defeat commonality

Turning their first argument on its head, Defendants next contend that the common questions are "oversimplified" because OJP's decision to terminate 376 awards was purportedly "the end product of a thorough and careful grant-by-grant review process." Class Cert Opp'n at 9; *see also id.* at 1 (describing terminations as "the end-product of a multi-month, individualized review process,

4

during which OJP's grant awards continued to effectuate the Department's various priorities with respect to discretionary funding.").

Defendants' attempt to conjure individual issues does not defeat commonality. Even if OJP did, in fact, review each award individually, it reviewed those awards solely for the purpose of determining whether "they effectuated the Department's priorities." Henneberg Decl. ¶ 18. Plaintiffs have asked the Court to decide whether summarily terminating awards on this basis violates the APA or the Constitution—and that question is plainly common to all proposed class members. *See Healthy Futures,* 326 F.R.D. at 7 ("Thus, when considering whether HHS's decision to institute a programmatic policy that shortened the project period for all of the class members by two years without providing any explanation for this action violated the Administrative Procedure Act . . . this Court should be deciding in one fell stroke whether or not the agency practice that allegedly injured the putative class members was legally impermissible."); *see also Crowe v. Fed. Bureau of Prisons*, No. 1:24-cv-03582, 2025 WL 1635392, at *20 (D.D.C. June 9, 2025) (Mehta, J.) (conduct that exposes all putative class members to the same deprivation of statutory right satisfies commonality and typicality requirements of Federal Rule of Civil Procedure 23(a)).

It is irrelevant for the Court to consider, as Defendants contend (Class Cert Opp'n at 9), "each putative class members' unique grant award, . . . how federal funds were spent to effectuate the particular purposes set out in the myriad statutes governing the appropriations from which grant funds were derived . . . and the various factors that were considered and weighted in deciding whether or not the specific award in question continued to effectuate agency priorities" because, regardless of the process used, Defendants terminated the awards for the same reason.

More fundamentally, despite how Defendants characterize it in their briefing, their own declaration simply does not support Defendants' claim of a careful, individualized process. It states that, together with Department leadership, OJP considered the grants "based on their individual

5

project descriptions" (Henneberg Decl. ¶ 18), a few paragraphs within many pages of an application summarizing the purpose for which funds were sought. Then, once that process identified the awards that no longer effectuated the Department's priorities, "OJP was directed to terminate" them. *Id.* ¶ 19.[2] These facts describe a course of conduct common to the proposed class whose legality under the APA or the Constitution is a question common to the proposed class as a whole. *See DL v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017) (Commonality is thus generally satisfied where an action challenges a "uniform policy or practice that affects all class members.").

### 3.    Whether absent class members submitted appeals of their termination decisions to OJP is irrelevant to commonality or typicality

Defendants also state that whether certain absent class members decided to appeal the termination of their awards defeats commonality and typicality. Not so. There is no relevant statute requiring class members to pursue an appeal and "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (emphasis in original). Here, no statute or agency rule required appeal before judicial review. In addition, because OJP did not reverse its award terminations pending its review of the appeals filed, it is simply not true that, as Defendants claim, the outcome of the appeal process will make it impossible for the Court to issue determinations that will affect the proposed class as a whole.

In Defendants' case, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519 (D.C. Cir. 2010), the court held that "[w]here exhaustion is a jurisdictional requirement, . . . every class member

---

[2] Notably, Plaintiffs allege that a DOGE staffer created the list of awards to terminate without consulting OJP program managers, many of whom learned of the terminations only after they were communicated to grantees. *See* Compl. ¶ 48. Defendants fail to address–much less deny–these allegations.

must exhaust its administrative remedies." *Id.* at 526.  Here, however, the triggering condition is not satisfied.  Under *Darby*, there was no "requirement" for grantees to avail themselves of a voluntary appeal process–especially one that would not delay the effective date of the grant terminations. Therefore, members of the proposed class were not required to exhaust their administrative remedies, and the fact that Plaintiffs did not file an appeal is not relevant to commonality or typicality.[3]

**B.      The Class May Be Provisionally Certified Because Rule 23(b) is Satisfied**

Defendants' challenges to certification under Rule 23(b)(2) and/or Rule 23(b)(1) are similarly misguided.

