# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERA INSTITUTE OF JUSTICE, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*, )<br><br>Defendants. )<br> | Civil Action No. 1:25-CV-01643-APM |

## <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.     This Court lacks subject-matter jurisdiction over Plaintiffs' claims because they are fundamentally contractual. ............................................................................... 2

     A.     The ultimate source of Plaintiffs' rights are the grant agreements. ....................... 3

     B.     Plaintiffs seek the classic contract remedy of specific performance. ................... 4

     C.     The Court of Federal Claims has jurisdiction over claims that the Government failed to pay money due under grant agreements. ........................... 6

II.    Plaintiffs' Constitutional Claims Fail. .................................................................... 7

     A.     Plaintiffs' procedural due process claim fails because grant agreements do not create protected property interests. ................................................................. 7

     B.     Plaintiffs fail to state a void-for-vagueness claim. .................................................. 8

     C.     Plaintiffs' claim under separation of powers, Spending, Appropriations, and Take Care Clauses fails. ............................................................................. 10

     D.     Plaintiffs' *ultra vires* claim fails. ......................................................................... 11

III.   Plaintiffs' APA Claims Are Unreviewable For Independent Threshold Reasons and Fail On The Merits. ............................................................................................. 12

     A.     Plaintiffs have other adequate remedies available to them. ................................. 12

     B.     Grant funding decisions are committed to agency discretion by law. .................. 13

     C.     Plaintiffs fail to plausibly allege that DOJ acted contrary to law. .......................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Am. Ground Transp., Inc. v. United States*,
  165 Fed. Cl. 659 (2023) ................................................................................ 6

*Bd. of Governors, FRS v. MCorp Fin., Inc.*,
  502 U.S. 32 (1991) ...................................................................................... 12

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ...................................................................................... 8

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ................................................................................ 5, 12

*Clinton v. Jones*,
  520 U.S. 681 (1997) ...................................................................................... 11

*Crowley Gov't Servs., Inc. v. GSA*,
  38 F.4th 1099 (D.C. Cir. 2022) ...................................................................... 5

*Department of Education v. California*,
  145 S. Ct. 966 (2025) ................................................................................ 5, 7

*Esparraguera v. Dep't of Army*,
  101 F.4th 28 (D.C. Cir. 2024) ........................................................................ 8

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ...................................................................... 12

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ...................................................................................... 9

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ...................................................................................... 5

*Harris County v. Kennedy*,
  No. 25-cv-1275, 2025 WL 1707665 (D.D.C. June 17, 2025) ................... 10, 11

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ...................................................................................... 13

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012) ........................................................................ 7

*Huashan Zhang v. USCIS*,
  978 F.3d 1314 (D.C. Cir. 2020) .................................................................... 14

ii

*Ingersoll-Rand Co. v. United States,*
   780 F.2d 74 (D.C. Cir. 1985)................................................................... 3, 4

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.,*
   56 F.3d 279 (D.C. Cir. 1995)................................................................... 1, 4

*Leedom v. Kyne,*
   358 U.S. 184 (1958)................................................................................11

*Lincoln v. Vigil,*
   508 U.S. 182 (1993).......................................................................... 13, 14

*McClelland v. Katy Ind. Sch. Dist.,*
   63 F.4th 996 (5th Cir. 2023).................................................................... 8

*Megapulse, Inc. v. Lewis,*
   672 F.2d 959 (D.C. Cir. 1982).......................................................... 1, 2, 3

*NB ex rel. Peacock v. District of Columbia,*
   794 F.3d 31 (D.C. Cir. 2015)................................................................... 8

*National Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998).............................................................................. 9

*Nat'l Urban League v. Trump,*
   --- F. Supp. 3d ---, 2025 WL 1275613 (D.D.C. May 2, 2025) ............................ 8, 9

*New Vision Photography Program, Inc. v. District of Columbia,*
   54 F. Supp. 3d 12 (D.D.C. 2014) ......................................................... 7, 8

*Nuclear Regul. Comm'n, v. Texas,*
   No. 23-1300, 2025 WL 1698781 (U.S. June 18, 2025) ....................................11, 12

*PFLAG, Inc. v. Trump,*
   769 F. Supp. 3d 405 (D. Md. 2025) ......................................................... 10

*S&D Maintenance Co. v. Goldin,*
   844 F.2d 962 (2d Cir. 1988) ................................................................. 8

*San Juan City Coll. v. United States,*
   391 F.3d 1357 (Fed. Cir. 2004) ............................................................. 6

*Silver State Land LLC v. United States,*
   155 Fed. Cl. 209 (2021) ..................................................................... 6

*Spectrum Leasing Corp. v. United States,*
   764 F.2d 891 (D.C. Cir. 1985).............................................................. 3, 4

