IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


VERA INSTITUTE OF JUSTICE, ET AL., )
                                   )
          Plaintiffs,              )
                                   )     CV No. 25-01643
     vs.                           )     Washington, D.C.
                                   )     June 26, 2025
U.D. DEPT OF JUSTICE, ET AL.,      )     2:03 p.m.
                                   )
          Defendants.              )
_____)


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:              Jennifer Fountain Connolly
                                 Lisa Newman
                                 Somil Trivedi
                                 DEMOCRACY FORWARD FOUNDATION
                                 P.O. Box 34553
                                 Washington, D.C. 20043
                                 (202) 448-9090
                                 Email:
                                 jconnolly@democracyforward.org
                                 Email:
                                 lnewman@democracyforward.org
                                 Email:
                                 strivedi@democracyforward.org

                                 Joshua Stanton
                                 E. DANYA PERRY PLLC
                                 DBA Perry Law
                                 445 Park Avenue, 7th Floor
                                 New York, NY 10022
                                 (212) 213-3070
                                 Email:
                                 jstanton@danyaperrylaw.com


For Defendant
Dept of Justice:                 John Bailey
                                 DOJ-Civ
                                 Civil
                                 950 Pennsylvania Ave NW
                                 Ste 3618
                                 Washington, D.C. 20530
                                 (202) 514-6993
                                 Email: john.bailey@usdoj.gov

APPEARANCES CONTINUED

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   E. Barrett Prettyman CH
                                   333 Constitution Avenue, NW
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
1              P R O C E E D I N G S
2              COURTROOM DEPUTY:  All rise.  The Honorable Amit
3   P. Mehta presiding.  Please be seated and come to order.
4              THE COURT:  Good afternoon, everyone.  Please be
5   seated.
6              COURTROOM DEPUTY:  Your Honor, we're now on the
7   record for Civil Action 25-1643, Vera Institute of Justice,
8   et al., versus the U.S. Department of Justice, et al.
9              Present for plaintiffs is Jennifer Connolly,
10  Lisa Newman, Joshua Stanton, and Somil Trivedi.
11             For the Department of Justice, John Bailey.
12             THE COURT:  All right.  Good afternoon, everyone.
13  Welcome.  It's good to be with-you.
14             Okay.  So we're here on the plaintiffs' motion for
15  a preliminary injunction and the defendants motion to
16  dismiss.
17             So why don't we begin with plaintiffs' counsel.
18             MS. NEWMAN:  Good afternoon, Your Honor.
19  Lisa Newman on behalf of plaintiffs.
20             Jennifer Connolly will be handling the
21  class-certification motion.  I will largely be handling the
22  argument on the preliminary injunction and motion to
23  dismiss, and my co-counsel, Josh Stanton, will be handling
24  the constitutional claims on those motions.
25             We're open to proceeding in any order that you
```

1    prefer, but I'll start on the PI.

2                THE COURT:  Jump on in.

3                MS. NEWMAN:   Okay.

4                In April 2025, OJP terminated 376 grants worth

5    more than 8 million -- $800 million using a form termination

6    notice.  This notice included identical and unsupported

7    language stating that plaintiffs' awards no longer

8    effectuated the program goals or agency priorities.

9    Grantees were forced to stop their work immediately.

10               This abrupt termination of plaintiffs' grants had

11   an immediate and devastating impact on plaintiffs, their

12   staff, their partners and subgrantees and the individuals

13   and communities that they serve.

14               Plaintiffs have had to lay off critical staff, and

15   all plaintiffs were forced to eliminate vital services that

16   they provide and that are central to their missions.

17               This discontinuation of services has led to

18   serious reputational harms, an erosion of hard-earned trust

19   that plaintiffs have spent years and decades building in

20   their communities.

21               Plaintiffs are likely to succeed on the merits.

22               OJP's decision to terminate more than $800 million

23   in grant funding using the same cursory and unspecific

24   rationale is quintessential, arbitrary and capricious agency

25   action.  And it is inconsistent OJP's regulations.

1    I'll start with arbitrary and capricious claims.

2    Plaintiffs are likely to succeed on their claim

3 that OJP's identical cursory and unreasoned terminations

4 represent nearly every hallmark of arbitrary and capricious

5 action.

6    OJP admits that each notice was identical and did

7 not include any explanation specific to the terminated

8 grantee or any discussion of the significant reliance

9 interests at stake.  That is insufficient under the APA.

10    THE COURT:  Counsel, could I just sort of cut to

11 the heart of all of this and ask you why your arbitrary and

12 capricious claim -- let's separate out the APA claim into

13 two categories.  There's the arbitrary and capricious

14 element of it, which you just described, and then there's

15 the contrary of law element, which we'll get to in a moment.

16    But the arbitrary and capricious component of it,

17 I mean, why isn't that sort of on all fours with the

18 Department of Education matter before the Supreme Court?

19 It's the exact same ground on which the District Court in

20 the First Circuit found that the grant terminations in those

21 cases were unlawful; Supreme Court said -- I understand it

22 was a less-than, you know, fully developed posture, but

23 nevertheless, the Supreme Court said that the plaintiffs

24 were not likely to prevail on the merits there in terms of

25 their jurisdictional arguments.

1          I mean, aren't we in the exact same -- aren't you

2     in the exact same position, at least with respect to your

3     arbitrary and capricious claims?

4          MS. NEWMAN:  We don't think we are for a few

5     reasons.

6          So I think the first and most important is, the

7     *Department of Education* case did not overrule *Bowen*,

8     it cited to *Bowen*, and so the analysis under *Bowen* and the

9     D.C. Circuit cases applying *Bowen* about whether or not a

10    claim is essentially one for money damages still stands.

11         The plaintiffs there also didn't bring a

12    constitutional claim as we have brought here.  And they

13    didn't challenge that the underlying agreement --

14         THE COURT:  That's true, although I -- you know,

15    and I have questions for the government on this.  I'm not

16    sure why that matters.  In other words, would you agree with

17    me that the claims and the jurisdiction for the claims need

18    to be assessed on a claim-by-claim basis?

19         MS. NEWMAN:  We do.

20         THE COURT:  So the fact that you've brought

21    constitutional claims really ought not to have any bearing

22    on your arbitrary and capricious claims, correct?

23         MS. NEWMAN:  Yes, that is correct.

24         THE COURT:  All right.

25         So they neither rise or fall on their own merit,

```
1    at least jurisdictionally.
2              And so is Bowen then what you think is the reason
3    or that's the case you think allows you to be in this court
4    as opposed to the Court of Claims?
5              MS. NEWMAN:  I would say Bowen, Transohio,
6    Megapulse, and Crowley, all of which considered under the
7    Tucker Act whether a claim was, at its essence, contractual
8    or whether or not it was one that was, you know, not at its
9    essence contractual seeking money damages.  And so we think
10   under all of those cases, the -- let's take -- since we're
11   talking about --
12             THE COURT:  Can I -- sorry to interrupt you for a
13   moment.
14             But I have a hard time understanding or separating
15   out what you say is sort of essentially contractual from
16   what your arbitrary and capricious claim is, because,
17   by definition, the arbitrary and capricious claim isn't
18   contractual, right?
19             MS. NEWMAN:  Is not.
20             THE COURT:  Right.
21             MS. NEWMAN:  Right.
22             THE COURT:  But at the same time, the
23   Supreme Court says it shouldn't be here.
24             But because -- because -- you know, the contract
25   is, in some sense, an afterthought for the APA, at least as
```

 1    you've framed it.

 2                MS. NEWMAN:  Yes.

 3                THE COURT:  And I agree with you that, you know,

 4    you don't necessarily need to rely on the contract to

 5    determine whether reliance interests have been considered,

 6    whether there's been a sufficient explanation, but it seems

 7    to me that what you've then suggested is that every contract

 8    claim can somehow then become an APA claim.

 9                MS. NEWMAN:  We're certainly not suggesting that,

10    Your Honor.

11                THE COURT:  But why not?

12                In other words, anybody who's on the bad end of a

13    breach, why couldn't they also say, look, you also didn't

14    consider our reliance interest, you also didn't consider

15    our -- you know, even give us a sufficient explanation.

16                And isn't that the whole point of channeling these

17    claims into the Court of Claims as opposed to bringing them

18    in the District Court under the APA?

19                MS. NEWMAN:  I think it comes back to what the

20    Court in *Megapulse* said, which is, District Courts still --

21    and courts still retain their rationality in assessing

22    whether or not the relief sought from that type of claim is

23    actually one that is contractual in nature, that is, seeking

24    money damages, and that really has to be assessed on a

25    claim-by-claim basis.

1          And as to the arbitrary and capricious claim,

2    we're certainly not seeking any sort of, like, backwards

3    compensatory relief, we're seeking classic remedies under

4    the APA.

5          And I understand Your Honor's concern to be one

6    about floodgates and if a claim here is allowed.

7          THE COURT:  I guess I do wonder -- let's leave

8    aside the remedy component of the test for a moment; we'll

9    talk about that in a second.

10          But in terms of whether something is sort of

11    essentially -- when it depends on the contract or whether it

12    depends on some other source for the right, I mean, I guess

13    I'm just confused -- or not confused, but I just have a hard

14    time conceiving of a case in which somebody, again, who's on

15    the bad end of a contract or a grant couldn't come forward

16    and make the same claims that you are, and then say, well,

17    look, you know, this isn't a contract claim, this is an

18    arbitrary and capricious claim.  And if that were case, then

19    I think -- I mean, doesn't this whole channeling lose its

20    teeth and the limited waiver of immunity lose its teeth

21    under 702?

22          MS. NEWMAN:  Again, I think it really depends on

23    what this specific contract we're talking about.

24          I mean, all of the case law around this, I think

25    there's a reason why it breaks it into buckets about what

1    the source of the right is, whether or not the agreement is

2    actually a contract, what the relief they're seeking

3    actually is, is it something like in a lot of cases cited by

4    the government where you're talking about a procurement

5    contract, where services are being, you know, rendered to

6    the government for energy bars or for some sort of

7    communication, and is the -- is what the claim really

8    seeking some sort of backward-looking payment for services

9    rendered and then the parties are done; or is what the claim

10   seeking some sort of reinstatement or setting aside of those

11   agreements that parties can continue on under the contract.

12            And the APA has existed for a long time.  And this

13   hasn't been a problem as to whether or not suddenly

14   everybody is reframing their claims under the APA when they

15   really want contractual damages.

16            THE COURT:  Well, I think -- well, okay, that may

17   be.

18            But what about the second prong, and that's --

19   I mean, it seems to me that what you're asking for is

20   essentially specific performance.  Would you agree with

21   that?

22            MS. NEWMAN:  Yes.

23            And *Transohio* was clear that an injunction that

24   looks like specific performance is not invalid under --

25            THE COURT:  Right.

1          Well, *Transohio* is a slightly different case

2    because specific performance had to do with an accounting

3    issue, not with the payment of money.

4          But in the other cases where a payment of money is

5    the request and the Court has characterized it as specific

6    performance, the Court has says it's contract, right?

7    That's what the Circuit said in *Spectrum* and the Circuit

8    said in *Ingersoll Rand*, right?

9          MS. NEWMAN:  I'm not sure about the second one,

10    but as to the first one, in *Spectrum*, I believe so.

11          THE COURT:  Right.

12          And so why isn't that -- doesn't this case fall

13    into that category?

14          Because you're asking for ultimately, among other

15    remedies, but your primary remedy, it seems to me, is to

16    continue payment of the monies.

17          MS. NEWMAN:  So that is one of the types of relief

18    that we are seeking.

19          But we're seeking a lot more than just a set-aside

20    of the unlawful terminations.  We're also seeking

21    preliminary prospective injunctive relief, enjoining the

22    government's interpretation of Section 200.340.

23          THE COURT:  Does that have any independent value?

24          MS. NEWMAN:  Absolutely it does, Your Honor.

25          THE COURT:  How does it have any independent value

1    from continuing to be paid?

2            MS. NEWMAN:  So if you decide, for one of the

3    reasons in our brief, that the government unlawfully

4    terminated those grants and they shall be reinstated,

5    plaintiffs would still be subject to the government's same

6    interpretation as to whether or not Section 200.340 allows

7    for a termination based on a change in agency priorities.

8            So if that issue isn't ruled upon, the grants are

9    reinstated and the government does the exact same thing as

10   it did before and terminates the grants, we're back in the

11   same position moving forward.

12           THE COURT:  I'll ask your colleague on the defense

13   side this in a moment, but do you understand them to

14   interpret at least the portion of the regulation differently

15   than you do insofar as the regulation provides, or seemingly

16   provides pretty clearly, that in order for a grant to be

17   terminated, the basis for the termination has to be spelled

18   out in the grant?

19           MS. NEWMAN:  Yes.

20           THE COURT:  Do you think they take a different

21   position?

22           MS. NEWMAN:  I think we differ greatly into how

23   that has to be spelled out in the grant.

24           The government's position is that incorporation by

25   reference of 280 pages of the uniform regulations is

1  sufficient to satisfy Section 200.340's clear and

2  unambiguous notice, and we do not believe that is the proper

3  reading of that provision given the regulatory history.

4         And so I think this is a very critical point as to

5  whether or not relief is going to be complete and the relief

6  that we could get in the Court of Federal Claims which does

7  not have jurisdiction to render an injunction or declaratory

8  relief in line with what we are seeking.  And I don't

9  understand the government, really, to contest that other

10  than to say that we have artfully pleaded our claims such to

11  get around the Tucker Act jurisdiction.

12         THE COURT:  So then how is this different than --

13  I mean, you're moving away for a moment from your arbitrary

14  and capricious claim to the contrary-to-law argument.

15         How do you square your position with *Ingersoll*

16  *Rand*, which I don't think your papers have addressed.  And

17  that was a case in which the plaintiff came in and said the

18  contract was violated because it violated certain

19  regulations that had been incorporated into the contract.

20  And ultimately the Court said that doesn't matter, this is

21  still a contract claim.

22         Help me understand why you think that case

23  factually is different from this one.

24         MS. NEWMAN:  So I think in that instance, I come

25  back to first principles, which is, what is the Court

1    primarily having to look at.

2         And it's been a while since I've looked at

3    *Ingersoll Rand* so I don't recall the specific facts of that

4    case.  I apologize.

5              THE COURT:  That's okay.

6              MS. NEWMAN:  But *Crowley* and the D.C. Circuit's

7    Judge Pillard's decision have all emphasized that the

8    question is, what are you primarily looking to.  Are you

9    primarily looking to interpret the terms of the agreement or

10   are you looking at statutes, regulations, and the

11   Constitution?

12             And we think given the vast bulk of our claims and

13   going claim by claim as to each of our claims, we're not

14   relying primarily on the terms of the agreement.

15             The only one that arguably --

16             THE COURT:  Okay.  Go ahead and finish your

17   thought.

18             MS. NEWMAN:  The only one that arguably does

19   involve looking at the terms of the agreement is what you

20   and I were just discussing, which is whether or not

21   incorporation of the entirety of the regulations is

22   sufficient to satisfy Section 200.340(b).

23             THE COURT:  Okay.

24             So you would agree that at least insofar as your

25   contrary to law claim, which is how I understand it to be

1    framed, which is that the government's failure here to

2    include this failure to effectuate agency priorities, or no

3    longer effectuates agency priorities, that condition isn't

4    included in these grants, and, therefore, can't be a basis

5    for grant termination?

6            MS. NEWMAN:  Correct.

7            THE COURT:  Right.  Okay.

8            And so why then isn't at least that claim a

9    contract claim that I can't hear?

10           MS. NEWMAN:  So, again, *Megapulse*, *Crowley*, and

11   *Transohio* have all been clear that simply looking at a

12   contract does not turn a claim into the contract claim.

13           And in all of those cases, the Courts were looking

14   at the terms of the agreement.  And the question really is,

15   what is the Court primarily required to look at in assessing

16   the plaintiff's claim.

17           And it's undisputed, we all are in agreement on

18   what the agreement says, and the question really then is

19   whether or not that is sufficient under Section 200.340.

20           And I think in *Megapulse*, the Court said, the fact

21   that there is a contrast -- that we're looking at the terms

22   of a contract doesn't suddenly change this into some sort of

23   contract claim.

24           In all of those cases, the Courts were looking at

25   some sort of provision of the contract, but they were

1    nonetheless found to be not contractual claims when you look

2    at the type of relief that they were seeking and whether or

3    not that relief was in alignment with what the Court of

4    Federal Claims could provide, whether it was declaratory

5    injunctive relief typically.

6              THE COURT:  Okay.

7              And just to be clear, in terms of the declaratory

8    relief you're seeking, that -- or what you're claiming is

9    the independent relief or the relief in addition to the

10   continuation of the payment, which I think you've agreed is

11   effectively specific performance, right?

12             MS. NEWMAN:  Yes.

13             THE COURT:  It's a continuation of the grant.

14             MS. NEWMAN:  Yes.  Yes.

15             THE COURT:  And in addition to that, you said that

16   there's some independent value to declaratory relief,

17   that is, a declaration by the Court that the termination

18   here was unlawful because it was not consistent with the

19   regulations?

20             MS. NEWMAN:  Correct.

21             THE COURT:  But is that what ultimately --

22             MS. NEWMAN:  Injunctive relief.

23             THE COURT:  -- I would need to rule as opposed to

24   what I thought we just discussed, at least in terms of your

25   contrary-to-law claim, which is that the ruling would be in

1   your favor but the contract doesn't contain the term that

2   you believe it is required to contain in order to rescind

3   the grant.  Isn't that a declaration as to the contract and

4   not a regulation?

5            MS. NEWMAN:  No.

6            I think it would be a declaration as to the proper

7   interpretation of Section 200.340.

8            And so as to the contrary-to-law claim, I think

9   the --

10            THE COURT:  What if they don't agree?

11            In other words -- what if they don't disagree?

12            In other words, if they don't disagree that in

13   order to terminate, the contract has to spell out the

14   termination basis; in other words, they can't terminate on

15   some ground that's not in the contract.

16            If they agree that the regulation stands for that

17   proposition, then aren't -- isn't the only thing in dispute

18   whether the contract contains the term?

19            MS. NEWMAN:  Yes, that is correct.

20            But I don't understand them to agree with us on

21   that.

22            THE COURT:  Okay.

23            I'm going to ask your colleague that in a second.

24            MS. NEWMAN:  Yeah, the agreements -- I think it's

25   undisputed that the agreements did not contain a clause that

1    said, this agreement may be terminated on the basis of a

2    failure to effectuate agency goals or agency priorities,

3    which is in contrast with -- there is a recent District of

4    Maryland case, similar question as to whether or not Section

5    200.340 could be interpreted, and there the EPA actually did

6    include as a specific term within that agreement that exact

7    language.

8         And we think that when you consider the whole of

9    it, incorporating the entirety of the uniform regulations

10   while also including specific other subregulations from that

11   part that plaintiffs had to also abide by while leaving out

12   that the contract could be terminated on this basis as well

13   doesn't -- it just simply is not in line with what OMB said

14   in the 2020, in the 2024 regulations when it was making

15   these changes and with regard to the text.

16        But -- so we've talked about contrary to law,

17   arbitrary and capricious.

18        You mentioned declaratory relief, but, again,

19   I think injunctive relief is also important here.

20        Preliminary injunctive relief as to whether or not

21   OJP's interpretation of Section 200.340 is lawful.

22        And if the Court finds that the way that OJP has

23   interpreted this across all 376 grants identically is

24   unlawful, we believe that prospective injunctive relief

25   would be appropriate here and would, again, protect grantees

1    from having their grants terminated on the same basis.

2              THE COURT:  And so what is it that you believe

3    OJP's interpretation is that you want enjoined?

4              MS. NEWMAN:  That Section 200.340 allows for an

5    agency to terminate a grant based on a change in agency

6    priorities that happened after the grant was awarded.  So a

7    post hoc change in agency's priorities that comes midstream

8    in the middle of a grant.  And we don't believe that that is

9    a proper interpretation of Section 200.340.

10             THE COURT:  So say hypothetically the grant

11   included the very language that's in the regulation, word

12   for word, you know, Department of Justice can terminate

13   based upon the language in the regulation.

14             You believe that the change in priority -- that,

15   in other words, the priorities would have to be frozen in

16   time, and the only way that the grant could be rescinded or

17   canceled under that provision would be if the grant no

18   longer effectuates the priorities under which the grant was

19   made?

20             MS. NEWMAN:  That's correct.

21             And that is the way that that provision has been

22   interpreted since it was first promulgated in 2020.  No

23   agency and no administration prior to this administration's

24   sort of across-the-board terminations of grants on this

25   basis had previously interpreted Section 200.340 in that

```
 1   way.
 2           THE COURT:  But would you agree with me that the
 3   only -- well, the reason that injunctive relief or
 4   declaratory relief would have any value is because of the
 5   fact that you have a grant?
 6           MS. NEWMAN:  Yes.
 7           THE COURT:  Right.
 8           There's no sort of independent benefit that you
 9   derive from it but for the grant?
10           MS. NEWMAN:  To -- what's the "it" there?
11           To injunctive and declaratory relief?
12           THE COURT:  From a declaration that the regulation
13   should be interpreted as you would have it?
14           MS. NEWMAN:  In other words, are you asking
15   because the grant is sort of the antecedent to that?
16           THE COURT:  Correct.
17           MS. NEWMAN:  There wouldn't be independent value
18   to it were there not grants?
19           THE COURT:  Correct.
20           MS. NEWMAN:  I think that's correct, we wouldn't
21   be here if grants had not been awarded to all of the
22   plaintiffs.
23           But the fact that a grant exists and is the
24   antecedent to all of this, yeah, is not enough to make that
25   contractual relief --
```

 1              THE COURT:  Sure.  Fair enough.

 2              MS. NEWMAN:  -- for this Court's jurisdiction.

 3              THE COURT:  Okay.

 4         I don't mean to cut off anything else you might

 5    wish to argue on these matters, so I'll allow you to do so.

 6              MS. NEWMAN:  Any other questions?

 7              THE COURT:  Not on the APA claims, no.

 8              MS. NEWMAN:  Okay.

 9         So there's a couple of things that I will say

10    briefly.

11         So plaintiffs have provided uncontroverted

12    evidence of the deep and irreparable harms that are

13    presently being caused by OJP's termination of their grant

14    funding.

15              And this includes harms that courts have deemed to

16    be irreparable in funding cases across the board, including

17    laying off of staff, the elimination of critical and

18    life-saving programming central to plaintiffs' missions,

19    deep reputational harms, and other harms that have had

20    devastating impacts on the safety of individuals in

21    communities across the country.

22              THE COURT:  Can I ask you a question.

23         The defendant has argued or asserted that,

24    at least with respect to the irreparable harm prong,

25    that I should not be looking at the impact on the

1    beneficiaries or those who are benefiting from the grant.

2    And maybe that ought to come under a different equitable

3    prong.

4            But do you agree with that contention, that is,

5    all I really should be looking at is the harm to the

6    organizations?

7            MS. NEWMAN:  We don't agree with that contention.

8            And I think that gets to one of the cases that we

9    cited in our brief, I believe, at page 36 of our reply

10   brief, that harm to an organizational's mission,

11   an inability to carry out that mission and programs under

12   that organizational ambit has been found to be irreparable

13   harm.

14           And I think when you think about the --

15           THE COURT:  So you would say that I should look to

16   the harm to the grant beneficiaries as a way of identifying

17   whether there's harm to your mission that is irreparable?

18           MS. NEWMAN:  I don't know that you have to do it

19   in that order.

20           THE COURT:  I wouldn't say it's in that order,

21   but as evidence of, I should say.

22           MS. NEWMAN:  One of the types of evidence of the

23   harms to the organization is the harms -- funding flowing

24   from the grant money that was awarded to do this exact type

25   of work in the communities, you know, community violence

1    intervention, help with victims of crime.

2         And, of course, when that funding stops and is

3    abruptly cut off, the work that that award was designed to

4    do also abruptly stops, and we think that the Court can

5    certainly properly consider that within whether or not an

6    organization is able to carry out its mission.

7         THE COURT:  Do you think *Department of Education*

8    stands for the proposition that, even for a nonprofit, the

9    ability to sort of continue providing services, if not

10   optimally under the grant, with the grant, that your ability

11   to continue to provide some services would mean you've

12   fallen short of establishing irreparable harm?

13        MS. NEWMAN:  I don't understand *Department of*

14   *Education* to stand for that proposition.

15        You know, it certainly didn't disturb the

16   longstanding precedent about harm to organizational missions

17   reputational harm.

18        And courts, post *Department of Education* --

19   District Courts post *Department of Education* in grant

20   termination funding have likewise considered that *Department*

21   *of Education* doesn't -- does not prevent that sort of

22   consideration of irreparable harm.

23        THE COURT:  Right.

24        MS. NEWMAN:  And I think -- so we've got harm to

25   the mission, and we also have reputational harms, which is

1    also a well-established way to establish irreparable harm.

2            And I think given the programs at issue here, the

3    like -- the harm to reputation and the erosion of trust in

4    these communities can't be overstated.

5            They've caused severe reputational harms that many

6    of these organizations have spent years and decades building

7    that predated these grants in their communities, with

8    cities, with police, with judges.  And the abrupt

9    termination in funding has severely eroded and damaged that

10    reputation.

11            THE COURT:  Can I just -- and I know that's what

12    your declarant say, but can I just push back a little bit

13    and get your reaction, which is that, are your clients'

14    reputations really eroded in light of the fact of how the

15    grants have been terminated and by whom?

16            In other words, I think it's plain for all to see

17    that these monies have dried up because a new administration

18    has come into town and decided that these grants are no

19    longer consistent with their priorities.  And so if that's

20    the basis for the grant termination, how does that injure

21    the reputation of your organizations who have no control

22    over that decision?

23            MS. NEWMAN:  I think that framing ignores the

24    reality on the ground.

25            These community violence intervention

1    organizations work every single day in neighborhoods in

2    their communities to actively mediate conflicts, have told

3    these individuals that their phones are on if they need to

4    call them in the case of, you know, a conflict that is

5    brewing or about to brew over.

6              And I don't actually think it matters in looking

7    at reputational and irreparable harm that this

8    administration decided to unlawfully terminate these grants.

9    What individuals and the people who are on their staff are

10   seeing is suddenly a lack of people who have been in their

11   neighborhoods every single day and promised that they would

12   be in their neighborhoods helping them through job

13   interviews are no longer there and the reason for that

14   doesn't matter at all and that erosion of trust that these

15   people have built with individuals in these communities and

16   the promises that they have made to them that they'll

17   continue to be there.

18             And so I think when looking at irreparable harm

19   and reputational harm, the reason for that doesn't play into

20   whether or not this is irreparable reputational harm.

21             THE COURT:  Can I ask you another question, one

22   that I've not ever been quite sure I know the answer to,

23   which is that, in this posture, where you're asking both for

24   injunctive relief and at least provisional, if not final,

25   class certification, in order to grant preliminary relief to

1    the class, do I need to make a finding that the entire

2    class, all class members would be irreparably harmed or are

3    being irreparably harmed?

4            MS. NEWMAN:  That would be a question that my

5    co-counsel, Jennifer, will be able to answer.  I don't know

6    the answer to that question.

7            THE COURT:  All right.  I will ask your colleague

8    when she's up.

9            MS. NEWMAN:  Apologies.

10           THE COURT:  That's okay.

11           MS. NEWMAN:  So I guess, one, I'll end with one

12   final thing.

13           July 4th is one of the most active days for

14   shootings in many communities.  Violence interrupters know

15   this and would normally be, as we are discussing, out in

16   their communities on that day working to mediate active

17   conflicts.

18           The work that they do might include taking

19   individuals for whom July 4th is an anniversary of a gun

20   death to physically do other activities to ensure that they

21   don't act out on their grief and their trauma by turning to

22   gun violence.

23           This is not going to be the case in a lot of

24   communities in the country because of the termination of

25   this grant funding absent an injunction.

1          And there has been a predictable spike in

2     homicides and shootings in these communities in the months

3     since these grants have been terminated.  And so we believe

4     that we have certainly established a likelihood of success

5     on the merits, shown irreparable harm that the balance of

6     equities strongly weigh in plaintiffs' favor.

7          And if there are any other questions on these

8     points, I will turn it over to my co-counsel.

9          THE COURT:  No.  Thank you, counsel.

10          MS. NEWMAN:  Thank you, Your Honor.

11          MR. STANTON:  Good afternoon, Your Honor.

12     Josh Stanton on behalf of the plaintiffs.

13          THE COURT:  Mr. Stanton, welcome.

14          MR. STANTON:  So before I delve into sort of the

15     merits of the constitutional argument, I think it might be

16     helpful to sort of disentangle what we're talking about with

17     respect to those claims in terms of the motion to dismiss

18     and the motion for preliminary injunction.

19          So the only argument that defendants make in favor

20     of their motion to dismiss, at least as it pertains to

21     Rule 12(b)(6), specifically, in terms of any particular

22     claim that plaintiffs have made in arguing the plaintiffs

23     have failed to state a claim in their motion to dismiss

24     actually relates to the procedural due process argument.

25          So we noted this in our opposition joint sort of

1    reply in favor of our preliminary injunction and opposition

2    to their motion to dismiss.  It noted that that failure to

3    include such arguments and noted that that constituted a

4    forfeiture of the argument under D.C. Circuit precedent.

5    That assertion was unaddressed by defendants in their reply.

6             THE COURT:  I mean, shouldn't they -- you'll

7    forgive me, but I mean, I at least -- at least upon first

8    read, understood the defendants to both be opposing the

9    motion to dismiss -- or, excuse me, the preliminary

10   injunction motion and on that same ground moving to dismiss

11   the complaint.

12            I mean, because, let's be honest, most of your PI

13   motion didn't really rest on evidence, it was really about,

14   you know, the allegations in your complaint, and so I didn't

15   disentangle the arguments in a way that you've suggested.

16   And if you think that's how it should be read, where should

17   I look in the papers to read it that way.

18            MR. STANTON:  So I think sort of a couple things.

19            So first, with respect to the 12(b)(1) argument in

20   terms of the jurisdiction, I think that's entirely correct;

21   those are essentially impossible to disentangle.

22            But I think on the 12(b)(6) argument, it is

23   possible or would be necessary for defendants in their

24   motion to dismiss to have properly disentangled those

25   things.

1          In submitting, for example, the Henneberg

2     Declaration, which they do repeatedly rely on throughout the

3     course of their combined brief, right, this is obviously

4     evidence that's outside the four corners of the complaint.

