# fIN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERA INSTITUTE OF JUSTICE, et al., *Plaintiffs*, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE;<br>PAMELA J. BONDI, in her official capacity as United States Attorney General;<br><br>OFFICE OF JUSTICE PROGRAMS,<br><br>MAUREEN A. HENNEBERG, in her official capacity as Acting Head of the Office of Justice Programs,<br><br>*Defendants*. | Case No. 25-cv-1643 (APM) |

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Defendants terminated more than $820 million in grants to Plaintiffs and hundreds of other nonprofits in Plaintiffs' putative class. ECF 47 at 1. This Court's July 7 Order denied Plaintiffs' motions for preliminary injunction and class certification and granted Defendants' motion to dismiss. ECF 48. But the Court's Memorandum Opinion suggested that Plaintiffs had shown all the factors warranting an injunction pending their appeal of the Order. Now Plaintiffs seek that injunction under Federal Rule of Civil Procedure 62(d).[1]

---

[1] Defendants are opposed to this Motion.

Rule 62(d) "necessarily envisions situations in which a district court that has denied an injunction still grants an injunction pending appeal"—"even if the court that just denied injunctive relief 'believe[s] its analysis' in denying relief 'is correct.'" *United States v. Facebook*, 2024 WL 291739, at *1 (D.D.C. Jan. 12, 2024) (alteration in original) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977)). An injunction pending appeal is proper, for instance, where the "threat of irreparable harm" is "grave"; the balance of the equities "decisively" favors relief; and the movant "establishes a 'serious legal question' on the merits and shows that 'the other three factors tip sharply' in its favor." *Id.* (citations omitted). Those criteria are all met here.

*Grave threat of irreparable harm.* Plaintiffs' Complaint and briefing showed that Plaintiffs and the communities they serve have been and will continue to be devastated by Defendants' precipitous grant terminations. ECF 8-1, 11-1, 37. This Court's Memorandum Opinion agreed that the terminations would likely cause enormous harm. And everything that has happened since this litigation began—attested to by the declarations attached to this Motion—only reinforces Plaintiffs' irreparable harm showing.

As Plaintiffs' preliminary injunction briefing and the attached declarations showed, Defendants' terminations are inflicting precisely the kinds of irreparable harms that warrant an emergency injunction and cannot be remedied by retrospective financial payments. ECF 11-1. Defendants' terminations have forced "the layoff of specialized staff that is presently jeopardizing their operations and services, the elimination of critical programs that serve victims and law enforcement alike, and deep harms to Plaintiffs' reputations in communities that were painstakingly built up over years and decades." ECF 37 at 43. The effects of those layoffs and cutbacks resonate throughout communities. Plaintiffs, among many other vital services, provide

2

interpretation for Deaf crime victims; relief for victims of violent crime in 23 different hospitals; interventions in active armed conflicts; and support to youth at risk of gun and gang violence. ECF 37 at 43-44 (citing declarations). When Plaintiffs are forced to cut back, people get hurt. As this Court already concluded: Defendants' actions, if not enjoined, are "likely to harm communities and individuals vulnerable to crime and violence." ECF 47 at 2.

The new declarations attached to this Motion only underscore the immediacy of the harm, which no post-litigation payments can remedy. For instance, since this litigation started:

- Homicides in King County, Washington, where Plaintiff Center for Children & Youth Justice operates, continue to increase at an "astronomical" pace with thirteen deaths by firearm since May 21, 2025. Sottile Decl. ¶¶ 8, 6. But CCYJ has had to lay off gang outreach specialists who specialize in working with many of the youth who fall precisely in these populations. *Id.* ¶ 3-4.

- In Detroit, thirteen teenagers and children were shot between June 27 and July 7. Kennedy Decl. ¶ 3. A four-year-old boy was murdered. *Id.* This kind of eruption of violence often happens around block parties and firework displays on the Fourth of July weekend—at least, absent the kinds of interventions that Plaintiff FORCE Detroit was funded to provide. Because of OJP's termination of grant funding, though, FORCE Detroit was unable to intervene to help prevent this summer's violence. *Id.* ¶ 6.

