IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VERA INSTITUTE OF JUSTICE, et al.,
*Plaintiffs*, *on behalf of themselves and all others similarly situated*,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, et al.,
*Defendants*.

Case No. 1:25-cv-01643

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

Plaintiffs have raised serious legal issues that, considering the differing opinions among district courts in this Circuit, *see* Memorandum Opinion (ECF No. 47) at 17-18, are unresolved by the Supreme Court's decision in *Department of Education v. California,* 145 S. Ct. 966 (2025) (hereinafter *California III*). But in its opposition, the government ignores this Court's discussion of the confusion *California III* has sown and the resulting lack of uniformity of decisions applying it within this Circuit. ECF No. 47 at 17. Instead, the government contends the Court's decision was "governed by a straightforward application of the D.C. Circuit's decisions" in *Ingersoll-Rand Company v. United States*, 780 F.2d 74 (D.C. Cir. 1958) and *Spectrum Leasing Corporation v. United States*, 764 F.2d 891 (D.C. Cir. 1985), which it claims Plaintiffs have not challenged. Opposition to Emergency Motion (ECF No. 54) at 1. Addressing *Ingersoll-Rand* and *Spectrum*, however, only further highlights that this Court's conclusion is susceptible to reversal upon appellate review.

This Court correctly concluded that *California III* had no bearing on Plaintiffs' contrary-to-law claim because the Supreme Court "had no occasion to consider jurisdiction over a contrary to law claim because the district court did not reach it when granting a TRO." ECF No. 47 at 23. The

Court nonetheless concluded that two "on par" cases—*Ingersoll-Rand* and *Spectrum*—required dismissal of Plaintiffs' APA claims for lack of jurisdiction. That conclusion is erroneous. Both the source of the rights and relief sought in this case are distinct from *Spectrum* and *Ingersoll-Rand*.

*Spectrum* involved the development and delivery of a "data communications network" and "hardware systems" to the government. *Spectrum*, 764 F.2d at 892. After Spectrum was unable to provide a "software package in accordance with the contract requirement," the government "invoked the contract's liquidated damages clause" to collect nearly $2 million in damages. *Id.* Spectrum sued, requesting a declaration that it was "entitled to immediate payment of all hardware and maintenance payments illegally withheld," an "injunction requiring the government to pay monies owed for computer hardware," and a declaration that the government's collection of money violated the Debt Collection Act. *Id.* at 894-95. The D.C. Circuit concluded that the contract created the substantive right requiring the government to "pay monies owed for computer hardware." *Id.* at 894. The court also concluded that "the relief sought is a typical contract remedy," that is "an order compelling the government to pay money owed in exchange for goods procured under an executory contract," which it likened to a "seller's action for the price of goods against a private buyer." *Id.* at 894-95.

Both the source of the rights and relief requested here differ from those in *Spectrum*. The sources of Plaintiffs' rights are the APA and regulations governing grant termination. Plaintiffs have argued that the regulations independently forbid termination; the primary reason that this Court must look at the grant agreement is because the government has argued that the terms of the grant permit termination. But the assertion of a contract-based defense does not transform a claim into a contract claim. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023). Nor should it, or the government could unliterally change both the forum and nature of, and relief available for, a wide swath of administrative law claims, despite a plaintiff being the master of its

own complaint.  *See N.S. by & through S.S. v. District of Columbia*, 272 F. Supp. 3d 192, 199 (D.D.C. 2017) ( "the general rule [is] that '[p]laintiffs are masters of their complaints'") (citing *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 512 (1989)); *cf. The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon[.]").  And although the district court focused on one of Plaintiffs' contrary-to-law claims, it failed to mention or analyze Plaintiffs' second contrary-to-law claim: that OJP violated Section 200.340 by terminating grants based on a post-hoc change in agency priorities.  Again, Section 200.340 supplies the source of the right (the conditions under which termination is appropriate), and the APA supplies the source of the remedy: prospective injunctive relief.