**1.       The proposed class may be certified under Rule 23(b)(2).**

"The key to the b(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted–the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360.  Because this is so often true in class actions challenging government action, the Supreme Court has observed that "class relief is appropriate in civil actions brought in federal court, including those seeking to overturn determinations of the departments of the Executive Branch of the Government in cases where judicial review of such determinations is authorized." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

Defendants contend that, in order to issue a classwide injunction in this case, the Court would have to conduct an individualized inquiry into the factual circumstances of each termination decision. But as set forth above, despite Defendants' claim, no such individual inquiry is required.  An order seeking to declare OJP's terminations illegal—under the APA or the Constitution—can issue as to the proposed class as a whole or as to none of them.  *See Healthy Futures*, 326 F.R.D. at 8.  The key fact is

---

[3] In any event, *Menominee* makes clear that, because the appeal provided for in OJP's termination notice was not a jurisdictional requirement, the filing of Plaintiffs' Complaint tolled class members' deadlines to file an administrative appeal.  *See* 614 F.3d at 527-28.  Therefore, whether absent class members filed such an appeal is irrelevant to commonality or typicality.

that OJP "took the same action" with respect to every one of the terminated grantees. *Id.* This case is not *Dukes*—"one of the most expansive class actions ever"—where the Supreme Court declined to certify a class of 1.5 million female employees of Wal-Mart who alleged that the discretion exercised by thousands of local supervisors in pay and promotion decisions violated Title VII and entitled them to an award of backpay. 564 U.S. at 342.

### 2.    The proposed class may also be certified under Rule 23(b)(1)(A).

A class action may be maintained under Rule 23 (b)(1)(A) when "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." While this language is not as a broad as its plain language would imply, Rule 23(b)(1)(A) is commonly invoked in cases like this one in which the class seeks declaratory or injunctive relief against the government "to provide unitary treatment to all members of a defined group." 5 Moore's Federal Practice § 23.41[4] (3d ed. 2000).

 Notably, both cases Defendants cite in support of their argument that Rule 23(b)(1) certification is inappropriate for this case, *Daskalea v. Washington Human Soc'y*, 275 F.R.D. 346 (D.D.C. 2011) and *Dukes*, were cases where either the sole or primary relief sought was monetary. *See Dukes*, 564 US at 367; *Daskalea*, 275 F.R.D. at 365-66 ("As it now stands, this is a case about securing monetary relief for class members based on individualized past harms."). Because Plaintiffs do not seek damages, those authorities do not apply.

## C.    This Court Has the Discretion to Resolve the Parties' Motions In An Order That Best Promotes Efficiency and Judicial Economy

Finally, Defendants contend the Court cannot reach the issue of class certification because under the Tucker Act this Court lacks jurisdiction over the action and should resolve Defendants' motion to dismiss before addressing class certification. Plaintiffs do not concede any of their claims

should be dismissed and, in fact, contend that most of Defendants' arguments in favor of dismissal are so insufficiently developed as to be waived. *See* Pls.' Reply in Supp. of Mot. for Prelim. Inj. and Resp. in Opp. to Mot. to Dismiss, Section III n.7. However, Plaintiffs do not object to the Court deciding threshold issues, such as the application of the Tucker Act, before class certification. *See Manual for Complex Litigation (Fourth)* § 21.133 (2004). If the Court denies Defendants' motion to dismiss in whole or in part, Plaintiffs respectfully request the Court promptly decide their class certification motion along with their preliminary injunction motion, recognizing that, while the Court must conduct a "rigorous analysis" of the issues, "such certifications may be altered or amended before the decision on the merits." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015).

## CONCLUSION

Based on the foregoing and the arguments in Plaintiffs' opening motion, Plaintiffs respectfully request that the Court enter an order granting its Motion for Class Certification.

Dated: June 16, 2025

Respectfully submitted,

*s/ Jennifer Fountain Connolly*

JENNIFER FOUNTAIN CONNOLLY (D.C. BAR NO. 1019148)
LISA NEWMAN (ADMITTED *PRO HAC VICE*)
CORTNEY ROBINSON (D.C. BAR NO. 1656074)
SOMIL TRIVEDI (D.C. BAR NO. 1617967)
BRIAN D. NETTER (D.C. BAR NO. 979362)
SKYE L. PERRYMAN (D.C. BAR NO. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org

JOSHUA PERRY (ADMITTED PRO HAC VICE)

JOSHUA STANTON (D.C. BAR NO. 90010653)

E. DANYA PERRY (ADMITTED PRO HAC VICE)

PERRY LAW

445 Park Avenue, 7th Floor

New York, NY 10022

(212) 251-2619

jperry@danyaperrylaw.com

*Counsel for Plaintiffs*

10