*Sustainability Inst. v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ..................................................... 7

*Torncello v. United States*,
    681 F.2d 756 (Fed. Cl. 1982) ..................................................................................... 9

*Transohio Savings Bank v. Director, Office of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992) .................................................................................. 5

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
    770 F. Supp. 3d 155 (D.D.C. 2025), *injunction pending appeal denied*,
    No. 25-5066 (D.C. Cir. Mar. 28, 2025) ...................................................................... 4

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), *en banc reconsideration*,
    2025 WL 1521355 (D.C. Cir. May 28, 2025) ............................................................ 7

*Yee v. Jewell*,
    228 F. Supp. 3d 48 (D.D.C. 2017) ............................................................................ 5

## STATUTES

5 U.S.C. § 701 ............................................................................................................ 13

5 U.S.C. § 702 ............................................................................................................. 5

5 U.S.C. § 706 ............................................................................................................ 14

## REGULATIONS

2 C.F.R. § 200.340 .............................................................................................. 2, 9, 14

## OTHER AUTHORITIES

2 Richard J. Pierce Jr., *Administrative Law Treatise* 764 (5th ed. 2010) .................................. 7, 8

A. Scalia & B. Garner, Reading Law 356 (2012) ......................................................... 14

DOJ, *DOJ Grants Financial Guide* (last updated Oct. 2024),
    https://perma.cc/TT35-JMSF ................................................................................... 15

"No Longer," *Merriam-Webster.com Dictionary*, Merriam-Webster,
    https://www.merriam-webster.com/dictionary/no%20longer .................................. 14

## INTRODUCTION

This case presents a classic contractual dispute.  OJP terminated Plaintiffs' grants; Plaintiffs maintain that the terms of conditions of the grant agreements did not allow for termination in these circumstances.  Plaintiffs are free to pursue their breach claims—but only in the Court of Federal Claims, where they can recover contract damages if they prevail.

Instead, knowing that they cannot pursue contract claims in this forum, Plaintiffs try to recharacterize their claims and requested relief in every possible way: as regulatory, statutory, and constitutional claims that "have nothing at all to do with" making the Government continue to pay money due under the contracts.  Pls.' Reply in Supp. of Mot. for a Prelim. Inj. & Resp. in Opp'n to Defs.' MTD 29, ECF No. 38 ("Reply").  According to Plaintiffs, this case is not about money, but rather their "deep[] concern[]" with whether OJP has properly interpreted OMB's Uniform Guidance and satisfied the APA.  *Id.*  Plaintiffs' artful pleading cannot evade the Tucker Act.  The key question is whether this "action . . . is at its essence a contract claim."  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  Long before the Supreme Court's decision in *Department of Education*, the D.C. Circuit has been clear that "[j]urisdiction under the Tucker Act cannot be avoided by disguising a money claim as a claim requesting a form of equitable relief." *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995) (cleaned up).  This Court should reject Plaintiffs' transparent attempt to do so here.

Tucker Act aside, Plaintiffs' claims should be dismissed for independent reasons.  Plaintiffs' procedural due process claim lacks merit because Government contracts do not create property interests protected by due process.  Plaintiffs' void-for-vagueness claim falls with its procedural due process claim.  The vagueness claim is also meritless on its own terms; there is no constitutional guarantee of clarity in grant or contract criteria, even if these criteria are set by statute or regulation.

Plaintiffs' claim based in the separation of powers, Spending, and Appropriations clauses lacks merit because nothing in the appropriations statutes remotely restricts the agency's usual power to terminate the grants or re-obligate the funds consistent with principles of federal

appropriations law, and the Executive's prerogative to ensure discretionary funding decisions advance the interests of the United States.  A contrary conclusion would flip the separation of powers on its head, giving courts the power to control discretionary spending decisions.

Nor is an *ultra vires* claim a panacea for Plaintiffs.  The Tucker Act impliedly precludes using a non-statutory injunctive claim to award specific performance of a contract, for the same reasons as it impliedly precludes using the APA to that end.  Plus, DOJ plainly did not violate any clear statutory command.

Plaintiffs' remaining claims under the APA are unreviewable for two separate reasons: there are adequate alternative remedies, and DOJ's decisions how to prioritize discretionary funding are committed to agency discretion by law.  The contrary-to-law claim also fails on the merits because DOJ followed applicable regulations when exercising its contractual rights to terminate agreements that no longer advance agency priorities.  None of Plaintiffs' attempts to muddy the water can obscure that the ordinary meaning of 2 C.F.R. § 200.340(a)(4) plainly contemplates termination based on a change in agency priorities.  And Plaintiffs' concession that the termination provision was incorporated by reference into the terms and conditions of each grant dooms their argument that the award agreements did not specify the applicability of that provision.