5          And so to the extent that we're looking at factual

6     issues, including, for example, potentially getting into

7     this at some point, including, you know, whether the funds

8     will be re-obligated --

9          THE COURT:  Right.

10         MR. STANTON:  -- their intent to re-obligate the

11    funds, of course, that's a question in terms of the -- it's

12    a factual issue.

13         THE COURT:  I mean, have you alleged that

14    affirmatively they are not going to re-obligate the funds?

15    Isn't the burden on you at the pleading stage to plead that,

16    in fact, they're just simply going to pocket the funds?

17         MR. STANTON:  That language was included almost

18    word for word within the complaint, that they would --

19         THE COURT:  This is paragraph --

20         MR. STANTON:  -- by terminating the --

21         THE COURT:  -- paragraph 111 of your complaint.

22         MS. NEWMAN:  I think that's right, Your Honor.

23         THE COURT:  You've argued -- written,

24    "But Congress's command did not change, and Congress's

25    command left defendants no leeway but to simply pocket the

1    money."

2            I should read that as a factual allegation?

3            MR. STANTON:  Yes, Your Honor.

4            THE COURT:  Okay.

5            MR. STANTON:  So in contesting that, they've

6    relied on a declaration.

7            And so to the extent that they are relying on

8    facts that are outside the complaint, then it's not

9    appropriate really for the Court to rely on those issues in

10   terms of ruling on their motion to dismiss.

11           THE COURT:  So let me just read you what they have

12   written in their introduction in their opposition which

13   is -- this is in on page 2, go through the whole, you know,

14   jurisdictional issue over the course of a couple paragraphs.

15   And then they say, "Even if the Court could reach

16   plaintiffs' constitutional and APA claims, each claim fails

17   on its own terms and should be dismissed."

18           And then they go through as to each count and

19   argue why that count fails on the merits.

20           And you read that to only be an opposition to the

21   preliminary injunction and not as grounds for dismissal on

22   the four corners of the complaint?

23           MR. STANTON:  Well, I think the -- the inherent

24   problem is disentangled where they're relying on the facts

25   as, although obviously there's not a significant factual

1    record in this case, there's some.

2          THE COURT:  Right.

3          MR. STANTON:  And it's really just difficult for

4    plaintiffs, as well as, I think the Court, to figure out

5    which parts of their argument are relying on the full

6    factual record as it is and which parts --

7          THE COURT:  Here's an example.

8          Here's a question for you, which is maybe a

9    factual question and maybe it's not, and you can tell me if

10   it is, which is, they've said in their opposition that all

11   of the funds at issue are no-year funds, that is, they're

12   not tied to being spent in any fiscal year.  In your view,

13   is that a factual matter or is that something that can be

14   taken sort of legal notice of because of the allegation --

15   the budget law itself, is that something you dispute?

16         MR. STANTON:  Both don't dispute it; also would

17   regard that as appropriate even if it weren't, say, within

18   the four corners of the complaint, would be appropriate

19   given the nature of the funding, that it would be something

20   that the Court could consider in ruling on the motion to

21   dismiss.

22         THE COURT:  Are there other facts that you believe

23   that they have relied on other than the stated intention to

24   re-obligate the funds that you think essentially would fall

25   outside a traditional Rule 12(b)(6) motion?

1      MR. STANTON:  Well, I think this is the inherent

2  problem is I don't know.

3      And in failing to disentangle the two arguments,

4  it really have left it to the plaintiffs and the Court to

5  figure out which parts of these are relying on the, again,

6  the factual record as it stands versus simply the four

7  corners of the complaint.  And that is exactly, you know, as

8  noted in our reply -- combined reply and opposition brief,

9  is exactly what the D.C. Circuit says they cannot do and,

10  therefore, forfeit the arguments.

11      So our position would be that, as it concerns the

12  constitutional claims, the motion to dismiss as it pertains

13  to all, but the procedural due-process claim should be

14  denied.

15      So then turning to the merits of the

16  constitutional claims, I'll begin with the procedural

17  due-process claim.

18      As alleged in the complaint and articulated in the

19  motion for preliminary injunction, defendants

20  unceremoniously informed plaintiffs that their grant funding

21  had been terminated.  They provided no advance notice and no

22  opportunity to be heard.

23      In terms of what process was due under the Fifth

24  Amendment, that was not enough.

25      Defendants concede that some notice and

 1   opportunity to be heard would have been required or was

 2   required, so long as there was a protected property interest

 3   in further grant funding.

 4          So I want to focus on whether plaintiffs, in fact,

 5   had a protected property interest.  They did and they do.

 6          So first, the thrust of defendants' argument as to

 7   the lack of a property interest mirrors their Tucker Act

 8   argument.

 9          They say because the grants are contracts, there

10   is no protected property interest.

11          And on this point, Your Honor, I'm happy to answer

12   questions, but I think most of my arguments would mirror

13   what my co-counsel has already put forward.

14          We would just argue that, for analogous reasons,

15   that this is not a contract case, and, therefore, there

16   would still be a protected property interest and would not

17   be in line with those.

18          THE COURT:  So are you taking the view that sort

19   of traditional contract principles don't apply to a grant?

20          MR. STANTON:  Well, these particular grants that

21   is certainly alleged in -- you know, what we've briefed and

22   articulated with in the complaint, is that the sort of

23   traditional contract principles as it relates to these

24   grants don't apply, and these aren't -- in a broad sense,

25   are not traditional contracts.

1          THE COURT:  And why is that?  Just because the

2    government's not receiving a good in return or a service in

3    return?

4          MR. STANTON:  Right.

5          There's a similar sort of lack of consideration.

6    Exactly, Your Honor.

7          THE COURT:  But what about your agreement to carry

8    out the grant consistent with the conditions that are set

9    forth?  I mean, isn't that some form of consideration?

10          MS. NEWMAN:  Well, Your Honor, we would -- again,

11   as set forth in the briefing, we disagree with that

12   interpretation.

13          THE COURT:  Okay.

14          MR. STANTON:  But even if these were -- even if

15   the grants were to be considered contracts, there would

16   still be a protective property interest here.

17          And the line of cases we've relied on is the line

18   of cases explaining that when there's a substantive

19   limitation on agency discretion, that that substantive

20   limitation creates a protective property interest, and there

21   was a substantive limitation for defendants in this case,

22   specifically in Section 200.340.

23          At least after the grant had been issued, at the

24   time of termination, there were specific procedures or

25   specific guidelines they were supposed to follow in

1    determining what grants could be terminated.  That's a

2    substantive limitation.

3              THE COURT:  I'm sorry, so what's the limitation

4    that you're citing other than the specific basis for the

5    termination has to be spelled out in the contract?  Is it

6    that or is there something else?

7              MR. STANTON:  Not just that it has to be spelled

8    out in a contract, but actually that there was, in fact,

9    say, for example, any of the conditions in 3 -- in 340 that

10   allow for the termination, for example, that it didn't --

11   in fact, the grants at issue did not continue to effectuate

12   the agency's priorities.  So that's a limitation that the

13   regulation that they've issued, that the agency itself

14   issued, that they would still have to follow.

15             And so they don't have the kind of unfettered

16   discretion -- and this is what the D.C. Circuit has

17   interpreted what a substantive limitation is, is a

18   limitation that does not allow for unfettered discretion.

19             And here, they simply don't have the ability.

20             THE COURT:  So I guess the problem or the

21   difficulty I'm having is how I disentangle all of that from

22   the fact that this is ultimately -- I mean, I know you

23   disagree -- but is essentially a contractual term.  And to

24   the extent there is a limitation of discretion, it's

25   contractual, it's not by the regulations, right?

1          In other words, again, at least your primary APA

2     theory is they couldn't cancel the grant because the term

3     wasn't in the grant itself.  And I don't see how that

4     creates a constitutional right if all you're saying is that

5     you violated the terms of the contract.  You have a

6     contractual right, but I don't know how that rises to a

7     property right under the Fifth Amendment.

8          MR. STANTON:  So I think, again, the issue

9     isn't -- here, it's -- the source of the substantive

10    limitation isn't in the contract, it's in the regulation.

11         So if we look at Section 200.340, that is the

12    thing that provides a restriction on the unfettered

13    discretion of the agency and of defendants and their

14    actions, rather than the contract itself.

15         THE COURT:  Can you cite any case that mirrors the

16    one that you -- that this one -- I mean, you've cited a

17    bunch of cases that involve employment contracts, benefits,

18    you know, cases in which, at least in the benefits cases

19    are, here are the five things you need to do in order to

20    qualify, and if you check the box on all five, the

21    government really has no discretion but to grant you the

22    benefits, right?  That -- courts have recognized that

23    creates a property interest.  Similarly, people have sort of

24    a property interest in their job once they become vested and

25    no longer, you know, are a probationary employee,

1    for example.

2          Any case that you can point to that's like this

3    one?

4          MR. STANTON:  Well, Your Honor, there is a recent

5    case, which is *National Association of Diversity Officers in*

6    *Higher Education versus Trump*.  It's a case out of the

7    District of Maryland, February of this year.  That's --

8    defendants, I'm sure, disagree with that case.  In fact,

9    you know, they cite National Urban -- I can't remember the

10   specific cite, Your Honor.

11         THE COURT:  This was Judge Kelly's case?

12         MS. NEWMAN:  Yes, Your Honor, which addresses that

13   and why he thinks it's wrong.

14         And so the issue here is that there certainly is a

15   dearth of case law in this area.

16         And part of that -- part of the reason for that is

17   that, you know, the actions that defendants have taken are

18   relatively novel here, and so there's not a lot of cases to

19   look to, and so we are forced to analogize, I think, based

20   on, you know, other circumstances.

21         And our position certainly is that these

22   government benefits cases were discussing substantive

23   limitation would still apply here where there's specific

24   regulations that constrain the decision-making and

25   discretion of the agency.

1          THE COURT:  Can I ask you a question.

2          On your due-process claim, are you asserting a

3    property interest alone, or are you also asserting a liberty

4    interest that's distinct from the property interest?

5          MR. STANTON:  I mean, certainly asserting a

6    property interest.

7          I think in this case, I don't think we could be

8    asserting a liberty interest.

9          Yeah, I'm not totally sure.  I will actually have

10   to think about that, Your Honor.  I'm not sure I can be in a

11   position to concede.

12         THE COURT:  I want to be clear --

13         MR. STANTON:  Certainly --

14         THE COURT:  -- because, as you know, there's a

15   distinction.  I want to make sure I know which one of those

16   horses you're riding, if not both.

17         MR. STANTON:  Certainly primarily a property

18   interest, Your Honor.

19         So in light of this protected property --

20         THE COURT:  So let me just -- and we can, I think,

21   probably move forward in a few minutes unless there's

22   something you want to add, but it's your view that,

23   you know, let's assume for a moment I agree with you that

24   you have a property interest, that that entitles you to,

25   what, advance notice and an opportunity to be heard?

1     Because you did have an opportunity to be heard, at least on

2     the back end?

3                MR. STANTON:  Right.

4                So there's a post-deprivation proceeding that's

5     available under the regulations that exists.

6                You know, we have articulated that a

7     pre-termination, some kind of notice opportunity to be heard

8     prior to the termination would be required.  And I don't

9     think defendants disagree with that; they certainly didn't

10    argue against that proposition.

11               In terms of what specific -- what are the

12    specifics of that hearing or, you know, what the -- of the

13    due process, I mean, this has not been fully briefed, but

14    certainly we'd look to *Mathews v. Eldridge*, consider the

15    private rights at issue here, which were all of the reasons

16    that my co-counsel has articulated, are quite significant,

17    the risk of erroneous deprivation is extremely, extremely

18    high in light of all of the same reasons articulated in the

19    equities and irreparable harm.  So we would argue for --

20               THE COURT:  So what would that look like?

21               In other words, if you got the advance notice,

22    you presumably not only want advance notice, but you want

23    some process before the termination occurs.  So the

24    post-deprivation termination is not sufficient in your view,

25    correct?

1          MR. STANTON:  Correct.

2          THE COURT:  So what does the pre-termination

3    process look like in your estimate?

4          What would a grantee be required to get,

5    an opportunity to argue that, no, our grant is consistent

6    with either the priorities at the time the grant was made or

7    the ongoing priorities?  What does that look like?

8          MR. STANTON:  Right.

9          Well -- so I think the question is, well, what are

10   the grounds, right.  It might depend on, well, certainly the

11   relief that's being sought by, you know, the agency.

12         So if there's termination, right, it would depend

13   on the grounds of the termination.  And certainly it would

14   also depend again on the private interest at stake.  And

15   here at least, I can't speak to other potential grantees,

16   but I can speak to the grantees at issue here.

17         And I think in light of the significant private

18   interest at stake, and, again, the risks associated with

19   erroneous deprivation, that nothing short of an evidentiary

20   hearing would suffice.

21         THE COURT:  Right, but what would that evidentiary

22   hearing attempt to determine?

23         In other words, would it be -- I mean, look,

24   they've identified the reason for the termination, and that

25   is, your grant is no longer consistent with the

 1    administration's current priorities, right.  That's what

 2    they say.

 3            Do you get the opportunity, in your view, to prove

 4    to them that, yes, in fact, it is consistent with the

 5    priorities?

 6            MR. STANTON:  Well, of course, there's, I think,

 7    two aspects which are worth addressing here.

 8            So first, they've articulated that it's not

 9    consistent with the current administration's priorities.

10    And obviously our position is that it would have to be

11    consistent with the agency's priorities at the time the

12    grant was issued.  And so that would be, you know, more of a

13    credible evidentiary hearing in terms of, is this -- is the

14    grant currently serving those interests, and you would want

15    an independent fact-finder to determine that.

16            In terms of the latter question, are they --

17    is it, in fact, no longer serving the agency's current

18    interest?  Yes, I think that that would be -- still be a

19    circumstance in which you would want an independent

20    fact-finder to determine whether that was the true rationale

21    or if this was, for example, some sort of pretextual reason

22    for the termination.

23            THE COURT:  Okay.

24            MR. STANTON:  Your Honor -- so for all of those

25    reasons, we think that there is a protected property

1    interest and that there should have been this

2    pre-termination due process hearing, and for those reasons

3    think that the motion to dismiss with respect to that claim

4    should be denied and that the plaintiffs have shown a

5    likelihood of success on the merits.

6           With respect to plaintiffs' other constitutional

7    arguments, we would rely on the briefing, but I'm happy to

8    answer any questions Your Honor may have.

9           THE COURT:  I do have some questions about your

10   separation-of-powers claim and one question about your Take

11   Care Clause claim.

12          And with respect to the separation of powers, does

13   the fact, in your view, that the money, as you've -- we

14   talked about earlier is no-year funds, does that effectively

15   defeat your claim?

16          MR. STANTON:  Well, I don't think it defeats the

17   claim, Your Honor, but I understand the *Harris County* case

18   that we submitted --

19          THE COURT:  Right.

20          MR. STANTON:  -- as supplemental authority,

21   certainly Judge Cooper found as much, right.

22          And as I noted, obviously we are in a slightly

23   novel area of law here, right.

24          And so the question is, I think, that this Court

25   has to answer is where Congress has appropriated funds,

1    which have then been -- which are, say, no-year funds, that

2    address specific congressional legislative goals, right,

3    which we articulate some of those in our complaint, it's a

4    number of statutes at issue, where the recipient of the

5    grant then is not even arguably not pursuing those

6    legislative goals, but, instead --

7            THE COURT:  I'm sorry, when you say the recipient

8    of the grant, you mean the Department of Justice, or do you

9    mean you?

10           MR. STANTON:  The grantees.

11           Yes, plaintiffs in this case, are, in fact, say,

12   pursuing the ends, the legislative ends that were addressed

13   when these grant funds were first appropriated by Congress.

14           At that stage, the question is, does -- when the

15   agency terminates the grant for a reason other than the --

16   other than the plaintiffs or grantees or any grant recipient

17   not fulfilling that mission, are they overstepping their

18   bounds, their executive --

19           THE COURT:  And how does that square with what

20   I think you'd agree is a fair amount of discretion vested in

21   the Executive Branch to make that determination?

22           MR. STANTON:  Well, certainly they have a lot of

23   discretion to make that in the first instance.

24           And I think at the time of termination, at a

25   minimum, in order to avoid this separation-of-powers problem

1   that's articulated in our briefing, at a minimum, the agency

2   or the Executive would have to make a determination that the

3   grantee is no longer not just achieving the agency's

4   priorities but is no longer achieving congressional

5   priorities.

6           THE COURT:  So let me ask you for a moment.

7           Let's say, at least on the PI, they've made a

8   representation that they intend to recommit the grant money

9   and presumably to do so consistent with the way in which the

10  money is allocated by Congress, at least for the purposes.

11  Does that mean you lose?

12          MS. NEWMAN:  Well, so is their say-so enough?

13          THE COURT:  Well, it's a PI.  You haven't come

14  back with any evidence to say they're not going to

15  re-allocate it, unless you've got something that I'm not

16  aware of.

17          MR. STANTON:  So we don't have any evidence to

18  suggest that that's, you know, a false representation, but

19  we also have no indication as to when or what that will be.

20  So it's some unspecified re-obligation of the funds at some

21  unspecified time in the future.

22          So I do think this puts -- this isn't *In re:*

23  *Aiken*, right, which we do cite in terms of the Executive

24  saying, we are not going to spend those funds, right.

25  So this is a slightly different area.

1          THE COURT:  Right.

2          MR. STANTON:  This is -- they're saying, we will

3    at some point.

4          THE COURT:  And it's not Judge Cooper's case,

5    where he determined that essentially they were effectively

6    pocketing the money and not returning to Congress under the

7    Impoundment Act, et cetera, but they just weren't going to

8    spend the money.  That's not what we have here.

9          MR. STANTON:  So it's somewhere in between, right.

10         And certainly our argument is that, where the

11   funds were already achieving the goals of Congress and

12   without any other supplemental rationale, that that

13   oversteps their authority.

14         THE COURT:  So what if a grantee was not in

15   compliance with the terms of the grant, you know, the

16   grantee engaged in conduct -- forget about fraudulent

17   contact -- didn't preserve records or didn't preserve data,

18   which is a requirement, right.  You mean to say that if the

19   grant was terminated for that reason, even if they were

20   carrying out the purpose, that that would create a

21   separation-of-powers issue?

22         MR. STANTON:  No, Your Honor.

23         THE COURT:  Why not?

24         MR. STANTON:  I think at that point -- well, I do

25   think at that point the Executive could make a reasonable --

1    they would have the discretion to determine that if the

2    grant recipient were not -- were not following the terms

3    that were agreed to at the time that the grant was

4    authorized, that they would have discretion certainly to

5    determine that that grant was the thing that was

6    effectuating the aims of Congress, and by failing to live up

7    to the terms of the grant, that the administration would be

8    in a position to determine this is not what we see as

9    putting -- or following through with the congressional aims.

10              THE COURT:  Okay.

11              Help me understand what the Take Care Clause claim

12    is.  I don't quite follow what it is.

13              What is it that the Department of Justice has done

14    to not take care of the law, in your view, that creates a

15    violation of that?

16              MR. STANTON:  I think it's co-extensive,

17    Your Honor, with the other Appropriations Clause and

18    Spending Clause.

19              THE COURT:  Okay.

20              MR. STANTON:  And separations-of-powers argument,

21    in that they had a duty to make sure that these funds were,

22    in fact, spent and obligated in the way that Congress had

23    expected and articulated, and they have not done that.

24              THE COURT:  Okay.

25              And then finally with respect to your ultra vires

1    claim, I don't know, maybe it's not a constitutional claim,

2    and I don't know if that's in your bailiwick or your

3    colleague's --

4              MR. STANTON:  It is, Your Honor.

5              THE COURT:  -- but help me understand how that

6    claim can stand at all given that you believe you've got an

7    adequate remedy of law under the APA; and even if you're

8    wrong about that, you'd have an adequate remedy in the Court

9    of Claims.

10              MR. STANTON:  So -- and we articulate this in our

11   reply, but basically, the claim is not available, right,

12   when -- unless judicial relief is actually, you know,

13   specifically prohibited or is excluded and in circumstances

14   where the violation -- where there has to be -- excuse me,

15   an allegation of a prohibition that was clear and mandatory,

16   right.

17              And I would also note right here that the

18   complaint does allege that OJP's actions, right, were far

19   outside of the scope that Congress gave it.  And so this,

20   at least, is within the ambit of what would be appropriate

21   for an ultra vires claim under *North American Butterfly*

22   *Association*, which I know defendants explained and argued

23   and in their belief was either implicitly or somehow

24   overruled, or is an incorrect reading of the law under

25   Nuclear Regulatory -- or, excuse me, *NRC versus Texas*, which

1    talked about the specific prohibition requirement of an

2    ultra vires claim, but I wouldn't read that case, which

3    didn't specifically address the alternative grounds for an

4    ultra vires claim under *North American Butterfly Association*

5    to have implicitly overruled that case, and without

6    specifically addressing it, we argue that that standard

7    still applies.

8              THE COURT:  Okay.

9              I have no further questions; but if you've got

10   something else you'd like to add, I'm happy to hear from

11   you.

12             MR. STANTON:  Nothing further.

13             THE COURT:  All right.  Thank you.

14             All right.  Do you want to be heard on the class

15   issues?

16             MS. CONNOLLY:  Good afternoon, Your Honor.

17   Jennifer Connolly on behalf of the plaintiffs.

18             So, first of all, to answer your question posed to

19   my co-counsel, the answer is that you only need to look at

20   the irreparable harm to the named plaintiffs on class

21   certification.

22             And if you want to see an example of that, you

23   could look to the Supreme Court's recent decision in *AARP*

24   *versus Trump*, where they refer to the harms of the named

25   plaintiffs as well as the *P.J.E.S. versus Wolf* decision and

1    the R.I.L. versus -- *R.I.L-R. versus Johnson* decision, all

2    of which refer to the declarations of the named plaintiffs

3    when they're looking at the harms.

4            That being said, Your Honor is entitled, as part

5    of the class certification process, to ask whether the

6    nature of the harm is the same, and we would say, you know,

7    that that's clearly the case here.  All of the grantees had

8    their grants or cooperative agreements terminated in the

9    same way, citing to the same authority, and so the nature of

10   the harm to these organizations was the same.

11           THE COURT:  What I need to -- I mean, I suppose --

12   if I understand you correctly -- and your colleagues

13   articulated at least two categories of irreparable harm, one

14   is the harm to the organization and its ability to carry out

15   its function -- I suppose what you're asking me to do is

16   infer that anyone that's had a grant terminated for a

17   particular purpose, that their organization is -- that their

18   ability to carry out their mission is impaired, right?

19           MS. CONNOLLY:  Correct.

20           THE COURT:  And then are you also saying at the

21   same time or in parallel that also the reputation of every

22   one of these organizations that's a potential class member

23   has also been irreparably harmed?

24           MS. CONNOLLY:  Yes, absolutely.

25           And you can infer that from the nature of the

1   termination letter itself, which stated that, to every

2   single grantee, that their grant no longer effectuated the

3   program goals or the agency priorities.  Every single one of

4   the grantees got the same notice that said the same thing,

5   and so you can infer that there would be reputational harm

6   from the receipt of the identical letter sent to all of the

7   plaintiffs and the class members.

8           THE COURT:  So can I just ask, would you agree

9   that I've got to make a class determination on a

10  claim-by-claim basis?

11          MS. CONNOLLY:  That you need to -- no, you do not.

12          THE COURT:  So if there's a class eligible for one

13  claim, it's eligible for all claims?

14          MS. CONNOLLY:  Oh, I'm sorry, I misunderstood your

15  question.

16          Yes, you do have to look at it on a claim-by-claim

17  basis.

18          THE COURT:  So then on your contrary-to-law claim,

19  do I have enough before me to conclude that every member of

20  the putative class would not have had this termination

21  provision in it?

22          In other words, that every grant, every grantee

23  whose grant has been terminated, none of their contracts or

24  none of their agreements have this provision in it that

25  would have allowed the Department of Justice to terminate

1    based upon no longer effectuating the priorities?

2              MS. CONNOLLY:  Yes, you do have enough in front of

3    you.

4              In fact, I don't believe anywhere in the briefs

5    did defendants -- they contended that by incorporating by

6    reference the 200.340(a)(4), that that constituted the

7    notice.  But that was the only argument that they made.

8    They didn't point to a single contract where a grant

9    recipient was put on notice that their grants could be

10   terminated for a change in agency priorities that took place

11   after the award of the grant.

12             THE COURT:  Okay.

13             MS. CONNOLLY:  And, in fact, if you look at cases

14   around the country that are challenging the adoption of this

15   same provision, in many, many different kinds of grants,

16   you'll see that there's never been a statement by the

17   government that anyone was put on notice of their

18   interpretation of the uniform guidance in that way.

19             THE COURT:  I'm sorry, they've admitted that or

20   you've said that just they've never --

21             MS. CONNOLLY:  They've never raised an argument --

22             THE COURT:  They never raised the argument.

23             MS. CONNOLLY:  -- that they were on notice, yes.

24             THE COURT:  Okay.

25             Those were largely my questions about the class

1  certification; but if there's more you'd like to say, I'm

2  happy to hear from you.

3          MS. CONNOLLY:  Okay.

4          Well, if those were your questions, I'm happy to

5  rest on that, because we did get the last word on class

6  certification, and so most of the arguments are in our

7  brief.

8          I just reserve the right to say anything at the

9  end.

10          THE COURT:  Of course.

11          Okay.

12          MS. CONNOLLY:  Okay.  Thank you, Your Honor.

13          THE COURT:  Very good.  Thank you.

14          All right.  So we've been going for about an hour

15  and 10 minutes.

16          Before we continue with the defense, why don't we

17  take 15 minutes so our court reporter has a moment and then

18  we'll come back and we'll hear from the defendant.

19          So we'll resume just at about a little bit before

20  25 after.  Thanks, everyone.

21          COURTROOM DEPUTY:  All rise.  The Court is now in

22  recess.

23          (Recess from 3:07 p.m. to 3:26 p.m.)

24          COURTROOM DEPUTY:  All rise.  This court is now in

25  session.  The Honorable Amit P. Mehta again presiding.

1          THE COURT:  Please be seated.  Thank you,

2    everyone.

3          All right.  Ready for government counsel.

4          MR. BAILEY:  Yes, Your Honor.  Good afternoon.

5          THE COURT:  Good afternoon.

6          MR. BAILEY:  John Bailey with the

7    Department of Justice for the defendants.

8          THE COURT:  Mr. Bailey.

9          MR. BAILEY:  May it please the Court.

10         Neither the facts nor the law support plaintiffs'

11   requested relief.

12         Starting with the facts, this case does not

13   involve an agency's mass termination of grants in an effort

14   to refuse spending congressionally obligated funds.

15   Instead, the Department of Justice has terminated a tiny

16   fraction of its open discretionary grant awards after

17   examining each of those awards individually and carefully

18   and determining that they no longer advance agency

19   priorities, those priorities being combating violent crime,

20   protecting American children, and supporting victims of

21   trafficking and sexual assault.

22         THE COURT:  Can I ask a -- sorry to interrupt.

23         I usually don't try to interrupt this early, but

24   can you just help explain to me how that is so -- I mean,

25   let's use the Detroit organization.  I mean, you just

1    identified, for example, combating violence as one of the

2    priorities, right?

3            MR. BAILEY:  Yes.

4            THE COURT:  So how does an organization that

5    has -- whose sole purpose is to intercede before violence

6    happened inconsistent with a priority of combating violence?

7            MR. BAILEY:  Well, I mean, frankly, Your Honor,

8    I don't have an insight into how each grant was weighed

9    against other grants, but I mean, we're balancing --

10           THE COURT:  Shouldn't you?

11           I mean, if you're terminating these grants as

12   inconsistent with your priorities, shouldn't you know why

13   each of the grants has been terminated for that reason?

14           MR. BAILEY:  I mean, at this stage, without an

15   administrative record, I don't have an insight into,

16   you know, why any one particular grant was terminated.

17           But I mean, I guess the way that I look at it --

18           THE COURT:  Isn't that then sort of the hallmark

19   of arbitrary and capricious decision-making if you can't

20   identify for me why a particular decision was made?

21           MR. BAILEY:  Well, Your Honor, I think, taking a

22   step back here, I mean, it's a finite amount of resources.

23           And this case is not about disparaging the

24   plaintiff organizations' missions, but --

25           THE COURT:  What's a finite amount of resources?

1     Not the grant money.  The grant money is the grant money.

2                MR. BAILEY:  Well, I think the question is, can

3     this better be -- can this money be used to better serve the

4     administration's priorities.

5                THE COURT:  But help me out here.

6                You'll forgive me.

7                And I know I'm going -- sort of painting outside

8     the lines here a little bit, but you've just said, and all

9     of the notices said, for example, that one of the agency's

10    priorities -- the Department of Justice priority is to

11    prevent violence, right?

12               MR. BAILEY:  Yes, Your Honor.

13               THE COURT:  Each of these organizations, in some

14    way, shape or form, at least I think the five that I have

15    before me, are trying to prevent violence.  That is the very

16    reason they got the grants in the first place.  Would you

17    agree with that?

18               MR. BAILEY:  Yes, that's the agency's mission.

19               THE COURT:  Right.

20               So that's what they're doing.

21               And now the Department of Justice, the

22    Department of Justice is saying that an organization that is

23    devoted to fighting violence and preventing violence, that

24    their execution of the grant is inconsistent with the

25    Department of Justice's priorities and you can't tell me why

1    that is.

2                    MR. BAILEY:  Well, Your Honor, I mean, the

3    Department doesn't just have one -- a single priority.

4                    And, you know, I perhaps could have quoted the

5    termination letter in full, but it's, you know, focused,

6    among other things, more directly supporting certain law

7    enforcement operations, combating violent crime,

8    protecting --

9                    THE COURT:  At least one of these institutes --

10   Vera, for example, one of their missions is -- one use of

11   the grant, if I remember, was to support and train law

12   enforcement.

13                   MR. BAILEY:  Yes, Your Honor.

14                   THE COURT:  Right?

15                   So that's inconsistent with the Department's

16   priorities?