- In communities across the country, gun violence skyrockets when hot weather hits and schools close for the summer. Ridni Decl. ¶ 4. During that risky period, the violence interruption work of Plaintiff Health Resources in Action (HRiA) is particularly important. But Defendants' terminations robbed HRiA of the resources that support frontline intervention workers: one HRiA community partner, for instance, had to lay off staff and

3

triage violence interventions. *Id*. ¶ 3. The long term-impact of the termination is being felt both by the impacted communities and by HRiA itself: when the organization and its partners cannot show up at critical moments despite promising that they would do so, that absence inflicts irreparable reputational harm. *Id*.

- Reported threats of violence against Asian-Americans are skyrocketing—but, because of Defendants' terminations, Plaintiff Stop AAPI Hate could not be there to help victims of such violence by providing them with support and healing. For instance: threats to South Asian communities jumped by 40% in May compared to the previous six months. Choi Decl. ¶ 7. Meanwhile, Stop AAPI Hate had to accelerate layoffs; cut back work with consultants who help victims; and halve its healing support programs. Id. ¶ 3-4.

*The public interest and equities decisively favor relief.* Plaintiffs amply showed that the public interest and equities weigh heavily in their favor. ECF 37 at 47-51. This Court again agreed, concluding that Defendants' terminations are "likely to harm communities and individuals vulnerable to crime and violence." ECF 47 at 2. Speaking directly to the equities, the Court concluded that Defendants' abrupt and unexplained termination of Plaintiffs' grant awards was "unquestionably arbitrary," "shameful," "unfair and indiscriminate." *Id*. at 1-2, 34.

*Serious legal questions on the merits.* At a minimum, Plaintiffs raised serious legal issues for the reasons explained in their prior briefing. ECF Nos. 8-1, 11-1, 37, 38. And here too, this Court's opinion shows that Plaintiffs met their burden. The Court suggested that Plaintiffs' APA claims likely have merit—that Defendants' actions were "arbitrary, at least in lay terms" and "indiscriminate." ECF 47 at 2, 34. The Court denied a preliminary injunction because it concluded that it lacked jurisdiction. *Id*. at 27. But it recognized that its conclusion was far from obvious. For instance: while finding that the Supreme Court decision in *California III* forecloses relief on

4

Plaintiffs' arbitrary-and-capricious APA claim, *id*. at 22, the Court recognized that other district courts in this Circuit have read *California III* quite differently. *See id*. at 17-18 ("The Supreme Court's sparse reasoning in *California III* has sown confusion in this jurisdiction. . . . Nor have judges in this District been uniform in their application of *California III*."). A difference of opinion among district courts in this Circuit on the meaning and interpretation of an emergency order from the Supreme Court is precisely the kind of serious merits question that—taken together with the harms and the equities—warrants injunctive relief pending appeal.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion and enjoin OJP's terminations of Plaintiffs' grants pending Plaintiffs' appeal. This Court should not require Plaintiffs—organizations seeking to protect the public from violence and whose missions are already gravely suffering from cuts to their grant funding—to post a bond. Imposing a bond requirement would undermine their right to judicial review. ECF 11-1 at 48.

Dated: July 10, 2025              Respectfully submitted,

/s/ Lisa Newman
LISA NEWMAN
JENNIFER FOUNTAIN CONNOLLY (D.C. BAR NO. 1019148)
CORTNEY ROBINSON (D.C. BAR NO. 1656074)
SOMIL TRIVEDI (D.C. BAR NO. 1617967)
BRIAN D. NETTER (D.C. BAR NO. 979362)
SKYE L. PERRYMAN (D.C. BAR NO. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org

JOSHUA PERRY*
JOSHUA STANTON (D.C. Bar No. 90010653)
E. DANYA PERRY*
PERRY LAW

445 Park Avenue, 7th Floor
New York, NY 10022
(212) 251-2619
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*
*Admission *pro hac vice* pending

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th of July, 2025, I filed the foregoing papers using the Court's CM/ECF system, which served the foregoing on all counsel of record.

*/s/ Lisa Newman*
LISA NEWMAN