The relief also differs from *Spectrum*.  Plaintiffs are not seeking an immediate lump-sum payment of money for goods procured under an executory contract, which is a classic contractual remedy.  Rather, Plaintiffs are seeking reinstatement of their grant agreements so that they may continue carrying out grant-funded work in their communities.  Plaintiffs also ask that their grant terminations be set aside under the APA because OJP's rationale is arbitrary and capricious, and because OJP's interpretation of Section 200.340 is unlawful.  Plaintiffs seek injunctive and declaratory relief that would govern OJP's interpretation of Section 200.340 as to the entire class of grantees.

*Ingersoll-Rand* is inapposite for similar reasons.  There, the government terminated a contract for air compressors based on a "termination for convenience clause" in the contract and re-solicited bids.  *Ingersoll-Rand*, 780 F.2d at 78.  The D.C. Circuit concluded that the source of the rights were based on the contract, deeming the "dispute" "entirely contained within the terms of the contract" because the question was "whether the contract forbids termination under these conditions," and therefore the Plaintiff could "challenge the termination based solely on contract principles." *Id.*  In those circumstances, the court reasonably concluded that allegations that the terminations violated

certain other regulations did not change "the essential character of the action." *Id.* An interpretation of the termination-for-convenience clause was "within the unique expertise of the Court of Claims," and the "substance" of the claim was that there "was no good reason to terminate the contract and begin solicitation." *Id.* The court also concluded that "the essence" of the relief was "specific performance of the contract." *Id.* at 79.

The same is not true here. Plaintiffs argue that a regulation, Section 200.340, forbids termination of the 376 grants, and that under the APA, OJP's terminations are arbitrary and capricious. This inquiry does not require any specialized knowledge of the government-contracting process, as was the case in *Spectrum* and *Ingersoll-Rand*, cases challenging the circumstances under which a single contract was terminated, and which relied on the terms of the contracts. Indeed, in both *Ingersoll-Rand* and *Spectrum*, the government could clearly explain how the respective plaintiffs violated the contracts at issue; here, the government conceded at oral argument that it could not.

This last point makes this case vastly different from *Spectrum* and *Ingersoll-Rand*: Plaintiffs have brought a class-action lawsuit, challenging OJP's identical and unreasoned termination of 376 grants, on the basis that OJP's terminations were arbitrary and capricious, and that OJP's interpretation of Section 200.340 as allowing an agency to effect a mass termination of 376 grants based on a post-award change in agency priorities is contrary to law. *See* Reply ISO Prelim. Inj. (ECF No. 37) at 8 (class actions seeking injunctive relief not permitted in CFC). Resolving the common questions of law here requires no specialized knowledge of the government-contracting process: the question presented and the relief sought are classic questions of law under the APA and seek classic APA remedies in a class action lawsuit.

Plaintiffs continue to assert that jurisdiction in this Court is proper, and, as detailed above, none of the cases this Court relied on in its opinion support a different conclusion. Meanwhile, Plaintiffs and the putative class still face grave and irreparable harm as a result of Defendants'

termination of more than $820 million in grant funding. Equities and public interest certainly weigh in favor of maintaining grant award funding that would help prevent violence in communities across the country. For these reasons, as well as those presented in Plaintiffs' emergency motion, an injunction pending Plaintiffs' appeal is warranted.[1]

Date: July 18, 2025

/s/ *Cortney Robinson*
LISA NEWMAN
JENNIFER FOUNTAIN CONNOLLY
(D.C. BAR NO. 1019148)
CORTNEY ROBINSON (D.C. BAR NO. 1656074)
SOMIL TRIVEDI (D.C. BAR NO. 1617967)
BRIAN D. NETTER (D.C. BAR NO. 979362)
SKYE L. PERRYMAN (D.C. BAR NO. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553 Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org

JOSHUA PERRY*
JOSHUA STANTON (D.C. Bar No. 90010653)
E. DANYA PERRY*
PERRY LAW
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 251-2619
jperry@danyaperrylaw.com

Counsel for Plaintiffs
*Admission pro hac vice pending

---

[1] Plaintiffs agree that in the alternative this Court should enter an order preventing the Government from re-obligating the terminated grant funding of the named Plaintiffs, but insist that, in view of the harms that would follow during the pendency of the appeal, such relief is insufficient.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th of July, 2025, I filed the foregoing papers using the Court's CM/ECF system, which served the foregoing on all counsel of record.

/s/ Cortney Robinson
CORTNEY ROBINSON