For these reasons, Plaintiffs' complaint should be dismissed in its entirety.

## ARGUMENT

### I.    This Court lacks subject-matter jurisdiction over Plaintiffs' claims because they are fundamentally contractual.

Plaintiffs make no real attempt to distinguish the Supreme Court's decision in *Department of Education v. California*.  There, as here, "each grant award takes the form of a contract between the recipient and the government."  *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96 (1st Cir. 2025), *stayed*, 145 S. Ct. 966 (2025) (per curiam).  There, as here, the plaintiffs challenge the agency's "actions as insufficiently explained, insufficiently reasoned, and otherwise contrary to law."  *Id.* at 97.  There, as here, the plaintiffs sought "to once again make available already-appropriated federal funds for existing grant recipients"—without explicitly pleading damages or

a breach of contractual terms. *Id.* And there, as here, the same result should follow: Plaintiffs' APA claims should be dismissed because this Court "lack[s] jurisdiction to order the payment of money under the APA" in this grant termination case. *Dep't of Educ.*, 145 S. Ct. at 968.

The result *Department of Education* compels follows from a straightforward application of D.C. Circuit precedent. When a claim against the government is "essentially contractual," it must be pursued in the Court of Federal Claims under the Tucker Act, not in district court under the APA's sovereign-immunity waiver. *Megapulse*, 672 F.2d at 967. To ferret out whether a claim is a "disguised" contract claim, courts look to "the source of the rights upon which the plaintiff bases its claims and upon the type of relief sought." *Id.* at 968. Both factors expose that Plaintiffs' claims are contractual.

### A.    The ultimate source of Plaintiffs' rights are the grant agreements.

To start, the source of rights underlying Plaintiffs' claims are their grant agreements. Plaintiffs seemingly do not dispute that, absent these agreements, they would have no basis for their claims and no interest in continued funding. In other words, "[t]he right to [funding] is created in the first instance by the contract[s]"—not by any regulatory, statutory, or constitutional provision. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). And though some other source of law "might impose procedural requirements on the government having some impact on the contract[s]," those laws "in no way create[] the substantive right to the remedy" Plaintiffs seek. *Id.*

Plaintiffs' primary response on this score is that their claims "depend on the interpretation of either a regulation or constitutional provision" and thus "are not contractual." Reply 33. But this line of argument is foreclosed by *Spectrum Leasing* and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985)—which Plaintiffs conveniently ignore. Consider *Ingersoll-Rand*, in which a contractor alleged that the Government violated the APA by terminating a contract in violation of federal regulations. *See id.* at 77-78. The D.C. Circuit found the claim was nonetheless essentially contractual because the contractor could "challenge the termination based solely on contract principles"—*i.e.*, the "question . . . could be phrased as whether the contract forbids

3

termination under these conditions." *Id.* at 78. So too here: the question is whether the grant agreements permit DOJ to terminate the contracts under these conditions. As the D.C. Circuit held in *Ingersoll-Rand*, that question must be posed to, and answered by, the Court of Federal Claims. *See also Megapulse*, 672 F.2d at 967 n.34 ("[i]t is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA" (citation omitted)).

  **B. Plaintiffs seek the classic contract remedy of specific performance.**

  The heart of Plaintiffs' complaint seeks an injunction compelling the Government to continue paying money under the grant agreements. *See, e.g.*, Compl., Prayer for Relief (N) ("Enter an order . . . that directs Defendants to . . . disburse[] funds to Plaintiffs in the customary manner and in customary timeframes").[1] Indeed, Plaintiffs' entire basis for seeking emergency relief is that they contend they will suffer irreparable harm if this Court does not order funding to be immediately restored. *See* Reply 35-39. Plaintiffs' other requests in their complaint cannot obscure that they seek the quintessentially contractual remedy of specific performance. *See Spectrum Leasing*, 764 F.2d at 894 (describing "an injunction requiring the government to pay monies owed" under a contract as "the classic contractual remedy of specific performance").

  This confirms that this Court lacks jurisdiction over Plaintiffs' claims. *See, e.g.*, *U.S. Conf. of Cath. Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *injunction pending appeal denied*, No. 25-5066 (D.C. Cir. Mar. 28, 2025) (finding this factor "dispositive"). The whole point of channeling contract claims through the Tucker Act is that the Government has not waived immunity with respect to specific performance; the Court of Federal Claims may only award damages. *See Spectrum Leasing*, 764 F.2d at 895. Thus, "[t]o prevent government contractors from avoiding this remedy restriction"—as Plaintiffs are seemingly attempting to do here—"a complaint involving a request for specific performance must be resolved by the Claims Court." *Ingersoll-Rand*, 780 F.2d at 80.

---

[1] Considering this express request, it is unclear how Plaintiffs can plausibly assert that they "are not asking the government to keep paying up." Reply 31 (citation omitted).