17                   MR. BAILEY:  Your Honor, frankly, I don't have

18   more of an insight into how each individual grant --

19                   THE COURT:  Isn't that the problem at the end of

20   the day?

21                   I mean, let's just put aside for the moment all

22   this song and dance about, you know, Court of Federal

23   Claims.  Isn't that the fundamental problem, that the

24   United States Government backed by the Department of Justice

25   has no idea why it's terminating these grants in the amount

1    of $800 million?

2            I mean, you are representing the United States of

3    America and you can't tell me why even one of these

4    plaintiffs, their grant was terminated, not one.

5            MR. BAILEY:  Your Honor, I can tell you that

6    Department leadership, in an iterative process with OJP,

7    examined the project descriptions of each grant and

8    determined --

9            THE COURT:  Let's start with FORCE Detroit.

10           Mr. Kennedy has explained that one of the things

11   they do is they go out into one of the rougher neighborhoods

12   in Detroit and they have people on the ground who are there

13   to serve as intervention.

14           You know, people are in a bad situation, they

15   are -- there's a conflict, these folks get called and try

16   and calm things down.

17           That prevents violence.  I think you'd agree with

18   that, right?

19           MR. BAILEY:  That evidence, yes.

20           THE COURT:  So why did the Department of Justice

21   terminate that loan -- or, excuse me, that grant, not loan,

22   grant, as inconsistent with the new priorities?

23           MR. BAILEY:  Your Honor, at this stage without a

24   developed administrative record, I can't speak to what's

25   beyond the Office of Justice Programs declaration which

```
 1   discusses how this was an iterative process with Department
 2   leadership.  I can't speak to how any one individual grant
 3   was weighed but --
 4             THE COURT:  So shouldn't I then enter a
 5   preliminary injunction until we have an administrative
 6   record in this case that you can actually explain and
 7   justify for me why you've done what you've done?
 8             MR. BAILEY:  Well, Your Honor, I think this is the
 9   improper forum for that for the legal reasons I hope we get
10   into regarding --
11             THE COURT:  We will, I promise you.  I just am
12   curious.
13             MR. BAILEY:  -- why an arbitrary and capricious
14   claim is just inappropriate here to evaluate an agency's
15   discretionary decision in contracting with the government,
16   and so I can't speak in more detail.
17             THE COURT:  I just -- I know you can't, because
18   I am confident that there are no individualized reasons, and
19   I think you know there are no individualized reasons.
20             And -- okay.
21             And now the Department of Justice, understandably,
22   these are your legal positions and you get to advance them,
23   and ultimately I'm bound by these legal principles, so let's
24   get all that out in the open.
25             But fundamentally, that's what you're doing, which
```

1    is that, you're not making individualized assessments.

2            Yes, you've winnowed the number of grant

3    recipients down by some percentage, and, yes, there was some

4    process, but you can't stand here in a court of law and

5    explain why FORCE Detroit is no longer consistent with the

6    agency's priorities.  You can't do that.  You maybe didn't

7    even ask before you walked into this courtroom.

8            MR. BAILEY:  Well, Your Honor, I think part of the

9    problem is that none of these plaintiffs took advantage of

10   the appeals process.

11           And if I may, I mean, I believe over 200 did.

12           THE COURT:  So -- but why -- why did you -- you

13   should be able to articulate why you did it in the first

14   place, right?

15           In other words, you've asked them to appeal a

16   decision that you can't even articulate the basis for here

17   today.  You can't tell a federal judge why you terminated

18   this grant.

19           MR. BAILEY:  Your Honor, my point being there is

20   that the Department has restored funding in, I believe, two

21   appeals, denied funding in another as of the time that we

22   filed our opposition to the preliminary injunction.

23   So I think that just belies the notion that this is some

24   sort of arbitrary, they just don't care, they're all --

25   there's no reasons here.

1          I mean, the agency -- that's why the agency put

2     its priorities in these notices.  The grant recipients were

3     free to file an appeal and say -- express their reasons.

4          I can't speak in any more detail as to any one

5     individual grant.

6          THE COURT:  I mean, it's just very odd.

7          You mean, for example, if they were noncompliant,

8     right -- and that's not the basis for the termination as

9     I understand it, nobody's alleging that any of these groups

10    have been noncompliant.  But if they had been noncompliant,

11    you would have had an obligation to go to them, right, and

12    say, hey, you're noncompliant, you need to cure your

13    noncompliance, right?

14          MR. BAILEY:  I believe so, or I can't --

15          THE COURT:  But now the Department of Justice is

16    saying, even if you are compliant, even if you've been

17    compliant, we have a unilateral right, almost near absolute,

18    it seems, to just terminate the grants, because we think

19    it's inconsistent with our new priorities, although they

20    sound a lot like the priorities that they're carrying out.

21    And they can do that and we have to wait for this appeals

22    process to figure out what, whether the department got it

23    right in the first place?

24          MR. BAILEY:  I don't mean to suggest that the

25    appeals process needs to peal out for that to be shown to be

1    true.  I think that, as I said, I understand this was an

2    individualized and iterative process.  I can't speak to any

3    one decision, Your Honor.

4              THE COURT:  So say you were standing in front of a

5    Court of Claims judge today and not a Federal District Court

6    Article III Judge, what would you say to that judge as to

7    why you were justified in terminating the grant, consistent

8    with the terms of the application?

9              MR. BAILEY:  Well, I mean --

10             THE COURT:  Consistent with the terms of the

11   regulation and the contract?

12             MR. BAILEY:  If we were in the Court of Claims, we

13   would be dealing with -- it would be a contract action.

14             THE COURT:  Right.

15             So what would your argument be as to why you were

16   justified in terminating the contract if you were standing

17   before a Court of Claims judge?

18             MR. BAILEY:  I mean, truthfully, Your Honor,

19   I haven't developed -- we haven't developed contract

20   defenses because plaintiffs have brought an arbitrary and

21   capricious claim and a number of others.

22             I can't speak to what our position would be

23   exactly in the Court of Claims.

24             THE COURT:  But presumably, you should be able to

25   because you terminated the grant.

1                    I don't get it.

2                    I mean, if you terminated the grant, presumably

3     the Department of Justice doesn't act unlawfully.  Would you

4     agree with that?

5                    MR. BAILEY:  Yes.

6                    THE COURT:  Right.  You don't act unlawfully.

7                    So presumably somebody at the

8     Department of Justice decided that we have a basis for

9     termination of this grant, correct?

10                   MR. BAILEY:  Yes, absolutely.

11                   THE COURT:  And you haven't yet developed what

12    that defense is?

13                   MR. BAILEY:  Your Honor, those are contract

14    defenses for the Court of Federal Claims.

15                   I mean -- and plaintiffs are free to try to prove

16    that there was a breach and they are entitled to damages.

17    We're not saying that that's -- our position is not that

18    that's foreclosed.

19                   THE COURT:  What damages would they be entitled to

20    in the Court of Claims?

21                   MR. BAILEY:  Again, I didn't -- this would be an

22    issue for the expertise of the Claims Court.

23                   But, I mean, it is not our position that they're

24    necessarily limited to compensation for work already

25    performed.

1          THE COURT:  Could they recover the full amount of

2   the grant?

3          MR. BAILEY:  I mean, we think that's unlikely.

4          We think that it's unlikely that the full measure

5   of their damages would be the full amount of the grants

6   when, because specific performance is not a remedy there,

7   they would not have any of the obligations to do anything

8   with the money.  They could just pocket it.

9          So I mean, it might be some sort of reliance --

10  reliance damages, shutdown cost, some other expectation,

11  measure of expectation damages, and I'm not exactly sure

12  what these are.

13         But plaintiffs are free to seek damages in the

14  Court of Claims.

15         And I mean, Congress has specifically limited the

16  contract remedies against the government; they've made that

17  decision to make specific performance to preclude specific

18  performance there.

19         And, you know, I'll just note, Your Honor, that in

20  procurement contracts, termination for convenience clauses

21  are read into procurement contracts if they weren't already

22  universally used, and that just gives the government broad

23  discretion to say, in our convenience, we're shutting off

24  here.

25         So I think in the space of government contracting,

1    the idea that the government does not have great discretion

2    to pick its --

3              THE COURT:  Do you know of any instances --

4    I'm sorry, this is not my area of expertise -- but how often

5    the government just terminates without notice a federal

6    contract for convenience?  How often does that happen?

7              MR. BAILEY:  I mean, I understand that termination

8    for convenience has been since the 1850s.

9              THE COURT:  I know it's a thing, but I'm sort of

10   curious how often it happens.

11             MR. BAILEY:  I couldn't tell you, Your Honor.

12   I'm not a Court of Claims lawyer.

13             THE COURT:  I'm not either.  I was just curious.

14             I mean, it seems to me that typically what the

15   government does is if they believe there is a basis for

16   termination, they try and work with the contractor to cure

17   any problems, first, to ensure that, you know, the services

18   and the goods the government has requested actually are

19   delivered, and it's really usually a thing of last resort

20   before they terminate something for convenience or for some

21   other reason, but be that as it may.

22             All right.  Let's turn to the issues, and

23   I'm sorry I kind of hijacked you, the beginning of your

24   argument.

25             Tell me why the plaintiffs are wrong that they

1    can't be here because they are alleging a violation of a

2    regulation, when I believe it was -- the Circuit said in

3    *Transohio* that a violation of a regulation -- here we go --

4    "While holding the Tucker Act jurisdiction is not exclusive

5    for claims founded upon the Constitution, federal laws or

6    regulations, this Court and others have interpreted the

7    Tucker Act as providing the exclusive remedy for contract

8    claims against the government at least vis-a-vis the APA."

9            So why is there a claim not founded upon a

10   regulation in this matter that would require it to -- that

11   would allow it to be here?

12           MR. BAILEY:  Well, Your Honor, as the discussion

13   today has shown, the question is, we've got to look at,

14   is this, in essence, a contract claim and there's -- this is

15   a messy inquiry, but we're looking at the source of rights

16   and we're also looking at the nature of relief sought.

17           So, I mean, cases like *Spectrum Leasing* and

18   *Ingersoll Rand*, they say that you can't just point to a

19   regulation to evade the jurisdiction of the Claims Court.

20           And in *Megapulse*, the canonical D.C. case on this,

21   said there's hardly a breach of contract claim that could

22   not be pled under the APA.

23           And, I mean, I'm happy to, and I hope to go

24   through this analysis in more detail, but I think one thing

25   that's key upfront to note is that the regulation that the

 1    plaintiffs -- that they rely on, all it is is a pointer back

 2    to the contract's terms.

 3            So this isn't an instance where we just need to

 4    take a peek at a contract to resolve some weighty statutory

 5    or regulatory issue.  This is truly just about the

 6    contract's terms.  These regulations just say, well, go back

 7    to the contract and see what those terms are.

 8            THE COURT:  So then do you agree with the

 9    plaintiffs' reading of the regulation that the basis for the

10    termination of the grant needs to be included in the

11    contract or in the grant?

12            MR. BAILEY:  I mean, as a matter of contract law?

13            THE COURT:  No, as a matter of how the regulation

14    is interpreted.

15            MR. BAILEY:  So under that regulation, our

16    position is that the grounds for terminations needs to be

17    specified, clearly and unambiguously specified in the terms

18    and conditions.

19            THE COURT:  So you would agree with that?

20            MR. BAILEY:  Well, Your Honor, the language is

21    specified, and we believe that incorporation by reference,

22    that specifies a deprivation applies.

23            THE COURT:  That's a separate question.

24            I mean, the question of whether it's, in fact, in

25    there seems to me to be a separate question.

1              But one of the things your colleague said is that

2    we think it's important to get a declaration from you,

3    Judge, that the interpretation of the regulation requires

4    that the basis for the termination be in the grant

5    agreement, right?  You heard her say that?

6              MR. BAILEY:  Yes.

7              THE COURT:  And my question to her was, well,

8    would that still be the case if your colleagues from the

9    government stood up and said, well, we agree with that

10   interpretation.

11             And so I'm asking you whether you agree with that

12   interpretation and understanding of the regulation here

13   today?

14             MR. BAILEY:  I mean, yes, that's what the

15   regulation says, the grounds need to be specified.

16             THE COURT:  Okay.

17             MR. BAILEY:  I mean, if -- I'm not -- my position

18   is not that the government could never terminate a contract

19   for any other reason.  I can't take that position.

20             THE COURT:  Right.

21             MR. BAILEY:  But, sure, under this regulation,

22   that's what it says, grounds for termination needs to be

23   specified.

24             THE COURT:  Okay.

25             And your view is that it is specified because that

 1   part of the regulations is referenced as a condition?

 2            MR. BAILEY:  Yes, it's explicitly incorporated by

 3   reference.  I don't think there's any -- I don't understand

 4   my colleagues to be disputing that.

 5            THE COURT:  No.  It's in there in black and white.

 6   I think everybody agrees about that.  The question is

 7   whether that's specific enough.

 8            MR. BAILEY:  Yes, Your Honor.

 9            And, I mean, the way that I think about this is,

10   there's no ambiguity that this provision was incorporated

11   and applies.  It says it right there.  Any ambiguity would

12   be any one individual grant recipient not investigating the

13   terms and conditions of their awards.

14            THE COURT:  Do you think it's specific enough?

15            MR. BAILEY:  Absolutely, Your Honor.

16            If I was contracting with the government and they

17   were giving me millions of dollars, I would want to know

18   every single possible thing that they could possibly do to

19   get that money back from me.

20            And I would absolutely want to know what is in

21   these regulations that they say that they're going to use

22   against me in the future and potentially, in plaintiffs'

23   view, cause irreparable harm.  I would absolutely want to

24   know what the full terms and conditions are.

25            THE COURT:  Okay.

1          So 200.340(b) says, "The federal agency or

2    pass-through entity must clearly and unambiguously specify

3    all termination provisions in the terms and conditions of

4    the federal award."

5          So you agree that the termination provision needs

6    to be clear and ambiguous, right?

7          MR. BAILEY:  Yes, that's what -- the plain

8    language of the regulation.

9          THE COURT:  Okay.  Just hang on for a second.

10          MR. BAILEY:  I would like to say, Your Honor, that

11    we're talking about the 2024 version of the guidance here,

12    and our primary position is that, for all but one grant

13    award, these awards were awarded before the 2024 guidance

14    became operative.

15          I understand my colleagues believe that the

16    Department has retroactively applied the new guidance to all

17    these awards, and that's just not the case.  The DOJ

18    financial grants guides that they rely on to make this

19    argument, it says that the Department will apply the new

20    guidance to -- let me get the language right --

21          THE COURT:  But isn't that clearly -- clearly and

22    ambiguously specified term.  That's in both versions of the

23    regulation, correct, the 2024 and the 2020 version?

24          MR. BAILEY:  Yeah, absolutely.

25          And that's to our point, that the 2020 version

1    says that clearly and ambiguously specify, and it includes

2    inapplicable regulations.

3            So that would be a situation where there's no

4    incorporation by reference, but it would be just fine even

5    though it wasn't incorporated by reference because it's in

6    the code of Federal Register, it's enough that it's

7    specified there.

8            THE COURT:  I see.

9            MR. BAILEY:  But I believe we satisfied under the

10   2020 board version as well, because we're not just pointing

11   to some regulation out in the universe that plaintiffs had

12   no notice of.  We put it in the terms and conditions that

13   these regulations are incorporated by reference.  So,

14   I mean, we think that that distinction shows that in 2020,

15   we wouldn't have needed the incorporation by reference.

16           But here, when we have that, we believe we also

17   satisfy the 2024 version.  There's no ambiguity that this

18   provision applies.  We don't think there's any reasonable

19   dispute about that.  It's just, did grantees fully

20   investigate the terms and conditions of their awards.

21           THE COURT:  In the Court of Claims, do you believe

22   that a grant recipient could argue that the Department of

23   Justice didn't provide a sufficient explanation for the

24   termination?

25           MR. BAILEY:  Sure, if they believe that was

1    required by the contract and that was their contract

2    argument, their breach argument, sure.

3                Like I said, I haven't developed contract

4    defenses, and I'm not sure what the contract arguments would

5    be in the Court of Claims.

6                THE COURT:  But in other words, they could not

7    make sort of a traditional APA claim of the kind that

8    they're making here; for example, the Department of Justice

9    did not consider reliance interests, for example?  That's

10   not an argument they could make in a Court of Claims?

11               MR. BAILEY:  No, Your Honor, I don't believe so.

12               I think that question would be a matter of

13   contract interpretation, how do we, within the four corners

14   of the contract, you know, reasonably interpret this phrase,

15   what does it encompass, what does it require.  You know, was

16   it within the expectations of the parties that there be a

17   reasoned explanation.

18               But I think that those are questions for the

19   Claims Court.  And they're the experts in government

20   contracting.  I'm truthfully not.

21               But I think that just shows their claims, they

22   certainly -- they can make them there in some form.

23               THE COURT:  But your view is that there's no court

24   that could grant them the relief that they're seeking, which

25   is reinstatement of the contract -- or reinstatement of the

1    grant?

2            MR. BAILEY:  Yes, Your Honor.

3            I mean, that's the whole point of -- or a large

4    part of the point of the Tucker Act is, Congress wanted to

5    limit the remedies for breach of contract against a

6    government.

7            And we may disagree with Congress about that and

8    think that that's unfair to government contractors, but it

9    was very intentional, the specific performance.

10           The limited waiver of sovereign immunity that's

11   been waived is not eroded further in specific performance;

12   and I think our papers allude to this, that it raises

13   separation-of-powers concerns when you have a court

14   requiring the Executive to continue an ongoing relationship

15   with a private party that carries, you know, conditions for

16   both sides, and, you know -- it's invasive.  And so that's

17   one of, I think, many reasons why specific performance isn't

18   an available remedy.

19           And it's -- it seems to me to be why plaintiffs

20   want to be in this forum, because that's the remedy that

21   they seek.  They seek the full amount of their grant funds

22   and the continued ongoing relationship.  But Congress has

23   decided that that is just not the remedy that's available

24   when you contract with the government.

25           THE COURT:  Is it your view that their

1    constitutional claims are properly before this Court?

2          MR. BAILEY:  Your Honor, I think insofar as they

3    have truly independent constitutional claims, this Court has

4    jurisdiction.

5          THE COURT:  Okay.

6          MR. BAILEY:  But I think it's key that this has to

7    be claim by claim, and tacking on constitutional claims does

8    not allow you to sweep in arbitrary and capricious and

9    contrary to regs.

10          THE COURT:  No, I agree with that.

11          So let me just go down the line.

12          I mean, do you agree that their Fifth Amendment

13    claims are properly before me?

14          I mean, I ask because your brief didn't -- your

15    papers didn't exactly sort of tease this out in the way that

16    we're talking about now, so I just want to know what your

17    position is.

18          You know, they have made two Fifth Amendment

19    claims, due-process claim and a void-for-vagueness claim.

20    Do you think those are properly before me?

21          MR. BAILEY:  Your Honor, I'm not sure if I'm

22    prepared to take a definitive position, but I think that --

23    I think it's likely insofar as it is a true independent,

24    freestanding due-process claim, that, yes, that's properly

25    before you.

1          But I don't think -- I think we have to be

2     cognizant.

3          And this is a moving area of law, but the Tucker

4     Act's concerned about what's going on in essence here and

5     repackaging something into a regulatory, statutory, or even

6     constitutional claim, I don't think is appropriate in all

7     instances, just calling it a procedural due-process claim

8     when, I mean, any contract termination you could say, well,

9     this is a procedural due-process claim.

10          THE COURT:  Right.

11          But I mean, I mean, you know, take, for example,

12     the Ohio -- *Transohio*, that was a case in which there was

13     actually a due-process claim, I believe, or actually it was

14     a separate constitutional claim, may have been a due-process

15     claim, if memory serves, that the Court said it had

16     jurisdiction to hear, and it was not a case that needed to

17     go before the Court of Claims, right?

18          MR. BAILEY:  Yes, Your Honor.

19          I mean, *Transohio* is kind of limited help here

20     given that the remedy is of specific performance was not

21     paying out money due under a contract.  So I'm not sure how

22     much that says about which of plaintiffs' claims belong

23     here.

24          But I mean, the government agrees that the Court

25     of Federal Claims cannot hear those constitutional claims,

 1    they have to be heard somewhere.

 2              So insofar as you're not just a dressed-up

 3    contract claim, yes, this Court has jurisdiction.

 4              THE COURT:  Okay.

 5              And what about the separation of powers or the

 6    spending power claims, do you agree those are properly

 7    before me?

 8              MR. BAILEY:  Your Honor, I think that's a tougher

 9    question, because I think that these -- this spending,

10    separation of powers, appropriations, Take Care Clause all

11    combined together, I think those are really just kind of

12    statutory claims, those are appropriations statutes claims.

13              And here again, you can't just take a statutory

14    claim into District Court when it's really just a contract

15    claim.  So I think that -- I think that is tougher, but I'm

16    happy to tell you why I think that that claim fails on the

17    merits.

18              THE COURT:  Right.

19              No, we'll talk about that in a moment.  I was

20    trying to make sure I understand what your position is with

21    respect to these various jurisdictional issues.

22              Okay.  Okay.

23              So let's just go then to the contrary -- if we

24    could just go back to the APA claims for a moment and their

25    contrary-to-law claim.

1    Just to sort of put a button on this, I take it

2    your position is that this is not a claim that's based upon

3    the regulation or a violation of the regulation, but,

4    rather, is one essentially that's a contract claim, that is,

5    you've got to look to the contract to determine whether a

6    violation has occurred or not, or a breach has occurred,

7    is that right, and, for that reason, it should be in the

8    Court of Claims?

9        MR. BAILEY:  Yes, Your Honor.

10       Under *Megapulse*, *Ingersoll Rand*, *Spectrum Leasing*,

11    we think that pointing to a regulation, especially a

12    regulation that just points back at the terms and conditions

13    of the contract is, in essence, a contract claim when you

14    also look at the nature of the relief sought.

15       THE COURT:  Okay.

16       And -- okay.

17       We talked about what you thought your contract

18    defenses were -- are, were or were not.

19       Can we talk about the due-process claim, unless

20    there's more you wanted to say about the APA claims?

21       MR. BAILEY:  With respect to the Tucker Act?

22    I'm sorry.

23       THE COURT:  Correct.  Right.

24       I mean, if you want to say more about the APA

25    Tucker Act issues, why don't you go ahead and do that and

1    then we can move to due-process claim.

2         MR. BAILEY:  Sure.

3         Yeah, I'm happy to speak to the due-process claim.

4         THE COURT:  Okay.

5         So I think you would agree -- well, let me ask

6    you:  Would you agree with me that the regulations do place

7    some limitations on the Department of Justice's ability to

8    terminate the grants?

9         MR. BAILEY:  I'm not sure that that's right,

10   because the regulations are just, again, they're pointing

11   back to what's in the contract, and I don't think there's

12   anything that limits the government's ability to include,

13   you know, whatever contract terms they bargain for with the

14   other party.

15        THE COURT:  Well, but the regulations do say that

16   in order for the Department to terminate a contract, it must

17   include that term in the contract itself, right?  Correct?

18        MR. BAILEY:  Yes.

19        THE COURT:  We talked about that.

20        So is that not, in your view, a form of limitation

21   of discretion that would give rise to a property interest?

22   That's their argument.  So why is that not correct?

23        MR. BAILEY:  Yes, Your Honor.

24        So I understand that when they talk about limits

25   on discretion giving rise to property interests, those are

1   substantive limits, not procedural limits.

2               And at most, I think that 200.340(a) or (b) would

3   be a sort of procedural limit, because, as I said, it's just

4   pointing you to the terms and conditions of the contract

5   which the government is free to negotiate and include what

6   they wish.

7               And I'm not quite sure that you can get to a

8   protected property interest just by pointing to, even if it

9   was a substantive limitation, because the language that

10  they're pulling from, I mean, these are in employment

11  context, these are in benefits cases, and those are

12  heartland of the new property due-process cases that lay out

13  the doctrine for when a protected property interest will be

14  recognized.

15              But I don't understand plaintiffs to have

16  identified a single case where government -- where a court

17  has said, well, you know, we have a government contract, but

18  you've pointed to some -- one of the many thousands of

19  regulations that ties the government's hands in some way and

20  this creates a protected property interest.

21              I mean, plaintiffs have focused on 200.340, but

22  there are innumerable regulations applicable to government

23  action, and I don't think that that becomes some sort of

24  limitation that creates a property interest.

25              THE COURT:  So let me ask you about a different

1    regulation.

2         So 200.339, which is the termination for

3    noncompliance -- is a termination for noncompliance

4    provision which guarantees, A, in this case, a grantee an

5    opportunity to cure or a contractor an opportunity to cure

6    before termination.

7         In your view, does that create or does that

8    provide a property interest -- does that give rise to a

9    constitutional property interest that there is that

10   opportunity for cure given by virtue of the regulations?

11        MR. BAILEY:  No, Your Honor.

12        I mean, fundamentally, we don't think that that

13   makes a grant agreement like welfare benefits or tenure

14   protections under the Fifth Amendment.  We think that

15   they're, in substance, very different things.

16        And, sure, cases about employments or welfare

17   benefits talk about limits on discretion and that sort of

18   framing is appropriate there, that's where the doctrine

19   developed, and that's also where the doctrine is stopped.

20   It has never extended into government contracting.

21        I imagine in the procurement space, there's --

22   there are -- you could point to any number of regulations

23   that have -- that direct the government's conduct with

24   respect to its contracting, but we don't think then that,

25   well, now, we have a protected property interest.

1      THE COURT:  Say I did determine that there was a

2   protected property interest, do you agree that that would

3   entitle a grantee to advance notice of the termination?  Or

4   is the sort of post termination without notice of appeal

5   sufficient in your view?

6      MR. BAILEY:  Your Honor, we haven't briefed this

7   issue, I haven't taken a definitive position, but my

8   instinct is that the post-termination appeals process would

9   be sufficient.

10      Again, when we're outside the space of, like,

11   welfare benefits or a tenure protection, we think that,

12   in the contracting space, a post-deprivation hearing would

13   be sufficient.

14      Again, this would be massively destabilizing if

15   the government had to give a hearing every time it wanted to

16   exercise its rights under a termination for convenience

17   clause, which I understand we've already touched on, but --

18      THE COURT:  Well, I mean, look, there's lots of

19   different permutations, but at least in the contracting

20   space, for example, typically there is at least a notice

21   provided of -- I guess there is an opportunity to cure.

22      And so in that sense, I suppose there's some

23   notice given of potential termination.  But you're right,

24   I don't think there has to be some, hey, we're terminating,

25   now you have the opportunity to go before a neutral.

1          MR. BAILEY:  Yes, Your Honor.

2          And I think it's important to keep in mind that

3    the -- I think what's doing some of the work in exempting

4    standard contracts from the Fifth Amendment's due process

5    protections is that essentially your process due is what is

6    due under the contract and you can file suit for breach of

7    contract for insufficient notice and receive your damages

8    there.

9          It's not -- this is not to say that they don't

10   have recourse.  That's just a contract action.  Terminated

11   without notice.  We sue and we argue over what the damages

12   are in the Claims Court.  It doesn't transform this into

13   something like welfare benefits or tenure protection.

14          THE COURT:  Okay.

15          Separation-of-powers claim, does that claim, in

16   your view -- well, let me back up.

17          I mean, you've made the representation in your

18   declaration that the Department of Justice intends to

19   re-obligate these funds.  Is that something I can consider

20   on the motion to dismiss as opposed to the motion for

21   preliminary injunction in your view?

22          MR. BAILEY:  Your Honor, frankly, on the motion to

23   dismiss, it would likely be inappropriate to consider the

24   declaration, we recognize that.

25          I mean, we think that this essentially forecloses

1    their separation-of-powers claim for purposes of the

2    preliminary injunction.

3             But as far as whether this claim could be

4    dismissed without considering that representation, I think

5    the answer is yes, there's no basis to think that these

6    funds will not be spent.

7             And in Judge Cooper's *Harris County* opinion,

8    I believe he mentions how part of the rationale was that,

9    at least, with respect to the claims that he --

10            THE COURT:  Right, the funds there, that the year

11   it expired.  And so essentially it was effectively a veto,

12   or they pocketed the money effectively.

13            MR. BAILEY:  Then for the other funds, which he

14   found no violation, he said there's no reason to think that

15   these won't be -- plaintiffs hadn't shown that they would

16   not be spent by this administration, or I believe it was in

17   parentheses, or the next.

18            So even accepting that the allegation that, as of

19   now, these funds have been pocketed, we don't think that

20   that states a separation-of-powers appropriations claim.

21   These are no-year funds.

22            THE COURT:  So the no-year funding feature of it

23   is what you believe essentially takes this out of any

24   separation-of-powers claim, period, full stop?

25            MR. BAILEY:  Yes, Your Honor, at least for the

1    purposes of the motion to dismiss.  We think that that's why

2    it fails.

3              And as far as to whether that's a legal question,

4    the grant agreements they identify, which were appended to

5    plaintiffs' complaint, they identify the source of funding.

6    So you can go to the funding statutes and see that that's a

7    legal question.

8              THE COURT:  Right.

9              Okay.

10             Can I just ask you, there was a recent decision by

11   Judge Friedman that you may be familiar with.  I don't

12   actually have it.  The *Southern Education Fund* case.

13   Are you familiar with that?

14             MR. BAILEY:  I may be.

15             I've read a lot of grants cases, but I'm not sure

16   about that one.

17             THE COURT:  Yeah, fair enough.

18             Because he had a similar -- the case was similarly

19   postured in that it involved grants.

20             And he determined that he did have jurisdiction to

21   consider the APA claims, or at least the bottom line is that

22   the case wasn't channeled into the Court of Claims, and I

23   was just wondering if you had a way of either distinguishing

24   the case or you just disagree with the outcome.

25             MR. BAILEY:  This may be the case where he relied

1    heavily on *Bowen*.  And if that's the case, I'm happy to

2    address *Bowen*.

3              I think there's a long and a short answer to why

4    that doesn't allow kind of an escape hatch from the

5    exclusive Tucker Act jurisdiction.

6              And I'll start with the long answer; it might be a

7    little more satisfying.

8              I think that *Bowen* was about the limits on the

9    APA's waiver of sovereign immunity for cases for money

10   damages.