Plaintiffs try to avoid this conclusion by pointing to "related injunctive and declaratory relief" sought in their complaint, which they claim has "independent value" separate and apart from an order requiring the Government to pay out hundreds of millions of dollars in grant funds. Reply 30. But that is not the relevant inquiry. Plaintiffs' truncated quotation to *Kidwell* is misleading and misstates the rule. That case explains that a court will treat a request for monetary relief "as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims" when a "complaint *only* requests non-monetary relief that has considerable value independent of any future potential for monetary relief." *Kidwell*, 56 F.3d at 284 (citation omitted) (emphasis added); *see also id.* ("as long as the *sole* remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery" (citation omitted) (emphasis added)). That's not this case. *See* Compl., Prayer for Relief (N). Plaintiffs' "creative drafting" cannot defeat the exclusive jurisdiction of the Tucker Act.[2] *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107-09 (D.C. Cir. 2022).

Plaintiffs' reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), misses the point. *Bowen* concerned states' entitlement to federal funding *directly under a statute*, so it addressed the APA's exclusion from its waiver of sovereign immunity for suits for "money damages," 5 U.S.C. § 702; *see* 487 U.S. at 891-901. Plaintiffs have no such statutory entitlement to the funds at issue here. Even if Plaintiffs' requested relief can be characterized as "other than money damages," they nonetheless fail the *separate* requirement of showing they do not seek relief that another statute "impliedly forbids." 5 U.S.C. § 702; *see Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (jurisprudence about APA carveout for suits for "money damages" "has no

---

[2] Instead of grappling with cases like *Department of Education*, *Spectrum Leasing*, *Ingersoll-Rand*, Plaintiffs claim that the D.C. Circuit decision in *Transohio Savings Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992), supports their position. That case is far afield. It involved a challenge to new "minimum capital requirements for savings and loan associations" that could not "result in the payment of money damages to [plaintiff]." *Id.* at 608. And Plaintiffs neglect to mention that *Transohio* explicitly reaffirmed that, even after *Bowen*, the D.C. Circuit's "very specific holdings that the APA does not waive sovereign immunity for contract claims seeking specific relief" remain good law. *Id.* at 613.

bearing" on the ability of private parties to obtain injunctions to enforce contractual obligations against the federal government); *Yee v. Jewell*, 228 F. Supp. 3d 48, 56 (D.D.C. 2017) (a demand for "monetary relief" for purposes of Tucker Act jurisdiction is a "concept distinct from 'money damages' in the sense of *Bowen*"). Regardless, Plaintiffs' reliance on *Bowen* is doomed by *Department of Education v. California*: the Supreme Court there made clear that *Bowen* does not permit APA jurisdiction in cases like this one involving an "order[] 'to enforce a contractual obligation to pay money.'" 145 S. Ct. at 968 (quoting *Knudson*, 534 U.S. at 212).

### C. The Court of Federal Claims has jurisdiction over claims that the Government failed to pay money due under grant agreements.

Nor are Plaintiffs correct that the Court of Federal Claims lacks jurisdiction over grant agreements—*Department of Education* concerned "education-related grants," after all. *Id.* at 969. Plaintiffs continue to insist that such agreements are not contracts because the element of consideration is missing. But Plaintiffs do not acknowledge, much less meaningfully dispute, the various direct and tangible benefits the agreements confer on the Government—including, for example, that the agreements require each grantee to provide OJP with performance data and allow officials access to facilities for on-site monitoring. Such consideration is more than sufficient. *See Am. Ground Transp., Inc. v. United States*, 165 Fed. Cl. 659, 666 (2023) (parties "decide for themselves what consideration is sufficient. If bargained for, a mere peppercorn satisfies.").

Plaintiffs' argument that the grants do not create a right to money damages is also wrong. Plaintiffs reason that "money damages" only encompasses relief "designed to compensate for completed labors," and that Defendants have asserted that "no other money damages are available to the Plaintiffs" because specific performance is foreclosed in the Court of Federal Claims. Reply 34-35. This is a false choice, and Defendants have asserted no such thing. The proper measure of Plaintiffs' damages is an issue for litigation in the Court of Federal Claims. *See Silver State Land LLC v. United States*, 155 Fed. Cl. 209, 213 (2021) ("In breach of contract situations, the non-breaching party has three enforceable interests: expectation, restitution, and reliance.").

At bottom, Plaintiffs have cited nothing to overcome the strong presumption that money damages are available for breach of a grant agreement.  *See San Juan City Coll. v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004).  And though they again cite to *Bowen*, they make no attempt to reconcile their position with the Supreme Court's admonition that, despite that precedent, "the APA's limited waiver of [sovereign] immunity does not extend to orders to enforce a contractual obligation to pay money."[3]  *Dep't of Educ.*, 145 S. Ct. at 968 (citation omitted); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction ordering the government to restore grant funding and distinguishing *Bowen*).