11             But the Tucker Act is about the separate

12   limitation for suits that are impliedly precluded by other

13   statutes, and that's a space we're working in here.

14             And I'm sure you're familiar with the facts of

15   *Bowen* to know it was not a contract case, it was about,

16   you know, states due money under the Medicaid statute.

17             THE COURT:  Right.

18             MR. BAILEY:  My short answer is that the

19   Department of Education, it cited *Bowen* and said, like,

20   yeah, we know, but the APA does not allow for an order

21   compelling the government to pay money due under the

22   contract.

23             And understanding that *Department of Education* was

24   not heavily reasoned, to say the least, which probably

25   frustrates more than one of us, I think that that enough is

1    to know that *Bowen* is not going to, you know, make the

2    Tucker Act a nullity, it wasn't intended to do that, it

3    doesn't do that.

4         And I think theoretically, Judge Moss' opinion in

5    *Yee v. Juul*, it discusses how the -- and this is cited in

6    our briefs -- it discusses how *Bowen*'s sense of money

7    damages is distinct from when you're in the Tucker Act

8    space, whether a suit is seeking monetary relief.

9         THE COURT:  Right.

10        MR. BAILEY:  I believe *Transohio* also recognized

11   that *Bowen*, you know, muddied the waters and it could have

12   endangered the -- you know, the D.C. Circuit's precedent.

13        But *Transohio* ultimately came out and said, well,

14   you know, the very specific holdings from the D.C. Circuit,

15   they remain good law.

16        And so I think for those reasons, *Bowen* just

17   doesn't do the work that plaintiffs need it to.

18        THE COURT:  Okay.

19        I don't have additional questions; but that's not

20   to foreclose you from making any additional arguments that

21   you may have, including on the class action motion.

22        MR. BAILEY:  Yes, Your Honor.

23        If you don't have any questions on vagueness,

24   I would just like to quickly address the ultra vires claim.

25        We think that the Supreme Court's opinion last

1    week in *Nuclear Regulatory Commission*, it really makes this

2    claim a dead letter.

3            Plaintiffs claim that they've alleged that the

4    government has acted far outside its role, or something

5    along those lines.

6            But I just encourage Your Honor to read that

7    portion of the complaint.  There's no allegation like that.

8    And even if there was, that's a conclusory legal opinion,

9    that's not enough to survive a motion to dismiss.  And in

10   their view either the APA would provide an adequate means of

11   relief, or in our view, the Tucker Act would.

12           And I would like to briefly just touch on a couple

13   points regarding the equities.

14           I think that we've requested that this Court order

15   a bond, and we've requested that it be in the full amount of

16   the unobligated funds that plaintiffs are seeking.

17           And even if Your Honor disagrees that that's

18   appropriate, I think the Department of Education shows why

19   the equities tip in favor of the government here, because

20   the government is not going to get that money back once it's

21   spent.

22           And this is a large reason why we're asking for

23   the bond, not just because we think it's required under

24   D.C. Circuit precedent and the language of the rule, but to

25   ensure that if things -- because this is a moving space,

1    right, we recognize that.  And we hope that there will be

2    more guidance from the D.C. Circuit soon, but we hope that

3    that doesn't cause the government irreparable harm in funds

4    that it can't get back.

5          And I would just like to address -- and I think

6    this goes to our opening discussion as to just plaintiffs'

7    framing of the case as the government just yanking away

8    grant funds from valuable programs, and I stand by my

9    representation that I'm not here today to disparage

10   plaintiffs' grants.

11         I think what our discussion misses is that the

12   government -- it didn't say that it intends to re-obligate

13   the funds to get into the Court of Federal Claims.  It

14   intends to re-obligate those founds to fund new programs

15   that will do good.

16         And there can be reasonable disagreements as to

17   whether one grant program is better than another, but,

18   respectfully, I think that it's the Department of Justice,

19   not plaintiffs, not me, nor this Court that is best

20   positioned to determine what programs will best advance the

21   interests of the United States.

22         THE COURT:  Can I just, before we move on,

23   in terms of irreparable harm, I mean, you've heard and read

24   the declarations and heard from your colleague about the

25   impacts that this has had on both the organizations and in

```
 1    their ability to carry out their missions.
 2            Why, in your estimation, is that not sufficient to
 3    establish irreparable harm?
 4            MR. BAILEY:  Sure.  I have a couple thoughts about
 5    this.
 6            I mean, the first that they cite, I think, only
 7    one D.C. Circuit case for this proposition, National League
 8    of Women Voters, and that's kind of the sound bite that they
 9    say establishes the damage to the mission is irreparable
10    harm.
11            But I mean, in that case, it was a very, very
12    specific context where the League of Women Voters, their
13    mission related to voting, it was going to become impossible
14    after the election date.
15            And so the Court said, well, yeah, once the
16    election passes, your mission will be impossible to re-start
17    or accomplish.  And so, you know, analogizing here, that
18    would be effectively equivalent to a business having to
19    shutter its doors, and that's the kind of economic harm that
20    we think could, you know, establish irreparable harm.
21            So my point being is that temporary damage to a
22    mission that a money judgment could remedy, allowing these
23    plaintiff organizations to re-start, continue on their
24    activities, that's not irreparable harm.
25            THE COURT:  And what about the reputational harm
```

1   that they've put forth?

2          MR. BAILEY:  Yes, Your Honor.

3          I mean, we don't think that a reputational harm is

4   a sort of direct injury caused by the termination of grants

5   that qualifies as the imminent direct harm that is necessary

6   to show irreparable harm.

7          And we didn't get the last word on irreparable

8   harm in the briefing.

9          I think that the Supreme Court's decision in

10  *Alliance for Hippocratic Medicine* is very illustrative on

11  how you don't even get standing by just saying that your

12  mission was impaired; certainly won't establish irreparable

13  harm.

14         THE COURT:  But help me understand what -- I don't

15  quite get the position on reputational harm.

16         In other words, there is a direct causal link

17  between the termination of the grant and the reputational

18  harm that they're claiming.  So I'm not following your

19  reasoning for why that's not enough.

20         I mean, maybe you just don't think reputational

21  harm rises to -- rises to irreparability, that's okay, but

22  in terms of causation, I don't quite see it.

23         MR. BAILEY:  Well, Your Honor, I mean, it's

24  several intervening factors.

25         And we have to consider actors that aren't before

1    the Court and how they're responding to what plaintiffs are

2    doing to shut down, to wind down their programs in the

3    interim and what plaintiffs are not doing with respect to

4    educating -- notifying the people that they claim their

5    reputation has been injured with.

6            As you noted, I mean, there's been fingers pointed

7    at the Department of Justice here as to who's at fault.

8    So I think that that kind of belies the claim that

9    plaintiffs' reputations, when -- especially when they file a

10   very public lawsuit, is going to be damaged here.  And

11   causally, I think there's a lot that goes on before you can

12   get to say that, well, the termination is what caused

13   individuals out in the community to, you know, to view

14   plaintiffs differently.

15           And then I think also, lastly, generally,

16   reputational harms are analogized to economic harms that can

17   be remedied with money in the future, which just doesn't

18   count.

19           THE COURT:  Okay.

20           MR. BAILEY:  Your Honor, I'm happy to rest on the

21   papers with respect to class certification unless you had

22   any particular questions.

23           THE COURT:  I don't.

24           MR. BAILEY:  Thank you.

25           THE COURT:  All right.  Thank you.

1      Well, actually, I do have one question, sorry,

2  before you sit down.

3      Do you know -- this is the question I think I

4  asked you earlier.

5      Do you know whether any of the grants did have

6  greater specificity in identifying a change or are no longer

7  effectuating priorities language in it that was more

8  explicit than what the grants did for these five plaintiffs?

9      MR. BAILEY:  I don't know that, Your Honor.

10     I can tell you that we all agree that the full --

11  the incorporation by reference of the provision we talked

12  about was in every grant.

13     But I don't know and I think that counsel's,

14  again, class certification here, we would have essentially

15  375 administrative records that could speak to that,

16  and I can't at this stage.

17     THE COURT:  Okay.

18     All right.  Thank you.

19     All right.  I'll give plaintiffs an opportunity

20  for a brief rebuttal.

21     MS. NEWMAN:  I'll be very brief.  Thank you,

22  Your Honor.

23     THE COURT:  Thank you.

24     MS. NEWMAN:  I understand my colleague to admit

25  that relief under the APA is not something that the Court of

1    Federal Claims can provide.

2            If plaintiffs are sent to the Court of Federal

3    Claims, the government has taken the position, as recently

4    as March of 2025 and briefing before that court, that those

5    plaintiffs are not allowed to seek for reinstatement of

6    funding that would allow for the grant funding to continue,

7    and that's because *Lummi* and other cases within the Federal

8    Circuit do not allow that court to exercise jurisdiction

9    over strings-attached grant agreement in which the grantee

10   and the government, as the case here with plaintiffs, would

11   continue to be going back and forth as is required by

12   cooperative agreements.

13           And so I don't -- I think that discussion

14   illustrates that much of what plaintiffs are seeking is not

15   actually available in the Court of Federal Claims were we to

16   be sent to the Court of Federal Claims.

17           THE COURT:  And your response to the point the

18   government makes, which is, that's just how the system was

19   set up by Congress is what?

20           MS. NEWMAN:  Is the APA.

21           Congress also set forth the APA and allows for

22   individuals to sue in this court if it believes that an

23   agency action that is final, as it is here, violates the

24   law, is contrary to law, and is arbitrary and capricious.

25           And so, you know, I think both of these things

1    exist.

2            And here, as we have discussed at length,

3    we believe that these are much more like classic APA claims

4    than breach of contract claims for backward-looking monetary

5    damages.

6            And I understand my colleague to have said that we

7    actually wouldn't be entitled to anything forward-looking;

8    it would be, you know, closing costs, which we're already

9    entitled to under the C.F.R., and any sort of potential

10   reliance interest.

11           And so even if you're just thinking about the

12   money and the continuation of grant funding, that is not

13   available in the Court of Federal Claims, as the government

14   has argued.

15           On the due-process claim, my colleague said that

16   it would be massively destabilizing if every single grantee

17   was terminated without notice was entitled to some sort of

18   due process.

19           And you brought up 200.339, which I think shows

20   how unusual this is.  Typically the government does -- we're

21   not talking about contracts for convenience; that's not

22   something that OJP can terminate grants on the basis of.

23           Typically, OJP does provide individuals with the

24   ability to cure and see if they can come into some sort of

25   compliance if they're not compliant, and so I think the fact

1    that that regulation exists shows that this would not be

2    massively destabilizing given that this is what OJP already

3    does.

4            And, you know, I wanted to end with the question

5    of where you started.

6            Defendants say that there was an individualized

7    termination that was made.  They cannot tell us how that

8    determination was individualized or how those -- how these

9    groups no longer meet the changed agency priorities.  And

10   all plaintiffs in this court have to go off of is the bare

11   bones reasoning that they provided which is almost nothing

12   at all.

13           And I don't think that there's any question to

14   reputational harm, that the declarations speak to that,

15   that's uncontroverted evidence.

16           And I think as just a matter of logic, if the

17   funding was for a specific purpose, to prevent community

18   violence, and that work suddenly stops, it is not dependent

19   on third parties that, like, as a matter of logic, your

20   reputation is going to be harmed within these communities,

21   and it's communities in which building trust and credibility

22   is absolutely essential to the plaintiffs' ability to

23   continue to carry out this work in the future.

24           And if there are no questions.

25           THE COURT:  No.  Thank you.

1          MS. NEWMAN:  Thank you, Your Honor.

2          THE COURT:  Thank you very much, Counsel.

3          Okay, everyone.  Thank you for your presentations

4    this afternoon.  You've given me a lot to think about.

5    We will get to the task of getting you a decision in short

6    order.

7          Thanks, everyone.  Please don't wait for me.

8          COURTROOM DEPUTY:  All rise.  The Court is now

9    adjourned.

10          (Proceedings concluded at 4:17 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__June 30, 2025_____    _____

                         William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY:**
**[5]**   4/2 4/6 53/21
53/24 96/8
**MR. BAILEY: [78]**
54/4 54/6 54/9 55/3
55/7 55/14 55/21
56/2 56/12 56/18
57/2 57/13 57/17
58/5 58/19 58/23
59/8 59/13 60/8
60/19 61/14 61/24
62/9 62/12 62/18
63/5 63/10 63/13
63/21 64/3 65/7
65/11 66/12 67/12
67/15 67/20 68/6
68/14 68/17 68/21
69/2 69/8 69/15 70/7
70/10 70/24 71/9
71/25 72/11 73/2
74/2 74/6 74/21
75/18 76/8 77/9
77/21 78/2 78/9
78/18 78/23 80/11
81/6 82/1 82/22
83/13 83/25 84/14
84/25 85/18 86/10
86/22 89/4 90/2
90/23 91/20 91/24
92/9
**MR. STANTON: [40]**
28/11 28/14 29/18
30/10 30/17 30/20
31/3 31/5 31/23 32/3
32/16 33/1 34/20
35/4 35/14 36/7 37/8
38/4 39/5 39/13
39/17 40/3 41/1 41/8
42/6 42/24 43/16
43/20 44/10 44/22
45/17 46/2 46/9
46/22 46/24 47/16
47/20 48/4 48/10
49/12
**MS. CONNOLLY: [11]**
49/16 50/19 50/24
51/11 51/14 52/2
52/13 52/21 52/23
53/3 53/12
**MS. NEWMAN: [59]**
4/18 5/3 7/4 7/19
7/23 8/5 8/19 8/21
9/2 9/9 9/19 10/22
11/22 12/9 12/17
12/24 13/2 13/19
13/22 14/24 15/6
15/18 16/6 16/10
17/12 17/14 17/20
17/22 18/5 18/19
18/24 20/4 20/20
21/6 21/10 21/14
21/17 21/20 22/2
22/6 22/8 23/7 23/18
23/22 24/13 24/24

45/23 2/4 4/16)
27/11 28/10 30/22
35/10 38/12 45/12
92/21 92/24 93/20
96/1
**THE COURT: [190]**

**$**

**$800 [3]**   5/5 5/22
58/1

**0**

**01643 [1]**   1/4

**1**

**10 minutes [1]**   53/15
**10022 [1]**   2/11
**111 [1]**   30/21
**12 [4]**   28/21 29/19
29/22 32/25
**15 [1]**   53/17
**1643 [1]**   4/7
**1850s [1]**   65/8

**2**

**200 [1]**   60/11
**200.339 [2]**   80/2
94/19
**200.340 [16]**   12/22
13/6 15/22 16/19
18/7 19/5 19/21 20/4
20/9 20/25 35/22
37/11 52/6 70/1 79/2
79/21
**200.340's [1]**   14/1
**20001 [1]**   3/5
**20043 [1]**   2/4
**202 [3]**   2/5 2/17 3/5
**2020 [6]**   19/14 20/22
70/23 70/25 71/10
71/14
**2024 [5]**   19/14 70/11
70/13 70/23 71/17
**2025 [4]**   1/5 5/4
93/4 97/7
**20530 [1]**   2/17
**212 [1]**   2/11
**213-3070 [1]**   2/11
**25 [1]**   53/20
**25-01643 [1]**   1/4
**25-1643 [1]**   4/7
**26 [1]**   1/5
**280 [1]**   13/25
**2:03 [1]**   1/6

**3**

**30 [1]**   97/7
**3070 [1]**   2/11
**3249 [1]**   3/5
**333 [1]**   3/4
**340 [1]**   36/9
**34553 [1]**   2/4
**354-3249 [1]**   3/5
**36 [1]**   23/9
**3618 [1]**   2/16
**375 [1]**   92/15

**378 [2]**   2/19/23
**3:07 [1]**   53/23
**3:26 [1]**   53/23

**4**

**445 [1]**   2/10
**448-9090 [1]**   2/5
**4:17 [1]**   96/10
**4th [2]**   27/13 27/19

**5**

**514-6993 [1]**   2/17

**6**

**6993 [1]**   2/17

**7**

**702 [1]**   10/21
**7th [1]**   2/10

**9**

**9090 [1]**   2/5
**950 [1]**   2/16

**A**

**AARP [1]**   49/23
**abide [1]**   19/11
**ability [10]**   24/9
24/10 36/19 50/14
50/18 78/7 78/12
89/1 94/24 95/22
**able [4]**   24/6 27/5
60/13 62/24
**about [59]**   7/9 8/11
10/6 10/9 10/23
10/25 11/4 11/18
12/9 19/16 23/14
24/16 26/5 28/16
29/13 35/7 39/10
43/9 43/10 43/14
46/16 48/8 49/1
52/25 53/14 53/19
55/23 57/22 67/5
69/6 69/9 70/11
71/19 73/7 74/16
75/4 75/22 76/5
76/19 77/17 77/19
77/20 77/24 78/19
78/24 79/25 80/16
80/17 84/16 85/8
85/11 85/15 88/24
89/4 89/25 92/12
94/11 94/21 96/4
**above [1]**   97/4
**above-titled [1]**
97/4
**abrupt [2]**   5/10 25/8
**abruptly [2]**   24/3
24/4
**absent [1]**   27/25
**absolute [1]**   61/17
**absolutely [8]**   12/24
50/24 63/10 69/15
69/20 69/23 70/24
95/22
**accepting [1]**   83/18

**accomplish [1]**   89/17
**accounting [1]**   12/2
**achieving [3]**   45/3
45/4 46/11
**across [4]**   19/23
20/24 22/16 22/21
**act [17]**   8/7 14/11
27/21 34/7 46/7 63/3
63/6 66/4 66/7 73/4
77/21 77/25 85/5
85/11 86/2 86/7
87/11
**Act's [1]**   75/4
**acted [1]**   87/4
**action [8]**   4/7 5/25
6/5 62/13 79/23
82/10 86/21 93/23
**actions [3]**   37/14
38/17 48/18
**active [2]**   27/13
27/16
**actively [1]**   26/2
**activities [2]**   27/20
89/24
**actors [1]**   90/25
**actually [17]**   9/23
11/2 11/3 19/5 26/6
28/24 36/8 39/9
48/12 59/6 65/18
75/13 75/13 84/12
92/1 93/15 94/7
**add [2]**   39/22 49/10
**addition [2]**   17/9
17/15
**additional [2]**   86/19
86/20
**address [5]**   44/2
49/3 85/2 86/24 88/5
**addressed [2]**   14/11
44/12
**addresses [1]**   38/12
**addressing [2]**   42/7
49/6
**adequate [3]**   48/7
48/8 87/10
**adjourned [1]**   96/9
**administration [5]**
20/23 25/17 26/8
47/7 83/16
**administration's [4]**
20/23 42/1 42/9 56/4
**administrative [4]**
55/15 58/24 59/5
92/15
**admit [1]**   92/24
**admits [1]**   6/6
**admitted [1]**   52/19
**adoption [1]**   52/14
**advance [8]**   33/21
39/25 40/21 40/22
54/18 59/22 81/3
88/20
**advantage [1]**   60/9
**affirmatively [1]**
30/14

**A**

**after [6]**   20/6 35/23
52/11 53/20 54/16
89/14
**afternoon [8]**   4/4
4/12 4/18 28/11
49/16 54/4 54/5 96/4
**afterthought [1]**
8/25
**again [18]**   10/14
10/22 16/10 19/18
19/25 33/5 35/10
37/1 37/8 41/14
41/18 53/25 63/21
76/13 78/10 81/10
81/14 92/14
**against [6]**   40/10
55/9 64/16 66/8
69/22 73/5
**agency [25]**   5/8 5/24
13/7 16/2 16/3 19/2
19/2 20/5 20/5 20/23
35/19 36/13 37/13
38/25 41/11 44/15
45/1 51/3 52/10
54/18 61/1 61/1 70/1
93/23 95/9
**agency's [10]**   20/7
36/12 42/11 42/17
45/3 54/13 56/9
56/18 59/14 60/6
**agree [28]**   7/16 9/3
11/20 15/24 18/10
18/16 18/20 21/2
23/4 23/7 39/23
44/20 51/8 56/17
58/17 63/4 67/8
67/19 68/9 68/11
70/5 74/10 74/12
76/6 78/5 78/6 81/2
92/10
**agreed [2]**   17/10
47/3
**agreement [14]**   7/13
11/1 15/9 15/14
15/19 16/14 16/17
16/18 19/1 19/6 35/7
68/5 80/13 93/9
**agreements [7]**   11/11
18/24 18/25 50/8
51/24 84/4 93/12
**agrees [2]**   69/6
75/24
**ahead [2]**   15/16
77/25
**aided [1]**   3/7
**Aiken [1]**   45/23
**aims [2]**   47/6 47/9
**al [4]**   1/3 1/6 4/8
4/8
**alignment [1]**   17/3
**all [60]**   4/2 4/12
5/15 6/11 6/17 7/24
8/6 8/10 10/24 15/7
16/11 16/13 16/17

16/24 19/23 20/21
21/24 23/5 25/16
26/14 27/2 27/7
32/10 33/13 36/21
37/4 37/20 40/15
40/18 42/24 48/6
49/13 49/14 49/18
50/1 50/7 51/6 51/13
53/14 53/21 53/24
54/3 56/8 57/21
59/24 60/24 65/22
67/1 70/3 70/12
70/16 75/6 76/10
91/25 92/10 92/18
92/19 95/10 95/12
96/8
**All right [2]**   4/12
49/14
**allegation [5]**   31/2
32/14 48/15 83/18
87/7
**allegations [1]**
29/14
**allege [1]**   48/18
**alleged [4]**   30/13
33/18 34/21 87/3
**alleging [2]**   61/9
66/1
**Alliance [1]**   90/10
**allocate [1]**   45/15
**allocated [1]**   45/10
**allow [9]**   22/5 36/10
36/18 66/11 74/8
85/4 85/20 93/6 93/8
**allowed [3]**   10/6
51/25 93/5
**allowing [1]**   89/22
**allows [4]**   8/3 13/6
20/4 93/21
**allude [1]**   73/12
**almost [3]**   30/17
61/17 95/11
**alone [1]**   39/3
**along [1]**   87/5
**already [7]**   34/13
46/11 63/24 64/21
81/17 94/8 95/2
**also [26]**   7/11 9/13
9/13 9/14 12/20
19/10 19/11 19/19
24/4 24/25 25/1
32/16 39/3 41/14
45/19 48/17 50/20
50/21 50/23 66/16
71/16 77/14 80/19
86/10 91/15 93/21