## II.    Plaintiffs' Constitutional Claims Fail

### A.    Plaintiffs' procedural due process claim fails because grant agreements do not create protected property interests.

Plaintiffs' procedural due process claims lacks merit because Plaintiffs have no protected property interest in continued funding under the grant agreements.  And without a "cognizable liberty or property interest," *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012), a plaintiff cannot state a procedural due process claim against the Government.

As explained in Defendants' motion to dismiss, the "[t]he Supreme Court 'has never held that government contracts . . . create property interests protected by due process.'"  *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) (quoting 2 Richard J. Pierce Jr., *Administrative Law Treatise* 764 (5th ed. 2010)).  As Chief Judge Boasberg explained in *New Vision Photography*, "courts have resisted" applying "due-process principles to government contracts" outside "the employment context."  *Id.*  After all, "'[w]ith scores of millions

---

[3] Plaintiffs instead say that this Court should follow Judge Pillard's dissent in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), *en banc reconsideration*, 2025 WL 1521355 (D.C. Cir. May 28, 2025).  Leaving aside that the en banc court considered a different standard in subsequently denying the Government's stay motion, *see* Defs.' MTD & Mem. In Opp'n to Pls.' Mot. for Prelim. Inj. 13 n.2, ECF No. 27 ("Defs.' Opp."), *Widakuswara* is inapposite.  As to the source of rights, Judge Pillard relied heavily on the fact that federal law "required allocation of funds to those specific, named entities." 2025 WL 1288817, at *11 (Pillard, J., dissenting).  But the ultimate source of any right to funding here is the grant agreements—no statute or regulation requires that *these* funds be allocated to *these* plaintiffs.

of government contracts in effect at any point in time, it is unimaginable that all government agencies would be required to provide a hearing before they take any action that is arguably inconsistent with a contract.'" *Id.* (quoting Pierce, *supra*, at 764) (citing cases). Plaintiffs fail to address these authorities. Nor do Plaintiffs identify a single case in which a court has held, outside the employment context, that a government contract creates a protected property interest.

The cases that Plaintiffs cite in support of their untenable theory of due process do not support their position. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972), and *Esparraguera v. Dep't of Army*, 101 F.4th 28 (D.C. Cir. 2024), both dealt with an employee's property interest in their employment status. *See* 408 U.S. at 578; 101 F.4th at 33. And *NB ex. rel. Peacock v. District of Columbia* concerned a statutory entitlement to prescription drug benefits under the Medicaid statute. *See* 794 F.3d 31, 41 (D.C. Cir. 2015). Especially given their concession that OJP has at least some "discretion to terminate the grants at issue," Reply 20, Plaintiffs fail to show how their grant funding is like "welfare benefits under statutory and administrative standards" or "public employment" subject to "tenure provisions." *Roth*, 408 U.S. at 576-77. That is, Plaintiffs offer no reason to think that their contracts—which are "[o]utside of the employment context"—are different from the "millions of government contracts in effect at any point in time" to which courts do not apply "due-process principles."[4] *New Vision Photography*, 54 F. Supp. 3d at 29 (quoting Pierce, *supra*, at 764).

### B.    Plaintiffs fail to state a void-for-vagueness claim.

Plaintiffs' void-for-vagueness claim fails twice over. First, because Plaintiffs' have no protected property interest in continued grant funding, the vagueness claim falls with their

---

[4] The distinction makes sense. As the Second Circuit explained in *S & D Maintenance Co. v. Goldin*, in the new-property line of cases, "the Due Process Clause [was] invoked to protect something more than an ordinary contractual right. Rather, procedural protection [was] sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure." 844 F.2d 962, 966 (2d Cir. 1988). The same logic does not extend to "contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor." *Id.* at 967. Indeed, "the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns." *Id.* at 966.

procedural due process claim. *See McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) ("Since a void-for-vagueness challenge is ultimately a due-process claim, a plaintiff must allege that he was deprived of a constitutionally-protected property or liberty interest."); *Nat'l Urban League v. Trump*, --- F. Supp. 3d ---, 2025 WL 1275613, at \*17 (D.D.C. May 2, 2025).