**alternative [1]**   49/3
**although [3]**   7/14
31/25 61/19
**am [2]**   59/11 59/18
**ambiguity [3]**   69/10
69/11 71/17
**ambiguous [1]**   70/6
**ambiguously [1]**
70/22 71/1

**amble [2]**   23/12
48/20
**Amendment [5]**   33/24
37/7 74/12 74/18
80/14
**Amendment's [1]**   82/4
**America [1]**   58/3
**American [3]**   48/21
49/4 54/20
**AMIT [3]**   1/9 4/2
53/25
**among [2]**   12/14 57/6
**amount [8]**   44/20
55/22 55/25 57/25
64/1 64/5 73/21
87/15
**analogize [1]**   38/19
**analogized [1]**   91/16
**analogizing [1]**
89/17
**analogous [1]**   34/14
**analysis [2]**   7/8
66/24
**anniversary [1]**
27/19
**another [3]**   26/21
60/21 88/17
**answer [12]**   26/22
27/5 27/6 34/11 43/8
43/25 49/18 49/19
83/5 85/3 85/6 85/18
**antecedent [2]**   21/15
21/24
**any [43]**   4/25 6/7
6/8 7/21 10/2 12/23
12/25 21/4 22/6 28/7
28/21 32/12 36/9
37/15 38/2 43/8
44/16 45/14 45/17
46/12 55/16 59/2
61/4 61/4 61/9 62/2
64/7 65/3 65/17
68/19 69/3 69/11
69/12 71/18 75/8
80/22 83/23 86/20
86/23 91/22 92/5
94/9 95/13
**anybody [1]**   9/12
**anyone [2]**   50/16
52/17
**anything [5]**   22/4
53/8 64/7 78/12 94/7
**anywhere [1]**   52/4
**APA [25]**   6/9 6/12
8/25 9/8 9/18 10/4
11/12 11/14 22/7
31/16 37/1 48/7 66/8
66/22 72/7 76/24
77/20 77/24 84/21
85/20 87/10 92/25
93/20 93/21 94/3
**APA's [1]**   85/9
**Apologies [1]**   27/9
**apologize [1]**   15/4
**appeal [3]**   60/15

60/18 69/4

**appeals [5]**   60/10
60/21 61/21 61/25
81/8
**APPEARANCES [2]**   1/11
2/19
**appended [1]**   84/4
**applicable [1]**   79/22
**application [2]**   62/8
**applied [1]**   70/16
**applies [4]**   49/7
67/22 69/11 71/18
**apply [4]**   34/19
34/24 38/23 70/19
**applying [1]**   7/9
**appropriate [8]**
19/25 31/9 32/17
32/18 48/20 75/6
80/18 87/18
**appropriated [2]**
43/25 44/13
**appropriations [4]**
47/17 76/10 76/12
83/20
**April [1]**   5/4
**arbitrary [20]**   5/24
6/1 6/4 6/11 6/13
6/16 7/3 7/22 8/16
8/17 10/1 10/18
14/13 19/17 55/19
59/13 60/24 62/20
74/8 93/24
**are [108]**
**Are you [1]**   84/13
**area [5]**   38/15 43/23
45/25 65/4 75/3
**aren't [5]**   7/1 7/1
18/17 34/24 90/25
**arguably [3]**   15/15
15/18 44/5
**argue [9]**   22/5 31/19
34/14 40/10 40/19
41/5 49/6 71/22
82/11
**argued [4]**   22/23
30/23 48/22 94/14
**arguing [1]**   28/22
**argument [23]**   4/22
14/14 28/15 28/19
28/24 29/4 29/19
29/22 32/5 34/6 34/8
46/10 47/20 52/7
52/21 52/22 62/15
65/24 70/19 72/2
72/2 72/10 78/22
**arguments [10]**   6/25
29/3 29/15 33/3
33/10 34/12 43/7
53/6 72/4 86/20
**around [3]**   10/24
14/11 52/14
**artfully [1]**   14/10
**Article [1]**   62/6
**articulate [4]**   44/3
48/10 60/13 60/16

**A**

articulated [9]
33/18 34/22 40/6
40/16 40/18 42/8
45/1 47/23 50/13
as [96]  7/12 8/4
8/25 9/17 10/1 11/13
12/5 12/10 13/6 13/9
13/15 14/4 15/13
15/24 17/23 18/3
18/6 18/8 19/4 19/6
19/12 19/20 21/13
23/16 23/21 27/15
28/20 31/2 31/18
31/21 31/25 32/4
32/4 32/6 32/17 33/6
33/7 33/11 33/12
33/18 34/2 34/6
34/23 35/11 39/14
43/13 43/20 43/21
43/22 45/19 47/8
49/25 49/25 50/4
55/1 55/11 58/13
58/22 60/21 61/4
61/8 62/1 62/6 62/15
65/21 66/7 66/12
67/12 67/13 69/1
71/10 74/2 74/23
76/2 79/3 82/20 83/3
83/3 83/18 84/3 84/3
88/6 88/7 88/16 90/5
91/6 91/7 93/3 93/4
93/10 93/11 93/23
94/2 94/13 95/16
95/19
aside [4]  10/8 11/10
12/19 57/21
ask [16]  6/11 13/12
18/23 22/22 26/21
27/7 39/1 45/6 50/5
51/8 54/22 60/7
74/14 78/5 79/25
84/10
asked [2]  60/15 92/4
asking [7]  11/19
12/14 21/14 26/23
50/15 68/11 87/22
aspects [1]  42/7
assault [1]  54/21
asserted [1]  22/23
asserting [4]  39/2
39/3 39/5 39/8
assertion [1]  29/5
assessed [2]  7/18
9/24
assessing [2]  9/21
16/15
assessments [1]  60/1
associated [1]  41/18
Association [3]  38/5
48/22 49/4
assume [1]  39/23
attached [1]  93/9
attempt [1]  41/22
authority [3]  43/20

47/13 50/7
authorized [1]  47/4
available [6]  40/5
48/11 73/18 73/23
93/15 94/13
Ave [1]  2/16
Avenue [2]  2/10 3/4
avoid [1]  44/25
award [4]  24/3 52/11
70/4 70/13
awarded [4]  20/6
21/21 23/24 70/13
awards [7]  5/7 54/16
54/17 69/13 70/13
70/17 71/20
aware [1]  45/16
away [2]  14/13 88/7

**B**

back [18]  9/19 13/10
14/25 25/12 40/2
45/14 53/18 55/22
67/1 67/6 69/19
76/24 77/12 78/11
82/16 87/20 88/4
93/11
backed [1]  57/24
backward [2]  11/8
94/4
backward-looking [2]
11/8 94/4
backwards [1]  10/2
bad [3]  9/12 10/15
58/14
Bailey [4]  2/14 4/11
54/6 54/8
bailiwick [1]  48/2
balance [1]  28/5
balancing [1]  55/9
bare [1]  95/10
bargain [1]  78/13
Barrett [1]  3/4
bars [1]  11/6
based [6]  13/7 20/5
20/13 38/19 52/1
77/2
basically [1]  48/11
basis [21]  7/18 9/25
13/17 16/4 18/14
19/1 19/12 20/1
20/25 25/20 36/4
51/10 51/17 60/16
61/8 63/8 65/15 67/9
68/4 83/5 94/22
be [160]
bearing [1]  7/21
became [1]  70/14
because [39]  8/16
8/24 8/24 12/2 12/14
14/18 17/18 21/4
21/15 25/17 27/24
29/12 32/14 34/9
35/1 37/2 39/14 40/1
53/5 59/17 61/18
62/20 62/25 64/6

76/1 68/25 71/5
71/10 73/20 74/14
76/9 78/10 79/3 79/9
84/18 87/19 87/23
87/25 93/7
become [3]  9/8 37/24
89/13
becomes [1]  79/23
been [34]  9/5 9/6
11/13 14/19 15/2
16/11 20/21 21/21
23/12 25/15 26/10
26/22 28/1 28/3
33/21 34/1 35/23
40/13 43/1 44/1
50/23 51/23 52/16
53/14 55/13 61/10
61/10 61/16 65/8
73/11 75/14 83/19
91/5 91/6
before [27]  1/9 6/18
13/10 28/14 40/23
51/19 53/16 53/19
55/5 56/15 60/7
62/17 65/20 70/13
74/1 74/13 74/20
74/25 75/17 76/7
80/6 81/25 88/22
90/25 91/11 92/2
93/4
begin [2]  4/17 33/16
beginning [1]  65/23
behalf [3]  4/19
28/12 49/17
being [9]  11/5 22/13
27/3 32/12 41/11
50/4 54/19 60/19
89/21
belief [1]  48/23
belies [2]  60/23
91/8
believe [30]  12/10
14/2 18/2 19/24 20/2
20/8 20/14 23/9 28/3
32/22 48/6 52/4
60/11 60/20 61/14
65/15 66/2 67/21
70/15 71/9 71/16
71/21 71/25 72/11
75/13 83/8 83/16
83/23 86/10 94/3
believes [1]  93/22
belong [1]  75/22
beneficiaries [2]
23/1 23/16
benefit [1]  21/8
benefiting [1]  23/1
benefits [9]  37/17
37/18 37/22 38/22
79/11 80/13 80/17
81/11 82/13
best [2]  88/19 88/20
better [3]  56/3 56/3
88/17
between [2]  46/9

beyond [1]  58/25
bit [3]  25/12 53/19
56/8
bite [1]  89/8
black [1]  69/5
board [2]  20/24
22/16 71/10
bond [2]  87/15 87/23
bones [1]  95/11
both [8]  26/23 29/8
32/16 39/16 70/22
73/16 88/25 93/25
bottom [1]  84/21
bound [1]  59/23
bounds [1]  44/18
Bowen [14]  7/7 7/8
7/8 7/9 8/2 8/5 85/1
85/2 85/8 85/15
85/19 86/1 86/11
86/16
Bowen's [1]  86/6
box [2]  2/4 37/20
Branch [1]  44/21
breach [8]  9/13
63/16 66/21 72/2
73/5 77/6 82/6 94/4
breaks [1]  10/25
brew [1]  26/5
brewing [1]  26/5
brief [7]  13/3 23/9
23/10 30/3 33/8 53/7
74/14 92/20 92/21
briefed [3]  34/21
40/13 81/6
briefing [5]  35/11
43/7 45/1 90/8 93/4
briefly [2]  22/10
87/12
briefs [2]  52/4 86/6
bring [1]  7/11
bringing [1]  9/17
broad [2]  34/24
64/22
brought [4]  7/12
7/20 62/20 94/19
buckets [1]  10/25
budget [1]  32/15
building [3]  5/19
25/6 95/21
built [1]  26/15
bulk [1]  15/12
bunch [1]  37/17
burden [1]  30/15
business [1]  89/18
Butterfly [2]  48/21
49/4
button [1]  77/1

**C**

C.F.R [1]  94/9
call [1]  26/4
called [1]  58/15
calling [1]  75/7
calm [1]  58/16

C

**came [2]**   14/17 86/13
**can [44]**   8/12 9/8
11/11 20/12 22/22
24/4 25/11 25/12
26/21 32/9 32/13
37/15 38/2 39/1
39/10 39/20 41/16
48/6 50/25 51/5 51/8
54/22 54/24 56/2
56/3 58/5 59/6 61/21
72/22 77/19 78/1
79/7 82/6 82/19 84/6
84/10 88/16 88/22
91/11 91/16 92/10
93/1 94/22 94/24
**can't [27]**   16/4 16/9
18/14 25/4 38/9
41/15 55/19 56/25
58/3 58/24 59/2
59/16 59/17 60/4
60/6 60/16 60/17
61/4 61/14 62/2
62/22 66/1 66/18
68/19 76/13 88/4
92/16
**can't even [1]**   60/16
**cancel [1]**   37/2
**canceled [1]**   20/17
**cannot [3]**   33/9
75/25 95/7
**canonical [1]**   66/20
**capricious [19]**   5/24
6/1 6/4 6/12 6/13
6/16 7/3 7/22 8/16
8/17 10/1 10/18
14/14 19/17 55/19
59/13 62/21 74/8
93/24
**care [5]**   43/11 47/11
47/14 60/24 76/10
**carefully [1]**   54/17
**carries [1]**   73/15
**carry [7]**   23/11 24/6
35/7 50/14 50/18
89/1 95/23
**carrying [2]**   46/20
61/20
**case [51]**   7/7 8/3
10/14 10/18 10/24
12/1 12/12 14/17
14/22 15/4 19/4 26/4
27/23 32/1 34/15
35/21 37/15 38/2
38/5 38/6 38/8 38/11
38/15 39/7 43/17
44/11 46/4 49/2 49/5
50/7 54/12 55/23
59/6 66/20 68/8
70/17 75/12 75/16
79/16 80/4 84/12
84/18 84/22 84/24
84/25 85/1 85/15
88/7 89/7 89/11
93/10

**cases [24]**   7/21 7/23
8/10 11/3 12/4 16/13
16/24 22/16 23/8
35/17 35/18 37/17
37/18 37/18 38/18
38/22 52/13 66/17
79/11 79/12 80/16
84/15 85/9 93/7
**categories [2]**   6/13
50/13
**category [1]**   12/13
**causal [1]**   90/16
**causally [1]**   91/11
**causation [1]**   90/22
**cause [2]**   69/23 88/3
**caused [4]**   22/13
25/5 90/4 91/12
**central [2]**   5/16
22/18
**certain [2]**   14/18
57/6
**certainly [21]**   9/9
10/2 24/5 24/15 28/4
34/21 38/14 38/21
39/5 39/13 39/17
40/9 40/14 41/10
41/13 43/21 44/22
46/10 47/4 72/22
90/12
**certification [8]**
4/21 26/25 49/21
50/5 53/1 53/6 91/21
92/14
**Certified [1]**   3/3
**certify [1]**   97/2
**cetera [1]**   46/7
**CH [1]**   3/4
**challenge [1]**   7/13
**challenging [1]**
52/14
**change [8]**   13/7
16/22 20/5 20/7
20/14 30/24 52/10
92/6
**changed [1]**   95/9
**changes [1]**   19/15
**channeled [1]**   84/22
**channeling [2]**   9/16
10/19
**characterized [1]**
12/5
**check [1]**   37/20
**children [1]**   54/20
**Circuit [13]**   6/20
7/9 12/7 12/7 29/4
33/9 36/16 66/2
86/14 87/24 88/2
89/7 93/8
**Circuit's [2]**   15/6
86/12
**circumstance [1]**
42/19
**circumstances [2]**
38/20 48/13
**cite [5]**   37/15 38/9

36/14 37/15 89/6
**cited [6]**   7/8 11/3
23/9 37/16 85/19
86/5
**cities [1]**   25/8
**citing [2]**   36/4 50/9
**Civ [1]**   2/15
**Civil [2]**   2/15 4/7
**claim [99]**
**claiming [2]**   17/8
90/18
**claims [70]**   4/24 6/1
7/3 7/17 7/17 7/21
7/22 8/4 9/17 9/17
10/16 11/14 14/6
14/10 15/12 15/13
17/1 17/4 22/7 28/17
31/16 33/12 33/16
48/9 51/13 57/23
62/5 62/12 62/17
62/23 63/14 63/20
63/22 64/14 65/12
66/5 66/8 66/19
71/21 72/5 72/10
72/19 72/21 74/1
74/3 74/7 74/13
74/19 75/17 75/22
75/25 75/25 76/6
76/12 76/12 76/24
77/8 77/20 82/12
83/9 84/21 84/22
88/13 93/1 93/3
93/15 93/16 94/3
94/4 94/13
**class [18]**   4/21
26/25 27/1 27/2 27/2
49/14 49/20 50/5
50/22 51/7 51/9
51/12 51/20 52/25
53/5 86/21 91/21
92/14
**class-certification
[1]**   4/21
**classic [2]**   10/3
94/3
**clause [7]**   18/25
43/11 47/11 47/17
47/18 76/10 81/17
**clauses [1]**   64/20
**clear [7]**   11/23 14/1
16/11 17/7 39/12
48/15 70/6
**clearly [7]**   13/16
50/7 67/17 70/2
70/21 70/21 71/1
**clients' [1]**   25/13
**closing [1]**   94/8
**co [7]**   4/23 27/5
28/8 34/13 40/16
47/16 49/19
**co-counsel [6]**   4/23
27/5 28/8 34/13
40/16 49/19
**co-extensive [1]**
47/16

71/6
**code [1]**   75/7
**cognizant [1]**   75/2
**colleague [8]**   13/12
18/23 27/7 68/11
88/24 92/24 94/6
94/15
**colleague's [1]**   48/3
**colleagues [4]**   50/12
68/8 69/4 70/15
**COLUMBIA [1]**   1/1
**combating [4]**   54/19
55/1 55/6 57/7
**combined [3]**   30/3
33/8 76/11
**come [8]**   4/3 10/15
14/24 23/2 25/18
45/13 53/18 94/24
**comes [2]**   9/19 20/7
**command [2]**   30/24
30/25
**Commission [1]**   87/1
**communication [1]**
11/7
**communities [14]**
5/13 5/20 22/21
23/25 25/4 25/7 26/2
26/15 27/14 27/16
27/24 28/2 95/20
95/21
**community [4]**   23/25
25/25 91/13 95/17
**compelling [1]**   85/21
**compensation [1]**
63/24
**compensatory [1]**
10/3
**complaint [15]**   29/11
29/14 30/4 30/18
30/21 31/8 31/22
32/18 33/7 33/18
34/22 44/3 48/18
84/5 87/7
**complete [1]**   14/5
**compliance [2]**   46/15
94/25
**compliant [3]**   61/16
61/17 94/25
**component [2]**   6/16
10/8
**computer [1]**   3/7
**computer-aided [1]**
3/7
**concede [2]**   33/25
39/11
**conceiving [1]**   10/14
**concern [1]**   10/5
**concerned [1]**   75/4
**concerns [2]**   33/11
73/13
**conclude [1]**   51/19
**concluded [1]**   96/10
**conclusory [1]**   87/8
**condition [2]**   16/3
69/1
**conditions [11]**   35/8

**C**

**conditions... [10]**
36/9 67/18 69/13
69/24 70/3 71/12
71/20 73/15 77/12
79/4
**conduct [2]**  46/16
80/23
**confident [1]**  59/18
**conflict [2]**  26/4
58/15
**conflicts [2]**  26/2
27/17
**confused [2]**  10/13
10/13
**Congress [14]**  43/25
44/13 45/10 46/6
46/11 47/6 47/22
48/19 64/15 73/4
73/7 73/22 93/19
93/21
**Congress's [2]**  30/24
30/24
**congressional [3]**
44/2 45/4 47/9
**congressionally [1]**
54/14
**Connolly [4]**  2/2 4/9
4/20 49/17
**consider [11]**  9/14
9/14 19/8 24/5 32/20
40/14 72/9 82/19
82/23 84/21 90/25
**consideration [3]**
24/22 35/5 35/9
**considered [4]**  8/6
9/5 24/20 35/15
**considering [1]**  83/4
**consistent [12]**
17/18 25/19 35/8
41/5 41/25 42/4 42/9
42/11 45/9 60/5 62/7
62/10
**constituted [2]**  29/3
52/6
**Constitution [3]**  3/4
15/11 66/5
**constitutional [17]**
4/24 7/12 7/21 28/15
31/16 33/12 33/16
37/4 43/6 48/1 74/1
74/3 74/7 75/6 75/14
75/25 80/9
**constrain [1]**  38/24
**contact [1]**  46/17
**contain [3]**  18/1
18/2 18/25
**contains [1]**  18/18
**contended [1]**  52/5
**contention [2]**  23/4
23/7
**contest [1]**  14/9
**contesting [1]**  31/5
**context [2]**  79/11
89/12

**continuation [3]**
17/10 17/13 94/12
**continue [12]**  11/11
12/16 24/9 24/11
26/17 36/11 53/16
73/14 89/23 93/6
93/11 95/23
**continued [2]**  3/1
73/22
**continuing [1]**  13/1
**contract [80]**  8/24
9/4 9/7 10/11 10/15
10/17 10/23 11/2
11/5 11/11 12/6
14/18 14/19 14/21
16/9 16/12 16/12
16/22 16/23 16/25
18/1 18/3 18/13
18/15 18/18 19/12
34/15 34/19 34/23
36/5 36/8 37/5 37/10
37/14 52/8 62/11
62/13 62/16 62/19
63/13 64/16 65/6
66/7 66/14 66/21
67/4 67/7 67/11
67/12 68/18 72/1
72/1 72/3 72/4 72/13
72/14 72/25 73/5
76/3 76/14 77/4 77/5
77/13 77/13 77/17
78/11 78/13 78/16
78/17 79/4 79/17
82/6 82/7 82/10
85/15 85/22 94/4
**contract's [2]**  67/2
67/6
**contracting [8]**
59/15 64/25 69/16
72/20 80/20 80/24
81/12 81/19
**contractor [2]**  65/16
80/5
**contractors [1]**  73/8
**contracts [9]**  34/9
34/25 35/15 37/17
51/23 64/20 64/21
82/4 94/21
**contractual [11]**  8/7
8/9 8/15 8/18 9/23
11/15 17/1 21/25
36/23 36/25 37/6
**contrary [11]**  6/15
14/14 15/25 17/25
18/8 19/16 51/18
74/9 76/23 76/25
93/24
**contrast [2]**  16/21
19/3
**control [1]**  25/21
**convenience [7]**
64/20 64/23 65/6
65/8 65/20 81/16
94/21

**Cooper [1]**  43/24
**Cooper's [2]**  46/4
83/7
**cooperative [2]**  50/8
93/12
**corners [5]**  30/4
31/22 32/18 33/7
72/13
**correct [19]**  7/22
7/23 16/6 17/20
18/19 20/20 21/16
21/19 21/20 29/20
40/25 41/1 50/19
63/9 70/23 77/23
78/17 78/22 97/3
**correctly [1]**  50/12
**cost [1]**  64/10
**costs [1]**  94/8
**could [31]**  6/10 14/6
17/4 19/5 19/12
20/16 31/15 32/20
36/1 39/7 46/25
49/23 52/9 57/4 64/1
64/8 66/21 68/18
69/18 71/22 72/6
72/10 72/24 75/8
76/24 80/22 83/3
86/11 89/20 89/22
92/15
**couldn't [4]**  9/13
10/15 37/2 65/11
**counsel [11]**  4/17
4/23 6/10 27/5 28/8
28/9 34/13 40/16
49/19 54/3 96/2
**counsel's [1]**  92/13
**count [3]**  31/18
31/19 91/18
**country [3]**  22/21
27/24 52/14
**County [2]**  43/17
83/7
**couple [5]**  22/9
29/18 31/14 87/12
89/4
**course [6]**  24/2 30/3
30/11 31/14 42/6
53/10
**court [81]**  1/1 3/2
3/3 6/18 6/19 6/21
6/23 8/3 8/4 8/23
9/17 9/18 9/20 12/5
12/6 14/6 14/20
14/25 16/15 16/20
17/3 17/17 19/22
24/4 31/9 31/15 32/4
32/20 33/4 43/24
48/8 53/17 53/21
53/24 54/9 57/22
60/4 62/5 62/5 62/12
62/17 62/23 63/14
63/20 63/22 64/14
65/12 66/6 66/19
71/21 72/5 72/10
72/19 72/23 73/13

**Court [47]**  73/1 74/7
74/14 74/21 74/23
75/15
75/17 75/24 76/3
76/14 77/8 79/16
82/12 84/22 87/14
88/13 88/19 89/15
91/1 92/25 93/2 93/4
93/8 93/15 93/16
93/22 94/13 95/10
96/8
**Court's [4]**  22/2
49/23 86/25 90/9
**courtroom [1]**  60/7
**courts [8]**  9/20 9/21
16/13 16/24 22/15
24/18 24/19 37/22
**create [2]**  46/20
80/7
**creates [6]**  35/20
37/4 37/23 47/14
79/20 79/24
**credibility [1]**
95/21
**credible [1]**  42/13
**crime [3]**  24/1 54/19
57/7
**critical [3]**  5/14
14/4 22/17
**Crowley [3]**  8/6 15/6
16/10
**CRR [2]**  97/2 97/8
**cure [7]**  61/12 65/16
80/5 80/5 80/10
81/21 94/24
**curious [3]**  59/12
65/10 65/13
**current [3]**  42/1
42/9 42/12
**currently [1]**  42/14
**cursory [2]**  5/23 6/3
**cut [3]**  6/10 22/4
24/3
**CV [1]**  1/4

**D**

**D.C [4]**  1/5 2/4 2/17
3/5
**D.C. [11]**  7/9 15/6
29/4 33/9 36/16
66/20 86/12 86/14
87/24 88/2 89/7
**D.C. case [1]**  66/20
**D.C. Circuit [8]**  7/9
29/4 33/9 36/16
86/14 87/24 88/2
89/7
**D.C. Circuit's [2]**
15/6 86/12
**damage [2]**  89/9
89/21
**damaged [2]**  25/9
91/10
**damages [15]**  7/10
8/9 9/24 11/15 63/16
63/19 64/5 64/10
64/11 64/13 82/7

**damages... [4]**   82/11
85/10 86/7 94/5
**dance [1]**   57/22
**DANYA [1]**   2/9
**danyaperrylaw.com [1]**
2/12
**data [1]**   46/17
**date [2]**   89/14 97/7
**day [4]**   26/1 26/11
27/16 57/20
**days [1]**   27/13
**DBA [1]**   2/10
**dead [1]**   87/2
**dealing [1]**   62/13
**dearth [1]**   38/15
**death [1]**   27/20
**decades [2]**   5/19
25/6
**decide [1]**   13/2
**decided [4]**   25/18
26/8 63/8 73/23
**decision [16]**   5/22
15/7 25/22 38/24
49/23 49/25 50/1
55/19 55/20 59/15
60/16 62/3 64/17
84/10 90/9 96/5
**decision-making [2]**
38/24 55/19
**declarant [1]**   25/12
**declaration [10]**
17/17 18/3 18/6
21/12 30/2 31/6
58/25 68/2 82/18
82/24
**declarations [3]**
50/2 88/24 95/14
**declaratory [7]**   14/7
17/4 17/7 17/16
19/18 21/4 21/11
**deemed [1]**   22/15
**deep [2]**   22/12 22/19
**defeat [1]**   43/15
**defeats [1]**   43/16
**defendant [3]**   2/14
22/23 53/18
**defendants [18]**   1/7
4/15 28/19 29/5 29/8
29/23 30/25 33/19
33/25 35/21 37/13
38/8 38/17 40/9
48/22 52/5 54/7 95/6
**defendants' [1]**   34/6
**defense [3]**   13/12
53/16 63/12
**defenses [4]**   62/20
63/14 72/4 77/18
**definition [1]**   8/17
**definitive [2]**   74/22
81/7
**delivered [1]**   65/19
**delve [1]**   28/14
**DEMOCRACY [1]**   2/3
**democracyforward.org
[3]**   2/6 2/7 2/8

**denied [3]**   33/14
43/4 60/21
**department [42]**   4/8
4/11 6/18 7/7 20/12
24/7 24/13 24/18
24/19 24/20 44/8
47/13 51/25 54/7
54/15 56/10 56/21
56/22 56/25 57/3
57/24 58/6 58/20
59/1 59/21 60/20
61/15 61/22 63/3
63/8 70/16 70/19
71/22 72/8 78/7
78/16 82/18 85/19
85/23 87/18 88/18
91/7
**Department's [1]**
57/15
**depend [3]**   41/10
41/12 41/14
**dependent [1]**   95/18
**depends [3]**   10/11
10/12 10/22
**deprivation [6]**   40/4
40/17 40/24 41/19
67/22 81/12
**DEPT [2]**   1/6 2/14
**derive [1]**   21/9
**described [1]**   6/14
**descriptions [1]**
58/7
**designed [1]**   24/3
**destabilizing [3]**
81/14 94/16 95/2
**detail [3]**   59/16
61/4 66/24
**determination [4]**
44/21 45/2 51/9 95/8
**determine [10]**   9/5
41/22 42/15 42/20
47/1 47/5 47/8 77/5
81/1 88/20
**determined [3]**   46/5
58/8 84/20
**determining [2]**   36/1
54/18
**Detroit [4]**   54/25
58/9 58/12 60/5
**devastating [2]**   5/11
22/20
**developed [7]**   6/22
58/24 62/19 62/19
63/11 72/3 80/19
**devoted [1]**   56/23
**did [21]**   6/6 7/7
13/10 18/25 19/5
30/24 34/5 36/11
40/1 52/5 53/5 58/20
60/11 60/12 60/13
71/19 72/9 81/1
84/20 92/5 92/8
**didn't [20]**   7/11
7/13 9/13 9/14 24/15
29/13 29/14 36/10

49/3 52/8 60/6 63/21
71/23 74/14 74/15
88/12 90/7
**differ [1]**   13/22
**different [10]**   12/1
13/20 14/12 14/23
23/2 45/25 52/15
79/25 80/15 81/19
**differently [2]**
13/14 91/14
**difficult [1]**   32/3
**difficulty [1]**   36/21
**direct [4]**   80/23
90/4 90/5 90/16
**directly [1]**   57/6
**disagree [8]**   18/11
18/12 35/11 36/23
38/8 40/9 73/7 84/24
**disagreements [1]**
88/16
**disagrees [1]**   87/17
**discontinuation [1]**
5/17
**discretion [16]**
35/19 36/16 36/18
36/24 37/13 37/21
38/25 44/20 44/23
47/1 47/4 64/23 65/1
78/21 78/25 80/17
**discretionary [2]**
54/16 59/15
**discussed [2]**   17/24
94/2
**discusses [3]**   59/1
86/5 86/6
**discussing [3]**   15/20
27/15 38/22
**discussion [5]**   6/8
66/12 88/6 88/11
93/13
**disentangle [5]**
28/16 29/15 29/21
33/3 36/21
**disentangled [2]**
29/24 31/24
**dismiss [17]**   4/16
4/23 28/17 28/20
28/23 29/2 29/9
29/10 29/24 31/10
32/21 33/12 43/3
82/20 82/23 84/1
87/9
**dismissal [1]**   31/21
**dismissed [2]**   31/17
83/4
**disparage [1]**   88/9
**disparaging [1]**
55/23
**dispute [4]**   18/17
32/15 32/16 71/19
**disputing [1]**   69/4
**distinct [2]**   39/4
86/7
**distinction [2]**

39/13 1/14
**distinguishing [1]**
84/23
**DISTRICT [11]**   1/1
1/1 1/10 6/19 9/18
9/20 19/3 24/19 38/7
62/5 76/14
**disturb [1]**   24/15
**Diversity [1]**   38/5
**do [59]**   7/19 10/7
12/2 13/13 13/15
13/20 14/2 14/15
22/5 23/4 23/18
23/24 24/4 24/7 27/1
27/18 27/20 30/2
33/9 34/5 37/19 42/3
43/9 44/8 45/9 45/22
45/23 46/24 49/14
50/15 51/11 51/16
51/19 52/2 58/11
60/6 61/21 64/7 65/3
67/8 69/14 69/18
71/21 72/13 74/12
74/20 76/6 77/25
78/6 78/15 81/2 86/2
86/3 86/17 88/15
92/1 92/3 92/5 93/8
**do you [6]**   13/13
23/4 42/3 67/8 76/6
81/2
**do you believe [1]**
71/21
**Do you know [2]**   65/3
92/5
**Do you think [1]**
69/14
**doctrine [3]**   79/13
80/18 80/19
**does [34]**   12/23
12/24 12/25 13/9
14/6 15/18 16/12
24/21 25/20 36/18
41/2 41/7 43/12
43/14 44/14 44/19
45/11 48/18 54/12
55/4 65/1 65/6 65/15
72/15 72/15 74/7
80/7 80/7 80/8 82/15
85/20 94/20 94/23
95/3
**doesn't [17]**   10/19
12/12 14/20 16/22
18/1 19/13 24/21
26/14 26/19 57/3
63/3 82/12 85/4 86/3
86/17 88/3 91/17
**doing [5]**   56/20
59/25 82/3 91/2 91/3
**DOJ [2]**   2/15 70/17
**DOJ-Civ [1]**   2/15
**dollars [1]**   69/17
**don't [72]**   4/17 7/4
9/4 14/8 14/16 15/3
18/10 18/11 18/12
18/20 20/8 22/4 23/7

**D**

don't... **[59]** 23/18
24/13 26/6 27/5
27/21 32/16 33/2
34/19 34/24 36/15
36/19 37/3 37/6 39/7
40/8 43/16 45/17
47/12 48/1 48/2 52/4
53/16 54/23 55/8
55/15 57/17 60/24
61/24 63/1 63/6 69/3
69/3 71/18 72/11
75/1 75/6 77/25
78/11 79/15 79/23
80/12 80/24 81/24
82/9 83/19 84/11
86/19 86/23 90/3
90/11 90/14 90/20
90/22 91/23 92/9
92/13 93/13 95/13
96/7
done **[5]** 11/9 47/13
47/23 59/7 59/7
doors **[1]** 89/19
down **[6]** 58/16 60/3
74/11 91/2 91/2 92/2
dressed **[1]** 76/2
dressed-up **[1]** 76/2
dried **[1]** 25/17
due **[25]** 28/24 33/13
33/17 33/23 39/2
40/13 43/2 74/19
74/24 75/7 75/9
75/13 75/14 75/21
77/19 78/1 78/3
79/12 82/4 82/5 82/6
85/16 85/21 94/15