Separately, the substance of Plaintiffs' vagueness claim is meritless. *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), squarely holds that there is no constitutional guarantee of clarity in grant or contract criteria, even if these criteria are set by statute or regulation. Plaintiffs' attempt to distinguish *Finley* fails. They do not contend that 2 C.F.R. § 200.340(a) is any vaguer than the criteria at issue in that case. Rather, Plaintiffs assert without citation that *Finley* only applies to decisions to award grants, and that grant termination requires a different vagueness standard. Reply 21-22. But this distinction has no basis in *Finley*. The Supreme Court explained that a lesser vagueness standard is appropriate "when the Government is acting as patron rather than as sovereign." *Finley*, 524 U.S. at 589. The Government does not suddenly stop acting in that capacity when it decides to withdraw its largesse and terminate a grant award. *See Nat'l Urban League*, 2025 WL 1275613, at \*19 (applying *Finley* to grant termination provisions and noting the "relaxed vagueness standard for funding regulations").

Applying a lesser vagueness standard to funding criteria makes sense. The void-for-vagueness doctrine derives from the Fifth Amendment's requirement that *restrictions* on private conduct be sufficiently clear to give a person notice of "what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Grant termination criteria thus raise no more vagueness concerns than grant award criteria; neither work to prohibit private conduct nor require parties to comply with any standard that might affect the agency's contracting decisions. Accepting Plaintiffs' contrary view would be massively destabilizing to Government contracting—Plaintiffs do not contest that their position would, for example, forbid the Government from relying on a termination for convenience clause, which has "almost universal application" in procurement contracts. *See Torncello v. United States*, 681 F.2d 756, 763 (Fed. Cl. 1982).

### C.    Plaintiffs' claim under separation of powers, Spending, Appropriations, and Take Care Clauses fails.

Even accepting Plaintiffs' conclusory and baseless allegation that Defendants are going to "simply pocket the" funds obligated under the grant agreements, Compl. ¶ 111, Plaintiffs' spending and appropriations claim lacks merit. Indeed, their theory is astounding in its implications. Although Plaintiffs concede that the appropriations statutes do not require OJP to allocate funds to any particular entity or for any particular grant program, they nonetheless assert that "Defendants lacked authority under the Spending and Appropriations Clauses to terminate such grants unless otherwise authorized by Congress." Reply 23. This would mean that even if a grant recipient engaged in fraud or bribery, the Constitution would forbid terminating these grants. This cannot possibly be right, and Plaintiffs cite no precedent or principle of law to support this entirely novel understanding of the Spending and Appropriations Clauses.[5]

The separation of powers issues in this case are also distinguishable from *Harris County v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665 (D.D.C. June 17, 2025). *See* Pls.' Notice of Supp. Auth. (ECF No. 39). In *Harris County*, the "thrust of plaintiffs' separation-of-powers claim" was that "HHS has acted unconstitutionally by refusing to spend funds" appropriated by statute. 2025 WL 1707665, at *8. In granting a preliminary injunction in part, the court found a separation of powers violation only with respect to the sources of funds whose "availability deadlines have passed," such that the funds were no longer available for "new obligations or re-obligation." *Id.* at * 7. By contrast, the court found no separation of powers violation for the sources of funds that were "open-ended" and had no statutory termination date. *Id.* at *9. For these "no year" funds, the agency could "re-obligate any money freed up by the termination of plaintiffs' grants." *Id.* Thus, the agency had "not refused to spend these funds; it has declined to spend them in a certain way." *Id.* Here, as explained in Defendants' opening brief, all of the funds appropriated for the

---

[5] Plaintiffs instead rely on *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405 (D. Md. 2025). Reply 24. Leaving aside the merits of that decision, that case concerned a challenge to an executive order that directed agencies to withhold grant funds, not an agency's decisions to terminate individual grants based on those agreements' terms.

terminated grants are drawn from "no year" appropriations, meaning the funds will remain available indefinitely until expended, regardless of the fiscal year. There are no expired funds at issue in this case. Accordingly, the reasoning of *Harris County* supports Defendants, not Plaintiffs.[6]

Plaintiffs' theory under the Take Care Clause is similarly deficient. As explained, the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. Defs.' Opp. 25. Plaintiffs' primary response is that this would mean "a President could evade Article II review by simply delegating the task to subordinates." Reply 25 (citation omitted). This is incorrect. "[A] President, though able to delegate duties to others, cannot delegate the ultimate responsibility or the active obligation to supervise that goes with it." *Clinton v. Jones*, 520 U.S. 681, 713 (1997) (Breyer, J., concurring). Plaintiffs' position would nullify the APA and allow any challenge to agency action to proceed as a cognizable claim under the Take Care Clause.

### D. Plaintiffs' *ultra vires* claim fails.

Plaintiffs' *ultra vires* claim is not cognizable and, in any event, substantively vacuous. The Supreme Court recently clarified the narrow scope of a non-statutory *ultra vires* claim, describing it as the judicial equivalent of a "Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n, v. Texas*, No. 23-1300, 2025 WL 1698781, at *8 (U.S. June 18, 2025) (citation omitted). The Supreme Court explained that *ultra vires* claims are "strictly limited" to the "painstakingly delineated procedural boundaries of" of the Court's decision in *Leedom v. Kyne*, 358 U.S. 184 (1958). *Id.* The *Kyne* exception applies only where an "agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* at *9.