94/18
due-process **[14]**
33/13 33/17 39/2
74/19 74/24 75/7
75/9 75/13 75/14
77/19 78/1 78/3
79/12 94/15
duty **[1]** 47/21

**E**

each **[10]** 6/6 15/13
31/16 31/18 54/17
55/8 55/13 56/13
57/18 58/7
earlier **[2]** 43/14
92/4
early **[1]** 54/23
earned **[1]** 5/18
economic **[2]** 89/19
91/16
educating **[1]** 91/4
Education **[12]** 6/18
7/7 24/7 24/14 24/18
24/19 24/21 38/6
84/12 85/19 85/23
87/18
effectively **[6]**
17/11 43/14 46/5

effectuate **[3]** 16/2
19/2 36/11
effectuated **[2]** 5/8
51/2
effectuates **[2]** 16/3
20/18
effectuating **[3]**
47/6 52/1 92/7
effort **[1]** 54/12
either **[5]** 41/6
48/23 65/13 84/23
87/10
Eldridge **[1]** 40/14
election **[2]** 89/14
89/16
element **[2]** 6/14
6/15
eligible **[2]** 51/12
51/13
eliminate **[1]** 5/15
elimination **[1]**
22/17
else **[3]** 22/4 36/6
49/10
Email **[5]** 2/5 2/6
2/7 2/12 2/18
emphasized **[1]** 15/7
employee **[1]** 37/25
employment **[2]** 37/17
79/10
employments **[1]**
80/16
encompass **[1]** 72/15
encourage **[1]** 87/6
end **[7]** 9/12 10/15
27/11 40/2 53/9
57/19 95/4
endangered **[1]** 86/12
ends **[2]** 44/12 44/12
energy **[1]** 11/6
enforcement **[2]** 57/7
57/12
engaged **[1]** 46/16
enjoined **[1]** 20/3
enjoining **[1]** 12/21
enough **[13]** 21/24
22/1 33/24 45/12
51/19 52/2 69/7
69/14 71/6 84/17
85/25 87/9 90/19
ensure **[3]** 27/20
65/17 87/25
enter **[1]** 59/4
entire **[1]** 27/1
entirely **[1]** 29/20
entirety **[2]** 15/21
19/9
entitle **[1]** 81/3
entitled **[6]** 50/4
63/16 63/19 94/7
94/9 94/17
entitles **[1]** 39/24
entity **[1]** 70/2
EPA **[1]** 19/5

equitable **[1]** 23/9
equities **[4]** 28/6
40/19 87/13 87/19
equivalent **[1]** 89/18
eroded **[3]** 25/9
25/14 73/11
erosion **[3]** 5/18
25/3 26/14
erroneous **[2]** 40/17
41/19
escape **[1]** 85/4
especially **[2]** 77/11
91/9
essence **[5]** 8/7 8/9
66/14 75/4 77/13
essential **[1]** 95/22
essentially **[14]**
7/10 8/15 10/11
11/20 29/21 32/24
36/23 46/5 77/4 82/5
82/25 83/11 83/23
92/14
establish **[4]** 25/1
89/3 89/20 90/12
established **[2]** 25/1
28/4
establishes **[1]** 89/9
establishing **[1]**
24/12
estimate **[1]** 41/3
estimation **[1]** 89/2
et **[5]** 1/3 1/6 4/8
4/8 46/7
et al **[1]** 4/8
et cetera **[1]** 46/7
evade **[1]** 66/19
evaluate **[1]** 59/14
even **[22]** 9/15 24/8
31/15 32/17 35/14
35/14 44/5 46/19
48/7 58/3 60/7 60/16
61/16 61/16 71/4
75/5 79/8 83/18 87/8
87/17 90/11 94/11
ever **[1]** 26/22
every **[14]** 6/4 9/7
26/1 26/11 50/21
51/1 51/3 51/19
51/22 51/22 69/18
81/15 92/12 94/16
everybody **[2]** 11/14
69/6
everyone **[6]** 4/4
4/12 53/20 54/2 96/3
96/7
evidence **[9]** 22/12
23/21 23/22 29/13
30/4 45/14 45/17
58/19 95/15
evidentiary **[3]**
41/19 41/21 42/13
exact **[6]** 6/19 7/1
7/2 13/19 19/6 23/24
exactly **[6]** 33/7
33/9 35/6 62/23

examined **[1]** 58/7
examining **[1]** 54/17
example **[16]** 30/1
30/6 32/7 36/9 36/10
38/1 42/21 49/22
55/1 56/9 57/10 61/7
72/8 72/9 75/11
81/20
excluded **[1]** 48/13
exclusive **[3]** 66/4
66/7 85/5
excuse **[4]** 29/9
48/14 48/25 58/21
execution **[1]** 56/24
executive **[6]** 44/18
44/21 45/2 45/23
46/25 73/14
exempting **[1]** 82/3
exercise **[2]** 81/16
93/8
exist **[1]** 94/1
existed **[1]** 11/12
exists **[3]** 21/23
40/5 95/1
expectation **[2]**
64/10 64/11
expectations **[1]**
72/16
expected **[1]** 47/23
expertise **[2]** 63/22
65/4
experts **[1]** 72/19
expired **[1]** 83/11
explain **[3]** 54/24
59/6 60/5
explained **[2]** 48/22
58/10
explaining **[1]** 35/18
explanation **[5]** 6/7
9/6 9/15 71/23 72/17
explicit **[1]** 92/8
explicitly **[1]** 69/2
express **[1]** 61/3
extended **[1]** 80/20
extensive **[1]** 47/16
extent **[3]** 30/5 31/7
36/24
extremely **[2]** 40/17
40/17

**F**

fact **[22]** 7/20 16/20
21/5 21/23 25/14
30/16 34/4 36/8
36/11 36/22 38/8
42/4 42/15 42/17
42/20 43/13 44/11
47/22 52/4 52/13
67/24 94/25
fact-finder **[2]**
42/15 42/20
factors **[1]** 90/24
facts **[7]** 15/3 31/8
31/24 32/22 54/10

**F**

facts... **[2]**  54/12 85/14
factual **[8]**  30/5 30/12 31/2 31/25 32/6 32/13 33/6
factually **[1]**  14/23
failed **[1]**  28/23
failing **[2]**  33/3 47/6
fails **[4]**  31/16 31/19 76/16 84/2
failure **[4]**  16/1 16/2 19/2 29/2
fair **[3]**  22/1 44/20 84/17
fall **[3]**  7/25 12/12 32/24
fallen **[1]**  24/12
false **[1]**  45/18
familiar **[3]**  84/11 84/13 85/14
far **[4]**  48/18 83/3 84/3 87/4
fault **[1]**  91/7
favor **[5]**  18/1 28/6 28/19 29/1 87/19
feature **[1]**  83/22
February **[1]**  38/7
federal **[19]**  14/6 17/4 57/22 60/17 62/5 63/14 65/5 66/5 70/1 70/4 71/6 75/25 88/13 93/1 93/2 93/7 93/15 93/16 94/13
few **[2]**  7/4 39/21
Fifth **[6]**  33/23 37/7 74/12 74/18 80/14 82/4
Fifth Amendment **[1]**  74/12
fighting **[1]**  56/23
figure **[3]**  32/4 33/5 61/22
file **[3]**  61/3 82/6 91/9
filed **[1]**  60/22
final **[3]**  26/24 27/12 93/23
finally **[1]**  47/25
financial **[1]**  70/18
finder **[2]**  42/15 42/20
finding **[1]**  27/1
finds **[1]**  19/22
fine **[1]**  71/4
fingers **[1]**  91/6
finish **[1]**  15/16
finite **[2]**  55/22 55/25
first **[17]**  6/20 7/6 12/10 14/25 20/22 29/7 29/19 34/6 42/8 44/13 44/23 49/18 56/16 60/13 61/23

fiscal **[1]**  32/12
five **[4]**  37/19 37/20 56/14 92/8
floodgates **[1]**  10/6
Floor **[1]**  2/10
flowing **[1]**  23/23
focus **[1]**  34/4
focused **[2]**  57/5 79/21
folks **[1]**  58/15
follow **[3]**  35/25 36/14 47/12
following **[3]**  47/2 47/9 90/18
FORCE **[2]**  58/9 60/5
forced **[3]**  5/9 5/15 38/19
foreclose **[1]**  86/20
foreclosed **[1]**  63/18
forecloses **[1]**  82/25
foregoing **[1]**  97/3
forfeit **[1]**  33/10
forfeiture **[1]**  29/4
forget **[1]**  46/16
forgive **[2]**  29/7 56/6
form **[5]**  5/5 35/9 56/14 72/22 78/20
forth **[5]**  35/9 35/11 90/1 93/11 93/21
forum **[2]**  59/9 73/20
forward **[6]**  2/3 10/15 13/11 34/13 39/21 94/7
forward-looking **[1]**  94/7
found **[5]**  6/20 17/1 23/12 43/21 83/14
FOUNDATION **[1]**  2/3
founded **[2]**  66/5 66/9
founds **[1]**  88/14
Fountain **[1]**  2/2
four **[5]**  30/4 31/22 32/18 33/6 72/13
fours **[1]**  6/17
fraction **[1]**  54/16
framed **[2]**  9/1 16/1
framing **[3]**  25/23 80/18 88/7
frankly **[3]**  55/7 57/17 82/22
fraudulent **[1]**  46/16
free **[4]**  61/3 63/15 64/13 79/5
freestanding **[1]**  74/24
Friedman **[1]**  84/11
front **[2]**  52/2 62/4
frozen **[1]**  20/15
frustrates **[1]**  85/25
fulfilling **[1]**  44/17
full **[10]**  32/5 57/5 64/1 64/4 64/5 69/24

85/17 89/24 89/23 92/10
fully **[3]**  6/22 40/13 71/19
function **[1]**  50/15
fund **[2]**  84/12 88/14
fundamental **[1]**  57/23
fundamentally **[2]**  59/25 80/12
funding **[20]**  5/23 22/14 22/16 23/23 24/2 24/20 25/9 27/25 32/19 33/20 34/3 60/20 60/21 83/22 84/5 84/6 93/6 93/6 94/12 95/17
funds **[27]**  30/7 30/11 30/14 30/16 32/11 32/11 32/24 43/14 43/25 44/1 44/13 45/20 45/24 46/11 47/21 54/14 73/21 82/19 83/6 83/10 83/13 83/19 83/21 87/16 88/3 88/8 88/13
further **[4]**  34/3 49/9 49/12 73/11
future **[4]**  45/21 69/22 91/17 95/23

**G**

gave **[1]**  48/19
generally **[1]**  91/15
get **[24]**  6/15 14/6 14/11 25/13 41/4 42/3 53/5 58/15 59/9 59/22 59/24 63/1 68/2 69/19 70/20 79/7 87/20 88/4 88/13 90/7 90/11 90/15 91/12 96/5
gets **[1]**  23/8
getting **[2]**  30/6 96/5
give **[5]**  9/15 78/21 80/8 81/15 92/19
given **[10]**  14/3 15/12 25/2 32/19 48/6 75/20 80/10 81/23 95/2 96/4
gives **[1]**  64/22
giving **[2]**  69/17 78/25
go **[16]**  15/16 31/13 31/18 58/11 61/11 66/3 66/23 67/6 74/11 75/17 76/23 76/24 77/25 81/25 84/6 95/10
Go ahead **[1]**  15/16
goals **[2]**  5/8 14/9 44/2 44/6 46/11 51/3
goes **[2]**  88/6 91/11

going **[19]**  14/5 15/13 18/23 27/23 30/14 30/16 45/14 45/24 46/7 53/14 56/7 69/21 75/4 86/1 87/20 89/13 91/10 93/11 95/20
good **[12]**  4/4 4/12 4/13 4/18 28/11 35/2 49/16 53/13 54/4 54/5 86/15 88/15
goods **[1]**  65/18
got **[11]**  24/24 40/21 45/15 48/6 49/9 51/4 51/9 56/16 61/22 66/13 77/5
government **[46]**  7/15 11/4 11/6 13/3 13/9 14/9 37/21 38/22 52/17 54/3 57/24 59/15 64/16 64/22 64/25 65/1 65/5 65/15 65/18 66/8 68/9 68/18 69/16 72/19 73/6 73/8 73/24 75/24 79/5 79/16 79/17 79/22 80/20 81/15 85/21 87/4 87/19 87/20 88/3 88/7 88/12 93/3 93/10 93/18 94/13 94/20
government's **[8]**  12/22 13/5 13/24 16/1 35/2 78/12 79/19 80/23
grant **[102]**
grantee **[11]**  6/8 41/4 45/3 46/14 46/16 51/2 51/22 80/4 81/3 93/9 94/16
grantees **[9]**  5/9 19/25 41/15 41/16 44/10 44/16 50/7 51/4 71/19
grants **[42]**  5/4 5/10 13/4 13/8 13/10 16/4 19/23 20/1 20/24 21/18 21/21 25/7 25/15 25/18 26/8 28/3 34/9 34/20 34/24 35/15 36/1 36/11 50/8 52/9 52/15 54/13 55/9 55/11 55/13 56/16 57/25 61/18 64/5 70/18 78/8 84/15 84/19 88/10 90/4 92/5 92/8 94/22
great **[1]**  65/1
greater **[1]**  92/6
greatly **[1]**  13/22
grief **[1]**  27/21
ground **[5]**  6/19 18/15 25/24 29/10

**G**

ground... [1]   58/12
grounds [7]   31/21
41/10 41/13 49/3
67/16 68/15 68/22
groups [2]   61/9 95/9
guarantees [1]   80/4
guess [6]   10/7 10/12
27/11 36/20 55/17
81/21
guidance [6]   52/18
70/11 70/13 70/16
70/20 88/2
guidelines [1]   35/25
guides [1]   70/18
gun [2]   27/19 27/22

**H**

had [25]   5/10 5/14
12/2 14/19 19/11
20/25 21/21 22/19
33/21 34/5 35/23
47/21 47/22 50/7
50/16 51/20 61/10
61/11 71/11 75/15
81/15 84/18 84/23
88/25 91/21
hadn't [1]   83/15
hallmark [2]   6/4
55/18
handling [3]   4/20
4/21 4/23
hands [1]   79/19
hang [1]   70/9
happen [1]   65/6
happened [2]   20/6
55/6
happens [1]   65/10
happy [10]   34/11
43/7 49/10 53/2 53/4
66/23 76/16 78/3
85/1 91/20
hard [3]   5/18 8/14
10/13
hard-earned [1]   5/18
hardly [1]   66/21
harm [43]   22/24 23/5
23/10 23/13 23/16
23/17 24/12 24/16
24/17 24/22 24/24
25/1 25/3 26/7 26/18
26/19 26/20 28/5
40/19 49/20 50/6
50/10 50/13 50/14
51/5 69/23 88/3
88/23 89/3 89/10
89/19 89/20 89/24
89/25 90/3 90/5 90/6
90/8 90/13 90/15
90/18 90/21 95/14
harmed [4]   27/2 27/3
50/23 95/20
harms [13]   5/18
22/12 22/15 22/19
22/19 23/23 23/23

24/25 29/6 49/24
50/3 91/16 91/16
Harris [2]   43/17
83/7
has [54]   5/17 9/24
11/12 12/5 12/6
13/17 13/23 18/13
19/22 20/21 22/23
23/12 25/9 25/18
28/1 34/13 36/5 36/7
36/16 37/21 40/13
40/16 43/25 43/25
47/13 48/14 50/23
51/23 53/17 54/15
55/5 55/13 57/25
58/10 60/20 64/15
65/8 65/18 66/13
70/16 73/22 74/3
74/6 76/3 77/6 77/6
79/17 80/20 81/24
87/4 88/25 91/5 93/3
94/14
hasn't [1]   11/13
hatch [1]   85/4
have [124]
haven't [7]   45/13
62/19 62/19 63/11
72/3 81/6 81/7
having [4]   15/1 20/1
36/21 89/18
he [10]   38/13 46/5
83/8 83/9 83/13
83/14 84/18 84/20
84/20 84/25
hear [6]   16/9 49/10
53/2 53/18 75/16
75/25
heard [10]   33/22
34/1 39/25 40/1 40/7
49/14 68/5 76/1
88/23 88/24
hearing [8]   1/9
40/12 41/20 41/22
42/13 43/2 81/12
81/15
heart [1]   6/11
heartland [1]   79/12
heavily [2]   85/1
85/24
help [8]   14/22 24/1
47/11 48/5 54/24
56/5 75/19 90/14
helpful [1]   28/16
helping [1]   26/12
Henneberg [1]   30/1
her [2]   68/5 68/7
here [54]   4/14 7/12
8/23 10/6 16/1 17/18
19/19 19/25 21/21
25/2 35/16 36/19
37/9 37/19 38/14
38/18 38/23 40/15
41/15 41/16 42/7
43/23 46/8 48/17
50/7 55/22 56/5 56/8

60/25 64/24 66/1
66/3 66/11 68/12
70/11 71/16 72/8
75/4 75/19 75/23
76/13 85/13 87/19
88/9 89/17 91/7
91/10 92/14 93/10
93/23 94/2
Here's [2]   32/7 32/8
hey [2]   61/12 81/24
high [1]   40/18
Higher [1]   38/6
hijacked [1]   65/23
Hippocratic [1]
90/10
history [1]   14/3
hoc [1]   20/7
holding [1]   66/4
holdings [1]   86/14
homicides [1]   28/2
honest [1]   29/12
Honor [69]   4/6 4/18
9/10 12/24 28/10
28/11 30/22 31/3
34/11 35/6 35/10
38/4 38/10 38/12
39/10 39/18 42/24
43/8 43/17 46/22
47/17 48/4 49/16
50/4 53/12 54/4 55/7
55/21 56/12 57/2
57/13 57/17 58/5
58/23 59/8 60/8
60/19 62/3 62/18
63/13 64/19 65/11
66/12 67/20 69/8
69/15 70/10 72/11
73/2 74/2 74/21
75/18 76/8 77/9
78/23 80/11 81/6
82/1 82/22 83/25
86/22 87/6 87/17
90/2 90/23 91/20
92/9 92/22 96/1
Honor's [1]   10/5
HONORABLE [3]   1/9
4/2 53/25
hope [4]   59/9 66/23
88/1 88/2
horses [1]   39/16
hour [1]   53/14
how [35]   12/25 13/22
14/12 14/15 15/25
25/14 25/20 29/16
36/21 37/3 37/6
44/19 48/5 54/24
55/4 55/8 57/18 59/1
59/2 65/4 65/6 65/10
67/13 72/13 75/21
83/8 86/5 86/6 90/11
91/1 93/18 94/20
95/7 95/8 95/8
hypothetically [1]
20/10

**I**

I agree [2]   9/3
39/23
I am [1]   59/18
I apologize [1]   15/4
I believe [8]   60/11
60/20 66/2 71/9
75/13 83/8 83/16
86/10
I can [5]   39/10
41/16 58/5 82/19
92/10
I can't [10]   16/9
41/15 58/24 59/2
59/16 61/4 61/14
62/2 62/22 68/19
I couldn't [1]   65/11
I did [1]   81/1
I didn't [2]   29/14
63/21
I don't [24]   14/16
23/18 26/6 27/5 37/3
37/6 39/7 40/8 43/16
47/12 48/1 52/4 63/1
75/1 75/6 78/11
81/24 84/11 90/14
90/22 91/23 92/9
92/13 95/13
I don't have [4]
55/8 55/15 57/17
86/19
I guess [4]   10/7
10/12 27/11 81/21
I have [6]   7/15 8/14
49/9 51/19 56/14
89/4
I haven't [2]   62/19
81/7
I hope [2]   59/9
66/23
I just [5]   6/10
10/13 53/8 59/17
87/6
I know [7]   25/11
26/22 36/22 39/15
48/22 56/7 59/17
I mean [54]   7/1
10/12 10/19 10/24
11/19 14/13 29/7
29/12 30/13 35/9
36/22 37/16 39/5
40/13 41/23 50/11
54/24 54/25 55/7
55/11 55/17 55/22
58/2 60/11 62/9
62/18 63/2 63/23
64/3 64/15 65/7
65/14 66/17 67/12
67/24 68/14 69/9
71/14 73/3 74/12
74/14 75/8 75/11
75/11 75/19 75/24
79/10 82/25 88/23
89/6 89/11 90/3
90/20 91/6

**I**

**I should [3]** 23/15
23/21 31/2
**I think [82]** 9/19
10/19 10/22 10/24
11/16 13/22 16/20
17/10 18/6 18/8
18/24 19/19 21/20
23/8 23/14 24/24
25/2 25/16 25/23
28/15 29/20 29/22
30/22 31/23 32/4
33/1 34/12 38/19
39/7 39/20 41/17
42/18 43/24 44/20
44/24 46/24 47/16
55/21 56/2 58/17
59/8 59/19 60/8 62/1
66/24 69/9 72/12
72/18 72/21 73/12
73/17 74/2 74/6
74/22 74/23 75/1
76/8 76/9 76/15
76/16 79/2 82/2 82/3
83/4 85/3 85/8 85/25
86/4 87/14 87/18
88/5 88/11 88/18
89/6 90/9 91/11
91/15 92/13 93/13
93/25 94/19 95/16
**I thought [1]** 17/24
**I understand [10]**
6/21 15/25 43/17
61/9 65/7 70/15
76/20 78/24 81/17
94/6
**I usually [1]** 54/23
**I want [3]** 34/4
39/12 39/15
**I wanted [1]** 95/4
**I will [5]** 4/21 22/9
27/7 28/8 39/9
**I would [9]** 8/5
17/23 48/17 69/17
69/23 70/10 86/24
87/12 88/5
**I'll [10]** 5/1 6/1
13/12 22/5 27/11
33/16 64/19 85/6
92/19 92/21
**I'm [45]** 7/15 10/13
12/9 18/23 34/11
36/3 36/21 38/8 39/9
39/10 43/7 44/7
45/15 49/10 51/14
52/19 53/1 53/4 56/7
59/23 64/11 65/4
65/9 65/12 65/13
65/23 66/23 68/11
68/17 72/4 72/20
74/21 74/21 75/21
76/15 77/22 78/3
78/9 79/7 84/15 85/1
85/14 88/9 90/18
91/20

**I'm going [1]** 56/5
**I'm just [1]** 10/13
**I'm not [8]** 39/9
45/15 64/11 65/12
65/13 79/7 88/9
90/18
**I'm not sure [3]**
12/9 74/21 78/9
**I'm sorry [4]** 52/19
65/4 65/23 77/22
**I'm sure [1]** 85/14
**I've [4]** 15/2 26/22
51/9 84/15
**idea [2]** 57/25 65/1
**identical [4]** 5/6
6/3 6/6 51/6
**identically [1]**
19/23
**identified [3]** 41/24
55/1 79/16
**identify [3]** 55/20
84/4 84/5
**identifying [2]**
23/16 92/6
**ignores [1]** 25/23
**III [1]** 62/6
**illustrates [1]**
93/14
**illustrative [1]**
90/10
**imagine [1]** 80/21
**immediate [1]** 5/11
**immediately [1]** 5/9
**imminent [1]** 90/5
**immunity [3]** 10/20
73/10 85/9
**impact [2]** 5/11
22/25
**impacts [2]** 22/20
88/25
**impaired [2]** 50/18
90/12
**implicitly [2]** 48/23
49/5
**impliedly [1]** 85/12
**important [4]** 7/6
19/19 68/2 82/2
**impossible [3]** 29/21
89/13 89/16
**Impoundment [1]** 46/7
**improper [1]** 59/9
**inability [1]** 23/11
**inapplicable [1]**
71/2
**inappropriate [2]**
59/14 82/23
**include [8]** 6/7 16/2
19/6 27/18 29/3
78/12 78/17 79/5
**included [5]** 5/6
16/4 20/11 30/17
67/10
**includes [2]** 22/15
71/1
**including [5]** 19/10

22/18 30/25 30/7
86/21
**inconsistent [7]**
5/25 55/6 55/12
56/24 57/15 58/22
61/19
**incorporated [5]**
14/19 69/2 69/10
71/5 71/13
**incorporating [2]**
19/9 52/5
**incorporation [6]**
13/24 15/21 67/21
71/4 71/15 92/11
**incorrect [1]** 48/24
**independent [10]**
12/23 12/25 17/9
17/16 21/8 21/17
42/15 42/19 74/3
74/23
**indication [1]** 45/19
**individual [4]** 57/18
59/2 61/5 69/12
**individualized [6]**
59/18 59/19 60/1
62/2 95/6 95/8
**individually [1]**
54/17
**individuals [9]** 5/12
22/20 26/3 26/9
26/15 27/19 91/13
93/22 94/23
**infer [3]** 50/16
50/25 51/5
**informed [1]** 33/20
**Ingersoll [5]** 12/8
14/15 15/3 66/18
77/10
**inherent [2]** 31/23
33/1
**injunction [14]** 4/15
4/22 11/23 14/7
27/25 28/18 29/1
29/10 31/21 33/19
59/5 60/22 82/21
83/2
**injunctive [9]** 12/21
17/5 17/22 19/19
19/20 19/24 21/3
21/11 26/24
**injure [1]** 25/20
**injured [1]** 91/5
**injury [1]** 90/4
**innumerable [1]**
79/22
**inquiry [1]** 66/15
**insight [3]** 55/8
55/15 57/18
**insofar [5]** 13/15
15/24 74/2 74/23
76/2
**instance [3]** 14/24
44/23 67/3
**instances [2]** 65/3
75/7

**instead [2]** 44/6
54/15
**instinct [1]** 81/8
**INSTITUTE [2]** 1/3
4/7
**institutes [1]** 57/9
**insufficient [2]** 6/9
82/7
**intend [1]** 45/8
**intended [1]** 86/2
**intends [3]** 82/18
88/12 88/14
**intent [1]** 30/10
**intention [1]** 32/23
**intentional [1]** 73/9
**intercede [1]** 55/5
**interest [31]** 9/14
34/2 34/5 34/7 34/10
34/16 35/16 35/20
37/23 37/24 39/3
39/4 39/4 39/6 39/8
39/18 39/24 41/14
41/18 42/18 43/1
78/21 79/8 79/13
79/20 79/24 80/8
80/9 80/25 81/2
94/10
**interests [6]** 6/9
9/5 42/14 72/9 78/25
88/21
**interim [1]** 91/3
**interpret [3]** 13/14
15/9 72/14
**interpretation [12]**
12/22 13/6 18/7
19/21 20/3 20/9
35/12 52/18 68/3
68/10 68/12 72/13
**interpreted [8]** 19/5
19/23 20/22 20/25
21/13 36/17 66/6
67/14
**interrupt [3]** 8/12
54/22 54/23
**interrupters [1]**
27/14
**intervening [1]**
90/24
**intervention [3]**
24/1 25/25 58/13
**interviews [1]** 26/13
**introduction [1]**
31/12
**invalid [1]** 11/24
**invasive [1]** 73/16
**investigate [1]**
71/20
**investigating [1]**
69/12
**involve [3]** 15/19
37/17 54/13
**involved [1]** 84/19
**irreparability [1]**
90/21
**irreparable [25]**

**I**

**irreparable... [25]**
22/12 22/16 22/24
23/12 23/17 24/12
24/22 25/1 26/7
26/18 26/20 28/5
40/19 49/20 50/13
69/23 88/3 88/23
89/3 89/9 89/20
89/24 90/6 90/7
90/12
**irreparably [3]**   27/2
27/3 50/23
**is [312]**
**is it [1]**   42/17
**is that [1]**   35/1
**is that right [1]**
77/7
**is there [2]**   36/6
66/9
**is this [1]**   66/14
**isn't [21]**   6/17 8/17
9/16 10/17 12/12
13/8 16/3 16/8 18/3
18/17 30/15 35/9
37/9 37/10 45/22
55/18 57/19 57/23
67/3 70/21 73/17
**issue [16]**   12/3 13/8
25/2 30/12 31/14
32/11 36/11 37/8
38/14 40/15 41/16
44/4 46/21 63/22
67/5 81/7
**issued [4]**   35/23
36/13 36/14 42/12
**issues [6]**   30/6 31/9
49/15 65/22 76/21
77/25
**it [158]**
**it cited [1]**   7/8
**it would be [6]**   18/6
32/19 62/13 71/4
94/8 94/16
**it's [59]**   4/13 6/19
12/6 15/2 16/17
17/13 18/24 23/20
25/16 30/11 31/8
32/3 32/9 36/24
36/25 37/9 37/10
38/6 38/13 39/22
42/8 44/3 45/13
45/20 46/4 46/9
47/16 48/1 51/13
55/22 57/5 57/25
61/6 61/19 64/4 65/9
65/19 67/24 68/2
69/2 69/5 69/14 71/5
71/6 71/6 71/19
73/16 73/19 74/6
74/23 76/14 79/3
82/2 82/9 87/20
87/23 88/18 90/23
95/21
**it's likely [1]**

**J**

**iterative [3]**   58/6
59/1 62/2
**its [15]**   8/7 8/8
10/19 10/20 24/6
31/17 50/14 50/15
54/16 61/2 65/2
80/24 81/16 87/4
89/19
**itself [6]**   32/15
36/13 37/3 37/14
51/1 78/17

**jconnolly [1]**   2/6
**Jennifer [5]**   2/2 4/9
4/20 27/5 49/17
**job [2]**   26/12 37/24
**John [3]**   2/14 4/11
54/6
**john.bailey [1]**   2/18
**Johnson [1]**   50/1
**joint [1]**   28/25
**Josh [2]**   4/23 28/12
**Josh Stanton [1]**
28/12
**Joshua [2]**   2/9 4/10
**jstanton [1]**   2/12
**judge [14]**   1/10 15/7
38/11 43/21 46/4
60/17 62/5 62/6 62/6
62/17 68/3 83/7
84/11 86/4
**Judge Cooper [1]**
43/21
**Judge Cooper's [2]**
46/4 83/7
**Judge Friedman [1]**
84/11
**Judge Kelly's [1]**
38/11
**Judge Moss' [1]**   86/4
**Judge Pillard's [1]**
15/7
**judges [1]**   25/8
**judgment [1]**   89/22
**judicial [1]**   48/12
**July [2]**   27/13 27/19
**Jump [1]**   5/2
**June [2]**   1/5 97/7
**jurisdiction [13]**
7/17 14/7 14/11 22/2
29/20 66/4 66/19
74/4 75/16 76/3
84/20 85/5 93/8
**jurisdictional [3]**
6/25 31/14 76/21
**jurisdictionally [1]**
8/1
**just [85]**   6/10 6/14
10/13 10/13 12/19
15/20 17/7 17/24
19/13 25/11 25/22
30/16 31/11 32/3
34/14 35/1 36/7

52/20 53/8 53/19
54/24 54/25 56/8
57/3 57/21 59/11
59/14 59/17 60/23
60/24 61/6 61/18
64/8 64/19 64/22
65/5 65/13 66/18
67/3 67/5 67/6 70/9
70/17 71/4 71/10
71/19 72/21 73/23
74/11 74/16 75/7
76/2 76/11 76/13
76/14 76/23 76/24
77/1 77/12 78/10
79/3 79/8 82/10
84/10 84/23 84/24
86/16 86/24 87/6
87/12 87/23 88/5
88/6 88/7 88/22
90/11 90/20 91/17
93/18 94/11 95/16
**JUSTICE [27]**   1/3 1/6
2/14 4/7 4/8 4/11
20/12 44/8 47/13
51/25 54/7 54/15
56/10 56/21 56/22
57/24 58/20 58/25
59/21 61/15 63/3
63/8 71/23 72/8
82/18 88/18 91/7
**Justice's [2]**   56/25
78/7
**justified [2]**   62/7
62/16
**justify [1]**   59/7
**Juul [1]**   86/5

**K**

**keep [1]**   82/2
**Kelly's [1]**   38/11
**Kennedy [1]**   58/10
**key [2]**   66/25 74/6
**kind [10]**   36/15 40/7
65/23 72/7 75/19
76/11 85/4 89/8
89/19 91/8
**kinds [1]**   52/15
**know [87]**   6/22 7/14
8/8 8/24 9/3 9/15
10/17 11/5 20/12
23/18 23/25 24/15
25/11 26/4 26/22
27/5 27/14 29/14
30/7 31/13 33/2 33/7
34/21 36/22 37/6
37/18 37/25 38/9
38/17 38/20 39/14
39/15 39/23 40/6
40/12 41/11 42/12
45/18 46/15 48/1
48/2 48/12 48/22
50/6 55/12 55/16
56/7 57/4 57/5 57/22
58/14 59/17 59/19

65/17 69/17 69/20
69/24 72/14 72/15
73/15 73/16 74/16
74/18 75/11 78/13
79/17 85/15 85/16
85/20 86/1 86/1
86/11 86/12 86/14
89/17 89/20 91/13
92/3 92/5 92/9 92/13
93/25 94/8 95/4

**L**

**lack [3]**   26/10 34/7
35/5
**language [11]**   5/7
19/7 20/11 20/13
30/17 67/20 70/8
70/20 79/9 87/24
92/7
**large [2]**   73/3 87/22
**largely [2]**   4/21
52/25
**last [4]**   53/5 65/19
86/25 90/7
**lastly [1]**   91/15
**latter [1]**   42/16
**law [25]**   2/10 6/15
10/24 14/14 15/25
17/25 18/8 19/16
32/15 38/15 43/23
47/14 48/7 48/24
51/18 54/10 57/6
57/11 60/4 67/12
75/3 76/25 86/15
93/24 93/24
**lawful [1]**   19/21
**laws [1]**   66/5
**lawsuit [1]**   91/10
**lawyer [1]**   65/12
**lay [2]**   5/14 79/12
**laying [1]**   22/17
**leadership [2]**   58/6
59/2