---

[6] *Harris Country* also refused to grant relief under the Spending Clause and APA, expressly concluding that the plaintiffs have "not shown a sufficient likelihood that the Court has jurisdiction over plaintiffs' arbitrary-and-capricious claim in light of *Department of Education*." *Harris Cnty.*, 2025 WL 1707665 at *15.

Neither of these two exceptional circumstances applies here.  Plaintiffs merely attempt to "dress up a typical statutory-authority argument as an *ultra vires* claim."  *Id.*  There is no allegation that Defendants have no authority whatsoever to terminate grant agreements or have taken actions contrary to a specific statutory prohibition.  Indeed, Plaintiffs' do not even identify the statute DOJ supposedly violated in terminating the grants.  *See* Compl. ¶¶ 99-102.  And insofar as the claim is based on the appropriation statutes, Plaintiffs do not dispute that nothing in any appropriation statute "specifical[ly] prohibit[ed]" DOJ from terminating Plaintiffs' grant agreements.  *Nuclear Regul. Comm'n*, 2025 WL 1698781, at *9.

Additionally, *ultra vires* review is not available where "a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review."  *Id.*  Plaintiffs here have an "alternative path to judicial review" in the Court of Federal Claims.  *Id.*  As explained already, "the [Tucker Act] statute provides . . . clear and convincing evidence that Congress intended to deny the District Court[s] jurisdiction to review" claims which are in essence contractual.  *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991).  Allowing a breach-of-contract claim to be reframed as an *ultra vires* action against the relevant executive official would allow plaintiffs to easily circumvent the Tucker Act's remedial limits.  *See Nuclear Regul. Comm'n*, 2025 WL 1698781, at *8 (explaining that ultra vires review is not an "easy end-run around the limitations of the Hobbs Act and other judicial-review statutes").  This Court should reject such a maneuver here.

## III. Plaintiffs' APA Claims Are Unreviewable For Independent Threshold Reasons and Fail On The Merits.

### A. Plaintiffs have other adequate remedies available to them.

The APA likewise does not permit Plaintiffs' APA claims because there are "existing procedures for review of agency action."  *Bowen*, 487 U.S. at 903.  As explained, Plaintiffs can press their claims that the contract terminations were unlawful in the Court of Federal Claims, which can provide "relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 22 (D.C. Cir. 2009) (citation omitted).  Thus, Plaintiffs' pivot to their request for adjacent declaratory and

injunctive relief is immaterial for the reasons already explained above.  It is similarly irrelevant that Plaintiffs may not be able to proceed on a class-wide basis in the Court of Federal Claims; each putative class member can receive adequate relief in individual lawsuits.  (And the restrictions on class actions in the Court of Federal Claims only confirm why Plaintiffs' request for class certification of hundreds of distinct contract terminations is improper).  Last, whether the Court of Federal Claims can provide an adequate remedy for Plaintiffs' constitutional and *ultra vires* claims says nothing about the application of the adequate remedy bar to Plaintiffs' APA claims.

**B.    Grant funding decisions are committed to agency discretion by law.**

Independently, Plaintiffs' APA claims fail because they challenge DOJ's decision about how to allocate and expend a lump-sum appropriation.  That decision is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).  Plaintiffs do not dispute that the only relevant appropriations are lump-sum appropriations, and they cannot evade the conclusion *Lincoln* compels.

Plaintiffs say that *Lincoln* does not apply because (1) termination of funding is different than an initial allocation, and (2) DOJ regulations cabin its discretion.  Reply 5-7.  According to Plaintiffs, grant termination decisions "implicate[] entirely different considerations" because grantees come to rely on awarded funds.  *Id.* at 5.  But this policy argument has nothing to do with the relevant inquiry under § 701(a)(2):  whether "the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln*, 508 U.S. at 191 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  Regardless, *Lincoln* itself shows that decisions to discontinue funding are committed to agency discretion— even where a plaintiff alleges such a decision violates the agency's own regulations.

The plaintiffs in *Lincoln* challenged the Indian Health Service's "decision to terminate the Program" that provided health services to children in the southwest.  *Id.* at 184, 190.  The Supreme Court even framed the issue as whether "the Service's decision to terminate the Program [is] reviewable under the APA."  *Id.* at 190.  And like Plaintiffs here, the plaintiffs in *Lincoln* argued that terminating the program violated various sources of law, including "the [APA], various agency

regulations, and the Fifth Amendment's Due Process Clause." *Id.* at 189.  The Court nonetheless held that the "decision to discontinue the Program" was "unreviewable under § 701(a)(2)." *Id.* at 193.  Because the various legal authorities on which the *Lincoln* plaintiffs relied at most spoke "about Indian health only in general terms," the agency was not required to undertake or continue any particular program.  *Id.* at 194.  Plaintiffs' efforts to subject a funding allocation decision to APA review based on similarly general statutory provisions should meet the same result.