**League [2]**   89/7
89/12
**Leasing [2]**   66/17
77/10
**least [30]**   7/2 8/1
8/25 13/14 15/24
16/8 17/24 22/24
26/24 28/20 29/7
29/7 35/23 37/1
37/18 40/1 41/15
45/7 45/10 48/20
50/13 56/14 57/9
66/8 81/19 81/20
83/9 83/25 84/21
85/24
**leave [1]**   10/7
**leaving [1]**   19/11
**led [1]**   5/17
**leeway [1]**   30/25
**left [2]**   30/25 33/4
**legal [7]**   32/14 59/9

**L**

**legal... [5]** 59/22
59/23 84/3 84/7 87/8
**legislative [3]** 44/2
44/6 44/12
**length [1]** 94/2
**less [1]** 6/22
**less-than [1]** 6/22
**let [8]** 31/11 39/20
45/6 70/20 74/11
78/5 79/25 82/16
**let's [12]** 6/12 8/10
10/7 29/12 39/23
45/7 54/25 57/21
58/9 59/23 65/22
76/23
**letter [4]** 51/1 51/6
57/5 87/2
**liberty [2]** 39/3
39/8
**life [1]** 22/18
**life-saving [1]**
22/18
**light [4]** 25/14
39/19 40/18 41/17
**like [24]** 10/2 11/3
11/24 25/3 38/2
40/20 41/3 41/7
49/10 53/1 61/20
66/17 70/10 72/3
80/13 81/10 82/13
85/19 86/24 87/7
87/12 88/5 94/3
95/19
**likelihood [2]** 28/4
43/5
**likely [5]** 5/21 6/2
6/24 74/23 82/23
**likewise [1]** 24/20
**limit [2]** 73/5 79/3
**limitation [15]**
35/19 35/20 35/21
36/2 36/3 36/12
36/17 36/18 36/24
37/10 38/23 78/20
79/9 79/24 85/12
**limitations [1]** 78/7
**limited [5]** 10/20
63/24 64/15 73/10
75/19
**limits [6]** 78/12
78/24 79/1 79/1
80/17 85/8
**line [7]** 14/8 19/13
34/17 35/17 35/17
74/11 84/21
**lines [2]** 56/8 87/5
**link [1]** 90/16
**Lisa [3]** 2/2 4/10
4/19
**Lisa Newman [2]** 4/10
4/19
**little [4]** 25/12
53/19 56/8 85/7
**live [1]** 47/6

**Newman [1]** 2/1
**loan [2]** 58/21 58/21
**logic [2]** 95/16
95/19
**long [4]** 11/12 34/2
85/3 85/6
**longer [16]** 5/7 16/3
20/18 25/19 26/13
37/25 41/25 42/17
45/3 45/4 51/2 52/1
54/18 60/5 92/6 95/9
**longstanding [1]**
24/16
**look [23]** 9/13 10/17
15/1 16/15 17/1
23/15 29/17 37/11
38/19 40/14 40/20
41/3 41/7 41/23
49/19 49/23 51/16
52/13 55/17 66/13
77/5 77/14 81/18
**looked [1]** 15/2
**looking [19]** 11/8
15/8 15/9 15/10
15/19 16/11 16/13
16/21 16/24 22/25
23/5 26/6 26/18 30/5
50/3 66/15 66/16
94/4 94/7
**looks [1]** 11/24
**lose [3]** 10/19 10/20
45/11
**lot [9]** 11/3 12/19
27/23 38/18 44/22
61/20 84/15 91/11
96/4
**lots [1]** 81/18
**Lummi [1]** 93/7

**M**

**made [11]** 20/19
26/16 28/22 41/6
45/7 52/7 55/20
64/16 74/18 82/17
95/7
**make [18]** 10/16
21/24 27/1 28/19
39/15 44/21 44/23
45/2 46/25 47/21
51/9 64/17 70/18
72/7 72/10 72/22
76/20 86/1
**makes [3]** 80/13 87/1
93/18
**making [6]** 19/14
38/24 55/19 60/1
72/8 86/20
**mandatory [1]** 48/15
**many [6]** 25/5 27/14
52/15 52/15 73/17
79/18
**March [1]** 93/4
**Maryland [2]** 19/4
38/7
**mass [1]** 54/13

**massively [3]** 81/14
94/16 95/2
**Mathews [1]** 40/14
**matter [11]** 6/18
14/20 26/14 32/13
66/10 67/12 67/13
72/12 95/16 95/19
97/4
**matters [3]** 7/16
22/5 26/6
**may [12]** 11/16 19/1
43/8 54/9 60/11
65/21 73/7 75/14
84/11 84/14 84/25
86/21
**maybe [6]** 23/2 32/8
32/9 48/1 60/6 90/20
**me [47]** 7/17 9/7
11/19 12/15 14/22
21/2 29/7 29/9 31/11
32/9 39/20 45/6
47/11 48/5 48/14
48/25 50/15 51/19
54/24 55/20 56/5
56/6 56/15 56/25
58/3 58/21 59/7
65/14 65/25 67/25
69/17 69/19 69/22
70/20 73/19 74/11
74/13 74/20 76/7
78/5 78/6 79/25
82/16 88/19 90/14
96/4 96/7
**mean [80]** 6/17 7/1
10/12 10/19 10/24
11/19 14/13 22/4
24/11 29/6 29/7
29/12 30/13 35/9
36/22 37/16 39/5
40/13 41/23 44/8
44/9 45/11 46/18
50/11 54/24 54/25
55/7 55/9 55/11
55/14 55/17 55/22
57/2 57/21 58/2
60/11 61/1 61/6 61/7
61/24 62/9 62/18
63/2 63/15 63/23
64/3 64/9 64/15 65/7
65/14 66/17 66/23
67/12 67/24 68/14
68/17 69/9 71/14
73/3 74/12 74/14
75/8 75/11 75/11
75/19 75/24 77/24
79/10 79/21 80/12
81/18 82/17 82/25
88/23 89/6 90/21
90/3 90/20 90/23
91/6
**means [1]** 87/10
**measure [2]** 64/4
64/11
**mechanical [1]** 3/6
**mediate [2]** 26/2

**Medicaid [1]** 85/16
**Medicine [1]** 90/10
**meet [1]** 95/9
**Megapulse [6]** 8/6
9/20 16/10 16/20
66/20 77/10
**MEHTA [3]** 1/9 4/3
53/25
**member [2]** 50/22
51/19
**members [2]** 27/2
51/7
**memory [1]** 75/15
**mentioned [1]** 19/18
**mentions [1]** 83/8
**merit [2]** 3/2 7/25
**merits [8]** 5/21 6/24
28/5 28/15 31/19
33/15 43/5 76/17
**messy [1]** 66/15
**middle [1]** 20/8
**midstream [1]** 20/7
**might [6]** 22/4 27/18
28/15 41/10 64/9
85/6
**million [4]** 5/5 5/5
5/22 58/1
**millions [1]** 69/17
**mind [1]** 82/2
**minimum [2]** 44/25
45/1
**minutes [3]** 39/21
53/15 53/17
**mirror [1]** 34/12
**mirrors [2]** 34/7
37/15
**misses [1]** 88/11
**mission [13]** 23/10
23/11 23/17 24/6
24/25 44/17 50/18
56/18 89/9 89/13
89/16 89/22 90/12
**missions [6]** 5/16
22/18 24/16 55/24
57/10 89/1
**misunderstood [1]**
51/14
**moment [11]** 6/15
8/13 10/8 13/13
14/13 39/23 45/6
53/17 57/21 76/19
76/24
**monetary [2]** 86/8
94/4
**money [28]** 7/10 8/9
9/24 12/3 12/4 23/24
31/1 43/13 45/8
45/10 46/6 46/8 56/1
56/1 56/1 56/3 64/8
69/19 75/21 83/12
85/9 85/16 85/21
86/6 87/20 89/22
91/17 94/12
**monies [2]** 12/16

**M**

monies... [1]   25/17
months [1]   28/2
more [17]   5/5 5/22
12/19 42/12 53/1
57/6 57/18 59/16
61/4 66/24 77/20
77/24 85/7 85/25
88/2 92/7 94/3
Moss' [1]   86/4
most [6]   7/6 27/13
29/12 34/12 53/6
79/2
motion [26]   1/9 4/14
4/15 4/21 4/22 28/17
28/18 28/20 28/23
29/2 29/9 29/10
29/13 29/24 31/10
32/20 32/25 33/12
33/19 43/3 82/20
82/20 82/22 84/1
86/21 87/9
motions [1]   4/24
move [3]   39/21 78/1
88/22
moving [5]   13/11
14/13 29/10 75/3
87/25
Mr. [3]   28/13 54/8
58/10
Mr. Bailey [1]   54/8
Mr. Kennedy [1]
58/10
Mr. Stanton [1]
28/13
much [5]   43/21 75/22
93/14 94/3 96/2
muddied [1]   86/11
must [2]   70/2 78/16
my [21]   4/23 27/4
28/8 34/12 34/13
40/16 49/19 52/25
60/19 65/4 68/7
68/17 69/4 70/15
81/7 85/18 88/8
89/21 92/24 94/6
94/15

**N**

named [3]   49/20
49/24 50/2
National [3]   38/5
38/9 89/7
nature [7]   9/23
32/19 50/6 50/9
50/25 66/16 77/14
near [1]   61/17
nearly [1]   6/4
necessarily [2]   9/4
63/24
necessary [2]   29/23
90/5
need [13]   7/17 9/4
17/23 26/3 27/1
37/19 49/19 50/11

nim [1] 87/3 90/5
68/15 86/17
needed [2]   71/15
75/16
needs [5]   61/25
67/10 67/16 68/22
70/5
negotiate [1]   79/5
neighborhoods [4]
26/1 26/11 26/12
58/11
neither [2]   7/25
54/10
neutral [1]   81/25
never [6]   52/16
52/20 52/21 52/22
68/18 80/20
nevertheless [1]
6/23
new [8]   2/11 25/17
58/22 61/19 70/16
70/19 79/12 88/14
Newman [3]   2/2 4/10
4/19
next [1]   83/17
no [60]   1/4 5/7 16/2
18/5 20/17 20/22
20/23 21/8 22/7
25/18 25/21 26/13
28/9 30/25 32/11
33/21 33/21 34/10
37/21 37/25 41/5
41/25 42/17 43/14
44/1 45/3 45/4 45/19
46/22 49/9 51/2
51/11 52/1 54/18
57/25 59/18 59/19
60/5 60/25 67/13
69/5 69/10 71/3
71/12 71/17 72/11
72/23 74/10 76/19
80/11 83/5 83/14
83/14 83/21 83/22
87/7 92/6 95/9 95/24
95/25
no-year [5]   32/11
43/14 44/1 83/21
83/22
nobody's [1]   61/9
noncompliance [3]
61/13 80/3 80/3
noncompliant [4]
61/7 61/10 61/10
61/12
none [3]   51/23 51/24
60/9
nonetheless [1]   17/1
nonprofit [1]   24/8
normally [1]   27/15
North [2]   48/21 49/4
not [171]
note [3]   48/17 64/19
66/25
noted [6]   28/25 29/2
29/3 33/8 43/22 91/6

nothing [3]   41/12
49/12 95/11
notice [25]   5/6 5/6
6/6 14/2 32/14 33/21
33/25 39/25 40/7
40/21 40/22 51/4
52/7 52/9 52/17
52/23 65/5 71/12
81/3 81/4 81/20
81/23 82/7 82/11
94/17
notices [2]   56/9
61/2
notifying [1]   91/4
notion [1]   60/23
novel [2]   38/18
43/23
now [11]   4/6 53/21
53/24 56/21 59/21
61/15 74/16 80/25
81/25 83/19 96/8
NRC [1]   48/25
Nuclear [2]   48/25
87/1
nullity [1]   86/2
number [4]   44/4 60/2
62/21 80/22
NW [2]   2/16 3/4
NY [1]   2/11

**O**

obligate [6]   30/10
30/14 32/24 82/19
88/12 88/14
obligated [3]   30/8
47/22 54/14
obligation [2]   45/20
61/11
obligations [1]   64/7
obviously [4]   30/3
31/25 42/10 43/22
occurred [2]   77/6
77/6
occurs [1]   40/23
odd [1]   61/6
off [6]   5/14 22/4
22/17 24/3 64/23
95/10
Office [1]   58/25
Officers [1]   38/5
Official [1]   3/3
often [3]   65/4 65/6
65/10
Oh [1]   51/14
Ohio [1]   75/12
OJP [7]   5/4 6/6
19/22 58/6 94/22
94/23 95/2
OJP's [7]   5/22 5/25
6/3 19/21 20/3 22/13
48/18
okay [43]   4/14 5/3
11/16 15/5 15/16
15/23 16/7 17/6
18/22 22/3 22/8

nim [1] 87/3 2/4 35/13
42/23 47/10 47/19
47/24 49/8 52/12
52/24 53/3 53/11
53/12 59/20 68/16
68/24 69/25 70/9
74/5 76/4 76/22
76/22 77/15 77/16
78/4 82/14 84/9
86/18 90/21 91/19
92/17 96/3
OMB [1]   19/13
once [3]   37/24 87/20
89/15
one [52]   7/10 8/8
9/23 10/5 12/9 12/10
12/17 13/2 14/23
15/15 15/18 23/8
23/22 26/21 27/11
27/11 27/13 37/16
37/16 38/3 39/15
43/10 50/13 50/22
51/3 51/12 55/1
55/16 56/9 57/3 57/9
57/10 57/10 58/3
58/4 58/10 58/11
59/2 61/4 62/3 66/24
68/1 69/12 70/12
73/17 77/4 79/18
84/16 85/25 88/17
89/7 92/1
ongoing [3]   41/7
73/14 73/22
only [11]   15/15
15/18 18/17 20/16
21/3 28/19 31/20
40/22 49/19 52/7
89/6
open [3]   4/25 54/16
59/24
opening [1]   88/6
operations [1]   57/7
operative [1]   70/14
opinion [4]   83/7
86/4 86/25 87/8
opportunity [13]
33/22 34/1 39/25
40/1 40/7 41/5 42/3
80/5 80/5 80/10
81/21 81/25 92/19
opposed [4]   8/4 9/17
17/23 82/20
opposing [1]   29/8
opposition [7]   28/25
29/1 31/12 31/20
32/10 33/8 60/22
optimally [1]   24/10
order [14]   4/3 4/25
13/16 18/2 18/13
23/19 23/20 26/25
37/19 44/25 78/16
85/20 87/14 96/6
organization [7]
23/23 24/6 50/14
50/17 54/25 55/4

**O**

organization... [1] 56/22

organizational [2] 23/12 24/16

organizational's [1] 23/10

organizations [9] 23/6 25/6 25/21 26/1 50/10 50/22 56/13 88/25 89/23

organizations' [1] 55/24

other [43] 7/16 9/12 10/12 12/4 12/14 14/9 18/11 18/12 18/14 19/10 20/15 21/14 22/6 22/19 25/16 27/20 28/7 32/22 32/23 36/4 37/1 38/20 40/21 41/15 41/23 43/6 44/15 44/16 46/12 47/17 51/22 55/9 57/6 60/15 64/10 65/21 68/19 72/6 78/14 83/13 85/12 90/16 93/7

others [2] 62/21 66/6

ought [2] 7/21 23/2

our [35] 9/14 9/15 13/3 14/10 15/12 15/13 23/9 23/9 28/25 29/1 33/8 33/11 38/21 41/5 42/10 44/3 45/1 46/10 48/10 53/6 53/17 60/22 61/19 62/22 63/17 63/23 64/23 67/15 70/12 70/25 73/12 86/6 87/11 88/6 88/11

out [34] 6/12 8/15 13/18 13/23 18/13 19/11 23/11 24/6 27/15 27/21 32/4 33/5 35/8 36/5 36/8 38/6 46/20 50/14 50/18 56/5 58/11 59/24 61/20 61/22 61/25 71/11 74/15 75/21 79/12 83/23 86/13 89/1 91/13 95/23

outcome [1] 84/24

outside [7] 30/4 31/8 32/25 48/19 56/7 81/10 87/4

over [7] 25/22 26/5 28/8 31/14 60/11 82/11 93/9

overrule [1] 7/7

overruled [2] 48/24 49/5

overstated [1] 59/4

overstepping [1] 44/17

oversteps [1] 46/13

own [2] 7/25 31/17

**P**

P.J.E.S [1] 49/25

p.m [4] 1/6 53/23 53/23 96/10

P.O [1] 2/4

page [2] 23/9 31/13

page 2 [1] 31/13

pages [1] 13/25

paid [1] 13/1

painting [1] 56/7

papers [5] 14/16 29/17 73/12 74/15 91/21

paragraph [2] 30/19 30/21

paragraphs [1] 31/14

parallel [1] 50/21

parentheses [1] 83/17

Park [1] 2/10

part [8] 19/11 38/16 38/16 50/4 60/8 69/1 73/4 83/8

particular [6] 28/21 34/20 50/17 55/16 55/20 91/22

parties [4] 11/9 11/11 72/16 95/19

partners [1] 5/12

parts [3] 32/5 32/6 33/5

party [2] 73/15 78/14

pass [1] 70/2

pass-through [1] 70/2

passes [1] 89/16

pay [1] 85/21

paying [1] 75/21

payment [5] 11/8 12/3 12/4 12/16 17/10

peal [1] 61/25

peek [1] 67/4

Pennsylvania [1] 2/16

people [7] 26/9 26/10 26/15 37/23 58/12 58/14 91/4

percentage [1] 60/3

performance [12] 11/20 11/24 12/2 12/6 17/11 64/6 64/17 64/18 73/9 73/11 73/17 75/20

performed [1] 63/25

perhaps [1] 57/4

period [1] 83/24

permutations [1]

PERRY [2] 2/9 2/10

pertains [2] 28/20 33/12

phones [1] 26/3

phrase [1] 72/14

physically [1] 27/20

PI [4] 5/1 29/12 45/7 45/13

pick [1] 65/2

Pillard's [1] 15/7

place [5] 52/10 56/16 60/14 61/23 78/6

plain [2] 25/16 70/7

plaintiff [3] 14/17 55/24 89/23

plaintiff's [1] 16/16

plaintiffs [57] 1/4 2/2 4/9 4/19 5/11 5/14 5/15 5/19 5/21 6/2 6/23 7/11 13/5 19/11 21/22 22/11 28/12 28/22 28/22 32/4 33/4 33/20 34/4 43/4 44/11 44/16 49/17 49/20 49/25 50/2 51/7 58/4 60/9 62/20 63/15 64/13 65/25 67/1 71/11 73/19 79/15 79/21 83/15 86/17 87/3 87/16 88/19 91/1 91/3 91/14 92/8 92/19 93/2 93/5 93/10 93/14 95/10

plaintiffs' [17] 4/14 4/17 5/7 5/10 22/18 28/6 31/16 43/6 54/10 67/9 69/22 75/22 84/5 88/6 88/10 91/9 95/22

play [1] 26/19

plead [1] 30/15

pleaded [1] 14/10

pleading [1] 30/15

please [5] 4/3 4/4 54/1 54/9 96/7

pled [1] 66/22

PLLC [1] 2/9

pocket [3] 30/16 30/25 64/8

pocketed [2] 83/12 83/19

pocketing [1] 46/6

point [17] 9/16 14/4 30/7 34/11 38/2 46/3 46/24 46/25 52/8 60/19 66/18 70/25 73/3 73/4 80/22 89/21 93/17

pointed [2] 79/18 91/6

pointer [1] 67/1

pointing [5] 71/10 77/11 78/10 79/4 79/8

points [3] 28/8 77/12 87/13

police [1] 25/8

portion [2] 13/14 87/7

posed [1] 49/18

position [24] 7/2 13/11 13/21 13/24 14/15 33/11 38/21 39/11 42/10 47/8 62/22 63/17 63/23 67/16 68/17 68/19 70/12 74/17 74/22 76/20 77/2 81/7 90/15 93/3

positioned [1] 88/20

positions [1] 59/22

possible [2] 29/23 69/18

possibly [1] 69/18

post [8] 20/7 24/18 24/19 40/4 40/24 81/4 81/8 81/12

post-deprivation [3] 40/4 40/24 81/12

post-termination [1] 81/8

posture [2] 6/22 26/23

postured [1] 84/19

potential [4] 41/15 50/22 81/23 94/9

potentially [2] 30/6 69/22

power [1] 76/6

powers [12] 43/10 43/12 44/25 46/21 47/20 73/13 76/5 76/10 82/15 83/1 83/20 83/24

pre [3] 40/7 41/2 43/2

pre-termination [3] 40/7 41/2 43/2

precedent [4] 24/16 29/4 86/12 87/24

preclude [1] 64/17

precluded [1] 85/12

predated [1] 25/7

predictable [1] 28/1

prefer [1] 5/1

preliminary [14] 4/15 4/22 12/21 19/20 26/25 28/18 29/1 29/9 31/21 33/19 59/5 60/22 82/21 83/2

prepared [1] 74/22

Present [1] 4/9

presentations [1] 96/3

**P**

**presently [1]** 22/13
**preserve [2]** 46/17
46/17
**presiding [2]** 4/3
53/25
**presumably [5]** 40/22
45/9 62/24 63/2 63/7
**pretextual [1]** 42/21
**pretty [1]** 13/16
**Prettyman [1]** 3/4
**prevail [1]** 6/24
**prevent [4]** 24/21
56/11 56/15 95/17
**preventing [1]** 56/23
**prevents [1]** 58/17
**previously [1]** 20/25
**primarily [6]** 15/1
15/8 15/9 15/14
16/15 39/17
**primary [3]** 12/15
37/1 70/12
**principles [4]** 14/25
34/19 34/23 59/23
**prior [2]** 20/23 40/8
**priorities [37]** 5/8
13/7 16/2 16/3 19/2
20/6 20/7 20/15
20/18 25/19 36/12
41/6 41/7 42/1 42/5
42/9 42/11 45/4 45/5
51/3 52/1 52/10
54/19 54/19 55/2
55/12 56/4 56/10
56/25 57/16 58/22
60/6 61/2 61/19
61/20 92/7 95/9
**priority [4]** 20/14
55/6 56/10 57/3
**private [4]** 40/15
41/14 41/17 73/15
**probably [2]** 39/21
85/24
**probationary [1]**
37/25
**problem [8]** 11/13
31/24 33/2 36/20
44/25 57/19 57/23
60/9
**problems [1]** 65/17
**procedural [7]** 28/24
33/13 33/16 75/7
75/9 79/1 79/3
**procedures [1]** 35/24
**proceeding [2]** 4/25
40/4
**proceedings [4]** 1/9
3/6 96/10 97/4
**process [32]** 28/24
33/13 33/17 33/23
39/2 40/13 40/23
41/3 43/2 50/5 58/6
59/1 60/4 60/10
61/22 61/25 62/2
74/19 74/24 75/7

75/9 75/16 75/24
77/19 78/1 78/3
79/12 81/8 82/4 82/5
94/15 94/18
**procurement [4]** 11/4
64/20 64/21 80/21
**produced [1]** 3/7
**program [3]** 5/8 51/3
88/17
**programming [1]**
22/18
**programs [7]** 23/11
25/2 58/25 88/8
88/14 88/20 91/2
**prohibited [1]** 48/13
**prohibition [2]**
48/15 49/1
**project [1]** 58/7
**promise [1]** 59/11
**promised [1]** 26/11
**promises [1]** 26/16
**promulgated [1]**
20/22
**prong [3]** 11/18
22/24 23/3
**proper [3]** 14/2 18/6
20/9
**properly [7]** 24/5
29/24 74/1 74/13
74/20 74/24 76/6
**property [28]** 34/2
34/5 34/7 34/10
34/16 35/16 35/20
37/7 37/23 37/24
39/3 39/4 39/6 39/17
39/19 39/24 42/25
78/21 78/25 79/8
79/12 79/13 79/20
79/24 80/8 80/9
80/25 81/2
**proposition [5]**
18/17 24/8 24/14
40/10 89/7
**prospective [2]**
12/21 19/24
**protect [1]** 19/25
**protected [11]** 34/2
34/5 34/10 34/16
39/19 42/25 79/8
79/13 79/20 80/25
81/2
**protecting [2]** 54/20
57/8
**protection [2]** 81/11
82/13
**protections [2]**
80/14 82/5
**protective [2]** 35/16
35/20
**prove [2]** 42/3 63/15
**provide [8]** 5/16
17/4 24/11 71/23
80/8 87/10 93/1
94/23
**provided [4]** 22/11

**provides [3]** 13/15
13/16 37/12
**providing [2]** 24/9
66/7
**provision [12]** 14/3
16/25 20/17 20/21
51/21 51/24 52/15
69/10 70/5 71/18
80/4 92/11
**provisional [1]**
26/24
**provisions [1]** 70/3
**public [1]** 91/10
**pulling [1]** 79/10
**purpose [4]** 46/20
50/17 55/5 95/17
**purposes [3]** 45/10
83/1 84/1
**pursuing [2]** 44/5
44/12
**push [1]** 25/12
**put [8]** 34/13 52/9
52/17 57/21 61/1
71/12 77/1 90/1
**putative [1]** 51/20
**puts [1]** 45/22
**putting [1]** 47/9

**Q**

**qualifies [1]** 90/5
**qualify [1]** 37/20
**question [34]** 15/8
16/14 16/18 19/4
22/22 26/21 27/4
27/6 30/11 32/8 32/9
39/1 41/9 42/16
43/10 43/24 44/14
49/18 51/15 56/2
66/13 67/23 67/24
67/25 68/7 69/6
72/12 76/9 84/3 84/7
92/1 92/3 95/4 95/13
**questions [14]** 7/15
22/6 28/7 34/12 43/8
43/9 49/9 52/25 53/4
72/18 86/19 86/23
91/22 95/24
**quickly [1]** 86/24
**quintessential [1]**
5/24
**quite [6]** 26/22
40/16 47/12 79/7
90/15 90/22
**quoted [1]** 57/4

**R**

**R.I.L [2]** 50/1 50/1
**R.I.L-R [1]** 50/1
**raised [2]** 52/21
52/22
**raises [1]** 73/12
**Rand [5]** 12/8 14/16
15/3 66/18 77/10
**rather [2]** 37/14

**rationale [4]** 5/24
42/20 46/12 83/8
**rationality [1]** 9/21
**re [12]** 30/8 30/10
30/14 32/24 45/15
45/20 45/22 82/19
88/12 88/14 89/16
89/23
**re-allocate [1]**
45/15
**re-obligate [6]**
30/10 30/14 32/24
82/19 88/12 88/14
**re-obligated [1]**
30/8
**re-obligation [1]**
45/20
**re-start [2]** 89/16
89/23
**reach [1]** 31/15
**reaction [1]** 25/13
**read [11]** 29/8 29/16
29/17 31/2 31/11
31/20 49/2 64/21
84/15 87/6 88/23
**reading [3]** 14/3
48/24 67/9
**Ready [1]** 54/3
**reality [1]** 25/24
**really [20]** 7/21
9/24 10/22 11/7
11/15 14/9 16/14
16/18 23/5 25/14
29/13 29/13 31/9
32/3 33/4 37/21
65/19 76/11 76/14
87/1
**Realtime [1]** 3/3
**reason [17]** 8/2
10/25 21/3 26/13
26/19 38/16 41/24
42/21 44/15 46/19
55/13 56/16 65/21
68/19 77/7 83/14
87/22
**reasonable [3]** 46/25
71/18 88/16
**reasonably [1]** 72/14
**reasoned [2]** 72/17
85/24
**reasoning [2]** 90/19
95/11
**reasons [14]** 7/5
13/3 34/14 40/15
40/18 42/25 43/2
59/9 59/18 59/19
60/25 61/3 73/17
86/16
**rebuttal [1]** 92/20
**recall [1]** 15/3
**receipt [1]** 51/6
**receive [1]** 82/7
**receiving [1]** 35/2
**recent [4]** 19/3 38/4

**R**

**recent... [2]**   49/23
84/10
**recently [1]**   93/3
**recess [2]**   53/22
53/23
**recipient [7]**   44/4
44/7 44/16 47/2 52/9
69/12 71/22
**recipients [2]**   60/3
61/2
**recognize [2]**   82/24
88/1
**recognized [3]**   37/22
79/14 86/10
**recommit [1]**   45/8
**record [8]**   4/7 32/1
32/6 33/6 55/15
58/24 59/6 97/3
**recorded [1]**   3/6
**records [2]**   46/17
92/15
**recourse [1]**   82/10
**recover [1]**   64/1
**refer [2]**   49/24 50/2
**reference [9]**   13/25
52/6 67/21 69/3 71/4
71/5 71/13 71/15
92/11
**referenced [1]**   69/1
**reframing [1]**   11/14
**refuse [1]**   54/14
**regard [2]**   19/15
32/17
**regarding [2]**   59/10
87/13
**Register [1]**   71/6
**Registered [1]**   3/2
**regs [1]**   74/9
**regulation [31]**
13/14 13/15 18/4
18/16 20/11 20/13
21/12 36/13 37/10
62/11 66/2 66/3
66/10 66/19 66/25
67/9 67/13 67/15
68/3 68/12 68/15
68/21 70/8 70/23
71/11 77/3 77/3
77/11 77/12 80/1
95/1
**regulations [24]**
5/25 13/25 14/19
15/10 15/21 17/19
19/9 19/14 36/25
38/24 40/5 66/6 67/6
69/1 69/21 71/2
71/13 78/6 78/10
78/15 79/19 79/22
80/10 80/22
**regulatory [5]**   14/3
48/25 67/5 75/5 87/1
**reinstated [2]**   13/4
13/9
**reinstatement [4]**

41/10   72/23 72/25
93/5
**related [1]**   89/13
**relates [2]**   28/24
34/23
**relationship [2]**
73/14 73/22
**relatively [1]**   38/18
**reliance [7]**   6/8 9/5
9/14 64/9 64/10 72/9
94/10
**relied [4]**   31/6
32/23 35/17 84/25
**relief [35]**   9/22
10/3 11/2 12/17
12/21 14/5 14/5 14/8
17/2 17/3 17/5 17/8
17/9 17/9 17/16
17/22 19/18 19/19
19/20 19/24 21/3
21/4 21/11 21/25
26/24 26/25 41/11
48/12 54/11 66/16
72/24 77/14 86/8
87/11 92/25
**rely [6]**   9/4 30/2
31/9 43/7 67/1 70/18
**relying [5]**   15/14
31/7 31/24 32/5 33/5
**remain [1]**   86/15
**remedied [1]**   91/17
**remedies [4]**   10/3
12/15 64/16 73/5
**remedy [11]**   10/8
12/15 48/7 48/8 64/6
66/7 73/18 73/20
73/23 75/20 89/22
**remember [2]**   38/9
57/11
**render [1]**   14/7
**rendered [2]**   11/5
11/9
**repackaging [1]**   75/5
**repeatedly [1]**   30/2
**reply [6]**   23/9 29/1
29/5 33/8 33/8 48/11
**reporter [5]**   3/2 3/2
3/3 3/3 53/17
**represent [1]**   6/4
**representation [5]**
45/8 45/18 82/17
83/4 88/9
**representing [1]**
58/2
**reputation [6]**   25/3
25/10 25/21 50/21
91/5 95/20
**reputational [16]**
5/18 22/19 24/17
24/25 25/5 26/7
26/19 26/20 51/5
89/25 90/3 90/15
90/17 90/20 91/16
95/14
**reputations [2]**

25/4 91/25
**request [1]**   12/5
**requested [4]**   54/11
65/18 87/14 87/15
**require [2]**   66/10
72/15
**required [9]**   16/15
18/2 34/1 34/2 40/8
41/4 72/1 87/23
93/11
**requirement [2]**
46/18 49/1
**requires [1]**   68/3
**requiring [1]**   73/14
**rescind [1]**   18/2
**rescinded [1]**   20/16
**reserve [1]**   53/8
**resolve [1]**   67/4
**resort [1]**   65/19
**resources [2]**   55/22
55/25
**respect [14]**   7/2
22/24 28/17 29/19
43/3 43/6 43/12
47/25 76/21 77/21
80/24 83/9 91/3
91/21
**respectfully [1]**
88/18
**responding [1]**   91/1
**response [1]**   93/17
**rest [3]**   29/13 53/5
91/20
**restored [1]**   60/20
**restriction [1]**
37/12
**resume [1]**   53/19
**retain [1]**   9/21
**retroactively [1]**
70/16
**return [2]**   35/2 35/3
**returning [1]**   46/6
**riding [1]**   39/16
**right [86]**   4/12 7/24
8/18 8/20 8/21 10/12
11/1 11/25 12/6 12/8
12/11 16/7 17/11
21/7 24/23 27/7 30/3
30/9 30/22 32/2 35/4
36/25 37/4 37/6 37/7
37/22 40/3 41/8
41/10 41/12 41/21
42/1 43/19 43/21
43/23 44/2 45/23
45/24 46/1 46/9
46/18 48/11 48/16
48/17 48/18 49/13
49/14 50/18 53/8
53/14 54/3 55/2
56/11 56/19 57/14
58/18 60/14 61/8
61/11 61/13 61/17
61/23 62/14 63/6
65/22 68/5 68/20
69/11 70/6 70/20

25/17 75/17 76/18
77/7 77/23 78/9
78/17 81/23 83/10
84/8 85/17 86/9 88/1
91/25 92/18 92/19
**rights [3]**   40/15
66/15 81/16
**rise [8]**   4/2 7/25
53/21 53/24 78/21
78/25 80/8 96/8
**rises [3]**   37/6 90/21
90/21
**risk [1]**   40/17
**risks [1]**   41/18
**RMR [2]**   97/2 97/8
**role [1]**   87/4
**rougher [1]**   58/11
**rule [4]**   17/23 28/21
32/25 87/24