> C.    **Plaintiffs fail to plausibly allege that DOJ acted contrary to law.**

Even if Plaintiffs' APA claims were reviewable, Plaintiffs have not shown that OJP's terminations were "not in accordance with law."  5 U.S.C. § 706(2)(A).

*First*, Plaintiffs' argument that 2 C.F.R. § 200.340(a)(4) does not allow terminations "based on a post-hoc 'change' in agency priorities" is contrary to common sense and the text of the regulation.  Reply 9.  The ordinary meaning of the regulation controls.  *See Huashan Zhang v. USCIS*, 978 F.3d 1314, 1322 (D.C. Cir. 2020).  There are, of course, various situations in which an award may "no longer effectuate[] the program goals or agency priorities."  2 C.F.R. § 200.340(a)(4).  In ordinary parlance, it could be said that an award "no longer" advances an agency's priorities in a situation in which the agency's priorities have changed, and the award is inconsistent with those new priorities.  In that circumstance, "something that was once true" about an award "is not now true."  "No Longer," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/no%20longer (last accessed June 23, 2025).  DOJ's interpretation thus hews to the ordinary meaning of § 200.340(a)(4) and forecloses Plaintiffs' cramped view of that provision.

Plaintiffs respond that "[t]his interpretation ignores that the word 'change' is nowhere to be found in the text."  Reply 11.  True enough.  But "[a]dhering to the *fair meaning* of the text . . . does not limit one to the hyperliteral meaning of each word in the text."  A. Scalia & B. Garner, Reading Law 356 (2012).  And Plaintiffs' preferred interpretation is entirely atextual.  In their view, this Court should interpret "agency priorities" to mean "agency priorities [as] articulated when the award was made."  Reply 12.  But this artificial limitation has no foundation in the text.

*Second*, the grant agreements clearly and unambiguously specify that an award may be terminated under § 200.340(a)(4).  Plaintiffs do not dispute that § 200.340(a)(4) is expressly incorporated by reference into the terms and conditions of each award.  Instead, Plaintiffs complain that incorporation by reference does not constitute "clear and unambiguous notice."  Reply 14.  But all that § 200.340(b) requires is that the award's terms and conditions "clearly and unambiguously specify all termination provisions"—that is different from requiring that the text of the agreement itself *state* all applicable termination provisions.  That Plaintiffs were allegedly not on notice of the applicability of § 200.340(a)(4) stems from their failure to investigate the terms and conditions incorporated into their awards, not because those terms and conditions were insufficiently specific.  There is no ambiguity here; Plaintiffs admit the guidance is "incorporated into the grants."  Pls.' Mot. for a Prelim. Inj. 35, ECF No. 3.

Regardless, Plaintiffs are wrong in their assertion that the 2024 version of OMB's guidance applies.  According to Plaintiffs, DOJ through its Grants Financial Guide retroactively applied the 2024 guidance to all awards active on or after October 1, 2024.  Not so.  The Grants Financial Guide states that, "[i]n general, [grant recipients] should follow the requirements in effect at the time of award," and goes on to state that the 2024 guidance "appl[ies] to Federal awards active on or after October 1, 2024 (*with respect to actions after that date*), and Federal awards made on or after that date."  DOJ, *DOJ Grants Financial Guide* at 3 (last updated Oct. 2024), https://perma.cc/TT35-JMSF (emphasis added).  In terminating the grant agreements, DOJ took no action under § 200.340(b).  That provision regulates the content of an award's terms and conditions, which are set at the outset of the contracting process.  So the 2020 version of that provision continues to apply to the awards here.  This is consistent with DOJ's invocation of § 200.340(a)(4)—when DOJ *acted* to terminate Plaintiffs' grants, the 2024 provision applied.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' complaint and enter judgment in Defendants' favor.

DATED: June 23, 2025                    Respectfully submitted,


                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        YAAKOV M. ROTH
                                        Principal Deputy Assistant Attorney
                                        General, Civil Division

                                        ANDREW I. WARDEN
                                        Assistant Director
                                        Federal Programs Branch

                                        */s/ John Bailey*
                                        John Bailey
                                        Ohio Bar No. 104260
                                        Counsel
                                        United States Department of Justice
                                        Civil Division
                                        950 Constitution Ave. NW
                                        Washington, DC 20005
                                        Phone: (202) 514-6993
                                        Email: john.bailey@usdoj.gov

                                        *Counsel for Defendants*