**Rule 12 [2]**   28/21
32/25
**ruled [1]**   13/8
**ruling [2]**   17/25
31/10 32/20

**S**

**safety [1]**   22/20
**said [36]**   6/21 6/23
9/20 12/7 12/8 14/17
14/20 16/20 17/15
19/1 19/13 32/10
50/4 51/4 52/20 56/8
56/9 62/1 66/2 66/21
68/1 68/9 72/3 75/15
79/3 79/17 83/14
85/19 86/13 89/15
94/6 94/15
**same [20]**   5/23 6/19
7/1 7/2 8/22 10/16
13/5 13/9 13/11 20/1
29/10 40/18 50/6
50/9 50/9 50/16
50/21 51/4 51/4
52/15
**satisfied [1]**   71/9
**satisfy [3]**   14/1
15/22 71/17
**satisfying [1]**   85/7
**saving [1]**   22/18
**say [47]**   8/5 8/15
9/13 10/16 14/10
20/10 22/9 23/15
23/20 23/21 25/12
31/15 32/17 34/9
36/9 42/2 44/1 44/7
44/11 45/7 45/12
45/14 46/18 50/6
53/1 53/8 61/3 61/12
62/4 62/6 64/23
66/18 67/6 68/5
69/21 70/10 75/8
77/20 77/24 78/15
81/1 82/9 85/24
88/12 89/9 91/12
95/6

**S**

**say-so [1]** 45/12
**saying [8]** 37/4
45/24 46/2 50/20
56/22 61/16 63/17
90/11
**says [11]** 8/23 12/6
16/18 33/9 68/15
68/22 69/11 70/1
70/19 71/1 75/22
**scope [1]** 48/19
**seated [3]** 4/3 4/5
54/1
**second [5]** 10/9
11/18 12/9 18/23
70/9
**Section [13]** 12/22
13/6 14/1 15/22
16/19 18/7 19/4
19/21 20/4 20/9
20/25 35/22 37/11
**see [10]** 25/16 37/3
47/8 49/22 52/16
67/7 71/8 84/6 90/22
94/24
**seeing [1]** 26/10
**seek [4]** 64/13 73/21
73/21 93/5
**seeking [17]** 8/9
9/23 10/2 10/3 11/2
11/8 11/10 12/18
12/19 12/20 14/8
17/2 17/8 72/24 86/8
87/16 93/14
**seemingly [1]** 13/15
**seems [7]** 9/6 11/19
12/15 61/18 65/14
67/25 73/19
**sense [4]** 8/25 34/24
81/22 86/6
**sent [3]** 51/6 93/2
93/16
**separate [5]** 6/12
67/23 67/25 75/14
85/11
**separating [1]** 8/14
**separation [11]**
43/10 43/12 44/25
46/21 73/13 76/5
76/10 82/15 83/1
83/20 83/24
**separations [1]**
47/20
**serious [1]** 5/18
**serve [3]** 5/13 56/3
58/13
**serves [1]** 75/15
**service [1]** 35/2
**services [7]** 5/15
5/17 11/5 11/8 24/9
24/11 65/17
**serving [2]** 42/14
42/17
**session [1]** 53/25
**set [5]** 12/19 35/8

**set-aside [1]** 12/19
**setting [1]** 11/10
**several [1]** 90/24
**severe [1]** 25/5
**severely [1]** 25/9
**sexual [1]** 54/21
**shall [1]** 13/4
**shape [1]** 56/14
**she's [1]** 27/8
**shootings [2]** 27/14
28/2
**short [5]** 24/12
41/19 85/3 85/18
96/5
**should [15]** 21/13
22/25 23/5 23/15
23/21 29/16 29/16
31/2 31/17 33/13
43/1 43/4 60/13
62/24 77/7
**shouldn't [5]** 8/23
29/6 55/10 55/12
59/4
**show [1]** 90/6
**shown [5]** 28/5 43/4
61/25 66/13 83/15
**shows [5]** 71/14
72/21 87/18 94/19
95/1
**shut [1]** 91/2
**shutdown [1]** 64/10
**shutter [1]** 89/19
**shutting [1]** 64/23
**side [1]** 13/13
**sides [1]** 73/16
**significant [4]** 6/8
31/25 40/16 41/17
**similar [3]** 19/4
35/5 84/18
**similarly [2]** 37/23
84/18
**simply [6]** 16/11
19/13 30/16 30/25
33/6 36/19
**since [5]** 8/10 15/2
20/22 28/3 65/8
**single [9]** 26/1
26/11 51/2 51/3 52/8
57/3 69/18 79/16
94/16
**sit [1]** 92/2
**situation [2]** 58/14
71/3
**slightly [3]** 12/1
43/22 45/25
**so [151]**
**so I think [14]** 7/6
14/4 14/24 26/18
29/18 37/8 41/9
60/23 64/25 76/15
78/5 86/16 91/8
94/25
**So it's [1]** 46/9
**so this [1]** 48/19

**So this is [1]**
**So this isn't [1]**
67/3
**sole [1]** 55/5
**some [41]** 8/25 10/12
11/6 11/8 11/10
16/22 16/25 17/16
18/15 24/11 30/7
32/1 33/25 35/9 40/7
40/23 42/21 43/9
44/3 45/20 45/20
46/3 56/13 60/3 60/3
60/23 64/9 64/10
65/20 67/4 71/11
72/22 78/7 79/18
79/19 79/23 81/22
81/24 82/3 94/17
94/24
**somebody [2]** 10/14
63/7
**somehow [2]** 9/8
48/23
**something [16]** 10/10
11/3 32/13 32/15
32/19 36/6 39/22
45/15 49/10 65/20
75/5 82/13 82/19
87/4 92/25 94/22
**somewhere [2]** 46/9
76/1
**Somil [2]** 2/3 4/10
**song [1]** 57/22
**soon [1]** 88/2
**sorry [10]** 8/12 36/3
44/7 51/14 52/19
54/22 65/4 65/23
77/22 92/1
**sort [41]** 6/10 6/17
8/15 10/2 10/10 11/6
11/8 11/10 16/22
16/25 20/24 21/8
21/15 24/9 24/21
28/14 28/16 28/25
29/18 32/14 34/18
34/22 35/5 37/23
42/21 55/18 56/7
60/24 64/9 65/9 72/7
74/15 77/1 79/3
79/23 80/17 81/4
90/4 94/9 94/17
94/24
**sought [4]** 9/22
41/11 66/16 77/14
**sound [2]** 61/20 89/8
**source [5]** 10/12
11/1 37/9 66/15 84/5
**Southern [1]** 84/12
**sovereign [2]** 73/10
85/9
**space [8]** 64/25
80/21 81/10 81/12
81/20 85/13 86/8
87/25
**speak [11]** 41/15
41/16 58/24 59/2

95/14 59/16 61/1 61/4 62/2
62/22 78/3 92/15
95/14
**specific [30]** 6/7
10/23 11/20 11/24
12/2 12/5 15/3 17/11
19/6 19/10 35/24
35/25 36/4 38/10
38/23 40/11 44/2
49/1 64/6 64/17
64/17 69/7 69/14
73/9 73/11 73/17
75/20 86/14 89/12
95/17
**specifically [6]**
28/21 35/22 48/13
49/3 49/6 64/15
**specificity [1]** 92/6
**specifics [1]** 40/12
**specified [8]** 67/17
67/17 67/21 68/15
68/23 68/25 70/22
71/7
**specifies [1]** 67/22
**specify [2]** 70/2
71/1
**Spectrum [4]** 12/7
12/10 66/17 77/10
**spell [1]** 18/13
**spelled [4]** 13/17
13/23 36/5 36/7
**spend [2]** 45/24 46/8
**spending [4]** 47/18
54/14 76/6 76/9
**spent [7]** 5/19 25/6
32/12 47/22 83/6
83/16 87/21
**spike [1]** 28/1
**square [2]** 14/15
44/19
**staff [4]** 5/12 5/14
22/17 26/9
**stage [5]** 30/15
44/14 55/14 58/23
92/16
**stake [3]** 6/9 41/14
41/18
**stand [4]** 24/14 48/6
60/4 88/8
**standard [2]** 49/6
82/4
**standing [3]** 62/4
62/16 90/11
**stands [4]** 7/10
18/16 24/8 33/6
**Stanton [5]** 2/9 4/10
4/23 28/12 28/13
**start [6]** 5/1 6/1
58/9 85/6 89/16
89/23
**started [1]** 95/5
**Starting [1]** 54/12
**state [1]** 28/23
**stated [2]** 32/23
51/1

**S**

statement [1]  52/16
states [7]  1/1 1/10
57/24 58/2 83/20
85/16 88/21
stating [1]  5/7
statute [1]  85/16
statutes [5]  15/10
44/4 76/12 84/6
85/13
statutory [4]  67/4
75/5 76/12 76/13
Ste [1]  2/16
stenography [1]  3/6
step [1]  55/22
still [12]  7/10 9/20
9/21 13/5 14/21
34/16 35/16 36/14
38/23 42/18 49/7
68/8
stood [1]  68/9
stop [2]  5/9 83/24
stopped [1]  80/19
stops [3]  24/2 24/4
95/18
strings [1]  93/9
strings-attached [1]
93/9
strivedi [1]  2/8
strongly [1]  28/6
subgrantees [1]  5/12
subject [1]  13/5
submitted [1]  43/18
submitting [1]  30/1
subregulations [1]
19/10
substance [1]  80/15
substantive [9]
35/18 35/19 35/21
36/2 36/17 37/9
38/22 79/1 79/9
succeed [2]  5/21 6/2
success [2]  28/4
43/5
such [2]  14/10 29/3
suddenly [4]  11/13
16/22 26/10 95/18
sue [2]  82/11 93/22
suffice [1]  41/20
sufficient [11]  9/6
9/15 14/1 15/22
16/19 40/24 71/23
81/5 81/9 81/13 89/2
suggest [2]  45/18
61/24
suggested [2]  9/7
29/15
suggesting [1]  9/9
suit [2]  82/6 86/8
suits [1]  85/12
supplemental [2]
43/20 46/12
support [2]  54/10
57/11
supporting [2]  54/20

suppose [3]  50/11
50/15 81/22
supposed [1]  35/25
Supreme [7]  6/18
6/21 6/23 8/23 49/23
86/25 90/9
Supreme Court [4]
6/18 6/21 6/23 8/23
Supreme Court's [2]
49/23 90/9
sure [24]  7/16 12/9
22/1 26/22 38/8 39/9
39/10 39/15 47/21
64/11 68/21 71/25
72/2 72/4 74/21
75/21 76/20 78/2
78/9 79/7 80/16
84/15 85/14 89/4
survive [1]  87/9
sweep [1]  74/8
system [1]  93/18

**T**

tacking [1]  74/7
take [13]  8/10 13/20
43/10 47/11 47/14
53/17 67/4 68/19
74/22 75/11 76/10
76/13 77/1
taken [4]  32/14
38/17 81/7 93/3
takes [1]  83/23
taking [3]  27/18
34/18 55/21
talk [5]  10/9 76/19
77/19 78/24 80/17
talked [6]  19/16
43/14 49/1 77/17
78/19 92/11
talking [7]  8/11
10/23 11/4 28/16
70/11 74/16 94/21
task [1]  96/5
tease [1]  74/15
teeth [2]  10/20
10/20
tell [10]  32/9 56/25
58/3 58/5 60/17
65/11 65/25 76/16
92/10 95/7
temporary [1]  89/21
tenure [3]  80/13
81/11 82/13
term [7]  18/1 18/18
19/6 36/23 37/2
70/22 78/17
terminate [14]  5/22
18/13 18/14 20/5
20/12 26/8 51/25
58/21 61/18 65/20
68/18 78/8 78/16
94/22
terminated [25]  5/4
6/7 13/4 13/17 19/1

19/2 20/25 25/15
28/3 33/21 36/1
46/19 50/8 50/16
51/23 52/10 54/15
55/13 55/16 58/4
60/17 62/25 63/2
82/10 94/17
terminates [3]  13/10
44/15 65/5
terminating [6]
30/20 55/11 57/25
62/7 62/16 81/24
termination [54]  5/5
5/10 13/7 13/17 16/5
17/17 18/14 22/13
24/20 25/9 25/20
27/24 35/24 36/5
36/10 40/7 40/8
40/23 40/24 41/2
41/12 41/13 41/24
42/22 43/2 44/24
51/1 51/20 54/13
57/5 61/8 63/9 64/20
65/7 65/16 67/10
68/4 68/22 70/3 70/5
71/24 75/8 80/2 80/3
80/6 81/3 81/4 81/8
81/16 81/23 90/4
90/17 91/12 95/7
terminations [5]  6/3
6/20 12/20 20/24
67/16
terms [40]  6/24
10/10 15/9 15/14
15/19 16/14 16/21
17/7 17/24 28/17
28/21 29/20 30/11
31/10 31/17 33/23
37/5 40/11 42/13
42/16 45/23 46/15
47/2 47/7 62/8 62/10
67/2 67/6 67/7 67/17
69/13 69/24 70/3
71/12 71/20 77/12
78/13 79/4 88/23
90/22
test [1]  10/8
Texas [1]  48/25
text [1]  19/15
than [16]  5/5 5/22
6/22 12/19 13/15
14/10 14/12 32/23
36/4 37/14 44/15
44/16 85/25 88/17
92/8 94/4
Thank [15]  28/9
28/10 49/13 53/12
53/13 54/1 91/24
91/25 92/18 92/21
92/23 95/25 96/1
96/2 96/3
Thank you [9]  28/10
49/13 53/12 53/13
91/24 92/18 92/23
96/1 96/3

Thank you very much
[1]  96/2
Thanks [2]  53/20
96/7
that [699]
that I should [1]
22/25
that is [1]  17/17
that's [84]  7/14 8/3
11/18 12/7 15/5
18/15 20/11 20/20
21/20 25/11 25/19
27/10 29/16 29/20
30/4 30/11 30/22
36/1 36/12 38/2 38/7
39/4 40/4 41/11 42/1
45/1 45/18 46/8 48/2
50/7 50/16 50/22
56/18 56/20 57/15
59/25 61/1 61/8
63/17 63/18 64/3
66/25 67/23 68/14
68/22 69/7 70/7
70/17 70/22 70/25
72/9 73/3 73/8 73/10
73/16 73/20 73/23
74/24 76/8 77/2 77/4
78/9 78/22 80/18
80/19 82/10 84/1
84/3 84/6 85/1 85/13
86/19 87/8 87/9
87/17 89/8 89/19
89/24 90/19 90/21
93/7 93/18 94/21
95/15
their [75]  5/9 5/11
5/12 5/16 5/20 6/2
6/25 7/25 9/21 11/14
20/1 22/13 25/7
25/19 26/2 26/3 26/9
26/10 26/12 27/16
27/21 27/21 28/20
28/23 29/2 29/5
29/23 30/3 30/10
31/10 31/12 31/12
32/5 32/10 33/20
34/7 37/13 37/24
44/17 44/18 45/12
46/13 48/23 50/8
50/17 50/17 50/18
51/2 51/23 51/24
52/9 52/17 56/24
57/10 58/4 61/3 64/5
69/13 71/20 72/1
72/2 72/21 73/21
73/25 74/12 76/24
78/22 83/1 87/10
89/1 89/1 89/12
89/23 91/2 91/4
them [12]  9/17 13/13
18/20 26/4 26/12
26/16 42/4 59/22
60/15 61/11 72/22
72/24
then [29]  6/14 8/2

**then... [27]** 9/7 9/8
10/16 10/18 11/9
14/12 16/8 16/18
18/17 31/8 31/15
31/18 33/15 44/1
44/5 47/25 50/20
51/18 53/17 55/18
59/4 67/8 76/23 78/1
80/24 83/13 91/15
**theoretically [1]**
86/4
**theory [1]** 37/2
**there [62]** 6/24 7/11
16/21 19/3 19/5
21/10 21/17 21/18
26/13 26/17 28/1
28/7 32/22 34/2 34/9
34/15 35/15 35/20
35/24 36/6 36/8
36/24 38/4 38/14
42/25 43/1 48/14
51/5 58/12 59/18
59/19 60/3 60/19
63/16 64/6 64/18
65/15 66/9 67/25
69/5 69/11 71/7
72/16 72/22 75/12
79/22 80/9 80/18
80/22 81/1 81/20
81/21 81/24 82/8
83/10 84/10 87/8
88/1 88/16 90/16
95/6 95/24
**there's [44]** 6/13
6/14 9/6 10/25 17/16
21/8 22/9 23/17
31/25 32/1 35/5
35/18 38/18 38/23
39/14 39/21 40/4
41/12 42/6 51/12
52/16 53/1 58/15
60/25 66/14 66/21
69/3 69/10 71/3
71/17 71/18 72/23
77/20 78/11 80/21
81/18 81/22 83/5
83/14 85/3 87/7 91/6
91/11 95/13
**therefore [3]** 16/4
33/10 34/15
**these [59]** 9/16 16/4
19/15 22/5 25/4 25/6
25/7 25/17 25/18
25/25 26/3 26/8
26/14 26/15 28/2
28/3 28/7 33/5 34/20
34/23 34/24 35/14
38/21 44/13 47/21
50/10 50/22 55/11
56/13 57/9 57/25
58/3 58/15 59/22
59/23 60/9 61/2 61/9
64/12 67/6 69/21
70/13 70/17 71/13

**they [76]** 78/2 78/10
79/11 82/19 83/5
83/15 83/19 83/21
89/22 92/8 93/25
94/3 95/8 95/20
**they [114]**
**they'll [1]** 26/16
**they're [21]** 11/2
30/16 31/24 32/11
45/14 46/2 50/3
56/20 60/24 61/20
63/23 69/21 72/8
72/19 72/24 78/10
79/10 80/15 90/18
91/1 94/25
**they've [13]** 25/5
31/5 32/10 36/13
41/24 42/8 45/7
52/19 52/20 52/21
64/16 87/3 90/1
**thing [10]** 13/9
18/17 27/12 37/12
47/5 51/4 65/9 65/19
66/24 69/18
**things [11]** 22/9
29/18 29/25 37/19
57/6 58/10 58/16
68/1 80/15 87/25
93/25
**think [156]**
**thinking [1]** 94/11
**thinks [1]** 38/13
**third [1]** 95/19
**this [147]**
**those [39]** 4/24 6/20
8/10 11/10 13/4
16/13 16/24 23/1
28/17 29/21 29/24
31/9 34/17 39/15
42/14 42/24 43/2
44/3 44/5 45/24
52/25 53/4 54/17
54/19 63/13 67/7
72/18 74/20 75/25
76/6 76/11 76/12
78/25 79/11 86/16
87/5 88/14 93/4 95/8
**though [1]** 71/5
**thought [3]** 15/17
17/24 77/17
**thoughts [1]** 89/4
**thousands [1]** 79/18
**through [6]** 26/12
31/13 31/18 47/9
66/24 70/2
**throughout [1]** 30/2
**thrust [1]** 34/6
**tied [1]** 32/12
**ties [1]** 79/19
**time [14]** 8/14 8/22
10/14 11/12 20/16
35/24 41/6 42/11
44/24 45/21 47/3
50/21 60/21 81/15
**tiny [1]** 54/15

**tip [1]** 47/19
**titled [1]** 97/4
**today [5]** 60/17 62/5
66/13 68/13 88/9
**together [1]** 76/11
**told [1]** 26/2
**took [2]** 52/10 60/9
**totally [1]** 39/9
**touch [1]** 87/12
**touched [1]** 81/17
**tougher [2]** 76/8
76/15
**town [1]** 25/18
**traditional [5]**
32/25 34/19 34/23
34/25 72/7
**trafficking [1]**
54/21
**train [1]** 57/11
**transcript [3]** 1/9
3/6 97/3
**transcription [1]**
3/7
**transform [1]** 82/12
**Transohio [9]** 8/5
11/23 12/1 16/11
66/3 75/12 75/19
86/10 86/13
**trauma [1]** 27/21
**Trivedi [2]** 2/3 4/10
**true [4]** 7/14 42/20
62/1 74/23
**truly [2]** 67/5 74/3
**Trump [2]** 38/6 49/24
**trust [4]** 5/18 25/3
26/14 95/21
**truthfully [2]** 62/18
72/20
**try [4]** 54/23 58/15
63/15 65/16
**trying [2]** 56/15
76/20
**Tucker [14]** 8/7
14/11 34/7 66/4 66/7
73/4 75/3 77/21
77/25 85/5 85/11
86/2 86/7 87/11
**turn [3]** 16/12 28/8
65/22
**turning [2]** 27/21
33/15
**two [6]** 6/13 33/3
42/7 50/13 60/20
74/18
**type [3]** 9/22 17/2
23/24
**types [2]** 12/17
23/22
**typically [5]** 17/5
65/14 81/20 94/20
94/23

**U**

**U.D [1]** 1/6
**U.S [1]** 4/8

**ultimately [6]** 12/14
14/20 17/21 36/22
59/23 86/13
**ultra [1]** 47/25
48/21 49/2 49/4
86/24
**unaddressed [1]** 29/5
**unambiguous [1]** 14/2
**unambiguously [2]**
67/17 70/2
**unceremoniously [1]**
33/20
**uncontroverted [2]**
22/11 95/15
**under [39]** 6/9 7/8
8/6 8/10 9/18 10/3
10/21 11/11 11/14
11/24 16/19 20/17
20/18 23/2 23/11
24/10 29/4 33/23
37/7 40/5 46/6 48/7
48/21 48/24 49/4
66/22 67/15 68/21
71/9 75/21 77/10
80/14 81/16 82/6
85/16 85/21 87/23
92/25 94/9
**underlying [1]** 7/13
**understand [24]** 6/21
10/5 13/13 14/9
14/22 15/25 18/20
24/13 43/17 47/11
48/5 50/12 61/9 62/1
65/7 69/3 70/15
76/20 78/24 79/15
81/17 90/14 92/24
94/6
**understandably [1]**
59/21
**understanding [3]**
8/14 68/12 85/23
**understood [1]** 29/8
**undisputed [2]** 16/17
18/25
**unfair [1]** 73/8
**unfettered [3]** 36/15
36/18 37/12
**uniform [3]** 13/25
19/9 52/18
**unilateral [1]** 61/17
**UNITED [5]** 1/1 1/10
57/24 58/2 88/21
**United States [3]**
57/24 58/2 88/21
**universally [1]**
64/22
**universe [1]** 71/11
**unlawful [4]** 6/21
12/20 17/18 19/24
**unlawfully [4]** 13/3
26/8 63/3 63/6
**unless [5]** 39/21
45/15 48/12 77/19
91/21
**unlikely [2]** 64/3

## U

unlikely... [1]   64/4
unobligated [1]
87/16
unreasoned [1]   6/3
unspecific [1]   5/23
unspecified [2]
45/20 45/21
unsupported [1]   5/6
until [1]   59/5
unusual [1]   94/20
up [8]   25/17 27/8
47/6 68/9 76/2 82/16
93/19 94/19
upfront [1]   66/25
upon [7]   13/8 20/13
29/7 52/1 66/5 66/9
77/2
Urban [1]   38/9
us [4]   9/15 18/20
85/25 95/7
usdoj.gov [1]   2/18
use [3]   54/25 57/10
69/21
used [2]   56/3 64/22
using [2]   5/5 5/23
usually [2]   54/23
65/19

## V

vagueness [2]   74/19
86/23
valuable [1]   88/8
value [5]   12/23
12/25 17/16 21/4
21/17
various [1]   76/21
vast [1]   15/12
VERA [3]   1/3 4/7
57/10
version [5]   70/11
70/23 70/25 71/10
71/17
versions [1]   70/22
versus [8]   4/8 33/6
38/6 48/25 49/24
49/25 50/1 50/11
very [14]   14/4 20/11
53/13 56/15 61/6
73/9 80/15 86/14
89/11 89/11 90/10
91/10 92/21 96/2
vested [2]   37/24
44/20
veto [1]   83/11
victims [2]   24/1
54/20
view [19]   32/12
34/18 39/22 40/24
42/3 43/13 47/14
68/25 69/23 72/23
73/25 78/20 80/7
81/5 82/16 82/21
87/10 87/11 91/13
violated [3]   14/18

violates [1]   93/23
violation [7]   47/15
48/14 66/1 66/3 77/3
77/6 83/14
violence [13]   23/25
25/25 27/14 27/22
55/1 55/5 55/6 56/11
56/15 56/23 56/23
58/17 95/18
violent [2]   54/19
57/7
vires [5]   47/25
48/21 49/2 49/4
86/24
virtue [1]   80/10
vis [2]   66/8 66/8
vital [1]   5/15
void [1]   74/19
Voters [2]   89/8
89/12
voting [1]   89/13
vs [1]   1/5

## W

wait [2]   61/21 96/7
waived [1]   73/11
waiver [3]   10/20
73/10 85/9
walked [1]   60/7
want [18]   11/15 20/3
34/4 39/12 39/15
39/22 40/22 40/22
42/14 42/19 49/14
49/22 69/17 69/20
69/23 73/20 74/16
77/24
wanted [4]   73/4
77/20 81/15 95/4
was [93]   6/6 6/22
8/7 8/8 8/8 11/23
14/17 14/18 17/3
17/4 17/18 17/18
19/14 20/6 20/18
20/22 23/24 24/3
29/5 29/13 30/17
33/23 33/24 34/1
34/2 35/21 36/8
38/11 41/6 42/12
42/20 42/21 46/14
46/19 47/3 47/5 47/5
48/15 48/23 50/10
52/7 52/9 52/17 55/8
55/16 55/20 57/11
58/4 59/1 59/3 60/3
62/1 63/16 65/13
66/2 68/7 69/10
69/16 71/25 72/1
72/15 73/9 75/12
75/12 75/13 75/16
75/20 76/19 79/9
81/1 83/8 83/11
83/16 84/10 84/18
84/23 85/8 85/15
85/15 85/23 87/8

92/7 92/12 93/18
94/17 94/17 95/6
95/7 95/8 95/17
Washington [4]   1/5
2/4 2/17 3/5
wasn't [4]   37/3 71/5
84/22 86/2
waters [1]   86/11
way [18]   19/22 20/16
20/21 21/1 23/16
25/1 29/15 29/17
45/9 47/22 50/9
52/18 55/17 56/14
69/9 74/15 79/19
84/23
we [123]
we believe [2]   28/3
94/3
We think [1]   64/4
we will [2]   46/2
96/5
we'd [1]   40/14
we'll [6]   6/15 10/8
53/18 53/18 53/19
76/19
we're [29]   4/6 4/14
4/25 8/10 9/9 10/2
10/3 10/23 12/9
12/20 13/10 15/13
16/21 28/16 30/5
55/9 63/17 64/23
66/15 66/16 70/11
71/10 74/16 81/10
81/24 85/13 87/22
94/8 94/20
we've [9]   19/16
24/24 34/21 35/17
53/14 66/13 81/17
87/14 87/15
week [1]   87/1
weigh [1]   28/6
weighed [2]   55/8
59/3
weighty [1]   67/4
welcome [2]   4/13
28/13
welfare [4]   80/13
80/16 81/11 82/13
well [49]   10/16
11/16 11/16 12/1
19/12 21/3 25/1
31/23 32/4 33/1
34/20 35/10 38/4
41/9 41/9 41/10 42/6
43/16 44/22 45/12
45/13 46/24 49/25
53/4 55/7 55/21 56/2
57/2 59/8 60/8 62/9
66/12 67/6 67/20
68/7 68/9 71/10 75/8
78/5 78/15 79/17
80/25 81/18 82/16
86/13 89/15 90/23
91/12 92/1

well-established [1]
25/1
were [44]   5/9 5/15
6/21 6/24 10/18
15/20 16/13 16/24
16/25 17/2 21/18
35/14 35/15 35/24
35/25 38/22 40/15
44/12 44/13 46/5
46/11 46/19 47/2
47/2 47/3 47/21
48/18 52/23 52/25
53/4 61/2 61/7 62/4
62/7 62/12 62/15
62/16 69/17 70/13
77/18 77/18 77/18
84/4 93/15
weren't [3]   32/17
46/7 64/21
what [100]
what's [7]   21/10
36/3 55/25 58/24
75/4 78/11 82/3
whatever [1]   78/13
when [30]   10/11
11/14 17/1 19/8
19/14 23/14 24/2
26/18 27/8 35/18
44/7 44/13 44/14
45/19 48/12 50/3
64/6 66/2 71/16
73/13 73/24 75/8
76/14 77/13 78/24
79/13 81/10 86/7
91/9 91/9
where [24]   11/4 11/5
12/4 26/23 29/16
31/24 38/23 43/25
44/4 46/5 46/10
48/14 48/14 49/24
52/8 67/3 71/3 79/16
79/16 80/18 80/19
84/25 89/12 95/5
whether [36]   7/9 8/7
8/8 9/5 9/6 9/22
10/10 10/11 11/1
11/13 13/6 14/5
15/20 16/19 17/2
17/4 18/18 19/4
19/20 23/17 24/5
26/20 30/7 34/4
42/20 50/5 61/22
67/24 68/11 69/7
77/5 83/3 84/3 86/8
88/17 92/5
which [64]   6/14 6/15
6/19 8/6 9/20 10/14
14/6 14/16 14/17
14/25 15/20 15/25
16/1 17/10 17/25
19/3 20/18 24/25
25/13 26/23 30/2
31/12 32/5 32/6 32/8
32/10 33/5 37/18
38/5 38/12 39/15

**W**

**which... [33]**   40/15
42/7 42/19 44/1 44/1
44/3 45/9 45/23
46/18 48/22 48/25
49/2 50/2 51/1 58/25
59/25 72/24 75/12
75/22 79/5 80/2 80/4
81/17 83/13 84/4
85/24 91/17 93/9
93/18 94/8 94/19
95/11 95/21
**while [4]**   15/2 19/10
19/11 66/4
**white [1]**   69/5
**who [5]**   23/1 25/21
26/9 26/10 58/12
**who's [3]**   9/12 10/14
91/7
**whole [5]**   9/16 10/19
19/8 31/13 73/3
**whom [2]**   25/15 27/19
**whose [2]**   51/23 55/5
**why [45]**   4/17 6/11
6/17 7/16 9/11 9/13
10/25 12/12 14/22
16/8 31/19 35/1
38/13 46/23 53/16
55/12 55/16 55/20
56/25 57/25 58/3
58/20 59/7 59/13
60/5 60/12 60/12
60/13 60/17 61/1
62/7 62/15 65/25
66/9 73/17 73/19
76/16 77/25 78/22
84/1 85/3 87/18
87/22 89/2 90/19
**will [20]**   4/20 4/21
4/23 22/9 27/5 27/7
28/8 30/8 39/9 45/19
46/2 59/11 70/19
79/13 83/6 88/1
88/15 88/20 89/16
96/5
**William [3]**   3/2 97/2
97/8
**wind [1]**   91/2
**winnowed [1]**   60/2
**wish [2]**   22/5 79/6
**within [9]**   19/6 24/5
30/18 32/17 48/20
72/13 72/16 93/7
95/20
**without [9]**   46/12
49/5 55/14 58/23
65/5 81/4 82/11 83/4
94/17
**Wolf [1]**   49/25
**Women [2]**   89/8 89/12
**won't [2]**   83/15
90/12
**wonder [1]**   10/7
**wondering [1]**   84/23
**word [6]**   20/11 20/12
90/18 10/11 39/5
90/7
**words [15]**   7/16 9/12
18/11 18/12 18/14
20/15 21/14 25/16
37/1 40/21 41/23
51/22 60/15 72/6
90/16
**work [11]**   5/9 23/25
24/3 26/1 27/18
63/24 65/16 82/3
86/17 95/18 95/23
**working [2]**   27/16
85/13
**worth [2]**   5/4 42/7
**would [111]**
**wouldn't [6]**   21/17
21/20 23/20 49/2
71/15 94/7
**written [2]**   30/23
31/12
**wrong [3]**   38/13 48/8
65/25

**Y**

**yanking [1]**   88/7
**yeah [8]**   18/24 21/24
39/9 70/24 78/3
84/17 85/20 89/15
**year [8]**   32/11 32/12
38/7 43/14 44/1
83/10 83/21 83/22
**years [2]**   5/19 25/6
**Yee [1]**   86/5
**yes [45]**   7/23 9/2
11/22 13/19 17/12
17/14 17/14 18/19
21/6 31/3 38/12 42/4
42/18 44/11 50/24
51/16 52/2 52/23
54/4 55/3 56/12
56/18 57/13 58/19
60/2 60/3 63/5 63/10
68/6 68/14 69/2 69/8
70/7 73/2 74/24
75/18 76/3 77/9
78/18 78/23 82/1
83/5 83/25 86/22
90/2
**yet [1]**   63/11
**York [1]**   2/11
**you [284]**
**you know [48]**   6/22
7/14 8/24 9/15 10/17
23/25 24/15 26/4
29/14 30/7 31/13
34/21 37/18 38/9
38/17 39/23 40/6
40/12 41/11 42/12
45/18 46/15 48/12
55/12 55/16 57/4
57/5 57/22 58/14
59/19 64/19 72/14
72/15 73/16 74/18
75/11 78/13 85/16
86/1 86/11 86/12
86/14 89/17 89/20
91/13 93/25 94/8
95/4
**you presumably [1]**
40/22
**you'd [5]**   44/20 48/8
49/10 53/1 58/17
**you'll [3]**   29/6
52/16 56/6
**you're [21]**   11/4
11/19 12/14 14/13
17/8 17/8 26/23 36/4
37/4 39/16 48/7
50/15 55/11 59/25
60/1 61/12 76/2
81/23 85/14 86/7
94/11
**you've [24]**   7/20 9/1
9/7 17/10 24/11
29/15 30/23 37/16
43/13 45/15 48/6
49/9 52/20 56/8 59/7
59/7 60/2 60/15
61/16 77/5 79/18
82/17 88/23 96/4
**your [148]**
**Your Honor [66]**   4/18
9/10 12/24 28/10
28/11 30/22 31/3
34/11 35/6 35/10
38/4 38/10 38/12
39/10 42/24 43/8
43/17 46/22 47/17
48/4 49/16 50/4
53/12 54/4 55/7
55/21 56/12 57/2
57/13 57/17 58/5
58/23 59/8 60/8
60/19 62/3 62/18
63/13 64/19 65/11
66/12 69/8 69/15
70/10 72/11 73/2
74/2 74/21 75/18
76/8 77/9 78/23
80/11 81/6 82/1
82/22 83/25 86/22
87/6 87/17 90/2
90/23 91/20 92/9
92/22 96/1
**Your Honor's [1]**
10/5

**Z**

**Zaremba [3]**   3/2 97/2
97/8